[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12665

_____

D.C. Docket No. 4:19-cv-00570-MW-MAF

SUPPORT WORKING ANIMALS, INC.,
a Florida corporation,
KACER KENNEL LLC,
A Florida limited liability company,
CAPABAL KENNEL INC.,
A Florida corporation,
MICHAEL GERARD,
a Florida individual,
SHARON DIPPEL,
a Florida sole proprietor,
GLORIA THOMAS,
a Florida sole proprietor,
DON JARRETT GREYHOUND TRANSPORTATION,
a Florida sole proprietor,
JAN GEORGE KENNEL LLC,
a Florida limited liability corporation,
SEMINOLE ANIMAL SUPPLY INC,
a Florida corporation,
MELODY ALVES KENNEL,
a Florida sole proprietor,
RICHARD ALVES KENNEL,
a Florida sole proprietor,
KURT TRZECAIK,
a Florida individual,
JAIME TESTA,
a Florida individual,
ANTHONY CALVO,
a Florida individual,

MARSELLA RACING INC,
a Florida corporation,
GREG MORSE,
a Florida individual,
DONNA HAHN MALBOUEF,
a Florida sole proprietor,
RICHARD MARCOUX,
a Florida individual,

                                                                                   Plaintiffs - Appellants,

versus

GOVERNOR OF FLORIDA,
FLORIDA SECRETARY OF STATE,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                                                    Defendants - Appellees.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(August 12, 2021)

Before NEWSOM, BRANCH and LAGOA, Circuit Judges.

NEWSOM, Circuit Judge:

      Article III of the Constitution confines federal courts' jurisdiction to "Cases" and "Controversies." As currently understood, that means that a plaintiff must have "standing"—which, in turn, means that he must be able to demonstrate (1) that he has suffered or will imminently suffer an injury in fact (2) that is "fairly traceable" to the defendant's challenged conduct and (3) that is "redressable" by a

decision in his favor.  Given the way the parties have presented it, this appeal principally concerns the latter two standing requirements—traceability and redressability.

The plaintiffs here are owners and operators of greyhound-racing businesses. They sued the Florida Attorney General, seeking a declaration that a newly enacted state law prohibiting gambling on greyhound racing is unlawful and an injunction to prevent her from enforcing it.  The district court dismissed the plaintiffs' complaint without prejudice because, it held, they lacked standing to sue the Attorney General, who has no statutory authority to enforce the anti-gambling law.

This is the plaintiffs' appeal.  They contend that they have standing to sue the Attorney General because, among other reasons, she does have authority to enforce the new law.  Because we hold that the plaintiffs' alleged injuries aren't traceable to any conduct of the Attorney General—either in enforcing or threatening to enforce the law or otherwise—and that the plaintiffs' injuries wouldn't be redressable by relief from this Court, we will affirm the district court's dismissal of the plaintiffs' complaint.

# I

In November 2018, Florida voters approved an amendment to the state constitution outlawing gambling on greyhound racing.  *See* Fla. Const. art. X, § 32. At the time of its passage, the amendment neither prescribed penalties for a

3

violation nor identified which Florida official or officials would be charged with enforcing it. Instead, the amendment provided that "[b]y general law, the legislature shall specify civil or criminal penalties for violations of this section . . . ." *Id*.

The plaintiffs are owners of greyhound-racing businesses and a self-styled "working animals" special-interest group who claim to have been injured by § 32. They sued the Florida Governor, Secretary of State, and Attorney General in their official capacities pursuant to 42 U.S.C. § 1983, seeking a declaration that § 32 violates their federal constitutional rights and an injunction prohibiting its enforcement. The district court dismissed the plaintiffs' initial complaint without prejudice. The court held that the plaintiffs had standing to sue but that their claims against the Governor and the Secretary were barred by the Eleventh Amendment and that their claims against the Attorney General failed on the merits.

Because the district court had dismissed without prejudice, the plaintiffs refiled their suit—this time against only the Attorney General. But between the dismissal of the plaintiffs' first complaint and the filing of their second, we decided *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020). There, voters and supporters of Democratic party candidates sued to enjoin the Florida Secretary of State from enforcing a law specifying the order in which candidates appear on the ballot in Florida elections. *Id.* at 1242. We held that the plaintiffs

4

lacked standing—in part, because the Secretary didn't have any actual authority to enforce the ballot law. *Id.* at 1253–58. Our decision prompted the district court here to reconsider its earlier decision that the plaintiffs had standing to sue the Attorney General. In dismissing the plaintiffs' amended complaint, the district held that they lacked standing because the Attorney General's powers were "not meaningfully distinguishable from the corresponding statutory delineations and assignments of the Florida Secretary of State's powers" in *Jacobson*. On appeal, the plaintiffs argue that the Attorney General does have authority to enforce § 32 and that their injuries are traceable to her and redressable by their requested relief.[1]

\* \* \*

Before proceeding, we pause briefly to discuss two recent developments in Florida law. Since this case came up on appeal, the Florida legislature has enacted two statutes. The first, S.B. 4A, creates an independent gaming commission that, "[e]ffective July 1, 2022," shall "[e]xercise all of the regulatory and executive powers of the state with respect to gambling." S.B. 4A, 2021A Leg. at 12–13 (Fla. 2021). The second, S.B. 8A, charges the Florida Department of Business and Professional Regulation—a state agency housed outside the Attorney General's office—with imposing civil penalties of up to $5,000 against anyone who violates

---

[1] We review dismissals for lack of subject-matter jurisdiction de novo. *See Pillow v. Bechtel Constr., Inc.*, 201 F.3d 1348, 1351 (11th Cir. 2000).

§ 32.  S.B. 8A, 2021A Leg. at 11 (Fla. 2021).  S.B. 8A separately states that, effective October 1, 2021, a person who unlawfully partakes in greyhound-racing gambling commits a first-degree misdemeanor, and someone who commits a second or subsequent violation commits a third-degree felony.  *Id*. at 35–36.

## II

Under current doctrine, a plaintiff has to make three showings in order to demonstrate Article III standing.  First, he must establish that he has suffered an "injury in fact"— an invasion of a legally protected interest that is both (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted).  Second, he must demonstrate that there is a "causal connection" between this injury and the conduct of which he complains—*i.e.*, the injury must be "fairly traceable" to the defendant's challenged actions and not the result of "the independent action of some third party not before the court." *Id*.; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Finally, he must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quotation marks omitted).  The latter two requirements—traceability and redressability—often travel together, *see* 13A Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 3531.5 (3d ed. 2021), and where, as here, a plaintiff has sued to enjoin a

government official from enforcing a law, he must show, at the very least, that the official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual. *See Jacobson*, 974 F.3d at 1253; *see also Lewis v. Governor of Alabama*, 944 F.3d 1287, 1299 (11th Cir. 2019) (en banc) ("The fact that the Act itself doesn't contemplate enforcement by the Attorney General counts heavily against plaintiffs' traceability argument."); *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015) ("[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." (quotation marks omitted)).

Putting the pieces together, then, in order to establish a justiciable Article III case, the plaintiffs here must establish (1) that they were injured (2) by the actions of the Florida Attorney General (3) because she can enforce § 32 against them and has either done so or threatened to do so.[2]

---

[2] There may well be another way to skin the justiciability cat here—through the "ripeness" doctrine, under which a plaintiff's claim must not be "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quotation marks omitted). As the Supreme Court has recognized, however, "[t]he doctrines of standing and ripeness 'originate' from the same Article III limitation," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)), and, accordingly, they often "merge[]" together, *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1245 (11th Cir. 1998). Because the parties have framed the question on appeal as one of standing, and because our recent decisions concerning similar challenges have focused on that issue, *see, e.g., Lewis*, 944

### III

With those principles in mind, we turn to this case. The simplest and most straightforward way to resolve this case is to proceed directly to the second and third elements of the tripartite standing analysis—traceability and redressability. No party has squarely engaged the question whether the plaintiffs have suffered an injury in fact; to the contrary, both have framed the issue on appeal as whether the Attorney General has enforcement authority under § 32 and, thus, whether the plaintiffs' injuries are traceable to her. *See* Br. of Appellants at 2 (presenting the question "[w]hether the trial court erred in dismissing Florida's Attorney General for lack of subject matter jurisdiction citing that she lacked sufficient connection to enforcement of the challenged law to make her a proper defendant"); Br. of Appellee at 2 (arguing that § 32 "does not assign the Attorney General authority to enforce it, nor has the Florida Legislature allocated enforcement authority to her"). Accordingly, consistent with Supreme Court practice, we will simply assume that the plaintiffs have suffered a cognizable injury in fact and will proceed to consider traceability and redressability. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105 (1998) (declining to consider the injury-in-fact issue because the

---

F.3d at 1296–1305; *Jacobson*, 974 F.3d at 1245–58, we do so as well. *See also* 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.5 (3d ed. 2021) ("Although the threat-of-enforcement cases long focused on ripeness, more recent decisions have come to switch between standing and ripeness.").

plaintiffs couldn't meet the redressability requirement); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (holding that courts may choose among threshold jurisdictional bases for dismissal).

### A

### 1

With respect to the former, we hold that the plaintiffs have failed to show that any harm they have suffered, or are currently suffering, is traceable to the Attorney General because they can't demonstrate that she has any authority to enforce § 32. At the time the plaintiffs filed their operative complaint, § 32 itself specified neither criminal nor civil penalties—it left that decision up to the Florida legislature. As already explained, since then the Florida legislature has enacted two statutes prescribing enforcement authority, but neither measure alters our analysis because their criminal-penalty provisions haven't gone into effect and because they expressly vest civil-enforcement authority outside the Attorney General's office.[3] Moreover, and in any event, neither at the time the plaintiff filed

---

[3] We also don't think, at this point anyway, that the Attorney General has *implicit* authority to enforce § 32. Again, as of today, although there are civil penalties in place for gambling on greyhound racing, a state agency independent of the Attorney General is charged with imposing them. *See* S.B. 8A, 2021A Leg. at 11–12 (Fla. 2021). And the criminal penalties—which the Attorney General *might* have implicit authority to enforce under Florida law, *see Dep't of Legal Affs. v. Winshare Club of Can.*, 530 So. 2d 348, 348 (Fla. Dist. Ct. App. 1988) (noting in a gambling-enforcement action that "the Office of the Attorney General . . . is the proper authority to seek enforcement of the state laws"), *approved*, 542 So. 2d 974 (Fla. 1989); *see also County of Volusia v. DeSantis,* 302 So. 3d 1001, 1005 (Fla. Dist. Ct. App. 2020)—don't go into effect until October 1, 2021. *See* S.B. 8A at 35. Moreover, it's unclear whether the Attorney General will

suit nor since has the Attorney General either threatened to enforce § 32 against the plaintiffs or otherwise given any indication that enforcement is likely.

Our recent en banc decision in *Lewis* is instructive. There, an Alabama state statute had set the statewide minimum wage lower than that established by a local Birmingham ordinance, thereby voiding the city measure. 944 F.3d at 1293–94. A group of Birmingham employees who wanted to be paid the higher wage sued state officials, including the Alabama Attorney General, seeking a declaration that the state law was unconstitutional and an injunction against its enforcement. *Id*. at 1295. We held that the plaintiffs lacked standing to sue the Attorney General. While we agreed that the plaintiffs had an economic injury, we held that their injuries weren't traceable to the Attorney General—in part because neither the Alabama law nor any other provision of the Alabama Code gave him the power to enforce the state minimum-wage provision. *Id*. at 1299–1300. In short, we said, the plaintiffs' "immediate gripe" was with their employers, who were following the statewide minimum-wage law rather than the city ordinance, and not with the Attorney General, who had neither enforced nor threatened to enforce the state law. *Id*. at 1301–02.

---

have enforcement authority even after the criminal penalties become effective because S.B. 4A expressly vests "all . . . executive power[]" over gambling in a newly created but yet-to-be-designated state agency. S.B. 4A, 2021A Leg. at 12–13 (Fla. 2021).

There's a similar problem with the present plaintiffs' case here—their "immediate gripe" isn't with the Florida Attorney General, who neither has the authority to enforce § 32 nor has done anything else to cause the plaintiffs' harm. The plaintiffs' real problem, as we understand their complaint, is with § 32 itself—its existence—and the economic consequences that its passage has visited or will visit on their businesses. None of that, though, appears to be due to any past, present, or likely future conduct of the Attorney General.

### 2

The plaintiffs posit two theories why their alleged injuries are "fairly traceable" to the Florida Attorney General. The first, which (by analogy to *Lewis*, see 994 F.3d at 1296) we'll call their "*ex ante*" theory, is that the Attorney General played a role in § 32's enactment because she sat on Florida's Constitution Revision Commission, which drafted and proposed § 32 for consideration by the Florida electorate in the 2018 election. The second, which (again, per *Lewis*, see *id.* at 1298) we'll call their "*ex post*" theory, is that other provisions of Florida law actually do give the Attorney General the power to enforce § 32. Neither argument persuades us.

The plaintiffs' *ex ante* theory—that the Attorney General contributed to their injuries by participating on the CRC that proposed the amendment to the Florida electorate—fails for two reasons. First, in *Jacobson*, we rejected the idea that an

11

official's role in crafting duly enacted legislation can satisfy the traceability requirement. *See Jacobson*, 974 F.3d at 1257 (rejecting the argument that the Secretary of State's role in prescribing rules and issuing directives about ballot orders had any bearing on whether the Secretary could enforce the provision because "[i]f rulemaking authority were sufficient to establish traceability, plaintiffs could presumably also challenge a law by suing the legislators who enacted it instead of the officials who execute it"). Second, and just as fundamentally, the plaintiffs' injuries arose not from the Attorney General's actions on the CRC but rather from "the independent action of . . . third part[ies] not before the court"—namely, the Florida voters who independently approved the amendment at the ballot box. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976).

The plaintiffs' *ex post* theory—which takes several forms—fares no better. They argue that officials over whom the Attorney General has supervisory authority have the power to enforce § 32—and, accordingly, so (by indirection) does the Attorney General herself. The plaintiffs point, for instance, to Fla. Stat. § 16.56(1)(a), which allows the Statewide Prosecutor, whom the Attorney General can appoint and remove, to prosecute "gambling" offenses if those offenses occur in two or more judicial circuits, and they assert that § 32 violations presumably "would" occur in multiple circuits. Br. of Appellants at 25–26. The plaintiffs also

12

argue that the Attorney General has "general superintendence and direction" over elected state attorneys, Fla. Stat. § 16.08, who can enforce § 32 and, separately, that the Attorney General is "charged with the duty to serve as the head of the Florida Department of Law Enforcement," meaning that "should criminal penalties be promulgated," she would be in charge of enforcing § 32.[4]  Br. of Appellants at 26.

The key words in the plaintiffs' arguments are "would" and "should." Again, the core defect in their position is that they can't show that they've been threatened with prosecution for violating § 32 by either the Attorney General or anyone under her control.  As we said in *Lewis*, "that's a problem."  944 F.3d at 1298; *see also Doe v. Pryor*, 344 F.3d 1282, 1287 (11th Cir. 2003) (holding that a group of plaintiffs didn't have standing to sue the Attorney General, who had disavowed the intention to enforce a particular state law, because they couldn't show "that either (1) [they were] threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution" (quotation marks omitted)). We recognize that, in light of the Florida legislature's recent passage of S.B. 4A and S.B. 8A, the plaintiffs may well face civil and criminal penalties should they

---

[4] Contrary to the plaintiffs' assertions, the Attorney General is not *the* head of FDLE—by virtue of her membership in the Florida Cabinet, she is *one of several* heads of the FDLE.  Fla. Stat. § 20.201 ("There is created a Department of Law Enforcement.  The head of the department is the Governor and Cabinet.").

continue to operate gambling facilities for greyhound racing.  But—and this is the key point—as of this moment, they don't face any penalties as a result of the Attorney General's actions in enforcing or threatening to enforce the law.

## B

Briefly, for many of the same reasons, we fail to see how any injuries that the plaintiffs have suffered would be redressed by a favorable judgment.  In their complaint, the plaintiffs requested (1) a declaration that § 32 is unconstitutional, (2) a permanent injunction preventing the Attorney General from enforcing § 32, and (3) costs and attorneys' fees.

Standing's redressability requirement mandates that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation marks omitted).  A judgment against the Attorney General prohibiting her from enforcing § 32 wouldn't significantly increase the likelihood of redressing the plaintiffs' injuries because (1) the Attorney General has no enforcement authority and (2) a judgment against the Attorney General would bind only her, and not other parties not before this Court. *See Jacobson*, 974 F.3d at 1254 (holding that "any persuasive effect" that a judicial decision might have on non-party government officials "cannot suffice to establish redressability"); *cf. Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring) ("Redressability requires that the court be able to afford relief

*through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power."). Even if we were to issue a decision in the plaintiffs' favor, § 32 would remain on the books, the plaintiffs' businesses would remain illegal, and they would remain in the same position they were in when they filed the operative complaint.

This conclusion is only strengthened by the recent passage of S.B. 4A and S.B. 8A. We now know that prospective relief against the Attorney General wouldn't aid the plaintiffs because those bills charge other state agencies with enforcing § 32. The Attorney General's role in enforcing § 32 remains "highly speculative" at best and non-existent at worst. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). As we determined in *Jacobson*, a plaintiff's injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them—here, enforcing § 32. 974 F.3d at 1255 (emphasizing that a federal court cannot "erase a duly enacted law from the statute books" but rather has only the "more limited" power to "enjoin executive officials from taking steps to enforce a statute," and can "exercise that power only

15

when the officials who enforce the challenged statute are properly made parties to a suit" (quotation marks omitted)).[5]

## IV

To summarize: We hold that the plaintiffs lack Article III standing to bring their claims against the Florida Attorney General because they have failed to allege that their injuries are traceable to the Attorney General's actions in enforcing or threatening to enforce § 32 against them or that their injuries would be redressed by a decision in their favor.

**AFFIRMED.**[6]

---

[5] Because we dismiss this appeal for lack of standing, we needn't consider whether the Attorney General is a proper defendant under *Ex parte Young*, 209 U.S. 123 (1908). *See Lewis*, 944 F.3d at 1306.

[6] We note that the district court's order that we have affirmed dismissed the plaintiffs' claims (as was appropriate) without prejudice. The plaintiffs are thus free to refile against the proper parties at the appropriate time.