IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**LEAGUE OF WOMEN VOTERS
OF FLORIDA, INC., et al.,**

    *Plaintiffs*,

v.                                                                  Case No.:  4:21cv186-MW/MAF

**LAUREL M. LEE, in her official
capacity as Florida Secretary of
State, et al.,**

    *Defendants,*

**and**

**NATIONAL REPUBLICAN
SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL
COMMITTEE,**

    *Intervenor-Defendants.*
_____/

**ORDER DENYING DEFENDANT SUPERVISORS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

This is a voting case. This Court has considered, without hearing, the parties' cross-motions for summary judgment. This Order addresses the motion filed by Defendant Latimer and joined by Defendant White ("Defendant Supervisors"). ECF Nos. 315 and 326. This Court addresses the motion filed by Defendants Lee, Moody,

Doyle, and Hays and Plaintiffs' motion for partial summary judgment by separate order.

Plaintiffs have challenged several new laws enacted or amended by the Florida Legislature in SB 90. Defendant Supervisors have moved for summary judgment, asserting Plaintiffs lack standing to challenge these laws. This Order addresses Defendant Supervisors' arguments and concludes that Plaintiffs have demonstrated standing at the summary-judgment stage.[1]

To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And they must do so for each statutory provision they challenge. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "independent obligation . . . to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute"). Plaintiffs proceed under two theories of standing, organizational standing and associational standing. This Court discusses each in turn.

---

[1] The parties are well aware of this case's underlying facts and procedural history, and thus this Court will not restate them here.

An organization may have standing to assert claims based on injuries to itself if that organization is affected in a tangible way. *See Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))). Here, Plaintiffs proceed under a diversion-of-resources theory. "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

In addition to organizational standing, an organization may sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) ("*GBM*"). As discussed below, Plaintiffs' members have standing as to the challenged provisions of SB 90 with respect to the Defendant Supervisors. Additionally, this lawsuit is germane to Plaintiffs, whose core purposes involve registering voters, voter education, encouraging electoral participation, and advocating for accessibility for Florida

voters. Finally, neither the claims asserted, nor the relief requested requires the participation of the individual members in this lawsuit. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003); *GBM*, 992 F.3d at 1316 n.29 ("[P]rospective relief weigh[s] in favor of finding that associational standing exists.").

"The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Critically, "each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* (quoting *Lujan*, 504 U.S. at 561). Accordingly, "when standing is raised at the summary judgment stage, the plaintiff must 'set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true.' " *Id.* (quoting *Lujan*, 504 U.S. 561).

In this case, Defendant Latimer asserts that, with respect to any facial constitutional challenge, he chooses to default. ECF No. 315 at 3 ("Put bluntly and clearly, Latimer thus 'defaults' on the question of whether SB 90 is *facially* unconstitutional in any respect. Latimer will abide by the Court's ruling in its entirety."). But Defendant Latimer—belatedly joined by Defendant White—move for summary judgment against Plaintiffs with respect to "any *as applied* challenge

4

which may be inferred from Plaintiffs' pleadings, to the extent such a challenge might be focused upon Hillsborough County's Supervisor of Elections and upon his conduct of future elections." ECF No. 315 at 3–4 (Latimer Motion); *see also* ECF No. 326 ¶ 8 ("Supervisor White joins the Motion for Summary Judgment filed by Supervisor Latimer as to any as applied challenge that may be inferred from Plaintiffs' pleadings to the extent such a challenge might be focused upon Miami-Dade County's Supervisor of Elections.").

Defendant Supervisors assert that Plaintiffs have not demonstrated that they have standing to proceed against Defendants Latimer and White. But this Court recognized Plaintiff's cognizable injuries under a diversion-of-resources theory and associational standing theory at the pleading stage, ECF No. 274 at 12–17, and now Plaintiffs have put meat on the bones at the summary-judgment stage to show that the challenged provisions burden their First Amendment rights and their members' voting rights by limiting access to drop boxes, voting line relief activities and expression, and voting by mail.[2]

---

[2] Although Defendant Supervisors do not challenge Plaintiffs' diversion-of-resources injuries, the record includes evidence to support Plaintiffs' organizational theory for standing. *See, e.g.*, ECF No. 352 at 18–20. For example, Plaintiff Black Voters Matter asserts the challenged provisions necessitate the hiring of additional Florida staff, using funds that would have otherwise been allocated to funding operations in other states, including Tennessee, and advocacy related to gentrification, police accountability, and environmental justice. ECF No. 319-15 at 62–67. Likewise, Plaintiff League of Women Voters is diverting staff time from working on other programs and day-to-day operations, like fundraising and strategic planning regarding redistricting in Florida, to address the challenged provisions. ECF No. 319-12 at 43–44.

Specifically, Plaintiffs respond with evidence that, by operation of the challenged law restricting drop boxes, Hillsborough County will no longer offer a 24/7 drop box that was previously available, and that Miami-Dade County will no longer make two drop box locations available to voters on Election Day and the Monday before Election Day. *See* ECF No. 350-9 at 80–81. *See also* ECF No. 350-30 at 3 (Latimer discovery response noting that 24-hour drop box will be discontinued in Hillsborough County) and ECF No. 350-6 at 17. In addition, Plaintiffs have come forward with evidence that voters have had to wait in lines longer—sometimes, substantially longer—than 30 minutes in Hillsborough and Miami-Dade Counties and that Plaintiffs' members[3] are self-censoring due to the challenged "line warming" ban's alleged vagueness. *See, e.g.*, ECF Nos. 354 at 18–20 and 320 at 28–30. *See also* ECF No. 350-34; ECF No. 350-6 at 51–52; ECF No. 350-35 at 6; ECF No. 350-36 at 3; ECF No. 350-40 ¶ 240. Plaintiffs have also produced record evidence of the burdens the new vote-by-mail repeat-request requirements impose on voters, including Plaintiffs' members. *See, e.g.*, ECF No. 354 at 16–17; ECF No. 350-7 at 130–32; ECF No. 350-3 at 26–27, 138-39; ECF No. 350-24 ¶ 23; ECF No. 350-25 ¶ 26. *See also* ECF No. 350-33.

---

[3] Specifically, only members of the League of Women Voters, Black Voters Matter, and Ms. Scoon engage in expressive activities that they believe is now precluded under the "line warming" ban. *See* ECF No. 320 at 28–30.

6

Defendant Supervisors also challenge Plaintiffs' showing as to traceability and redressability, noting that Defendant Supervisors have not done anything or said they might do anything that causes Plaintiffs' asserted injuries. Not so. As this Court previously noted, Defendant Supervisors are statutorily tasked with enforcing the challenged provisions—Sections 101.69, 101.62(1)(a), and 102.031(4)(a)–(b), Florida Statutes—and that Plaintiffs' asserted injuries are traceable to the Supervisors' statutory responsibility to enforce these provisions and redressable by an injunction prohibiting such enforcement. *See* ECF No. 274 at 26, 28. Upon review of the evidence in the record, Defendant Supervisors' argument does not change this Court's conclusion as to these standing requirements from the pleading stage.[4] In sum, the facts and all reasonable inferences drawn therefrom demonstrate that Plaintiffs have standing to proceed at the summary judgment stage.[5] Accordingly, Defendant Supervisors' motion for summary judgment is **DENIED**.

---

[4] With respect to Defendant White's assertion that there is no record evidence to show Plaintiffs have engaged in or intend to engage in any "line warming" activities in Miami-Dade County, Plaintiffs cite evidence disputing the assertion. *See, e.g.*, ECF No. 350-22 ¶¶ 3, 7-9. Upon review, a factual question remains as to whether, on an as-applied basis, Plaintiffs are entitled to relief on their challenge to the "line warming" ban in Miami-Dade County, among other Florida counties.

[5] Standing jurisprudence in the Eleventh Circuit is evolving. This Court reiterates that Plaintiffs must establish standing at each stage of the case, including trial. The facts and all reasonable inferences in favor of Plaintiffs at this stage demonstrate that Plaintiffs have standing, but more granular facts may be required at trial to establish the same. *See Jacobson*, 974 F.3d at 1250. Plaintiffs' counsel should be prepared to introduce evidence with specificity as to the diversion of resources necessitated by the challenged law and the identifiable burdens the challenged provisions impose upon their members.

Defendant Supervisors also challenge Plaintiffs' showing as to traceability and redressability, noting that Defendant Supervisors have not done anything or said they might do anything that causes Plaintiffs' asserted injuries. Not so. As this Court previously noted, Defendant Supervisors are statutorily tasked with enforcing the challenged provisions—Sections 101.69, 101.62(1)(a), and 102.031(4)(a)–(b), Florida Statutes—and that Plaintiffs' asserted injuries are traceable to the Supervisors' statutory responsibility to enforce these provisions and redressable by an injunction prohibiting such enforcement. *See* ECF No. 274 at 26, 28. Upon review of the evidence in the record, Defendant Supervisors' argument does not change this Court's conclusion as to these standing requirements from the pleading stage.[4] In sum, the facts and all reasonable inferences drawn therefrom demonstrate that Plaintiffs have standing to proceed at the summary judgment stage.[5] Accordingly, Defendant Supervisors' motion for summary judgment is **DENIED**.

---

[4] With respect to Defendant White's assertion that there is no record evidence to show Plaintiffs have engaged in or intend to engage in any "line warming" activities in Miami-Dade County, Plaintiffs cite evidence disputing the assertion. *See, e.g.*, ECF No. 350-22 ¶¶ 3, 7-9. Upon review, a factual question remains as to whether, on an as-applied basis, Plaintiffs are entitled to relief on their challenge to the "line warming" ban in Miami-Dade County, among other Florida counties.

[5] Standing jurisprudence in the Eleventh Circuit is evolving. This Court reiterates that Plaintiffs must establish standing at each stage of the case, including trial. The facts and all reasonable inferences in favor of Plaintiffs at this stage demonstrate that Plaintiffs have standing, but more granular facts may be required at trial to establish the same. *See Jacobson*, 974 F.3d at 1250. Plaintiffs' counsel should be prepared to introduce evidence with specificity as to the diversion of resources necessitated by the challenged law and the identifiable burdens the challenged provisions impose upon their members.

Finally, for the benefit of this Court and to avoid any prejudice to Defendants at trial, **Plaintiffs shall include in their pretrial stipulation due December 27, 2021, a list of each claim at issue and identify whether Plaintiffs are proceeding with an as-applied or facial challenge—or both—as to each claim**. If neither designation is applicable, the Plaintiffs must so state. In so ordering, this Court recognizes that whether a claim is considered "facial" or "as applied" can shift during this litigation; however, this Court requires notice of the Plaintiffs' position ahead of trial for purposes of focusing this Court's attention during the presentation of evidence.

**SO ORDERED on December 17, 2021.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**