IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS
OF FLORIDA, INC., et al.,

       *Plaintiffs,*

v.                           Case No.:  **4:21cv186-MW/MAF**

LAUREL M. LEE, in her official
capacity as Florida Secretary of
State, et al.,

       *Defendants,*

and

NATIONAL REPUBLICAN
SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL
COMMITTEE,

       *Intervenor-Defendants.*

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This Court has considered, without hearing, the parties' cross-motions for summary judgment. This Order addresses the motion filed by Defendants Lee, Moody, Doyle, and Hays and Plaintiffs' motion for partial summary judgment. This Court addresses Defendants Latimer and White's motion for summary judgment by separate order.

This is a voting case. Plaintiffs have challenged several laws either enacted or

amended by the Florida Legislature in Senate Bill 90 ("SB 90"). Defendants move for summary judgment on all claims, asserting Plaintiffs lack standing to challenge these laws, and in the alternative, that no dispute of material fact exists as to each claim, and that they are entitled to judgment as a matter of law. Plaintiffs, on the other hand, move for partial summary judgment as to only certain claims. This Order addresses each argument, starting with whether Plaintiffs have demonstrated standing at the summary-judgment stage.[1]

I

To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And they must do so for each statutory provision they challenge. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "independent obligation . . . to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute"). Plaintiffs proceed under two theories of standing, organizational standing and associational standing. This Court discusses each in turn.

---

[1] The parties are well aware of this case's underlying facts and procedural history, and thus this Court will not restate them here.

2

An organization may have standing to assert claims based on injuries to itself if that organization is affected in a tangible way. *See Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))). Here, Plaintiffs proceed under a diversion-of-resources theory. "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

In addition to organizational standing, an organization may sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) ("*GBM*"). As discussed below, Plaintiffs' members have standing as to SB 90's challenged provisions. Additionally, this lawsuit is germane to Plaintiffs, whose core purposes involve registering voters, voter education, encouraging electoral participation, and advocating for accessibility for Florida voters. Finally, neither the claims asserted,

nor the relief requested requires the participation of the individual members in this lawsuit. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003); *GBM*, 992 F.3d at 1316 n.29 ("[P]rospective relief weigh[s] in favor of finding that associational standing exists.").

"The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Critically, "each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* (quoting *Lujan*, 504 U.S. at 561). Accordingly, "when standing is raised at the summary judgment stage, the plaintiff must 'set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true.' " *Id.* (quoting *Lujan*, 504 U.S. 561).

In this case, Defendants Lee, Moody, Hays, and Doyle assert that Plaintiffs have not demonstrated injuries sufficient to confer standing at the summary-judgment stage. ECF No. 321-1 at 12–20. But Plaintiffs respond that they are injured by each of the challenged provisions, "which make it harder for them and their members to vote, require them to divert resources from other critical tasks, and both prevent them from engaging in expressive activity they would like to engage in and require them to say things they do not want to say." ECF No. 352 at 7.

This Court recognized Plaintiffs' cognizable injuries at the pleading stage, ECF No. 274 at 12–19, and now Plaintiffs have put meat on the bones to show that their injuries, both organizational and associational, are grounded in fact. *See, e.g.*, ECF No. 352 at 14–23. To start, Plaintiffs' evidence demonstrates that, because of the challenged law, they have had to "divert personnel and time from other activities to educating volunteers and voters on compliance with the requirement[s]." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020) (internal quotation marks omitted) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008)). Namely, Plaintiffs Black Voters Matter and the League have demonstrated their injuries-in-fact based on a diversion of resources as to the challenged provisions at the summary judgment stage. *See, e.g.*, ECF No. 350-15 at 28–29, 42, 62–67, 72, 74–76; ECF No. 350-19 at 38–42, 71. In addition, Plaintiffs have demonstrated individual injuries and associational injuries with respect to each of the challenged provisions.[2] *See, e.g.*, ECF No. 350-11 at 18–19, 39; ECF No. 350-12 at 20–21, 25–26; ECF No. 350-13 at 23–26, 39, 45–46, 60–61; ECF No. 350-14 at 33, 69–70, 78, 84–85, 89–90, 151–53; ECF No. 350-16 at 2–3; ECF No. 350-17

---

[2] Plaintiffs have included no evidence with respect to Plaintiff Susan Rogers's injuries, if any, that stem from any of the challenged provisions aside from section 104.0616. This Court previously dismissed Plaintiffs' challenge to section 104.0616 for lack of standing.

at 6; ECF No. 350-18 at 10–11; ECF No. 350-21 at 14, 25, 54, 57; ECF No. 350-22 at 2–3.

Lastly, Defendants do not raise any infirmities with respect to traceability or redressability. Upon review of the evidence in the record, nothing has changed that would affect this Court's conclusions as to both standing requirements from the pleading stage. *See* ECF No. 274 at 19–30. Accordingly, the facts and all reasonable inferences drawn therefrom demonstrate that Plaintiffs have standing to proceed at the summary judgment stage.[3]

## II

The parties already know the standard this Court applies in addressing a summary-judgment motion. On cross-motions, that standard remains the same. This Court evaluates the cross-motions separately, viewing the evidence in the light most favorable to the non-movant.

With that in mind, this Court starts with those claims on which only Defendants move for summary judgment; namely, Plaintiffs' undue burden claims under the First and Fourteenth Amendments and Plaintiffs' First Amendment speech

---

[3] Standing jurisprudence in the Eleventh Circuit is evolving. This Court reiterates that Plaintiffs must establish standing at each stage of the case, including trial. The facts and all reasonable inferences in favor of Plaintiffs at this stage demonstrate that Plaintiffs have standing, but more granular facts may be required at trial to establish the same. *See Jacobson*, 974 F.3d at 1250. Plaintiffs' counsel should be prepared to introduce evidence with specificity as to the parties' injuries with respect to each of the challenged laws.

claim. Then, this Court turns to the claims on which both sides move for judgment; that is, Plaintiffs' compelled speech, vagueness, and overbreadth claims.

A

Starting with Plaintiffs' undue burden claims under the First and Fourteenth Amendments, this Court must apply the standard set out in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson–Burdick* standard requires this Court to weigh Florida's interest in promulgating the challenged provisions against the burdens those provisions impose on Florida's electorate.

In moving for summary judgment, Defendants try to reformulate *Anderson–Burdick* to suit their needs. Having already tackled the issue at the motion to dismiss stage, this Court will address these arguments only briefly.

*First*, regarding Defendants' "broader point" that "burdens that do not affect voters generally are never relevant under" *Anderson–Burdick*, ECF No. 321-1 at 23, Defendants point to no authority suggesting that this Court should reevaluate its prior ruling, and this Court has found none. To the contrary, only weeks ago the Eleventh Circuit applied *Anderson–Burdick* to evaluate the burdens a law placed on a *specific* group. *Libertarian Party of Ala. v. Merrill*, No. 20-13356, 2021 WL 5407456, at *4 (11th Cir. Nov. 19, 2021) (evaluating the burden a law placed on "minor political parties"). *See also Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1354 (11th Cir.

7

2009) (weighing "the burden imposed on Georgia voters who lack photo identification").

*Second*, Defendants' "narrow" point—that, assuming Plaintiffs bring a facial challenge, they must do more than show that SB 90 imposes an unjustified burden on *some* voters—misapprehends the standard that applies to facial challenges. This is because Defendants' "focus on . . . electors who are unaffected by [the challenged] provisions overlooks the Supreme Court's instruction that when reviewing a facial challenge we do not consider instances in which a statute 'do[es] no work.' " *Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1270 (11th Cir. 2019) (Jill Pryor, J., concurring) (quoting *City of L.A., Calif. v. Patel*, 576 U.S. 409, 419 (2015)). The relevant question is whether, looking to the voters the challenged provisions do burden, is SB 90 constitutional.[4]

With these points in mind, this Court's task is to balance Defendants' proffered justifications for the challenged provisions against the burdens, if any, those provisions place on those voters for whom the provisions present an impediment to

---

[4] Defendants' citation to *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) is unavailing. There, the Court did not, as Defendants suggest, hold that "an unjustified burden on *some* voters cannot justify invalidating [an] entire provision." ECF No. 285-1 at 46 (emphasis in original) (quotation omitted). Rather, it held that it could not "conclude that the [challenged] statute imposes 'excessively burdensome requirements' on *any* class of voters." *Crawford*, 553 U.S. at 202 (emphasis added) (quoting *Storer v. Brown*, 415 U.S. 724, 738 (1974)). *See also id.* at 204 (Scalia, J., concurring) (criticizing "[t]he lead opinion" because it "assumes . . . that the voter-identification law 'may have imposed a special burden on' some voters, . . . but holds that petitioners have not assembled evidence to show that the special burden is severe enough to warrant strict scrutiny").

voting. On this point, Defendants need not come forward with evidence supporting their stated interests. *See Billups*, 554 F.3d at 1353. Nonetheless, this Court must evaluate "the extent to which [Defendants'] justifications *require* the burden to plaintiffs' rights." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019) (emphasis added). *See also Anderson*, 460 U.S. at 789 (explaining that "the Court must not only determine the legitimacy and strength of each of [the state's] interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights"). This inquiry "emphasizes the relevance of context and specific circumstances." *Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1346 (11th Cir. 2020).

Plaintiffs have come forward with evidence suggesting that the challenged provisions impose at least some burdens on Florida's electorate. *See, e.g.*, ECF No. 350-9 ¶¶ 318 (explaining that SB 90's "restrictions on drop boxes will disproportionately burden voters who submit their ballots via drop box"); 319 ("SB 90's burdens will fall disproportionately on Florida voters with disabilities."); ECF No. 350-14 at 86–90 (explaining that registration-warning provision will deter voters in marginalized communities from registering to vote). The size of that burden is a question of fact, as is the extent to which Florida's legitimate interests require that it impose the burden. Both sides have submitted substantial evidence in support of their positions, which this Court cannot, at this stage, weigh. Accordingly, because

material factual disputes abound, Defendants' motion for summary judgment is **DENIED** as to Count I of Plaintiffs' amended complaint.

B

Next, Defendants' move for summary judgment on Plaintiffs' First Amendment speech claim against the non-solicitation provision. Defendants argue first that "the non-solicitation provision does not implicate the First Amendment because it regulates only non-expressive conduct," ECF No. 321-1 at 31, and second that, even if the non-solicitation provision implicated the First Amendment, it survives constitutional scrutiny, *id.* at 35. This Court addresses each argument in turn.

1

First, Defendants argue that the non-solicitation provision does not implicate the First Amendment because it regulates only conduct. But "[c]onstitutional protection for freedom of speech 'does not end at the spoken or written word.'" *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). Rather, the First Amendment also encompasses a right to engage in "expressive conduct." *Id.* (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004)).

To determine whether conduct is expressive—and thus entitled to First Amendment protection—this Court must ask two questions. *See Spence v. Washington*, 418 U.S. 405, 410–411 (1974). These are "(1) whether an intent to convey a particularized message was present, and (2) whether the likelihood was great that the message would be understood by those who viewed it." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1336 (11th Cir. 2021) (cleaned up) (quoting *Johnson*, 491 U.S. at 404). While the first question is self-explanatory, the second is more nuanced. It requires this Court to ask "whether the reasonable person would interpret" the conduct as conveying "*some* sort of message, not whether an observer would necessarily infer a *specific* message." *Food Not Bombs*, 901 F.3d at 1240 (quoting *Holloman*, 370 F.3d at 1270) (emphasis in original) (cleaned up).

Here, Plaintiffs allege that "[o]rganizations and individuals, like the League, LULAC, and Black Voters Matter, who plan to distribute . . . food and drink at polling places[,] . . . engage in First Amendment-protected core political speech and expression by encouraging those voters to stay in line." ECF No. 160 ¶ 175. Though Defendants quibble with Plaintiffs' contention that the non-solicitation provision would apply to Plaintiffs' activities, ECF No. 321-1 at 14–15, they do not contest that Plaintiffs actually distribute food, water, and other relief to those waiting to vote.

Nor do Defendants contest that Plaintiffs intend to convey a particular message when they distribute food, water, and other relief. Instead, they question

11

whether a reasonable person would interpret the Plaintiffs' activity as conveying a message. Moreover, Defendants say, because it is highly dependent on individual facts, the issue of whether the distribution of food and water conveys a message may only be adjudicated on an as-applied challenge.

 Explaining that "context matters," *Food Not Bombs*, 901 F.3d at 1237, the Eleventh Circuit has agreed, *id.* at 1241 ("Whether food distribution [or sharing] can be expressive activity protected by the First Amendment under particular circumstances is a question to be decided in an as-applied challenge[.]" (alterations in original) (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006)). Thus, to the extent Plaintiffs mount a facial challenge to the non-solicitation provision under the First Amendment, Defendants' motion for summary judgment is **GRANTED in part**.[5]

This Court says "to the extent Plaintiffs mount a facial challenge" because their amended complaint does not make clear whether Plaintiffs mount an as-applied or facial challenge. Plaintiffs ask this Court to enjoin "Defendants . . . from enforcing

---

[5] This Court recognizes that Plaintiffs' overbreadth challenge is also, necessarily, a facial challenge under the First Amendment. But there, Plaintiffs' claim does not necessarily rise or fall depending on whether the First Amendment reaches Plaintiffs' activity. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66 (1981) ("Because appellants' claims are rooted in the First Amendment, they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own."). Likewise, whether a law implicates the First Amendment or not, "[w]hen vagueness permeates the text of such a law, it is subject to facial attack." *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999). Accordingly, this Court makes clear that it does not grant summary judgment on Plaintiffs' overbreadth or vagueness claims.

the Line Warming Ban." ECF No. 160 ¶ 177(B). This broad requested relief suggests that Plaintiffs are mounting a facial challenge. Elsewhere, however, Plaintiffs focus on the effect the non-solicitation provision has on them specifically, which is more indicative of an as-applied challenge. *See* ECF No. 320-1 at 28–29.

This imprecision is not surprising. "[T]he distinction between facial and as-applied challenges" is fluid. *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). And the difference between the two turns not on what the parties have pleaded but rather on the relief the court grants. *Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1338 (11th Cir. 2020). Accordingly, the Eleventh Circuit has expressed a willingness to permit parties to change their focus from a facial to an as-applied challenge "at the summary judgment stage." *Id.* (citing *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013)). This Court, therefore, cannot grant Defendants' motion for summary judgment on the ground that Plaintiffs seek only facial relief.

Nonetheless, Defendants argue that, even if Plaintiffs bring an as-applied claim, "[t]he contextual factors in [*Food Not Bombs*] are simply not met in this context." ECF No. 285-1 at 64. While it is hard to see how a "contextual" test can be reduced to five factors that apply in every instance, the Eleventh Circuit has since applied *Food Not Bombs* as a five-factor test. *See Burns*, 999 F.3d at 1343–44; *see also id.* at 1373 (Marcus, J., dissenting) ("The circumstances in Fort Lauderdale --

which my colleagues read as factors -- were relevant to determining whether a political nonprofit's food sharing in a public park was expressive conduct -- nothing more and nothing less.").

In *Burns*, the Court distilled *Food Not Bombs* into the following factors: (1) whether the plaintiff intends to distribute literature or hang banners in connection with the expressive activity, (2) whether the activity will be open to all, (3) whether the activity takes place in a traditional public forum, (4) whether the activity addresses an issue of public concern, and (5) whether the activity "has been understood to convey a message over the millennia." *Id.* at 1344–45.

While Defendants argue that factors 3 and 4 are not met here, they address no other factor and point to nothing in the record supporting their argument. *See* ECF No. 321-1 at 31 (arguing that, "[f]acts aside," Plaintiffs' conduct is not expressive). But this Court cannot set the facts aside; given Defendants limited argument, and the fact-intensive nature of the inquiry this Court must undertake, summary judgment is inappropriate. This Court must determine whether Plaintiffs' conduct implicates the First Amendment after hearing all the evidence at trial.[6]

---

[6] As further detailed at the end of this Order, Plaintiffs must explain which claims are as-applied challenges and which claims are are facial challenges, if either designation is applicable, ahead of trial.

2

Second, Defendants argue that, even if this Court were to determine that Plaintiffs' conduct implicates the First Amendment, this Court should still grant summary judgment. This Court, however, finds it imprudent to address this issue now. In similar cases, "[c]ourts . . . have reserved their ruling on a motion for summary judgment until after the trial of a separate issue." 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2728 (4th ed.). Thus, where "a determination at trial . . . may eliminate the need" to resolve an issue at all, this Court may deny summary judgment. *United States ex rel. Greenville Equip. Co. v. U.S. Cas. Co.*, 180 F. Supp. 715, 717 (D. Del. 1960). Here, addressing at trial whether Plaintiffs' activities are expressive at all may resolve the issue of whether the non-solicitation provision satisfies First Amendment scrutiny. Accordingly, Defendants' motion for summary judgment is **DENIED** as to Count III of Plaintiffs' amended complaint.

C

That brings this Court to the parties' cross-motions, which address the non-solicitation provision and the registration-warning provision. This Court starts with the non-solicitation provision. In addition to arguing that this provision violates their First Amendment speech rights, Plaintiffs also bring a different species of First Amendment claim, alleging that the non-solicitation provision is both vague and overbroad.

15

But whether Plaintiffs' conduct implicates the First Amendment impacts this Court's analysis of these claims as well. Vagueness challenges receive more lenient review when raised in a First Amendment context. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 (1982). And vagueness claims not implicating the First Amendment "must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). Thus, this Court will not resolve Plaintiffs' vagueness claims at this juncture. Further, this Court's overbreadth analysis may turn on how this Court resolves other issues at trial. Accordingly, both parties' motions for summary judgment are **DENIED** as to Count IV of Plaintiffs' amended complaint.

## D

That leaves just the registration-warning provision, which Plaintiffs allege violates the First Amendment by compelling speech. In moving for summary judgment, Defendants make three arguments. First, they claim the registration-warning provision "does not infringe on any speech." ECF No. 321-1 at 43. Second, they argue that the registration requirement is subject to—and easily passes—minimal scrutiny. Third, they argue that, even if this Court subjects the warning requirement to more heightened scrutiny, it advances a compelling state interest. Plaintiffs, by contrast, argue that the registration-warning provision compels speech, and is thus subject to strict scrutiny—which it fails.

The threshold issue, then, is what framework applies. Defendants first argue that the registration-warning provision is not a content-based regulation on speech, and thus "Plaintiffs' claim fails on its face." ECF No. 321-1 at 44. But the Supreme Court has explained that government-required notices *are* content-based restrictions; "[b]y compelling individuals to speak a particular message, such notices 'alte[r] the content of [their] speech.' " *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) ("*NIFLA*") (alteration in original) (quoting *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)). Defendants' argument thus lacks merit. Still, because "the general rule that content-based restrictions trigger strict scrutiny is not absolute," this conclusion does not automatically mean strict scrutiny applies. *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015).

Recognizing that exceptions exist, Defendants next argue that the deferential standard of review from either *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) or *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980) applies to Plaintiffs' claims. Defendants are mistaken.

*Zauderer*, by its own terms, applies only to commercial speech by professionals. 471 U.S. at 629 ("This case presents additional unresolved questions regarding the regulation of commercial speech by attorneys."). *See also NIFLA*, 138 S. Ct. at 2372 ("[O]ur precedents have applied more deferential review to some laws

that require professionals to disclose factual, noncontroversial information in their 'commercial speech.'" (quoting *Zauderer*, 471 U.S. at 651)). *Central Hudson*, likewise, governs commercial speech. 447 U.S. at 564–66 (setting out "a four-part analysis" to govern "commercial speech cases").

Plaintiffs' speech is not commercial. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson*, 447 U.S. at 561. *See also Dana's*, 807 F.3d at 1246 (defining commercial speech as "a narrow category of necessarily expressive communication that is related solely to the economic interests of the speaker and its audience . . . or that does no more than propose a commercial transaction." (quotations omitted)); *Commercial*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("Relates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce.").

Here, there is absolutely no allegation—not a hint—that Plaintiffs charge voters a fee to return their applications or are somehow in the business of returning voter registration applications. And, at any rate, other courts have already rejected Defendants' argument, explaining that "voter-registration information does not propose any kind of commercial transaction." *Minn. Voters All. v. City of Saint Paul*, 442 F. Supp. 3d 1109, 1117 (D. Minn. 2020). In short, neither *Zauderer* nor *Central Hudson* apply.

18

That said, the issue of what level of scrutiny applies is not a binary question as the parties suggest. To be sure, ordinarily, when one of the above exceptions does not apply, a content-based regulation is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Here, however, there is yet another layer of nuance.

The *Anderson–Burdick* test is typically used to evaluate First Amendment challenges to election laws. *See Anderson*, 460 U.S. at 786–89. But when an election law does "not control the mechanics of the electoral process" and is instead "a regulation of pure speech," an "exacting scrutiny" test applies. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995) (quoting *Meyer v. Grant*, 486 U.S. 414, 420 (1988)). Under exacting scrutiny, this Court must "uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *Id.* at 347. Whether strict or heightened scrutiny—or both—applies here is far from clear. *Compare Minnesota Voters*, 442 F. Supp. 3d at 1118 (applying strict scrutiny) *and* ECF No. 160 ¶ 192 (asking this Court to apply "strict scrutiny") *with League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 725 (M.D. Tenn. 2019) (applying exacting scrutiny) *and* ECF No. 160 ¶ 196 (asking this Court to apply "exacting scrutiny").

This Court need not decide now what standard applies—nor would it be prudent to do so in the absence of briefing by the parties. Defendants are not entitled

to summary judgment under either standard. And, although a close call, this Court finds that material issues of fact preclude summary judgment for Plaintiffs.

Florida contends that the registration-warning provision serves a compelling interest: "protecting its voters through the dissemination of truthful information so that as many voters as possible may register and vote." ECF No. 321-1 at 45. *See also* ECF No. 318-54 ¶¶ 17–21 (declaration of the Director of the Division of Elections explaining Florida's alleged interest and how, in her view, the registration-warning provision advances it). To be sure, Plaintiffs vehemently contest Defendants' assertions, but that is all the more reason to address this issue once the record is fully developed.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Given what's on the line, the stakes are simply too high to exercise anything less than the most scrupulous caution. The parties' motions for summary judgment are therefore **DENIED** as to Counts V and VI of Plaintiffs' amended complaint.

Accordingly,

**IT IS ORDERED**:

1. Defendants' motion for summary judgment, ECF No. 321, is **GRANTED in part** and **DENIED in part**. The motion is granted only to the extent that

Plaintiffs mount a facial challenge to the non-solicitation provision under the First Amendment. The motion is otherwise denied.

2. Plaintiffs' motion for summary judgment, ECF No. 320, is **DENIED**.

3. Going forward, for the benefit of this Court and to avoid any prejudice to Defendants at trial, **Plaintiffs shall include in their pretrial stipulation due December 27, 2021, a list of each claim at issue and identify whether Plaintiffs are proceeding with an as-applied or facial challenge—or both—as to each claim**. If neither designation is applicable, the Plaintiffs must so state. This Court requires notice of the Plaintiffs' position ahead of trial for purposes of focusing this Court's attention during the presentation of evidence.

**SO ORDERED on December 17, 2021.**

**s/Mark E. Walker**
**Chief United States District Judge**