UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., et al.,

        Plaintiffs,

        v.

LAUREL M. LEE, in her official
capacity as Florida Secretary of State,
et al.,

        Defendants,

        and

REPUBLICAN NATIONAL
COMMITTEE, and NATIONAL
REPUBLICAN SENATORIAL
COMMITTEE,

        Intervenor-Defendants.

Case No.:  4:21-cv-186-MW/MAF
          4:21-cv-187-MW/MAF
          4:21-cv-201-MW/MAF
          4:21-cv-242-MW/MAF

**(consolidated for trial)**

## CORRECTED[1] JOINT PRETRIAL STIPULATION[2]

---

[1] Corrected only to reflect final confirmation of joinder by remaining parties.

[2] Consistent with the Court's Amended Order on Pretrial Hearing (ECF No. 327 in Case No. 4:21-cv-186) and Order Consolidating Cases for Trial (ECF No. 365 in Case No. 4:21-cv-186), this Joint Pretrial Stipulation is being filed and served in the lowest-numbered case on behalf of all Parties in the four above-referenced cases consolidated for trial. To avoid duplication, the Parties do not plan to file and serve the same filings in the other higher-numbered cases, but the Parties will so file and serve it, if the Court directs. This filing incorporates the disclosures pursuant to Rule 26(a)(3), Federal Rules of Civil Procedure, of Plaintiffs, the Secretary, Attorney General, Intervenor-Defendants, Supervisor White, and Supervisor Latimer.

Plaintiffs League of Women Voters of Florida, Inc., League of Women Voters of Florida Education Fund, Inc., Black Voters Matter Fund, Inc., Florida Alliance for Retired Americans, Inc., Cecile Scoon, Susan Rogers, Dr. Robert Brigham, and Alan Madison (together, "*League* Plaintiffs"); Plaintiffs Florida State Conference of Branches and Youth Units of the NAACP, Common Cause, and Disability Rights Florida (together, "*NAACP* Plaintiffs"); Plaintiffs Florida Rising Together, Poder Latinx, UnidosUS, Equal Ground Education Fund, Hispanic Federation, Haitian Neighborhood Center Sant La, and Mi Familia Vota Education Fund (collectively, "*Florida Rising* Plaintiffs"); Plaintiff Harriet Tubman Freedom Fighters, Corp. ("HTFF" and, with the foregoing Plaintiffs, collectively, "Plaintiffs"); and Defendant and Defendant-Intervenor Laurel M. Lee, in her official capacity as the Florida Secretary of State (the "Secretary"); Defendant Ashley Moody, in her official capacity as the Florida Attorney General (the ("Attorney General"); all 67 Florida counties' Supervisors of Elections, in their official capacities as Supervisors of Elections (each a "Supervisor")[3]; and Intervenor-Defendants Republican National Committee and the National Republican Senatorial Committee ("Defendant Intervenors" and, together with the Plaintiffs and Defendants, collectively, the

---

[3] The Supervisors are no longer parties in *Harriet Tubman Freedom Fighters v. Lee*, *see* No. 21-cv-242-MW/MAF, ECF No. 190 (dismissing Count IV).

"Parties"), pursuant to the Court's Order for Pretrial Conference (ECF No. 327) and its Order Consolidating Cases for Trial (ECF No. 365), hereby submit this Joint Pretrial Stipulation:

## A.   BASIS OF FEDERAL JURISDICTION

*League* Plaintiffs and *HTFF* brought their actions under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the First and Fourteenth Amendments of the United States Constitution. *NAACP* Plaintiffs and *Florida Rising* Plaintiffs brought their actions under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the First, Fourteenth, and Fifteenth Amendments of the United States Constitution and certain federal statutes, namely Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301 *et seq.*; Section 208 of the VRA, 52 U.S.C. § 10508; and (for the *NAACP* Plaintiffs) Title II of the Americans With Disabilities Act ("ADA") 42 U.S.C. § 12131 *et seq.*

This Court has original jurisdiction over the subject matter of these actions pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 to grant the declaratory relief requested.

**B.    CONCISE STATEMENT OF THE NATURE OF THE ACTIONS**

The *League* Plaintiffs' action is a constitutional challenge to certain provisions in enacted Florida Senate Bill 90 (2021), An Act Relating to Elections, Chapter 2021-11, Laws of Florida ("SB 90").

The *NAACP* Plaintiffs' action is a constitutional and statutory challenge to certain provisions in SB 90.

The *Florida Rising* Plaintiffs challenge, on various VRA and constitutional grounds (the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution), five provisions of SB 90.

Plaintiff *HTFF's* action is a constitutional challenge, on First and Fourteenth Amendment grounds, to Section 7 of SB 90.

**C.    BRIEF GENERAL STATEMENT OF EACH PARTY'S CASE[4]**

In the respective brief general statements of the case, the following terms are used for sake of consistent references:

"Drop Box Provisions" refer to the provisions of Section 101.69, Florida Statutes (2021), as amended by Section 28 of SB 90.

"Vote-by-Mail ('VBM') Request Provision" refers to Section 101.62(1)(a),

---

[4] The Parties' respective brief general statements of case are their own and are not joined by the other Parties, except as reflected in each respective brief general statement of case.

4

Florida Statutes (2021), as amended by Section 24 of SB 90.

"Solicitation Definition" refers to Section 102.031(4)(a)-(b), Florida Statutes (2021), as amended by Section 29 of SB 90.

"Registration Disclaimer Provision" refers to Section 97.0575(3)(a), Florida Statutes (2021), as amended by Section 7 of SB 90.

"Registration Delivery Provision" refers to Section 97.0575(3)(a)(1-3) (2021), as amended by Section 7 of SB 90.

"VBM Request Identification" refers to Section 101.62(1)(b), Florida Statutes (2021), as amended by Section 24 of SB 90.

"Challenged Provisions" collectively refers to the foregoing provisions.

1.    *League* **Plaintiffs' Brief General Statement of Case**

*League* Plaintiffs challenge the constitutionality of four provisions of Florida's recently enacted SB 90 which: (1) reduce access to vote-by-mail drop boxes,  Section 101.69, Florida Statutes (2021) (the Drop Box Provisions), (2) require voters who wish to vote by mail to re-request those ballots unnecessarily, Section 101.62(1)(a), Florida Statutes (2021) (the VBM Request Provision); (3) appear to ban individuals from providing assistance to persons in line to vote, Section 102.031(4)(a)-(b), Florida Statutes (2021) (the Solicitation Definition); and (4) require voter registration organizations to recite a misleading government-mandated "warning" that will discourage eligible voters from registering to vote

with these organizations, Section 97.0575(3)(a), Florida Statutes (2021) (the Registration Disclaimer Provision).[5] *League* Plaintiffs claim that there is no legitimate, much less compelling, state interest in targeting the voting process in these ways.

*League* Plaintiffs assert that these provisions severely burden the right to vote under the First and Fourteenth Amendments. Specifically, the Drop Box Provisions, Solicitation Definition, and VBM Request Provision place undue burdens on the right to vote in violation of the First and Fourteenth Amendments. The Solicitation Provision is unconstitutionally vague and overbroad under the First and Fourteenth Amendments. The Registration Disclaimer Provision violates the First Amendment because it abridges *League* Plaintiffs' freedom of speech through government-compelled speech. In addition to this summary, the nature and bases of their claims are detailed in *League* Plaintiffs' Corrected First Amended Complaint (ECF No. 160 in Case No. 4:21-cv-186) ("Operative *League* Complaint").

Pursuant to the Court's directive (ECF No. 379 at 8 and ECF No. 380 at 21, in Case No. 4:21-cv-186), the *League* Plaintiffs provide the following chart of their claims, identifying whether the *League* Plaintiffs are proceeding with an as-applied

---

[5] *League* Plaintiffs also challenged provisions of SB 90 that effectively ban organizations and volunteers from helping voters return their mail ballots, but the Court dismissed that claim.  ECF No. 274 at 24.

challenge, a facial challenge, or both, as to each claim:

| Claim | Facial vs. As-applied |
|---|---|
| Count I: *Anderson-Burdick* as to all Challenged Provisions | Both |
| Count II: Free Speech and Association Challenge to Volunteer Assistance Ban | Dismissed. *See* ECF No. 274. |
| Count III: Free Speech and Association Challenge to Solicitation Definition | As applied only. *See* ECF No. 380. |
| Count IV: Vagueness and Overbreadth Challenge to Solicitation Definition | Both |
| Count V: Compelled Speech Challenge to Registration Disclaimer Provision | Both |
| Count VI: Free Speech and Association Challenge to Registration Disclaimer Provision | Both |

## 2.   *NAACP* **Plaintiffs' Brief General Statement of Case**

*NAACP* Plaintiffs are organizations that advocate for voting rights and promote voter participation, particularly for historically disadvantaged groups, including voters of color and voters with disabilities. Plaintiffs challenge three[6]

---

[6] *NAACP* Plaintiffs also challenged a fourth provision of SB 90 (the "Volunteer Assistance Ban"), which changed Section 104.0616(2), Florida Statutes (2021) to effectively ban organizations and volunteers from helping voters return their vote-

particularly restrictive provisions of SB 90: the Drop Box Provisions, the VBM Request Provision, and the Solicitation Definition. *NAACP* Plaintiffs contend that these Challenged Provisions targeting the voting process significantly burden Florida voters in general, and subgroups of Florida voters in particular (including, but not limited to, voters of color and voters with disabilities), in the exercise of their voting rights: (a) severely curtailing the locations, availability, and operating hours of ballot drop boxes for receipt of VBM ballots established by the Supervisors' offices; (b) cutting in half the lifespan of "standing" requests for VBM ballots by requiring voters to submit new applications for VBM ballots every two years (*i.e.*, every general election cycle); and (c) creating a vague and overbroad expansion to the definition of "solicitation" that exposes volunteers to criminal liability for giving food, water, umbrellas, chairs, or other relief to voters waiting in line to vote. *NAACP* Plaintiffs also contend that the Challenged Provisions were not and are not supported by any legitimate, much less compelling, state interest. Accordingly, *NAACP* Plaintiffs contend that each of the Challenged Provisions is unconstitutional and unlawful.

---

by-mail ballots. The Court dismissed that claim on standing grounds. *Fla. State Conference of NAACP v. Lee*, 2021 WL 4818913, *11 (N.D. Fla. Oct. 21, 2021). Accordingly, the Volunteer Assistance Ban is not an issue for trial, although plaintiffs maintain their appellate rights as to that claim.

*NAACP* Plaintiffs also specifically contend that the evidentiary record demonstrates that the law was passed with discriminatory intent; that the State's purported justifications are pretextual; that the Challenged Provisions do not meaningfully address, and would not prevent election fraud, or any other concern or problem; and that Defendant Lee and the sponsors of SB 90 attempted to rationalize the new discriminatory voting restrictions by asserting vague, unfounded concerns about "election integrity" without factual foundation or any demonstrable nexus to the Challenged Provisions.

*NAACP* Plaintiffs seek declaratory, injunctive, and other available relief. In addition to this summary, the nature and bases of NAACP Plaintiffs' claims and requests for relief are detailed in *NAACP* Plaintiffs' First Amended Complaint (ECF No. 45 in Case No. 4:21-cv-187) ("Operative *NAACP* Complaint").

Pursuant to the Court's directive, *NAACP* ECF Nos. 327 at 10, 328 at 38, *NAACP* Plaintiffs set forth below a list of the claims at issue and identify whether *NAACP* Plaintiffs are proceeding with an as-applied challenge, facial challenge, or both as to each claim:

| Claim | Facial/As-applied | Claim for Relief (*NAACP* First Am. Compl., ECF No. 45) |
|---|---|---|
| Intentional Discrimination | Both | Count VI (14th Amdt.), Count VII (15th Amdt.), Count VIII (VRA section 2) |
| VRA, Section 2 (discriminatory results) | Both | Count I |
| VRA, Section 208 (preemption) | Both | Count IX |
| First and Fourteenth Amendments - *Anderson-Burdick* (undue burden on the right to vote) | Both | Count II |
| First Amendment - Free Speech/Free Expression | As-applied (*See* NAACP ECF No. 327 at 8; No. 328 at 27-28) | Count IV |
| First Amendment - Vagueness | Both | Count V |
| First Amendment - Overbreadth | Both | Count V |
| Title II of the ADA (failure to provide reasonable accommodations) | Both | Count III |

3.    *Florida Rising* **Plaintiffs' Brief General Statement of Case**

SB 90 places severe restrictions on Floridians' right to vote.  *Florida Rising*

Plaintiffs are organizations that advocate for voting rights and promote voter

participation, particularly for historically disadvantaged groups, including voters of

color and voters with disabilities.

Plaintiffs challenge five particularly restrictive provisions of SB 90, which

overhauled Florida's electoral administration system (together, the "Challenged

Provisions"):

- **<u>Registration Disclaimer Provision</u>** (SB 90 Section 7, Fla. Stat. § 97.0575(3)(a)): Requires third party voter registration organizations ("3PVROs") to recite a misleading government-mandated "warning" that will discourage eligible voters from registering to vote with these organizations.

- **<u>Registration Delivery Provision</u>** (SB 90 Section 7, Fla. Stat. § 97.0575(3)(a)(1-3)): Imposes significant fines on third-party voter registration organizations that fail to deliver voter registration applications to the Supervisor where the voter resides within 14 days of completion of the application, a measure that will have a chilling effect on organized voter registration efforts and will reduce opportunities for voters of color to register to vote.

- **<u>VBM Request Identification</u>** (SB 90 Section 24, Fla. Stat. § 101.62(1)(b)): This provision requires a voter applying for a VBM ballot to provide a driver's license, ID card, or social security card identifying numbers that match the number in the Florida Voter Registration System, which will reduce the availability and use of mail ballots at precisely the time other elements of SB 90 are creating obstacles to in-person voting.

- **<u>Drop Box Provisions</u>** (SB 90 Section 28, Fla. Stat. §101.69): This provision severely curtails the locations, availability, and operating days and hours of drop boxes for receipt of VBM ballots established by the Supervisors' offices.

- **<u>Solicitation Definition</u>** (SB 90 Section 29, Fla. Stat. § 102.031(4)(a)-(b)): This provision prohibits "any activity with the intent or effect of influencing a voter" within 150 feet of a polling location, potentially exposing volunteers to criminal liability for providing assistance to voters waiting on line to vote, including providing language assistance or giving food, water, shelter or "any item" to voters.

*Florida Rising* Plaintiffs assert that these provisions violate the First, Fourteenth and Fifteenth Amendment of the Constitution, and Sections 2 and 208 of the VRA, impose unnecessary hurdles to the voting process, are discriminatory, and will disproportionally affect Black and Latino voters. Specifically, the burdens imposed

by the Challenged Provisions outweigh the State's purported justifications for them, and the evidentiary record demonstrates that the law was passed with discriminatory intent. The Challenged Provisions are both unconstitutional and unlawful and cannot be permitted to stand.

In addition to this summary, the nature and bases of their claims are detailed in Florida Rising Plaintiffs' Corrected First Amended Complaint (ECF No. 59 in Case No. 4:21-cv-201) ("Operative *Florida Rising* Complaint").

Pursuant to the Court's directive, *FRT* ECF No. 294 at 39, *FRT* Plaintiffs set forth below a list of the claims at issue and identify whether *FRT* Plaintiffs are proceeding with an as-applied challenge, a facial challenge, or both as to each claim:

| Claim for Relief (FRT Amended Complaint ECF 59) | Claim | Facial or As-applied |
|---|---|---|
| Claim 1 | VRA Section 2 (intentional racial discrimination and discriminatory results) | Both |
| Claim 2 | 14th Amendment (intentional racial discrimination) | Both |
| Claim 3 | 15th Amendment (intentional racial discrimination in voting) | Both |
| Claim 4 | 1st and 14th Amendment (undue burden on right to vote/Anderson-Burdick) | Both |
| Claim 5 | 1st Amendment (freedom of speech and expression) | As-applied |
| Claim 5 | 1st Amendment (overbreadth) | Both |

| Claim 5 | 1st Amendment (vagueness) | Both |
|---------|---------------------------|------|
| Claim 6 | VRA Section 208 (pre-emption) | Both |
| Claim 7 | 1st Amendment (freedom of speech and association & viewpoint /speaker discrimination) | Both |

### 4.    Plaintiff *HTFF's* Brief General Statement of Case

HTFF alleges that the Registration Disclaimer Provision violates its First Amendment rights because it compels it to deliver a message with specific content on the state's behalf which it does not wish to convey and which undermines and dilutes its own political speech.[7] HTFF also challenges the law because it violates its freedom of association.  HTFF's voter registration activities are inextricably intertwined with its community outreach activities in which it engages with community members to educate and encourage them to become involved in the electoral process and facilitate that involvement through voter registration and get-out-the-vote activities.  By forcing HTFF to deliver a government message it does not wish to convey and would not otherwise convey, the law interferes with HTFF's freedom of association, erodes the trust HTFF tries to build within the communities it serves, and imperils its other civic engagement activities. HTFF's position is that

---

[7] ECF 212-1, HTFF Dep. 84:3–17.

there is no compelling government interest for the Requirement and, even if such interest existed, the Requirement is not narrowly tailored to advance any such interest.

HTFF also argues that the Registration Disclaimer Provision violates the Due Process Clause of the Fourteenth Amendment because it is void for vagueness. Specifically, HTFF contends that paragraphs (3)(a) and (4) of Section 97.0575 are unconstitutionally vague for two primary reasons: (1) they fail to inform HTFF of the potential penalties that accompany noncompliance; and (2) fail to provide explicit standards for determining compliance with the law. Consequently, SB 90 does not put HTFF on adequate notice as to what is required of it, and invites arbitrary and discriminatory enforcement.

In addition to this summary, the nature and bases of HTFF's claims are detailed in its Amended Complaint (ECF No. 44 in Case No. 4:21-cv-242) ("Operative *HTFF* Complaint").[8]

Pursuant to the Court's directive, *HTFF*, No. 21-cv-242, ECF No. 245 at 16, Plaintiff HTFF sets forth below a list of the claims at issue identifying whether HTFF is proceeding with an as-applied challenge, facial challenge, or both as to each claim. As noted above, all claims pertain to the Registration Disclaimer.

---

[8] Counts I-III remain pending.

| Claim | Facial/As-applied |
|---|---|
| Fourteenth Amendment/Due Process – Vagueness (Count I) | Both |
| First Amendment – Compelled Speech (Count II) | Both |
| First Amendment – Free Speech and Association (Count III) | Both |

5.  **State-level Defendants and Defendant Intervenors' Brief General Statement of Case**

At issue is the facial constitutionality of four statues: (1) section 97.0575(3)(a), Florida Statutes (the Registration Disclaimer Provision); (2) section 101.62(1)(a), Florida Statutes (the VBM Request Provision); (3) section 101.69(2)-(3), Florida Statutes (the Drop Box Provisions); and (4) section 102.031(4)(a)-(b), Florida Statutes (the Solicitation Definition)).  Plaintiffs in all four cases have prosecuted their cases as facial challenges since filing their complaints.

The evidence will show that one or more Plaintiffs lack standing to challenge the provisions at issue.

The evidence will further show that the provisions at issue either do not burden the right to vote or impose only a minimal burden on the right to vote, especially when considered in light of the entirety of the Florida Election Code; the Florida Legislature did not enact the provisions with discriminatory intent; the

provisions do not impede racial minorities from casting a vote; and the provisions comply with the Americans with Disabilities Act and Section 208 of the Voting Rights Act.

Finally, the evidence will show that the provisions at issue further important state interests.

### 6.   Supervisors' Brief General Statement of Case

The Supervisors are named as defendants to assure the efficacy of any relief the Court might grant with respect to sections 101.62, 101.69, and 102.031 of the Florida Statutes.[9] The Secretary is actively defending the validity of each of those provisions, either as a defendant or as an intervenor. In light of the Secretary's active defense of all three provisions, the Supervisors (other than Supervisors White, Hays Doyle, and Latimer, each of whom has either filed a Motion for Summary Judgment or has affirmatively opposed Plaintiffs' Motions for Summary Judgment) did not contribute to the Concise Statement of Issues of Fact Remaining to Be Litigated (Part H below) nor the Concise Statement of Issues of Law Remaining for Determination (Part I below), do not take a position on the issues in those sections of the Joint Pretrial Stipulation, and do not intend to present a defense on the merits of Plaintiffs'

---

[9] Supervisor Latimer does not concede the standing arguments he has made in this litigation. *See* ECF No. 315 in Case No. 4:21-cv-186.

claims. The Supervisors will, of course, comply with all court orders and judgments applicable to them and reserve the right to present facts and argument regarding the timing and feasibility of specific remedies the Court might order, and the impact of those remedies on the administration of elections.

### 7.   **Supervisors Hays and Doyle's Brief Statement of the Case**

The evidence will show that the Solicitation Definition and VBM Request Provision do not burden the right to vote or impose only a minimal burden on the right to vote, especially when considered in light of the entirety of the Florida Election Code; the Florida Legislature did not enact the provisions with discriminatory intent; the provisions do not impede racial minorities from casting a vote; and the provisions comply with the Americans with Disabilities Act and Section 208 of the Voting Rights Act.

### 8.   **Supervisor White's Brief General Statement of Case**

Supervisor White, an appointed Supervisor of Elections who serves at the discretion and under the supervision of the Mayor of Miami-Dade County and under the policy directives of the Miami-Dade County Board of County Commissioners, has been delegated the powers and functions of the constitutional office of the Supervisor of Elections for Miami-Dade County.  Supervisor White is among the government officials responsible for elections administration in Miami-Dade County.

17

Supervisor White and the Florida Supervisors of Elections are named as defendants to assure the efficacy of any relief the Court might grant with respect to recent amendments to sections 101.62, 101.69, and 102.031 of the Florida Statutes. Although Plaintiffs have named Supervisor White as a defendant in this matter, Plaintiffs lack the requisite standing to raise their claims against Supervisor White based on the manner in which elections are administered in Miami-Dade County. Additionally, the Secretary of State is actively defending the validity of each of those provisions, either as a defendant or as an intervenor. As the Secretary of State is the chief election officer of the state under Fla. Stat. § 97.012, Supervisor White defers to the State of Florida, through the Secretary of State, to defend the constitutionality of its law against any facial challenge.  To the extent the Court finds against the Secretary of State, Supervisor White will comply with any decision rendered by the Court in this matter.

**D.    EXHIBIT LIST**[10]

---

[10] The Parties agree and expect that available witnesses will present live testimony during trial, not through deposition transcripts, except for witnesses Janet Modrow and Margaret Swain or others that the Parties agree will appear only through deposition transcripts.  Accordingly, the Parties agree that deposition transcripts are listed as exhibits for unavailable witnesses, for admissions of party opponents consistent with Federal Rule of Civil Procedure 32, and for impeachment purposes. Some Parties may seek leave of the Court to allow witnesses to testify remotely at the trial.  If a witness on the proffering party's exhibit list becomes unavailable

A copy of the Parties' Consolidated Exhibit List with objections thereto is attached as Exhibit 1.[11] The Supervisors (other than Supervisor White, whose position is reflected in the Parties' Consolidated Exhibit List) do not intend to offer exhibits at trial and have not included exhibits on the Parties' Consolidated Exhibit List. Within Exhibit 1, each Plaintiff group has set forth documents that it has identified, broken out by section.[12] Each set of Plaintiffs may use any of the exhibits in any of the other Plaintiffs' sections and have endeavored to avoid overlap with documents identified by other Plaintiff groups.  All Plaintiffs reserve their rights to introduce and/or use for any purpose consistent with the Federal Rules of Civil Procedure and the Federal Rules of Evidence any Exhibit listed by any party in this stipulation.

_____

within the meaning of Federal Rule of Evidence 804(a), the Parties agree that the proffering party may provide deposition designations within two days after the date of actual notice of such unavailability, and the opposing Party or Parties may provide counter designations within two days for use of the witness' deposition transcript at trial.

[11] The Parties agree to admissibility of the disclosed expert reports (and figures and tables therein) of expert witnesses who appear to testify at trial.  The Parties do not agree to the admission of attachments in or references cited in the expert reports.

[12] The Secretary disclosed a summary exhibit and is in the process of preparing an itemized list of the underlying materials in order for Plaintiffs to clearly identify and note individualized objections.  The Parties anticipate that this process will be completed within a week after today, and agree that Plaintiffs have not waived and may supplement their objections on the Secretary's forthcoming itemized list of materials underlying the Secretary's summary exhibit.

E.   **WITNESS LISTS**

A copy of the Parties' Consolidated Witness List with objections thereto is attached as Exhibit 2.  The Supervisors (other than Supervisor White, whose position is reflected in the Parties' Consolidated Witness List) do not intend to offer witnesses at trial and have not included witnesses on the Parties' Consolidated Witness List.[13]

F.   **CONCISE STATEMENTS OF ADMITTED FACTS**

Facts Not Disputed by Any of the Parties
and Accepted as Established in This Litigation[14]

1.   On May 6, 2021, Governor DeSantis signed SB 90 into law.

2.   SB 90 went into effect immediately upon signing on May 6, 2021.  Ch. 2021-11 § 33, Laws of Fla.

3.   Prior to May 6, 2021, Section 101.69(2), Florida Statutes (2020), said the following with respect to drop boxes:

> (2) The supervisor shall allow an elector who has received a vote-by-mail ballot to physically return a voted vote-by-mail ballot to the supervisor by placing the envelope containing his or her marked ballot in a secure drop box. Secure drop boxes shall be placed at the main office of the supervisor, at each branch office of the supervisor, and at each early voting site. Secure drop boxes may also be placed at any other site that would otherwise qualify as an

---

[13] Supervisor Latimer intends to designate his deposition (ECF No. 314-1 in Case No. 4:21-cv-186) in lieu of live testimony at trial.

[14] The Supervisors do not have personal knowledge of all of the facts set forth in paragraphs 1 through 67 of this section, but do not dispute them for purposes of this litigation.

early voting site under s. 101.657(1); provided, however, that any such site must be staffed during the county's early voting hours of operation by an employee of the supervisor's office or a sworn law enforcement officer.

4.     Effective May 6, 2021, Section 28 of SB 90 amended the above-quoted paragraph of Section 101.69(2), as follows (showing additions in underlined text and deletions in strikeout text only for identification):

(2)(a) The supervisor shall allow an elector who has received a vote-by-mail ballot to physically return a voted vote-by-mail ballot to the supervisor by placing the return mail envelope containing his or her marked ballot in a secure drop box. Secure drop boxes shall be placed at the main office of the supervisor, at each permanent branch office of the supervisor, and at each early voting site. Secure drop boxes may also be placed at any other site that would otherwise qualify as an early voting site under s. 101.657(1). Drop boxes must be geographically located so as to provide all voters in the county with an equal opportunity to cast a ballot, insofar as is practicable. Except for secure drop boxes at an office of the supervisor, a secure drop box may only be used; provided, however, that any such site must be staffed during the county's early voting hours of operation and must be monitored in person by an employee of the supervisor's office. A secure drop box at an office of the supervisor must be continuously monitored in person by an employee of the supervisor's office when the drop box is accessible for deposit of ballots or a sworn law enforcement officer.

5.     In addition, Section 28 of SB 90 amended Section 101.69.  As enacted Section 101.69(2)(a) and (3) provide:

(2)(a) The supervisor shall allow an elector who has received a vote-by-mail ballot to physically return a voted

vote-by-mail ballot to the supervisor by placing the return mail envelope containing his or her marked ballot in a secure drop box. Secure drop boxes shall be placed at the main office of the supervisor, at each permanent branch office of the supervisor, and at each early voting site. Secure drop boxes may also be placed at any other site that would otherwise qualify as an early voting site under s. 101.657(1). Drop boxes must be geographically located so as to provide all voters in the county with an equal opportunity to cast a ballot, insofar as is practicable. Except for secure drop boxes at an office of the supervisor, a secure drop box may only be used during the county's early voting hours of operation and must be monitored in person by an employee of the supervisor's office. A secure drop box at an office of the supervisor must be continuously monitored in person by an employee of the supervisor's office when the drop box is accessible for deposit of ballots.

…

(3) If any drop box is left accessible for ballot receipt other than as authorized by this section, the supervisor is subject to a civil penalty of $25,000. The division is authorized to enforce this provision.

6.      Prior to passage of SB 90, Section 101.62(1)(a)-(b), Florida Statutes

(2020) said:

(1)(a) The supervisor shall accept a request for a vote-by-mail ballot from an elector in person or in writing. One request shall be deemed sufficient to receive a vote-by-mail ballot for all elections through the end of the calendar year of the second ensuing regularly scheduled general election, unless the elector or the elector's designee indicates at the time the request is made the elections for which the elector desires to receive a vote-by-mail ballot. Such request may be considered canceled when any first-

class mail sent by the supervisor to the elector is returned as undeliverable.

(b) The supervisor may accept a written or telephonic request for a vote-by-mail ballot to be mailed to an elector's address on file in the Florida Voter Registration System from the elector, or, if directly instructed by the elector, a member of the elector's immediate family, or the elector's legal guardian. If the ballot is requested to be mailed to an address other than the elector's address on file in the Florida Voter Registration System, the request must be made in writing and signed by the elector ….

7.     Section 24 of SB 90 amended Section 101.62(1)(a)-(b), as follows (showing additions in underlined text and deletions in strikeout text only for identification):

(1)(a) The supervisor shall accept a request for a vote-by-mail ballot from an elector in person or in writing. One request is shall be deemed sufficient to receive a vote-by-mail ballot for all elections through the end of the calendar year of the next second ensuing regularly scheduled general election, unless the elector or the elector's designee indicates at the time the request is made the elections within such period for which the elector desires to receive a vote-by-mail ballot. Such request may be considered canceled when any first-class mail sent by the supervisor to the elector is returned as undeliverable.

(b) The supervisor may accept a written, an in-person, or a telephonic request for a vote-by-mail ballot to be mailed to an elector's address on file in the Florida Voter Registration System from the elector, or, if directly instructed by the elector, a member of the elector's immediate family, or the elector's legal guardian. If an in-person or a telephonic request is made, the elector must provide the elector's Florida driver license number, the elector's Florida identification card number, or the last

four digits of the elector's social security number, whichever may be verified in the supervisor's records.  If the ballot is requested to be mailed to an address other than the elector's address on file in the Florida Voter Registration System, the request must be made in writing. A written request must be ~~and~~ signed by the elector and include the elector's Florida driver license number, the elector's Florida identification card number, or the last four digits of the elector's social security number. ….

8.     As amended by SB 90, Section 101.62(1)(a) now provides:

(1)(a) The supervisor shall accept a request for a vote-by-mail ballot from an elector in person or in writing. One request is deemed sufficient to receive a vote-by-mail ballot for all elections through the end of the calendar year of the next regularly scheduled general election, unless the elector or the elector's designee indicates at the time the request is made the elections within such period for which the elector desires to receive a vote-by-mail ballot. Such request may be considered canceled when any first-class mail sent by the supervisor to the elector is returned as undeliverable.

(b) The supervisor may accept a written, an in-person, or a telephonic request for a vote-by-mail ballot to be mailed to an elector's address on file in the Florida Voter Registration System from the elector, or, if directly instructed by the elector, a member of the elector's immediate family, or the elector's legal guardian. If an in-person or a telephonic request is made, the elector must provide the elector's Florida driver license number, the elector's Florida identification card number, or the last four digits of the elector's social security number, whichever may be verified in the supervisor's records.  If the ballot is requested to be mailed to an address other than the elector's address on file in the Florida Voter Registration System, the request must be made in writing. A written request must be signed by the elector and include the elector's Florida driver license number, the

elector's Florida identification card number, or the last four digits of the elector's social security number. ….

9.  Prior to SB 90, Section 102.031(4)(a), Florida Statutes (2020), prohibited "solicitation" within 150 feet of an entrance to a polling place, and defined "solicit" or "solicitation" to:

> include, but not be limited to, seeking or attempting to seek any vote, fact, opinion, or contribution; distributing or attempting to distribute any political or campaign material, leaflet, or handout; conducting a poll except as specified in this paragraph; seeking or attempting to seek a signature on any petition; and selling or attempting to sell any item. The terms 'solicit' or 'solicitation' may not be construed to prohibit exit polling.

10. Section 29 of SB 90 amended the above definition of "solicit" or "solicitation" under Section 102.031(4)(b), for purposes of the prohibition under Section 102.031(4)(a), as follows (showing additions in underlined text and deletions in strikeout text only for identification):

> include, but not be limited to, seeking or attempting to seek any vote, fact, opinion, or contribution; distributing or attempting to distribute any political or campaign material, leaflet, or handout; conducting a poll except as specified in this paragraph; seeking or attempting to seek a signature on any petition; ~~and~~ selling or attempting to sell any item; and engaging in any activity with the intent to influence or effect of influencing a voter. The terms "solicit" or "solicitation" may not be construed to prohibit an employee of, or a volunteer with, the supervisor from providing nonpartisan assistance to voters within the no-solicitation zone such as, but not limited to, giving items to voters, or to prohibit exit polling.

25

11.     As amended by Section 29 of SB 90, Section 102.031(4)(b) now

provides:

> For the purpose of this subsection, the terms "solicit" or
> "solicitation" shall include, but not be limited to, seeking
> or attempting to seek any vote, fact, opinion, or
> contribution; distributing or attempting to distribute any
> political or campaign material, leaflet, or handout;
> conducting a poll except as specified in this paragraph;
> seeking or attempting to seek a signature on any petition;
> and selling or attempting to sell any item; and engaging in
> any activity with the intent to influence or effect of
> influencing a voter. The terms "solicit" or "solicitation"
> may not be construed to prohibit an employee of, or a
> volunteer with, the supervisor from providing nonpartisan
> assistance to voters within the no-solicitation zone such as,
> but not limited to, giving items to voters, or to prohibit exit
> polling.

12.     Before SB 90, Section 97.0575 (3)(a), Florida Statutes (2020), provided

that:

> (3)(a) A third-party voter registration organization that
> collects voter registration applications serves as a
> fiduciary to the applicant, ensuring that any voter
> registration application entrusted to the organization,
> irrespective of party affiliation, race, ethnicity, or gender,
> shall be promptly delivered to the division or the
> supervisor of elections within 48 hours after the applicant
> completes it or the next business day if the appropriate
> office is closed for that 48-hour period. ....[15]

---

[15] This Court previously enjoined enforcement of a deadline of fewer than 10 days
for 3PVROs to turn in voter registration forms. *League of Women Voters of Fla. v.
Detzner*, No. 4:11cv628-RH/WCS, 2012 WL 12810507, at *1 (N.D. Fla. Aug. 30,
2012).

13.    Section 7 of SB 90 amended Section 97.0575 (3)(a), Florida Statutes

(2021), as follows (showing additions in underlined text and deletions

in strikeout text only for identification):

(3)(a) A third-party voter registration organization that collects voter registration applications serves as a fiduciary to the applicant, ensuring that any voter registration application entrusted to the organization, irrespective of party affiliation, race, ethnicity, or gender, must ~~shall~~ be promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 14 days after completed by the applicant, but not after registration closes for the next ensuing election. A third-party voter registration organization must notify the applicant at the time the application is collected that the organization might not deliver the application to the division or the supervisor of elections in the county in which the applicant resides in less than 14 days or before registration closes for the next ensuing election and must advise the applicant that he or she may deliver the application in person or by mail. The third-party voter registration organization must also inform the applicant how to register online with the division and how to determine whether the application has been delivered ~~48 hours after the applicant completes it or the next business day if the appropriate office is closed for that 48 hour period~~. If a voter registration application collected by any third-party cover registration organization is not promptly delivered to the division or supervisor of elections in the county in which the applicant resides, the third-party registration organization is liable for the following fines:

1. A fine in the amount of $50 for each application received by the division or the supervisor of elections in the county in which the applicant resides more than 14 days ~~48 hours~~ after the applicant delivered the completed

27

voter registration application to the third-party voter registration organization or any person, entity, or agent acting on its behalf ~~or the next business day, if the office is closed~~. A fine in the amount of $250 for each application received if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

2. A fine in the amount of $100 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, before book closing for any given election for federal or state office and received by the division or the supervisor of elections <u>in the county in which the applicant resides</u> after the book-closing deadline for such election. A fine in the amount of $500 for each application received if the third-party registration organization or person, entity, or agency acting on its behalf acted willfully.

3. A fine in the amount of $500 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, which is not submitted to the division or supervisor of elections <u>in the county in which the applicant resides</u>. A fine in the amount of $1,000 for any application not submitted if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

The aggregate fine pursuant to this paragraph which may be assessed against a third-party voter registration organization, including affiliate organizations, for violations committed in a calendar year is $1,000.

14.   As amended by Section 7 of SB 90, Section 97.0575 (3)(a) now

provides:

(3)(a)   A third-party voter registration organization that collects voter registration applications serves as a

28

fiduciary to the applicant, ensuring that any voter registration application entrusted to the organization, irrespective of party affiliation, race, ethnicity, or gender, must be promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 14 days after the application was completed by the applicant, but not after registration closes for the next ensuing election. A third-party voter registration organization must notify the applicant at the time the application is collected that the organization might not deliver the application to the division or the supervisor of elections in the county in which the applicant resides in less than 14 days or before registration closes for the next ensuing election and must advise the applicant that he or she may deliver the application in person or by mail. The third-party voter registration organization must also inform the applicant how to register online with the division and how to determine whether the application has been delivered. If a voter registration application collected by any third-party cover registration organization is not promptly delivered to the division or supervisor of elections in the county in which the applicant resides, the third-party registration organization is liable for the following fines:

1. A fine in the amount of $50 for each application received by the division or the supervisor of elections in the county in which the applicant resides more than 14 days after the applicant delivered the completed voter registration application to the third-party voter registration organization or any person, entity, or agent acting on its behalf. A fine in the amount of $250 for each application received if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

2. A fine in the amount of $100 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, before

book closing for any given election for federal or state office and received by the division or the supervisor of elections in the county in which the applicant resides after the book-closing deadline for such election. A fine in the amount of $500 for each application received if the third-party registration organization or person, entity, or agency acting on its behalf acted willfully.

3. A fine in the amount of $500 for each application collected by a third-party voter registration organization or any person, entity, or agent acting on its behalf, which is not submitted to the division or supervisor of elections in the county in which the applicant resides. A fine in the amount of $1,000 for any application not submitted if the third-party voter registration organization or person, entity, or agency acting on its behalf acted willfully.

The aggregate fine pursuant to this paragraph which may be assessed against a third-party voter registration organization, including affiliate organizations, for violations committed in a calendar year is $1,000.

15.   The fines set out under Section 97.0575(3)(a) are, on their face, only applicable to untimely submittal, not to the Registration Disclaimer Provision.

16.   Section 97.0575(4) provides:

If the Secretary of State reasonably believes that a person has committed a violation of this section, the secretary may refer the matter to the Attorney General for enforcement. The Attorney General may institute a civil action for a violation of this section or to prevent a violation of this section. An action for relief may include a permanent or temporary injunction, a restraining order,

or any other appropriate order.[16]

17.   The Attorney General has pursued no enforcement actions against 3PVROs since 2012.[17]

18.   The Secretary stated that she intends to initiate rulemaking to promulgate regulations that might "address" the enforcement of the changes to 3PVRO rules in SB 90 but has not drafted any to date and has no requirement to do so.[18]

19.   Florida's voter registration form currently contains the following instruction:

> **Where to Register:** You can register to vote by completing this application and delivering it in person or by mail to any supervisor of elections' office, office that issues driver's licenses, or voter registration agency (public assistance office, center for independent living, office serving persons with disabilities, public library, or armed forces recruitment office) or the Division of Elections. Mailing addresses are on page 2 of this form.[19]

20.   Florida's voter registration form states, "the downloadable/printable

---

[16] ECF 158 at 2.

[17] *See* ECF 212-7, Dep. of Elizabeth Guzzo, 68:7-71:3 (Oct. 22, 2021).

[18] Fla. Stat. § 97.0575(4); ECF 212-3, Matthews Dep., 165:6-167:19; ECF 212-4, at 6, SoS Resp. to Pl. HTFF's 1st Set of Interrogs., No. 5.

[19] ECF 212-22, at 2, Form DS-DE 39, *Florida Voter Registration Application*, FLA. DEP'T OF STATE (Oct. 2013) ("Fla. Voter Reg. Form") (Produced as HTFF00440-41), *available* at. https://files.floridados.gov/media/704795/dsde39-english-pre-7066-20200914.pdf.

online form is available at registertovoteflorida.gov".[20]

21.   Florida's paper/downloadable(.pdf) version of the voter registration form, DS-DE 139, does not reference online voter registration or 3PVROs.

22.   If a voter's registration application is rejected, the statewide online voter lookup does not contain information regarding whether that application has been delivered.

23.   The statewide online voter lookup does not contain any information regarding whether the application has been delivered unless the application has been processed.

24.   If a voter's registration application is processed but denied, the statewide online voter lookup does not contain information regarding whether that application has been delivered.

25.   On the final day of voter registration for the 2020 General Election, Florida's online voter registration system malfunctioned.

26.   In Florida, before engaging in voter registration activities, 3PVROs must register directly with the Division of Elections and provide specific information about their operations, officers, employees, and

---

[20] *Id.*

agents.[21] Fla. Stat. § 97.0575(1); Fla. Admin. Code r. 1S-2.042.

27.   3PVROs are assigned an organization ID, which they must place along with the date the application is collected from the applicant "in a conspicuous space on the bottom portion of the reverse side of the voter registration application in a manner that does not obscure any other entry." Fla. Admin Code r. 1S-2.042(4)(b).

28.   Each county supervisor of elections must provide to the Division of Elections information on voter registration forms assigned to and received from 3PVROs. Fla. Stat. § 97.0575(2).

29.   Florida law provides that:

> A third-party voter registration organization that collects voter registration applications serves as a fiduciary to the applicant, ensuring that any voter registration application entrusted to the organization, irrespective of party affiliation, race, ethnicity, or gender, must be promptly delivered to the division or the supervisor of elections in the county in which the applicant resides within 14 days after the application was completed by the applicant, but not after registration closes for the next ensuing election.[22]

---

[21] Fla. Admin. Code r. 1S-2.042 (Form DS-DE119), *Florida Third-party Voter Registration Organization ("3PVRO") Registration Form*, FLA. DEP'T OF STATE (Sep. 2012), *available at* https://files.floridados.gov/media/693298/dsde119.pdf.

[22] *Id*. § 97.0575(3)(a). Prior to SB 90, this Court ruled that the prior version of Fla. Stat. § 97.0575 required 3PVROs to submit applications within 10 days of receipt

30.     Between 2009 and November 5, 2021, 2,149,709 voter registration applications were received by Florida's Supervisors of Elections from 3PVROs.[23]

31.     Applications received from 3PVROs between 2009 and November 5, 2021 represent at least 763,240 currently-registered individual voters whose latest registration contact with the state (new application or most recent registration update) involved assistance from a 3PVRO.[24]

32.     This current number excludes voters who originally registered through a 3PVRO and then later updated their registration through another method, e.g., a voter registration agency or driver license office.

33.     Specific fines may be assessed against a 3PVRO for failing to timely return a completed voter registration form, culminating in a $1,000 aggregate fine "for violations committed in a calendar year[.]" Fla. Stat.

---

from the applicant. Judgment, *League of Women Voters of Fla.*, No. 4:11-cv-00628-RH-CAS at *1 (N.D. Fla. Aug. 31, 2012), ECF 84 (enjoining Fla. Stat. § 97.0575(3)(a)(2) to the extent it requires delivery of an application within 48 hours or any period less than 10 days).

[23] ECF 212-29 at 200, "Voter Registration Applications Received and/or Provided," *Third Party Voter Registration Organizations*, Fla. Dep't of State, https://tpvr.elections.myflorida.com/Applications.aspx ("3PVRO Applications Database") (lasted visited Nov. 5, 2021) (referenced in ECF 212-4 at 4, Sec'y of State ("SoS") Resp. to Pl.'s 1st Set of Interrogs. No. 3).

[24] ECF 212-3, Dep. of Maria Matthews, 204:3-24 (Oct. 20, 2021).

§ 97.0575(3)(a).

## **2020 Election**

34.   During the 2020 general election, over 11.1 million ballots were cast in Florida.

https://results.elections.myflorida.com/Index.asp?ElectionDate=11/3/2020&DATAMODE=

35.   Over 1.3 million Black voters cast ballots in the 2020 general election in Florida.

36.   Over 1.8 million Latino voters cast ballots in the 2020 general election in Florida.

37.   Of the more than 11.1 million ballots cast in the 2020 Florida general election, over 4.8 million were vote-by-mail ballots.

38.   More voters cast vote-by-mail ballots in the 2020 Florida general election than in any prior Florida election.

39.   Black voters cast over 500,000 vote-by-mail ballots in the 2020 general election.

40.   More Black voters voted in the 2020 general election in Florida by casting vote-by-mail ballots than in any prior Florida election.

41.   Latino voters cast over 700,000 vote-by-mail ballots in the 2020 general election.

42.  More Latino voters voted in the 2020 general election in Florida by casting vote-by-mail ballots than in any prior Florida election.

43.  Of the 4.8 million vote-by-mail ballots cast in the 2020 Florida general election, over 1.5 million were returned to a drop box.

44.  The 2020 general election in Florida was praised as safe and secure by federal, state, and local officials.

45.  With respect to the 2020 general election, Defendant Secretary stated: "[A]ll Florida voters, no matter how they chose to cast a ballot, or who they voted for, could be confident in the integrity of Florida's elections system and security of their vote."[25]

**Florida Voters**

46.  Florida's current voter registration statistics, as of October 31, 2021, are available at the following web address, and the Court may take judicial notice of the information reported therein:

https://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-registration-reports/voter-registration-by-county-and-party/

47.  According to the August 2021 voter file, as of August 2021, there were

---

[25] ECF 211-19 at 12, SoS Resp. to LWVFL. Pls.' RFA, No. 25

over 15 million voters registered in Florida.

48.     According to the August 2021 voter file, as of August 2021, there were over 2 million Black registered voters in Florida.

49.     According to the August 2021 voter file, as of August 2021, there were over 2.65 million Latino registered voters in Florida.

50.     Statistics regarding the number of voter registration applications submitted since 2009 by each registered 3PVRO are located on the Secretary of State's website at the following web address, and the Court may take judicial notice of the information reported therein:

https://tpvr.elections.myflorida.com/Applications.aspx

**<u>The Secretary</u>**

51.     Defendant, Laurel M. Lee, is the Secretary of State of Florida and is named as a Defendant in her official capacity. She is Florida's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Florida as prescribed by section 97.012(1), Florida Statutes. The Secretary, personally and through the conduct of her employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

52.      The Secretary promulgates Florida's voter registration application pursuant to its regulatory authority. Fla. Admin. Code r. 1S-2.040.

37

**The Attorney General**

53.    With respect to enforcement of Section 97.0575(3)(a), the Attorney General does not have any written or unwritten procedures or protocols specifically addressing referrals from the Secretary pursuant to 97.0575(4).

**Supervisors**

54.    Each Supervisor, other than Supervisor White,[26] is a county-level constitutional officer responsible for the performance of certain functions outlined in the Florida Election Code. Art. VIII, § 1(d), Fla. Const. The Supervisors are the county-level officials responsible for the following functions at the county level: conducting elections for federal, state, and county offices; registering new voters; accepting and processing requests for vote-by-mail ballots; sending, receiving, and verifying signatures on vote-by-mail ballots; establishing polling places; and maintaining certain statistics on voting history and voter registration.

55.    Each Supervisor's jurisdiction is limited to the county that the

-----

[26] See "Supervisor White's Brief General Statement of Case," *supra*, for her position regarding her status and duties as Supervisor of Elections for Miami-Dade County.

Supervisor serves.

Facts Admitted by the Supervisor of Elections Defendants

56.     The Supervisors and Plaintiffs do not dispute that, compared with other Supervisors, each Supervisor has superior knowledge of and familiarity with the general conduct and administration of elections in the county that the Supervisor serves.

57.     Each Supervisor who served in 2020 oversaw the county-level administration of the 2020 presidential preference primary election,[27] primary election, and general election in the county that the Supervisor serves.[28]

58.     Each Supervisor is a member of the Florida Supervisor of Elections, Inc. ("FSE"), an association of Florida's Supervisors of Elections.

---

[27] An exception is Julie Marcus, Supervisor of Elections for Pinellas County, who took office on May 29, 2020, after the 2020 presidential preference primary.

[28] The following Supervisors did not take office until 2021: Karen Healy, Supervisor of Elections for Highlands County; Joe Scott, Supervisor of Elections for Broward County; and Tyler McNeill, Supervisor of Elections for Jefferson County; Chris Milton, Supervisor of Elections for Baker County; Tomi S. Brown, Supervisor of Elections for Columbia County; Carol A. Dunaway, Supervisor of Elections for Jackson County; Janet H. Adkins, Supervisor of Elections for Nassau County; Jennifer Kinsey, Supervisor of Elections for Suwannee County; Joe Morgan, Supervisor of Elections for Wakulla County; Melissa Arnold, Supervisor of Elections for Okeechobee County; and Amanda Seyfang, Supervisor of Elections for Bradford County.

59.    On April 23, 2021, the FSE gave the statement that the "[FSE] does not support SB90 or HB7041 in their current form, but continues to share information with the legislature"; and the FSE never took a position in favor of the Challenged Provisions.

60.    During any period in which voters are able to cast VBM ballots by drop box, elections staff in each county regularly collect VBM ballots from drop boxes for signature verification and processing.

61.    SB 90 did not change the signature verification process that applies to VBM ballots that voters place into drop boxes.

**G.    CONCISE STATEMENT OF AGREED ISSUES OF LAW**

General Agreed or Not Disputed Issues of Law[29]

1.    This action was brought under 42 U.S.C. §§ 1983 and 1988.

2.    Assuming the Plaintiffs have standing to proceed under Article III of the U.S. Constitution, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

3.    This Court has personal jurisdiction over the Secretary of State, who is

---

[29] The Supervisors do not dispute the statements in this section for purposes of this litigation.

sued in her official capacity only.

4.    This Court has personal jurisdiction over the Attorney General, who is sued in her official capacity only.

5.    This Court has personal jurisdiction over the Supervisor of Elections Defendants, who are sued in their official capacities only.

6.    Venue is proper in the Tallahassee Division of the U.S. District Court in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b).

7.    This Court has the authority to grant declaratory judgments and injunctive relief pursuant to pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

8.    The videos of Florida Legislature proceedings relating to SB 90, including committee and floor proceedings, submitted as exhibits in support of the *NAACP* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (ECF Nos. 306-4, 306-5, 306-6, 306-9, 306-10, 306-66) are complete and accurate reproductions of the hearings they record.[30]

---

[30] The Parties agree that, if a Party intends to display video of Florida Legislature proceedings at trial, the proffering party will provide the video excerpts to be offered at trial by Friday, January 14, 2022, and the opposing Party or Parties will have 7

9.  The transcripts of Florida Legislature proceedings relating to SB 90, including committee and floor proceedings, submitted as exhibits in support of the *Florida Rising* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (ECF Nos. 245-1 through 245-15) are complete and accurate transcriptions of the proceedings.

10. Defendant Laurel M. Lee is the Secretary of State of Florida. She is Florida's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Florida as prescribed by section 97.012(1), Florida Statutes. The Secretary, personally and through the conduct of her employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

11. Defendant Ashley Moody is the Attorney General of Florida. The Attorney General is the State of Florida's chief legal officer and is head of the Florida Department of Legal Affairs. The Attorney General's responsibilities include civil enforcement authority over Section

---

days to provide counter designated video excerpts to be offered in relation to the proffering Party's excerpts.  Such designations are limited to video clips, because Plaintiffs intend to rely on the entirety of the transcripts of Florida Legislature proceedings related to SB 90, as referenced in the following paragraph.

97.0575, Florida Statutes (2021), which contains the challenged 3PVRO requirements. The Attorney General, personally and through the conduct of her employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

12.   Each Supervisor is responsible in the county she or he serves for the county-level administration and implementation of certain election laws in Florida, including sections 101.69 (setting location limitations, operating-hours limitations, and monitoring requirements of drop boxes to return vote-by-mail ballots), 101.62 (limiting the validity of vote-by-mail requests to a single general election cycle), and 102.031 (limiting conduct with 150-foot zone surrounding each polling place).   Each Supervisor, personally or through the conduct of employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

13.   The *Arlington Heights* test applies to intentional-discrimination claims, namely Counts VI, VII, and VIII of the Operative *NAACP* Complaint and Count I of the Operative *Florida Rising* Complaint. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267-68 (1977).

14.   Plaintiffs' claims brought under Section 2 of the Voting Rights Act are

subject to the guideposts of *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021). Namely Counts I and VIII of the Operative *NAACP* Complaint and Count 1 of the Operative *Florida Rising* Complaint.

15.     The First Amendment to the United States Constitution, incorporated to the states through the Fourteenth Amendment, protects the rights of free speech and expression.

16.     Section 1 of the Fourteenth Amendment to the United States Constitution (the "Due Process Clause") provides, in relevant part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any States deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

17.     The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615 (1973)).

18.     Except with regard to votes cast by "overseas" voters, Florida law

establishes a VBM ballot receipt deadline of 7 P.M. on Election Day. Fla. Stat. § 101.6103 ("A ballot shall be counted only if: (a) It is returned in the return mailing envelope; (b) The elector's signature has been verified as provided in this subsection; and (c) It is received by the supervisor of elections not later than 7 p.m. on the day of the election.").

19.  The Fifteenth Amendment to the United States Constitution prohibits the denial or abridgement of the right to vote on account of race, color, or previous condition of servitude.  U.S. Const. amend. XV.

20.  Section 2 of the VRA of 1965, 52 U.S.C. § 10301(a), in relevant part, prohibits voting laws, policies, or practices that "result[] in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color."

21.  Section 208 of the VRA provides, in relevant part, that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

22.  The VRA defines "vote" to include "all action necessary to make a vote effective in any primary, special, or general election, including but not limited to, registration, listing pursuant to this chapter, or other action

required by law prerequisite to voting, casting a ballot, and having such ballot counted properly." 52 U.S.C. § 10310(c)(1).

23. Section 101.051(1) of the Florida Statutes provides that:

> Any elector applying to vote in any election who requires assistance to vote by reason of blindness, disability, or inability to read or write may request the assistance of two election officials or some other person of the elector's own choice, other than the elector's employer, an agent of the employer, or an officer or agent of his or her union, to assist the elector in casting his or her vote. Any such elector, before retiring to the voting booth, may have one of such persons read over to him or her, without suggestion or interference, the titles of the offices to be filled and the candidates therefor and the issues on the ballot. After the elector requests the aid of the two election officials or the person of the elector's choice, they shall retire to the voting booth for the purpose of casting the elector's vote according to the elector's choice.

This provision of Florida law is not being challenged here.

24. Section 101.051(2) of the Florida Statutes provides that:

> It is unlawful for any person to be in the voting booth with any elector except as provided in [section 101.051](1). A person at a polling place, a drop box location, or an early voting site, or within 150 feet of a drop box location or the entrance of a polling place or an early voting site, may not solicit an elector in an effort to provide assistance to vote pursuant to [section 101.051](1).

This provision of Florida law is not being challenged here.

<u>Issues of Law on Which the Supervisors Agree</u>

25. The Supervisors (other than Supervisors White and Latimer, whose

positions are reflected in the Parties' Consolidated Exhibit List) do not dispute the admissibility of any Parties' exhibits into evidence. Each Supervisor certifies the authenticity of the documents the Supervisor produced in this litigation.

**H.  CONCISE STATEMENT OF ISSUES OF FACT REMAINING TO BE LITIGATED[31]**

Burdens on Plaintiffs Voting Rights (*Anderson-Burdick*)

1.  Whether and to what degree the Drop Box Provisions (SB 90's amendment to Section 101.69(2)(a), (3)) burden the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

2.  Whether and to what degree the VBM Request Provision (SB 90's amendment to Section 101.62(1)(a)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

3.  Whether and to what degree the VBM Request Identification (SB 90's amendment to Section 101.62(1)(b)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

_____

[31] The Parties reserve the positions in their respective summary judgment filings that various material facts are undisputed.

4.     Whether and to what degree the Solicitation Definition (SB 90's amendment to Section 102.031(4)(a), (b)) burdens the constitutional right to vote and rights in connection with the right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

5.     Whether and to what degree the Registration Disclaimer Provision (SB 90's amendment to Section 97.0575(3)(a)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

6.     Whether and to what degree the Registration Delivery Provision (SB 90's amendment to Section 97.0575(3)(a)(1-3)) burdens the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

7.     Whether and to what degree the Challenged Provisions together cumulatively burden the constitutional right to vote of Florida voters or particular relevant subgroups of voters identified by Plaintiffs.

State's Alleged Interests (*Anderson-Burdick*)

8.     Whether the state has any legitimate interest in enacting and enforcing the Drop Box Provisions (SB 90's amendment to Section 101.69(2)(a), (3)), and (if so) the strength of that interest.

9.     Whether the state has any legitimate interest in enacting and enforcing

the VBM Request Provision (SB 90's amendment to Section 101.62(1)(a)), and (if so) the strength of that interest.

10.   Whether the state has any legitimate interest in enacting and enforcing the VBM Request Identification (SB 90's amendment to Section 101.62(1)(b)); and (if so) the strength of that interest.

11.   Whether the state has any legitimate interest in enacting and enforcing the Solicitation Definition (SB 90's amendment to Section 102.031(4)(a), (b)), and (if so) the strength of that interest.

12.   In regard to the *Anderson-Burdick* analysis, whether the state has any legitimate interest in enacting and enforcing the Registration Disclaimer Provision (SB 90's amendment to Section 97.0575(3)(a)); and (if so) the strength of that interest.

13.   Whether the state has any legitimate interest in enacting and enforcing the Registration Delivery Provisions (SB 90's amendment to Section 97.0575(3)(a)(1-3)); and (if so) the strength of that interest.

First Amendment Issues

14.   Whether the Solicitation Definition (SB 90's amendment to Section 102.031(4)(b)) restricts expressive conduct protected by the First Amendment.

15.   Whether *League* Plaintiffs', *NAACP* Plaintiffs', and *Florida Rising*

49

Plaintiffs' activities at polling places are intended to, and would reasonably be understood to, express a message.

16.   Whether Florida has an interest in enforcing the Solicitation Definition, and (if so) the strength of that interest.

17.   Whether the Solicitation Definition prohibits more protected speech than is necessary to achieve Florida's interests, if any.

18.   Whether the Registration Disclaimer Provision (SB 90's amendment to Section 97.0575(3)(a)) compels 3PVROs to engage in speech that they would not otherwise engage in.

19.   Whether the speech required by the Registration Disclaimer Provision is misleading and will interfere with 3PVROs' voter registration activities.

20.   Whether the Registration Disclaimer Provision burdens Plaintiffs' expressive association and conduct.

21.   Whether Florida has an interest in enforcing the Registration Disclaimer Provision, and (if so) the strength of that interest.

22.   Whether the Registration Delivery Provision (SB 90's amendment to Section 97.0575(3)(a)(1-3)) restricts expressive conduct protected by the First Amendment.

23.   Whether Florida has an interest in enforcing the Registration Delivery

Provision, and (if so) the strength of that interest.

Fourteenth Amendment Issues

24.    Whether the Solicitation Definition (SB 90's amendment to Section 102.031(4)(b)) provides persons adequate notice of conduct that would be permissible and conduct that is prohibited.

25.    Whether the Solicitation Definition provides sufficient guidance to those enforcing the law so that they do not act in an arbitrary or discriminatory way.

26.    Whether the Registration Disclaimer Provision in conjunction with Section 97.0575(4) provides persons adequate notice of conduct that would be permissible and conduct that is prohibited, and the specific penalties that accompany noncompliance.

27.    Whether the Registration Disclaimer Provision in conjunction with Section 97.0575(4) provides sufficient guidance to those enforcing the law so that they do not act in an arbitrary or discriminatory way.

Discriminatory Results (VRA Section 2)

28.    Whether the Challenged Provisions result in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color.

29. Whether the Challenged Provisions, based on the totality of the circumstances, demonstrate that the political processes leading to the nomination or election in Florida or its political subdivision are not equally open to participation by members of a class of citizens on account of their race or color in that Black or Latino Floridians have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

Discriminatory Intent

30. Whether prohibited discrimination was a motivating factor in the adoption of the Challenged Provisions or SB 90.

31. Whether the circumstantial and direct evidence of the adoption of the Challenged Provisions or SB 90 establish that racial discrimination was a motivating factor.

VRA Section 208 Issues

32. Whether the Solicitation Definition (SB 90's amendment to Section 102.031(4)(b)) prohibit voter assistance activities permitted by VRA Section 208.

VRA Section 3(c) Relief

33. Whether Section 3(c) "bail in" relief is appropriate upon a finding of intentional discrimination under the Fourteenth or Fifteenth Amendments.

34. *NAACP* Plaintiffs and *Florida Rising* Plaintiffs contend that also at issue is whether violations of the Fourteenth or Fifteenth Amendments have occurred within the State of Florida justifying equitable relief.

35. *NAACP* Plaintiffs and *Florida Rising* Plaintiffs contend that also at issue is, if a violation of the Fourteenth or Fifteenth Amendment has occurred within the State of Florida justifying equitable relief, the period of time the Court deems appropriate during which no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different shall be enforced unless and until preclearance is granted by the Court or the Attorney General of the United States declines to interpose an objection.

Failure to Provide Reasonable Accommodations

36. Whether the Solicitation Definition will discriminate against voters on the basis of disability or deny eligible citizens with disabilities equal access to voting.

37. Whether the Drop Box Provisions will discriminate against voters on the basis of disability or deny eligible citizens with disabilities equal

access to voting.

38. Whether the VBM Request Provision will deny eligible citizens with disabilities equal access to voting

## I. CONCISE STATEMENT OF ISSUES OF LAW REMAINING FOR DETERMINATION

1. Whether one or more of Plaintiffs have standing to assert each of the claims in this Case.

2. What standard of review applies to the facts of this case.

3. Whether one or any combination of the Challenged Provisions violates the First and Fourteenth Amendments of the U.S. Constitution.

4. Whether one or any combination of the Challenged Provisions violates the Fifteenth Amendment of the U.S. Constitution.

5. Whether one or any combination of the Challenged Provisions violates Section 2 of the VRA.

6. Whether one or any combination of the Challenged Provisions violates Section 208 of the VRA.

7. Whether one or any combination of the Challenged Provisions violates Title II of the ADA

8. Whether the Solicitation Provision violates the First Amendment of the U.S. Constitution.

9. Whether the Solicitation Provision is unconstitutionally vague or

overbroad under the First and Fourteenth Amendments of the U.S. Constitution.

10.     Whether the Registration Disclaimer Provision violates the First Amendment of the U.S. Constitution.

11.     Whether the Registration Disclaimer Provision in conjunction with Section 97.0575(4), Fla. Statutes, is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

12.     Whether the Registration Delivery Provision violates the First Amendment of the U.S. Constitution.

13.     Whether Plaintiffs have established violations of the Fourteenth or Fifteenth Amendments.

14.     Whether relief under Section 3(c) of the VRA is constitutional.

15.     Whether Section 208 of the VRA, 52 U.S.C. § 10508, preempts the Solicitation Definition.

**J.     CONCISE STATEMENT OF ANY DISAGREEMENT AS TO THE APPLICATION OF RULES OF EVIDENCE OR OF THE FEDERAL RULES OF CIVIL PROCEDURE**

None known at this time. The Parties reserve all rights to make their objections to the admission and use of exhibits and other evidence at trial in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. An issue may be raised as to the extent a Defendant may use at trial his or her own deposition testimony or the deposition testimony of another Party (or officer of another Party), who resides more than 100 miles from the Court, if that Party (or officer of that Party) is subject to trial subpoena pursuant to Rule 45(c)(1)(B)(i).

**K.   LIST OF ALL MOTIONS OR OTHER MATTERS REQUIRING COURT ACTION**

**Consolidated Action (Case No. 4:21-cv-186)**

| Filing Date | Title/Matter |
|---|---|
| 12/23/2021 | Plaintiffs' Motion In Limine to Preclude Defendants from Introducing Evidence or Testimony About Legislative Intentions, Motivations, and Activities, and Incorporated Memorandum of Law.  ECF No. 385. |
| 12/23/2021 | Plaintiffs' Motion In Limine to   Exclude Evidence that Supervisors of Elections Supported Passage of the Challenged Provisions of SB 90 and Incorporated Memorandum of Law. ECF No. 386. |
| 12/23/2021 | Motion in Limine to Exclude Evidence Relating to the Untimely Return of Voter Registration Forms and Incorporated Memorandum of Law.  ECF No. 387. |
| 12/23/2021 | Motion to Exclude Expert Testimony of Dr. Dario Moreno, and Incorporated Memorandum of Law. ECF No. 388 |
| 12/23/2021 | Plaintiffs' Motion in Limine to Preclude Defendants from Introducing Evidence or Argument Regarding *Post Hoc* Rationales for SB 90 or Alleged State Interests in Preventing Voter Fraud, and Incorporated Memorandum of Law. ECF No. 389. |
| 12/23/2021 | Motion in Limine to Exclude Quantitative Expert Evidence Regarding Impact of SB 90, and Incorporated Memorandum of Law.  ECF No. 390. |
| 12/23/2021 | Plaintiffs' Motion in Limine to Limit Defendants' Trial Witnesses to Individuals Disclosed in Rule 26 Disclosures and Incorporated Memorandum of Law.  ECF No. 391. |
| 12/24/2021 | Plaintiffs' Motion in Limine to Exclude the Opinions and Expert Testimony of Dr. Brad Lockerbie.  ECF No. 393. |
| 12/24/2021 | Motion to Exclude Legislative Witnesses or, in the Alternative, Seek Expedited Discovery from Witnesses and Incorporated Memorandum of Law in Support.  ECF No. 394. |
| 12/24/2021 | Motion to Exclude the Florida Rising Plaintiffs' Untimely Evidence and Incorporated Memorandum of Law in Support. ECF No. 395. |

**L.**   **STATEMENT WHETHER THIS IS A JURY OR NON-JURY CASE**

This is a non-jury case.

**M.**   **COUNSEL'S RESPECTIVE ESTIMATES OF THE LENGTH OF THE TRIAL**

10 days.

**N.**   **SIGNATURE OF COUNSEL FOR ALL PARTIES**

Signatures follow below.

WHEREFORE, the Parties hereby respectfully submit the foregoing Joint Pretrial Stipulation in accordance with this Court's Order for Pretrial Conference (ECF No. 327).

Respectfully submitted this 29th day of December, 2021.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
Thomas A. Zehnder
Florida Bar No. 0063274
King, Blackwell, Zehnder &
Wermuth, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
fwermuth@kbzwlaw.com
tzehnder@kbzwlaw.com

Marc E. Elias
Elisabeth Frost* **(Lead Counsel)**
David R. Fox*
Lalitha D. Madduri*
Christina A. Ford

/s/ Michelle Kanter Cohen
Nancy G. Abudu
Florida Bar No. 111881
Southern Poverty Law Center
P.O. Box 1287
Decatur, Ga 30031-1287
Telephone: 404-521-6700
Fax: 404-221-5857
nancy.abudu@splcenter.org

Michelle Kanter Cohen* **(Lead Counsel)**
Jon Sherman*
Cecilia Aguilera*
Fair Elections Center
1825 K Street NW, Suite 450
Washington, DC 20006
Telephone: 202-331-0114
mkantercohen@fairelectionscenter.org

Francesca Gibson*
Elias Law Group LLP
10 G Street NE, Suite 600
Washington, DC 20002
Telephone: (202) 968-4490
melias@elias.law
efrost@elias.law
dfox@elias.law
lmadduri@elias.law
cford@elias.law
fgibson@elias.law

Danielle Sivalingam*
Perkins Coie LLP
1888 Century Park East, Suite 1700
Century City, California 90067
Telephone: (310) 788-3344
Facsimile: (310) 843-2844
dsivalingam@perkinscoie.com

*Admitted Pro Hac Vice

Counsel for Plaintiffs

jsherman@fairelectionscenter.org
caguilera@fairelectionscenter.org

William Devaney*
Baker McKenzie LLP
452 Fifth Avenue
New York, NY 10018

*Admitted Pro Hac Vice

Counsel for HTFF Plaintiff

/s/ P. Benjamin Duke
P. Benjamin Duke* **(Lead Counsel)**
Shira M. Poliak*
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
212-841-1270
pbduke@cov.com

Benjamin L. Cavataro
Florida Bar No. 113534
Jad H. Khazem
Florida Bar No. 124408
Morgan E. Saunders*
Michael A. Fletcher II*

/s/ John A. Freedman
Kira Romero-Craft
Florida Bar No. 49927
Miranda Galindo *
LatinoJustice, PRLDEF
523 W Colonial Dr.
Orlando, FL 32804
Telephone: 321-418-6354
Kromero@latinojustice.org
Mgalindo@latinojustice.org

Brenda Wright *
DEMOS
80 Broad St, 4th Flr
New York, NY 10004

Elizabeth T. Fouhey*
Cyrus Nasseri*
Covington & Burling LLP
850 Tenth Street, N.W.
Washington, DC 20001
202-662-5693
bcavataro@cov.com
msaunders@cov.com
mfletcher@cov.com
efouhey@cov.com
cnasseri@cov.com

Robert D. Fram*
Ellen Y. Choi*
Covington & Burling LLP
415 Mission Street
San Francisco, CA 94105
415-591-7025
rfram@cov.com

Michael Pernick*
Morenike Fajana*
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
212-965-2200
mfajana@naacpldf.org

Amia Trigg*
Mahogane D. Reed*
NAACP Legal Defense &
Educational Fund, Inc.
700 14th Street NW, Ste. 600,
Washington, DC 20005
202-682-1300
atrigg@naacpldf.org
Nellie L. King
Fla. Bar No. 0099562)

Telephone: 212-633-1405
bwright@demos.org

Judith B. Dianis *
Gilda R. Daniels
Jorge Vasquez *
Sabrina Khan *
Esperanza Segarra
Florida Bar No. 527211
Sharion Scott *
ADVANCEMENT PROJECT
1220 L Street, N.W., Suite 850
Washington, DC 20005
Telephone: 202-728-9557
Jbrowne@advancementproject.org
Gdaniels@advancementproject.org
Jvasquez@advancementproject.org
Skhan@advancementproject.org
Esegarra@advancementproject.org
Sscott@advancementproject.org

John A. Freedman* **(Lead Counsel)**
Jeremy C. Karpatkin
Elisabeth S. Theodore*
Janine M. Lopez*
Leslie C. Bailey*
Sam I. Ferenc*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
Telephone: 202-942-5000
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Elisabeth.Theodore@arnoldporter.com
Janine.Lopez@arnoldporter.com
Leslie.Bailey@arnoldporter.com
Sam.Ferenc@arnoldporter.com

Jeffrey A. Miller *

The Law Offices of Nellie L. King, P.A.
319 Clematis Street, Suite 107
West Palm Beach, FL 33401
561-833-1084
Nellie@CriminalDefenseFla.com

*Admitted pro hac vice*

*Counsel for NAACP Plaintiffs*

Arnold & Porter Kaye Scholer LLP
3000 El Camino Road
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: 650-319-4500
Jeffrey.Miller@arnoldporter.com

Aaron Stiefel*
Daniel R. Bernstein*
Ryan D. Buhdu*
Andrew R. Hirschel*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212-836-8000
Aaron.Stiefel@arnoldporter.com
Daniel.Bernstein@arnoldporter.com
Ryan.Budhu@arnoldporter.com
Andrew.Hirshel@arnoldporter.com

*Admitted pro hac vice*

*Counsel for Florida Rising Plaintiffs*

/s/ Mohammad O. Jazil
Bradley R. McVay
Florida Bar No. 79034
Ashley E. Davis
Florida Bar No. 48032
Colleen E. O'Brien
Florida Bar No. 76578
Florida Department of State
RA Gray Building
500 South Bronough Street, Ste. 100
Tallahassee, FL 32399
Telephone: 850-245-6531
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com
colleen.obrien@dos.myflorida.com

/s/ William H. Stafford, III
William H. Stafford, III
Florida Bar No. 70394
Bilal A. Faruqui **(Lead Counsel)**
Florida Bar No. 15212
Karen A. Brodeen
Florida Bar No. 512772
Rachel R. Siegel
Florida Bar No. 1029143
William Chorba
Florida Bar No. 58370
Office of the Attorney General
PL-01 The Capitol
Tallahassee, Florida 32399
Telephone: 850-414-3785

Mohammad O. Jazil **(Lead Counsel)**
Florida Bar No. 72556
Gary V. Perko
Florida Bar No. 855898
Holzman Vogel Baran Torchinsky &
Josefiak PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301
Telephone: 850-567-5762
mJazil@holtzmanvogel.com
gperko@holtzmanvogel.com

Phillip M. Gordon
Kenneth C. Daines
Holzman Vogel Baran Torchinsky &
Josefiak PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
Telephone: 540-341-8808
pgordon@holtzmanvogel.com
kdaines@holtzmanvogel.com

*Counsel for Defendant Laurel M. Lee*

/s/ Andy V. Bardos
Andy V. Bardos **(Lead Counsel)**
Florida Bar No. 822671
GrayRobinson PA
301 S. Bronough St, Ste. 600
Tallahassee, FL 32301
Telephone: 850-577-9090
andy.bardos@gray-robinson.com

*Counsel for Defendant Jennifer J.*
*Edwards, Leslie Swan, Alan Hays,*
*Tommy Doyle, Michael Bennett,*
*Wesley Wilcox, Joyce Griffin, Brian*
*Corley and Christopher Anderson*

william.stafford@myfloridalegal.com
bilal.faruqui@myfloridalegal.com
karen.brodeen@myfloridalegal.com
rachel.siegel@myfloridalegal.com
william.chorba@myfloridalegal.com

*Counsel for Defendant Ashley Moody*

/s/ Susan Erdelyi
Edward P. Cuffe
Florida Bar No. 1018521
Susan Erdelyi **(Lead Counsel)**
Florida Bar No. 0648965
Marks Gray, P.A.
1200 Riverplace Blvd, Ste. 800
Jacksonville, FL 32207
Telephone: 904-807-2110
sse@marksgray.com
pcuffe@marksgray.com

*Counsel for Defendants Christopher*
*Milton, Mark Anderson, Amanda*

*Seyfang, Sharon Chason, Tomi S. Brown, Starlet Cannon, Heather Riley, Shirley Knight, Laura Hutto, Carol Dunaway, Travis Hart, Grant Conyers, Janet Adkins, Charles Overturf, Tappie Villane, Vicky Oakes, William Keen, Jennifer Musgrove, Dana Southerland, Deborah Osborne, Joseph Morgan, Bobby Beasley and Carol Rudd*

/s/ Ronald A. Labasky
Ronald A. Labasky **(Lead Counsel)**
Florida Bar No. 206326
Brewton Plante PA
215 S. Monroe Street, Ste. 825
Tallahassee, FL 32301
Telephone: 850-222-7718
rlabasky@bplawfirm.net

John T. LaVia
Florida Bar No.
Gardner, Bist, Bowden, Bush, Dee, Lavia & Wright, P.A.
1300 Thomaswood Drive
Tallahassee, FL 32308
jlavia@gbwlegal.com
Telephone: 850-385-0070

*Counsel for Defendants Chris H. Chambless, Vicki Davis, Mary Jane Arrington, Gertrude Walker and Lori Edwards*

/s/ Frank M. Mari
Frank M. Mari **(Lead Counsel)**
Florida Bar No. 93243
John M. Janousek
Florida Bar No. 98599
Roper, P.A.
2707 E. Jefferson St.
Orlando, FL 32803
Telephone: 407-897-5150
fmari@roperpa.com
jjanousek@roperpa.com

*Counsel for Defendants Mark Negley, Connie Sanchez, John Hanlon, Marty Bishop, Heath Driggers, Lori Scott, Kaiti Lenhart, and Penny Ogg*

/s/ Robert C. Swain
Robert C. Swain **(Lead Counsel)**
Florida Bar No. 366961
Diana M. Johnson
Florida Bar No. 69160
Alachua County Attorney's Office

/s/ Stephen M. Todd
Stephen M. Todd **(Lead Counsel)**
Florida Bar No. 886203
Office of The County Attorney
601 E. Kennedy Blvd., 27th Floor
Tampa, FL 33602

12 SE First St.
Gainesville, FL 32602
Telephone: 352-374-5218
bswain@alachuacounty.us
dmjohnson@alachuacounty.us

*Counsel for Defendant Kim A. Barton*

/s/ Kyle J. Benda
Jon A. Jouben
Florida Bar No. 149561
Kyle J. Benda **(Lead Counsel)**
Florida Bar No. 113525
Hernando County
20 N. Main Street, Ste. 462
Brookesville, FL 34601-2850
Telephone: 351-754-4122
jjouben@co.hernando.fl.us
kbenda@co.hernando.fl.us

*Counsel for Defendant Shirley Anderson*

/s/ Kia M. Johnson
Kia M. Johnson
Florida Bar No. 124746
Matthew Shaud **(Lead Counsel)**
Florida Bar No. 122252
Escambia County Attorneys Office
221 Palafox Place, Ste. 430
Pensacola, FL 32502
Telephone: 850-595-4970
kmjohnson@myescambia.com

*Counsel for Defendant David H. Stafford*

Telephone: 813-272-5670
todds@hillsboroughcounty.org

*Counsel for Defendant Craig Latimer*

/s/ Kelly L. Vicari
Kelly L. Vicari **(Lead Counsel)**
Florida Bar No. 88704
Pinellas County Attorney's Office
315 Court Street, 6th Floor
Clearwater, FL 33756
Telephone: 727-464-3354
kvicari@pinellascounty.org

*Counsel for Defendant Julie Marcus*

/s/ Nathaniel A. Klitsberg
Benjamin Salzillo
Florida Bar No. 582751
Nathaniel A. Klitsberg
Florida Bar No. 307520
Joseph K. Jarone
Florida Bar No. 117768
Brendalyn Edwards **(Lead Counsel)**
Florida Bar No. 86976
115 South Andrews Ave., Ste. 423
Ft. Lauderdale, FL 33301
Telephone: 954-357-7600
bsalizzo@broward.org
nklitsberg@broward.org
jkjarone@broward.org

*Counsel for Defendant Joe Scott*

/s/ Dale Scott

Dale Scott **(Lead Counsel)**
Florida Bar No. 568821
Bell & Roper, P.A.
2707 E. Jefferson St.
Orlando, Florida 32803
Telephone: 407-897-5150
dscott@bellroperlaw.com

*Counsel for Defendant Maureen Baird*

/s/ Craig D. Feiser

Craig D. Feiser **(Lead Counsel)**
Florida Bar No. 164593
Jason Teal
Florida Bar No. 157198
Mary Margaret Giannini
Florida Bar No. 105572
117 W. Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: 904-255-5052
cfeiser@coj.net
mgiannini@coj.net

*Counsel for Defendant Mike Hogan*

/s/ Robert Shearman

Robert Shearman **(Lead Counsel)**
Florida Bar No. 105572
Geraldo F. Olivo
Florida Bar No. 60905
Henderson, Franklin, Starnes
& Holt, P.A.
1715 Monroe Street
Ft. Myers, Florida 33901
Telephone: 239-334-1346
robert.shearman@henlaw.com
jerry.olivo@henlaw.com

*Counsel for Defendants Aletris Farnam, Diane Smith, Brenda Hoots, Therisa Meadows, Tammy Jones and Melissa Arnold*

/s/ Mark Herron

Mark Herron **(Lead Counsel)**
Florida Bar No. 199737
S. Denay Brown
Florida Bar No. 88571
Patrick O'Bryant
Florida Bar No. 1011566
Messer Caparello & Self, P.A.
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: 850-222-0720
mherron@lawfla.com
dbrown@lawfla.com
pobryant@lawfla.com

*Counsel for Defendant Mark Earley*

/s/  Elizabeth D. Ellis
Gregory T. Stewart
Florida Bar No. 203718
Elizabeth D. Ellis **(Lead Counsel)**
Florida Bar No. 97873
Kirsten H. Mood
Florida Bar No. 115595
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, FL 32308
Telephone: 850-224-4070
gstewart@ngnlaw.com
eellis@ngnlaw.com
kmood@ngnlaw.com

*Counsel for Defendant Paul Lux*

/s/  London L. Ott
W. Kevin Bledsoe
Florida Bar No. 029769
London L. Ott **(Lead Counsel)**
Florida Bar No. 95058
123 W. Indiana Avenue, Room 301
Deland, Florida 32720
Telephone: 386-736-5950
kbledsoe@volusia.org
lott@volusia.org

*Counsel for Defendant Lisa Lewis*

/s/ Nicholas Shannin
Nicholas Shannin **(Lead Counsel)**
Florida Bar No. 9570
Shannin Law Firm
214 S. Lucerne Circle East
Orlando, Florida 32801
nshannin@shanninlaw.com
Telephone: 407-985-2222

*Counsel for Defendant Bill Cowles*

/s/ Ronald A. Labasky
Ronald A. Labasky **(Lead Counsel)**
Florida Bar No.: 206326
Brewton Plante, P.A.
215 S. Monroe St., STE 825
Tallahassee, FL  32301
Telephone: (850) 222-7718
Facsimile: (850) 222-8222
Primary email:rlabasky@blawfirm.net
Secondary email:fsase@bplawfirm.net

/s/ John T. Lavia, III
John T. LaVia, III
Florida Bar No.: 853666
Gardner, Bist, Bowden, Dee, Lavia,
Wright, Perry, & Harper, P.A.
1300 Thomaswood Drive
Tallahassee, Florida  32301
Telephone No.: (850) 385-0070
Facsimile No.: (850) 385-5416
Primary email: jlavia@gbwlegal.com
Secondary email: faith@gbwlegal.com

*Counsel for Wendy Sartory Link,*
*Supervisor of Elections Palm Beach*
*County*

s/ Daniel E. Nordby

Benjamin J. Gibson **(Lead Counsel)**
Daniel E. Nordby
George N. Meros, Jr.
Amber S. Nunnally
Frank A. Zacherl
Shutts & Bowen LLP
215 S. Monroe St., Ste. 804
Tallahassee, FL 32301
Telephone: 850-241-1720
bgibson@shutts.com
dnordby@shutts.com
gmeros@shutts.com
anunnally@shutts.com
fzacherl@shutts.com

Daniel J. Shapiro
Cameron T. Norris
Tyler R. Green
Steven C. Begakis
Consovoy McCarthy, PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Telephone: 703-243-9423
daniel@consovoymccarthy.com
cam@consovoymccarthy.com
tyler@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Intervenor Defendants*
*Republican National Committee and*
*National Republican Senatorial*
*Committee*

s/ Morgan Bentley

Morgan Bentley **(Lead Counsel)**
Florida Bar No. 962287
Bentley Law Firm, P.A.
783 South Orange Ave., Third Floor
Sarasota, Florida 34236
Telephone: 941-556-9030
mbentley@thebentleylawfirm.com

*Counsel for Defendant Ron Turner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2021 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in the Service List below.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*

## SERVICE LIST

Bradley R. McVay
Ashley E. Davis
Colleen E. O'Brien
William D. Chappell
Florida Department of State
RA Gray Building
500 South Bronough Street, Ste. 100
Tallahassee, FL 32399
Telephone: 850-245-6531
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com
colleen.obrien@dos.myflorida.com
david.chappell@dos.myflorida.com

Mohammad O. Jazil
Gary V. Perko
Holzman Vogel Baran Torchinsky &
Josefiak PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301
Telephone: 850-567-5762
mJazil@holtzmanvogel.com
gperko@holtzmanvogel.com

William H. Stafford, III
Bilal A. Faruqui
Karen A. Brodeen
Rachel R. Siegel
William Chorba
Office of the Attorney General
PL-01 The Capitol
Tallahassee, Florida 32399
Telephone: 850-414-3785
william.stafford@myfloridalegal.com
bilal.faruqui@myfloridalegal.com
karen.brodeen@myfloridalegal.com
rachel.siegel@myfloridalegal.com
william.chorba@myfloridalegal.com

*Counsel for Defendant Ashley Moody*

Phillip M. Gordon
Kenneth C. Daines
Holzman Vogel Baran Torchinsky &
Josefiak PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
Telephone: 540-341-8808
pgordon@holtzmanvogel.com
kdaines@holtzmanvogel.com

*Counsel for Defendant Laurel M. Lee*

| | |
|---|---|
| Robert C. Swain | Edward P. Cuffe |
| Diana M. Johnson | Susan Erdelyi |
| Alachua County Attorney's Office | Marks Gray, P.A. |
| 12 SE First St. | 1200 Riverplace Blvd, Ste. 800 |
| Gainesville, FL 32602 | Jacksonville, FL 32207 |
| Telephone: 352-374-5218 | Telephone: 904-807-2110 |
| bswain@alachuacounty.us | sse@marksgray.com |
| dmjohnson@alachuacounty.us | pcuffe@marksgray.com |

*Counsel for Defendant Kim A. Barton*

*Counsel for Defendants Christopher Milton, Mark Anderson, Amanda Seyfang, Sharon Chason, Tomi S. Brown, Starlet Cannon, Heather Riley, Shirley Knight, Laura Hutto, Carol Dunaway, Travis Hart, Grant Conyers, Janet Adkins, Charles Overturf, Tappie Villane, Vicky Oakes, William Keen, Jennifer Musgrove, Dana Southerland, Deborah Osborne, Joseph Morgan, Bobby Beasley and Carol Rudd*

| | |
|---|---|
| Frank M. Mari | Ronald A. Labasky |
| John M. Janousek | Brewton Plante PA |
| Roper, P.A. | 215 S. Monroe Street, Ste. 825 |
| 2707 E. Jefferson St. | Tallahassee, FL 32301 |
| Orlando, FL 32803 | Telephone: 850-222-7718 |

Telephone: 407-897-5150
fmari@roperpa.com
jjanousek@roperpa.com

*Counsel for Defendants Mark Negley,*
*Connie Sanchez, John Hanlon, Marty*
*Bishop, Heath Driggers, Lori Scott,*
*Kaiti Lenhart, and Penny Ogg*

rlabasky@bplawfirm.net

John T. LaVia
Gardner, Bist, Bowden, Bush, Dee,
Lavia & Wright, P.A.
1300 Thomaswood Drive
Tallahassee, FL 32308
Telephone: 850-385-0070
jlavia@gbwlegal.com

*Counsel for Defendants Chris H.*
*Chambless, Vicki Davis, Mary Jane*
*Arrington, Gertrude Walker and Lori*
*Edwards*

Andy V. Bardos
James T. Moore, Jr.
GrayRobinson PA
301 S. Bronough St, Ste. 600
Tallahassee, FL 32301
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
tim.moore@gray-robinson.com

*Counsel for Defendant Jennifer J.*
*Edwards, Leslie Swan, Alan Hays,*
*Tommy Doyle, Michael Bennett,*
*Wesley Wilcox, Joyce Griffin, Brian*
*Corley, Christopher Anderson and*
*Paul Stamoulis*

Stephen M. Todd
Office of The County Attorney
601 E. Kennedy Blvd., 27th Floor
Tampa, FL 33602
Telephone: 813-272-5670
todds@hillsboroughcounty.org

*Counsel for Defendant Craig Latimer*

Jon A. Jouben
Kyle J. Benda
Hernando County
20 N. Main Street, Ste. 462
Brookesville, FL 34601-2850
Telephone: 351-754-4122
jjouben@co.hernando.fl.us
kbenda@co.hernando.fl.us

Kelly L. Vicari
Pinellas County Attorney's Office
315 Court Street, 6th Floor
Clearwater, FL 33756
Telephone: 727-464-3354
kvicari@pinellascounty.org

*Counsel for Defendant Julie Marcus*

*Counsel for Defendant Shirley*
*Anderson*

Kia M. Johnson
Escambia County Attorneys
Office
221 Palafox Place, Ste. 430
Pensacola, FL 32502
Telephone: 850-595-4970
kmjohnson@myescambia.com

*Counsel for Defendant David H.*
*Stafford*

Dale Scott
Bell & Roper, P.A.
2707 E. Jefferson St.
Orlando, Florida 32803
Telephone: 407-897-5150
dscott@bellroperlaw.com

*Counsel for Defendant Maureen Baird*

Robert Shearman
Geraldo F. Olivo
Henderson, Franklin, Starnes
& Holt, P.A.
1715 Monroe Street
Ft. Myers, Florida 33901
Telephone: 239-334-1346
robert.shearman@henlaw.com
jerry.olivo@henlaw.com

Benjamin Salzillo
Nathaniel A. Klitsberg
Joseph K. Jarone
Brendalyn V.A. Edwards
115 South Andrews Ave., Ste. 423
Ft. Lauderdale, FL 33301
Telephone: 954-357-7600
bsalizzo@broward.org
nklitsberg@broward.org
jkjarone@broward.org
breedwards@broward.org

*Counsel for Defendant Joe Scott*

Craig D. Feiser
Jason Teal
Mary Margaret Giannini
117 W. Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: 904-255-5052
cfeiser@coj.net
mgiannini@coj.net

*Counsel for Defendant Mike Hogan*

Mark Herron
S. Denay Brown
Patrick O'Bryant
Messer Caparello & Self, P.A.
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: 850-222-0720
mherron@lawfla.com
dbrown@lawfla.com
pobryant@lawfla.com

*Counsel for Defendants Aletris Farnam, Diane Smith, Brenda Hoots, Therisa Meadows, Tammy Jones and Melissa Arnold*

Gregory T. Stewart
Elizabeth D. Ellis
Kirsten H. Mood
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, FL 32308
Telephone: 850-224-4070
gstewart@ngnlaw.com
eellis@ngnlaw.com
kmood@ngnlaw.com

*Counsel for Defendant Paul Lux*

W. Kevin Bledsoe
London L. Ott
123 W. Indiana Avenue, Room 301
Deland, Florida 32720
Telephone: 386-736-5950
kbledsoe@volusia.org
lott@volusia.org

*Counsel for Defendant Lisa Lewis*

Michael B. Valdes
Oren Rosenthal
Miami-Dade Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: 305-375-5620
michael.valdes@miamidade.gov
oren.rosenthal@miamidade.gov

*Counsel for Defendant Christine*

*Counsel for Defendant Mark Earley*

Nicholas Shannin
Shannin Law Firm
214 S. Lucerne Circle East
Orlando, Florida 32801
Telephone: 407-985-2222
nshannin@shanninlaw.com

*Counsel for Defendant Bill Cowles*

Morgan Bentley
Bentley Law Firm, P.A.
783 South Orange Ave., Third Floor
Sarasota, Florida 34236
Telephone: 941-556-9030
mbentley@thebentleylawfirm.com

*Counsel for Defendant Ron Turner*

Ashley D. Houlihan
Palm Beach County Supervisor of Elections
240 S Military Trail
West Palm Beach, FL 33416
Telephone: 561-656-6200
ashleyhoulihan@votepalmbeach.gov

*Counsel for Defendant Wendy Link*

*White*

Benjamin J. Gibson
Daniel E. Nordby
George N. Meros, Jr.
Amber S. Nunnally
Frank A. Zacherl
Shutts & Bowen LLP
215 S. Monroe St., Ste. 804
Tallahassee, FL 32301
Telephone: 850-241-1720
bgibson@shutts.com
dnordby@shutts.com
gmeros@shutts.com
anunnally@shutts.com
fzacherl@shutts.com

Daniel J. Shapiro
Cameron T. Norris
Tyler R. Green
Steven C. Begakis
Consovoy McCarthy, PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Telephone: 703-243-9423
daniel@consovoymccarthy.com
cam@consovoymccarthy.com
tyler@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Intervenor Defendants*
*Republican National Committee and*
*National Republican Senatorial*
*Committee*

Ronald A. Labasky
Brewton Plante, P.A.
215 S. Monroe St., STE 825
Tallahassee, FL  32301
Telephone: (850) 222-7718
Facsimile: (850) 222-8222
Primary email:rlabasky@blawfirm.net
Secondary email:fsase@bplawfirm.net

John T. LaVia, III
Gardner, Bist, Bowden, Dee, Lavia,
Wright, Perry, & Harper, P.A.
1300 Thomaswood Drive
Tallahassee, Florida 32301
Telephone No.: (850) 385-0070
Facsimile No.: (850) 385-5416
Primary email: jlavia@gbwlegal.com
Secondary email: faith@gbwlegal.com

*Counsel for Wendy Sartory Link,*
*Supervisor of Elections Palm Beach*
*County*