League of Women Voters of Florida, Inc.

*vs.*

Laurel Lee

Deposition of:

ELIZABETH GUZZO

October 22, 2021

Vol 01

**Legend for Designations:**

Yellow Highlighting = Plaintiffs' Designations
Gray Highlighting = Defendants' Designations
Green Highlighting = Mutual Designations

**Legend for Objections:**

| | |
|---|---|
| "P=" | = Plaintiffs' Objection |
| "D=" | = Defendants' Objection |
| 401/402 | = Relevance |
| 602 | = Foundation / Lack of Personal Knowledge |
| 701 | = Calls for Speculation |
| 802 | = Hearsay |
| C | = Cumulative |
| Form | = Assumes Facts Not in Evidence, Argumentative, or Vague |



PHIPPS REPORTING

*Raising the Bar!*

Elizabeth Guzzo
October 22, 2021

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 4:21 cv 186-MW/MAF
4:21 cv 187-MV/MAF
4:21 cv 201-MV/MAF
4:21 cv 242-MV/MAF

LEAGUE OF WOMEN VOTERS
FLORIDA, INC., et al.,

          Plaintiffs,
vs.
LAUREL M. LEE, Florida
Secretary of State, et al.,
          Defendants.

and

REPUBLICAN NATIONAL COMMITTEE,
NATIONAL REPUBLICAN SENATORIAL
COMMITTEE,
          Intervenors-Defendants.
_____/


ZOOM 30(b)(6) DEPOSITION OF OFFICE OF THE ATTORNEY

GENERAL (Elizabeth Guzzo)

Friday, October 22, 2021

9:32 a.m. - 11:55 a.m.

Via Zoom


STENOGRAPHICALLY REPORTED BY:

SANDRA L. NARGIZ
RPR, CM, CRR, CRC, FPR, CCR-GA


Job No.  212964

Elizabeth Guzzo
October 22, 2021

Page 2

```
 1    APPEARANCES: (All appearing via Zoom.)

 2      ON BEHALF OF THE PLAINTIFF THE LEAGUE OF WOMEN
        VOTERS FLORIDA, INC/LEAGUE OF WOMEN VOTERS OF
 3      FLORIDA EDUCATION FUND, INC.:

 4
          ELIAS LAW GROUP, LLP
 5        15500 New Barn Road, #104
          Miami Lakes, FL 33014
 6        305.823.2300
          BY:  DAVID FOX, ESQUIRE
 7        dfox@elias.law

 8    ON BEHALF OF PLAINTIFFS HARRIET TUBRAM FREEDOM
      FIGHTERS and HEAD COUNT, INC.:
 9
          BAKER McKENZIE
10        452 Fifth Avenue
          New York, NY  10018
11        212.626.4728
          BY:  WILLIAM DEVANEY, ESQUIRE
12        william.devaney@bakermckenzie.com
          CHARLTON TARPLEY, ESQUIRE
13        carlton.tarpley@bakermckenzie.com
          BRENDAN O'CALLAGHAN, ESQUIRE
14        brendan.ocallaghan@bakermckenzie.com
          NICHOLAS O'BRIEN, ESQUIRE
15        nicholas.obrien@bakermckenzie.com

16        FAIR ELECTIONS CENTER
          1825 K Street NW, #450
17        Washington, D.C. 20006
          202.331.0114
18        BY:  MICHELLE KANTER COHEN, ESQUIRE
          mkantercohen@fairelectionscenter.org
19
        ON BEHALF OF THE DEFENDANT ATTORNEY GENERAL
20      ASHLEY MOODY:

21        OFFICE OF ATTORNEY GENERAL
          PL-01 The Capitol
22        Tallahassee, FL  32399
          850.414.3300
23        BY: BILAL AHMED FARUQUI, ESQUIRE
          bilal.faruqui@myfloridalegal.com
24        KAREN BRODEEN, ESQUIRE
          karen.brodeen@myfloridalegal.com
25
```

Elizabeth Guzzo
October 22, 2021

Page 3

```
 1   APPEARANCES:  (continued)

 2      ON BEHALF OF THE DEFENDANT ALACHUA COUNTY
        SUPERVISOR OF ELECTIONS:
 3

 4         ALACHUA COUNTY ATTORNEY'S OFFICE
           12 SE 1st Street
 5         Gainesville, FL 32601
           352.374.5218
 6         BY: DIANA JOHNSON, ESQUIRE
           dmjohnson@alachuacounty.us
 7

 8      ON BEHALF OF THE DEFENDANTS BREVARD, DESOTO,
        FLAGLER, GILCHRIST, GULF, HIGHLANDS, JEFFERSON,
 9      MADISON COUNTIES SUPERVISORS OF ELECTIONS:

10
           ROPER, P.A.
11         2707 East Jefferson Street
           Orlando, FL  32803
12         407.897.5150
           BY: NICHOLAS J. MARI, ESQUIRE
13         nmari@roperpa.com
           FRANK M. MARI, ESQUIRE
14         fmari@roperpa.com

15
        ON BEHALF OF THE DEFENDANT OKALOOSA SUPERVISOR OF
16      ELECTIONS:

17
           NABORS GIBLIN & NICKERSON
18         1500 Mahan Drive, #200
           Tallahassee, FL  32302
19         850.224.4070
           BY:  GREGORY T. STEWART, ESQUIRE
20         gstewart@ngnlaw.com

21

22

23

24

25
```

Elizabeth Guzzo
October 22, 2021

Page 4

```
 1   APPEARANCES:  (continued)

 2     ON BEHALF OF THE DEFENDANT CITRUS COUNTY
       SUPERVISOR OF ELECTIONS:
 3

 4         BELL & ROPER
           2727 East Jefferson Street
 5         Orlando, FL  32308
           407.897.5150
 6         BY: DALE A. SCOTT, ESQUIRE
           dscott@bellroperlaw.com
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 5

1

2                        I N D E X

3    WITNESS                                    PAGE

4    30(b)(6) OFFICE OF THE ATTORNEY GENERAL
     (Elizabeth Guzzo)
5
         Direct Examination by Mr. Fox            6
6        Cross Examination by Ms. Tarpley        63

7    CERTIFICATE OF OATH                         85

8    CERTIFICATE OF REPORTER                     86

9    READ AND SIGN LETTER                        87

10   ERRATA SHEET                                88

11   (STENOGRAPHER'S NOTE:  All documents were sent to
     Stenographer electronically.  A digital exhibit
12   sticker was placed on the documents which were
     marked during the proceeding.)
13

14

15
                     INDEX OF EXHIBITS
16
     LEAGUE
17   NO.          DESCRIPTION                     ID

18   1  Subpoena                                  11
     2  Organization chart                        14
19   3  Chapter 2021-11                           49

20
     HTFF
21
     1  Responses to Plaintiffs' First Set of     67
22      Request for Production to Defendant
        Ashley Moody
23   3  Responses to Plaintiffs' First Set of
        Interrogatories to Defendant Ashley Moody 71
24

25

Elizabeth Guzzo
October 22, 2021

Page 6

1    The following Zoom proceedings began at 9:32 a.m.

2             THE STENOGRAPHER:  Would you raise your

3        right hand, please?  Do you swear or affirm

4        that the testimony you are about to give will

5        be the truth, the whole truth, and nothing but

6        the truth?

7             THE WITNESS:  I do.

8             THE STENOGRAPHER:  Thank you.

9    Thereupon,

10           30(b)(6) OFFICE OF THE ATTORNEY GENERAL

11                     (Elizabeth Guzzo)

12   having been first remotely duly sworn or affirmed,

13   as hereinafter certified testified as follows:

14                    DIRECT EXAMINATION

15   BY MR. FOX:

16        Q    Good morning, Ms. Guzzo.

17        A    Good morning.

18        Q    Is that how I should pronounce your last

19   name?

20        A    It's Gu- -- it's actually Guzzo.

21        Q    Okay.  My apologies.

22             My name is David Fox.  I'm an attorney

23   with the Elias Law Group, and I represent the

24   plaintiffs in one of the consolidated actions in

25   which this deposition is being taken, the League of

Elizabeth Guzzo
October 22, 2021

Page 7

1   Women Voters' case.

2          Could you just state your name for the

3   record?

4      A   Elizabeth Guzzo.

5      Q   And what's your business address?

6      A   400 South Monroe Street, Tallahassee,

7   Florida 32399, I believe.

8      Q   Have you ever been deposed before?

9      A   Yes.

10     Q   How many times?

11     A   Once.

12     Q   What sort of case was it in?

13     A   It was another legislative case.

14     Q   How long ago?

15     A   July 2020, I believe.

16     Q   And were -- do you remember if at that

17  deposition you were testifying on behalf of the

18  office of the Attorney General as well?

19     A   No.  I was a fact witness.

20     Q   Great.  I will just go over a few ground

21  rules.  Most of these will probably be familiar to

22  you from the last time you were deposed.

23          First of all, Sandi, the court reporter,

24  will transcribe my questions and your answers, so

25  it's important that we try to speak clearly and not

Elizabeth Guzzo
October 22, 2021

```
 1    talk over each other.  That can be harder on Zoom,
 2    so far you're doing great.  So I just ask that you
 3    wait for me to finish my question before you start
 4    to answer, and I will do my best to wait for you to
 5    finish your answer before I ask a question.
 6             I apologize in advance if I interrupt you,
 7    I don't intend to.  And so please just let me know,
 8    and I will let you finish your answer.  Does that
 9    sound okay?
10        A    It does.
11        Q    You are under oath, sworn to tell the
12    truth the same as if you were in court.  Do you
13    understand that?
14        A    I do.
15        Q    And you're being deposed today as a
16    representative of the Florida Office of Attorney
17    General.  Do you understand that?
18        A    I do.
19        Q    And so, therefore, you're answering on
20    behalf of the Office of Attorney General.  You
21    understand that?
22        A    Yes.
23        Q    If I use the word "you" today outside of
24    these preliminary ground rule questions, I mean both
25    you personally and also the Office of Attorney
```

Page 9

1  General.  If that's confusing for any particular
2  question, feel free to ask me to clarify, and I can
3  clarify it.  Does that sound okay?
4      A    Sure.  Thanks.
5      Q    In general, if you don't understand any
6  question that I ask, please ask me to clarify it,
7  otherwise, I'm going to assume that you understand
8  the question.  Does that sound okay?
9      A    Yes.
10     Q    Your attorney may object to some questions
11 that I ask.  If he does, it's fine for you to still
12 go on and answer unless he instructs you not to
13 answer.  Does that sound okay?
14     A    Yes.
15     Q    And if at any time you want to take a
16 break, just let me know.  The only thing I'll ask is
17 that if there's a question pending, that you answer
18 that question before we take a break.  Does that
19 sound okay?
20     A    Yes.
21     Q    Great.  I'd like you to pull up the
22 document that I've sent that's Exhibit 1., and I
23 will drop this in the chat as well.  And could you
24 let me know when you have it up?
25     A    It's up.

Elizabeth Guzzo
October 22, 2021

Page 10

1    Q    Have you seen this document before?

2    A    Yes.

3    Q    What is it?

4    A    It is the Response to Plaintiffs' First

5    Set of Requests for Production to Defendant Ashley

6    Moody.

7    Q    That's Exhibit 1?

8    A    Yes.

9    Q    I may have sent the wrong document.  Give

10   me one second, please.

11   A    Okay.

12        MR. FARUQUI:  And, David, just FYI, we --

13        the file we received has seven exhibits, and

14        they all say HTFF Exhibit 1 through 7.

15        MR. FOX:  Oh, so that -- can we go off the

16        record for a second, Sandi?

17        MR. FARUQUI:  Sure.

18        (Discussion off the record.)

19   BY MR. FOX:.

20   Q    Do you now have in front of you a document

21   that is entitled:  "Subpoena to testify at a

22   deposition in a civil action"?

23   A    Yes, I have the correct one out.

24   Q    Great.

25        MR. FOX:  I'd like to mark that as

Elizabeth Guzzo
October 22, 2021

1      Exhibit 1 to this deposition.

2          (League Exhibit 1 was marked for

3      identification.)

4  BY MR. FOX:

5      Q      Have you seen this document before?

6      A      I'm not sure.

7      Q      Okay.  If you could go down to page --

8  page 6 of the PDF file, it says -- it has Page No. 3

9  at the bottom.  There's a heading towards the bottom

10  of the page, all caps in bold, that says "topics."

11          Can you let me know when you're there?

12      A      Yes, we're there.

13      Q      And do you see starting on that page and

14  continuing on the next few pages a list of nine

15  topics?

16      A      Yes.

17      Q      Have you seen these topics before?

18      A      Yes.

19      Q      When do you think you first saw them, if

20  you remember?

21      A      Probably a few weeks ago.

22      Q      And are you prepared to discuss these

23  topics on behalf of the Office of Attorney General

24  today?

25      A      Yes.

Elizabeth Guzzo
October 22, 2021

Page 12

1        Q     What did you do to prepare?

2        A     I spoke with my attorneys, I reviewed over

3    discovery, read through these.

4        Q     How long, approximately, do you think you

5    spoke with your attorneys in total?

6        A     Maybe a few hours.

7        Q     More than one meeting or one meeting?

8        A     More than one.

9        Q     And anyone aside from your attorneys

10   present?

11       A     No.

12       Q     And you said you reviewed discovery.  What

13   do you mean by that?

14       A     Some of the documents that we provided to

15   plaintiffs in their request for production.

16             MR. FARUQUI:  Do you -- I'm sorry to

17        interrupt.  Do you want this document still up?

18             MR. FOX:  You can take it down.

19             MR. FARUQUI:  Okay.  And I am sorry, we

20        don't have multiple screens, so whenever you're

21        done with a document, if you could let us know

22        and we'll switch back to the video.

23             MR. FOX:  Will do.  Thank you, Bilal.

24   BY MR. FOX:

25       Q     Did you review any documents in

Elizabeth Guzzo
October 22, 2021

Page 13

1    preparation for today that were not produced to us

2    in discovery?

3        A    No.

4        Q    Who's your employer?

5        A    The Attorney General.

6        Q    And how long have you worked for the

7    Attorney General?

8        A    For the Attorney General's office, almost

9    eight years.

10       Q    Have you been in the same position that

11   whole time?

12       A    No.

13       Q    What was the first position you held in

14   the Attorney General's office?

15       A    It's titled legislative assistant,

16   probably.

17       Q    And how long were you a legislative

18   assistant?

19       A    Probably five years.

20       Q    And what was your title after that?

21       A    Then I was senior legislative aide.

22       Q    And how long were you senior legislative

23   aide?

24       A    Up until two months -- or until September.

25       Q    And what's your title now?

Elizabeth Guzzo
October 22, 2021

Page 14

1        A      Director of legislative affairs.

2        Q      Who do you report to?

3        A      Richard Martin.

4        Q      And does anyone report to you?

5        A      No.

6        Q      Is there still -- is there now someone in

7    the office with the title legislative aide?

8        A      No.

9        Q      What's your educational background?

10       A      I have a bachelor's of science from

11   Florida State.

12       Q      So you're not an attorney?

13       A      No.

14              MR. FOX:  If you could put up exhibit,

15       what I'm going to mark as Exhibit 2.

16              Bilal, this was the file I sent called

17       Exhibit 2, and I will place it in the chat as

18       well.

19              (League Exhibit 2 was marked for

20       identification.)

21              MR. FARUQUI:  We have it up.

22   BY MR. FOX:

23       Q      Have you seen this document before?

24       A      Yes.

25       Q      And what is it?

Elizabeth Guzzo
October 22, 2021

Page 15

```
 1      A    It's the State of Florida, office of the

 2  Attorney General, I'd say organizational structure

 3  or chart.

 4      Q    And on the far-left side under

 5  "legislative affairs," that's you?

 6      A    Yes.

 7      Q    And at the top is the Attorney General,

 8  Ashley Moody?

 9      A    Yes.

10      Q    Everyone in the office reports to the

11  Attorney General ultimately?

12           MR. FARUQUI:  Object to form.

13      A    Ultimately, yes.

14  BY MR. FOX:

15      Q    Did you understand my question?

16      A    Yes.

17      Q    Do you see on the far right of this chart

18  the Office of Statewide Prosecution?

19      A    Yes.

20      Q    The Office of Statewide Prosecution

21  reports to the Attorney General?

22      A    Yes.

23      Q    What does the Office of Statewide

24  Prosecution do?

25      A    Prosecutes multi-jurisdictional cases for
```

Page 16

1    the state that are referred to him.

2        Q    And who would refer those cases to him?

3        A    Different state attorneys would, or we

4    have the authorities listed out in the statutes that

5    define the Office of Statewide Prosecution.

6        Q    And when you say that, how is that -- I

7    guess I want to understand what you -- what you mean

8    by that?

9        A    There are certain items enumerated out

10   that we have the authority to prosecute certain

11   cases on.  It has to be within our scope --

12       Q    And when you say "we" --

13       A    -- of that --

14       Q    I'm sorry.  I didn't mean to interrupt.

15       A    You're good.

16       Q    When you say "we," do you mean the Office

17   of Attorney General?

18       A    Yes.  Sorry.

19       Q    Three columns from the left, do you see

20   the division called "criminal and capital appeals"?

21       A    Yes.

22       Q    Do you know, do they handle all criminal

23   appeals in the state of Florida?

24       A    I'm not sure.

25       Q    Okay.  Florida also has state attorneys,

Elizabeth Guzzo
October 22, 2021

Page 17

1    right?

2          A    Yes.

3          Q    How many state attorneys, if you know?

4          A    We have one for all the circuits in

5    Florida, so I'm not sure of the exact answer.

6          Q    And what's the relationship between the

7    Office of Attorney General and the state attorneys?

8          A    We don't oversee them.

9          Q    And back on the chart, on the far-left

10   second row, do you see the general counsel?

11         A    Yes.

12         Q    What does the general counsel in the

13   Office of Attorney General do?

14         A    He is one of the attorneys that oversees

15   issues that are brought to him, he handles formal

16   opinion requests.  And as you can see, he has two

17   divisions that fall under him or her --

18         Q    And -- sorry.

19         A    -- him or her, whoever the general counsel

20   would be.

21         Q    And you mentioned formal opinions.  What

22   are formal opinion requests?

23         A    We have an opinions division, as you can

24   see, and there's a process for either elected

25   officials or certain people that -- there's a

Elizabeth Guzzo
October 22, 2021

Page 18

1   process of how they can issue -- or request us to

2   issue a formal opinion, usually a legal question, or

3   it has to be something with how it pertains to their

4   role as an elected official.

5       **Q    Can an official ask for an opinion on any**

6   **question of Florida law?**

7       A    No.

8       **Q    What types of questions can an official**

9   **request an opinion regarding?**

10      A    I can't speak verbatim for what it says,

11  but for most elected officials, it needs to be

12  within their duties and role as the elected

13  official.

14      **Q    Could a state attorney request an opinion**

15  **from the Office of Attorney General?**

16      A    I'm not sure if they're listed as one of

17  them.

18      **Q    Are the opinions issued by the opinions**

19  **division binding on other state officials?**

20      A    I'm not sure how to answer that.

21      **Q    If a state official requested an opinion**

22  **but disagreed with that opinion, would the state**

23  **official be free to disregard the opinion?**

24      A    I'm not sure.

25          MR. FOX:  You can take down that document,

Elizabeth Guzzo
October 22, 2021

Page 19

1          Bilal.  Thank you.

2                MR. FARUQUI:  Just a second.  Okay.

3     BY MR. FOX:

4          Q     If I use the term, which appears in the

5     subpoena, "challenged provisions," do you know what

6     I mean by that?

7          A     Yes.

8          Q     And just to make sure we're on the same

9     page, what I mean is drop box restrictions in Senate

10    Bill 90.

11              Do you know what I mean by that?

12         A     Yes.

13         Q     And I mean changes to the validity period

14    of vote-by-mail requests in Senate Bill 90.

15              Do you know what I mean by that?

16         A     Yes.

17         Q     I mean limits on the possession of

18    multiple vote-by-mail ballots by volunteers.

19              Do you know what I mean by that in Senate

20    Bill 90?

21         A     Yes.

22         Q     I mean warnings that third-party voter

23    registration organizations are required to convey to

24    potential voters.

25              Do you know what I mean by that in Senate

Elizabeth Guzzo
October 22, 2021

1    Bill 90?

2        A    Yes.

3        Q    And I mean restrictions on nonpartisan

4    activities near polling places in Senate Bill 90.

5             Do you know what I mean by that?

6        A    Yes.

7        Q    What I want to understand is what -- and

8    I'll start with a general question.  What is the

9    Office of Attorney General's role in enforcing those

10   challenged provisions that I just described?

11       A    We do not administer elections.

12       Q    The Office of Statewide Prosecution that

13   we talked about before, does that have authority to

14   prosecute violations of any of those provisions?

15       A    Yes.  If it's a multi-jurisdictional

16   criminal issue relating to, I would say, voter

17   fraud.

18       Q    And when you refer to that authority, does

19   that apply to any of the challenged provisions in

20   particular?

21       A    Yes.  To the collection of multiple

22   ballots.

23       Q    And the Office of Statewide Prosecution

24   reports to the Attorney General, right?

25       A    Yes.

Elizabeth Guzzo
October 22, 2021

Page 21

 1        Q      Is there anyone in the Office of Attorney

 2     General that could issue opinions regarding the

 3     interpretation of the challenged positions?

 4        A      Can you repeat that?

 5        Q      Yes.

 6               Is there anyone in the Office of Attorney

 7     General that could issue opinions as to the proper

 8     interpretation of any of the challenged provisions?

 9        A      I'm not sure.

10        Q      Just as an example, if the Secretary of

11     State wanted to know how to interpret the

12     limitations on the buffer zone around polling

13     places, could the Secretary of State request a legal

14     opinion from the Office of Attorney General?

15               MR. FARUQUI:  Object to form.

16        A      I'm not sure if that would fall within the

17     scope of her duties, if it's something that we would

18     issue an opinion on.

19     BY MR. FOX:

20        Q      If it did -- well, if -- if a state

21     attorney -- another example.

22               If a state attorney wanted an opinion on

23     the meaning of the ban on possessing multiple

24     vote-by-mail ballots, could a state attorney request

25     an interpretation from the Office of Attorney

Elizabeth Guzzo
October 22, 2021

Page 22

1   General?

2      A    I'm not sure.  I don't think that would be

3   something that we would issue one on.

4      Q    And if one of those opinions could be

5   requested and issued, do you know whether that

6   opinion would be binding on the person who requested

7   it?

8      A    I'm not sure.

9      Q    We talked -- I asked you a few questions

10  earlier about state attorneys, right?

11     A    Yes.

12     Q    Is there anyone who can direct state

13  attorneys on the meaning of particular offenses

14  within their jurisdiction?

15     A    I'm not sure.

16     Q    If the Attorney General disagreed with a

17  state attorney on the meaning of one of the

18  challenged provisions, is there anything the

19  Attorney General could do?

20     A    I'm not sure.

21     Q    If the Attorney General disagreed with the

22  state attorney on the validity of one of the

23  challenged provisions, is there anything the

24  Attorney General could do?

25     A    I'm not sure.  We don't oversee the state

Elizabeth Guzzo
October 22, 2021

Page 23

 1  attorneys.

 2      Q    But you're not sure if there might be

 3  something that the Attorney General could do?

 4      A    Yes, I'm not sure.

 5      Q    If the Attorney General discovers a

 6  criminal violation of one of the challenged

 7  provisions that is within the state attorney's

 8  jurisdiction, what would the Attorney General do?

 9           MR. FARUQUI:  Object to form.

10  BY MR. FOX:

11      Q    Let me reask that question.

12      A    Yeah.

13      Q    If the Attorney General discovers a

14  violation, a criminal violation of one of the

15  challenged provisions that is within the authority

16  of the state attorneys, what could the Attorney

17  General do?

18      A    I'm not sure what she could do.

19      Q    Could the Attorney General refer it to a

20  state attorney for prosecution?

21      A    I'm not sure of the structure of that.

22      Q    Do you know if the Office of Attorney

23  General refers criminal offenses that it learns of

24  to state attorneys?

25      A    I'm not sure.

Elizabeth Guzzo
October 22, 2021

1          Q     If the Attorney General believes that a

2     state attorney is wrongly refusing to prosecute a

3     particular crime among the challenged provisions, is

4     there anything the Attorney General can do?

5          A     I'm not sure.

6          MR. FOX:  Can you bring back up Exhibit 1,

7          please, Bilal.

8          MR. FARUQUI:  I got it up.  Is there a

9          particular page?

10          MR. FOX:  Please go to page 7 of the PDF,

11          which is page 4 of the document based on the

12          page numbers on the document.

13          MR. FARUQUI:  We're there.

14     BY MR. FOX:

15          Q     Do you see under No. 2, it says, "The

16     office's authority to interpret and enforce Florida

17     election and voting law and actions that have been,

18     will be, or could be taken by the office to

19     interpret or enforce the challenge provisions"?

20          A     Yes.

21          Q     Did you prepare to testify on behalf of

22     the Office Attorney General, Office of Attorney

23     General about this topic?

24          A     Yes.

25          Q     What did you do to prepare?

Page 25

```
 1       A     I discussed with my attorneys.
 2       Q     Anything else?
 3       A     No.
 4       Q     Based on that preparation, you don't know
 5   if the Office of Attorney General has any authority
 6   to act if it believes that a state attorney is
 7   wrongly refusing to prosecute a violation of one of
 8   the challenged provisions?
 9       A     Can you repeat that?
10       Q     Yes.
11             Based on your preparation on this topic,
12   you don't know whether the Office of Attorney
13   General has any authority to take action if the
14   Attorney General believes a state attorney is
15   wrongly refusing to prosecute a violation of one of
16   the challenged provisions?
17       A     Yes, I'm not sure.
18       Q     And you don't know under what
19   circumstances the Office of Attorney General has
20   authority to issue an interpretation of the
21   challenged provisions?
22             MR. FARUQUI:  Object to form.
23       A     Can you repeat that?
24   BY MR. FOX:
25       Q     Do you know based on your preparation
```

1    under what circumstances the Office of Attorney

2    General has the authority to issue an interpretation

3    of the challenged provisions?

4        A    Yeah.  I -- we do not issue the opinions

5    on that.  If someone asks, it needs to be within the

6    scope of their duties.

7        Q    But there are officials for whom the

8    challenged provisions are within the scope of their

9    duties, right?

10        A    Yes.  I mean, we have it listed out as to

11    who and what can ask, so yes, I'm not sure as to if

12    we could or couldn't.

13        Q    So to be clear, you're not -- you don't

14    know under what circumstances the Attorney General's

15    office might issue an opinion as to the meaning of

16    any of the challenged provisions?

17        A    Correct.

18        Q    And you don't know whether any opinion

19    that was issued would or would not be binding on the

20    official that requested it?

21        A    Yes.

22             MR. FOX:  You can take down that document.

23    Thank you.

24    BY MR. FOX:

25        Q    Does the Office of Attorney General have

Elizabeth Guzzo
October 22, 2021

1    any role in receiving allegations of voter fraud?

2         A    Can you repeat that?

3         Q    Does the Office of Attorney General have

4    any role in receiving allegations of voter fraud?

5         A    No, unless the case is referred to our

6    Office of Statewide Prosecution for a

7    multi-jurisdictional criminal case.

8         Q    If a citizen -- do citizens sometimes

9    submit information about alleged voter fraud to the

10   Office of Attorney General?

11        A    It could be possible.

12        Q    And what does the Office of Attorney

13   General do if that information is submitted?

14        A    If it comes in through our citizen

15   services hotline, it would be referred to the

16   correct party, either the supervisor of elections

17   for that county or local law enforcement, because

18   our office --

19        Q    Would it ever be referred -- excuse me.

20   Please continue.

21        A    I was going to say because our office is

22   not the correct entity for those complaints.

23        Q    When the office receives complaints like

24   that, does the office do any investigation of those

25   complaints?

Elizabeth Guzzo
October 22, 2021

Page 28

```
1        A    Unless it is referred back to our office

2   for the statewide prosecutor to review if it was a

3   multi-jurisdictional criminal case, that is when we

4   would do a review.

5        Q    Other than that circumstance involving the

6   Office of Statewide Prosecution, if the office

7   receives information about alleged voter fraud, does

8   the office do any investigation of that information?

9        A    I'm not sure.

10       Q    Let me try to ask that more concretely.

11            If a citizen submits to your tip line

12   information about alleged voter fraud and your

13   office refers it to someone else, does your office

14   do an investigation before referring it?

15       A    No.  It is -- they are sent to, like I

16   said, the correct entity, whether it be in the

17   supervisor of elections or a local law enforcement.

18       Q    And what I'm trying to understand --

19       A    They would need -- sorry -- it would

20   need --

21       Q    Excuse me.

22       A    Sorry.  It would need to be referred back

23   to our office if there was, from the supervisor of

24   elections or law enforcement or a state attorney, if

25   it was shown to be a multi-jurisdictional case, we
```

Elizabeth Guzzo
October 22, 2021

Page 29

```
 1   would do the investigation then, or we could.

 2       Q    I want to ask you briefly about the 2020

 3   elections in Florida.

 4            Are you aware there were three elections

 5   in Florida in 2020?

 6            MR. FARUQUI:  Object to form.

 7       A    Yes.

 8   BY MR. FOX:

 9       Q    Does the Office of Attorney General follow

10   the progress of those elections?

11            MR. FARUQUI:  Object to form.

12       A    No, we do not personally monitor them.

13   BY MR. FOX:

14       Q    Does the Office of Attorney General assess

15   after the fact whether those elections were

16   successful or not?

17       A    No.  We do not administer elections.

18       Q    Does the Office of Attorney General have

19   any view on whether the 2020 elections in Florida

20   were successful?

21            MR. FARUQUI:  Object to form.

22       A    No.  We don't administer elections, we

23   rely on what elections officials have told us that

24   the elections results were secure.

25
```

Elizabeth Guzzo
October 22, 2021

Page 30

```
 1   BY MR. FOX:
 2        Q    The Secretary of State is principally
 3   responsible for conducting elections in Florida,
 4   right --
 5             MR. FARUQUI:  Object to form.
 6   BY MR. FOX:
 7        Q    -- at the state level?
 8        A    Correct.
 9        Q    If the Secretary of State's office
10   concluded that the 2020 elections were successful,
11   safe, and secure, is there any reason that the
12   Office of Attorney General would disagree?
13        A    No.  We base it off of what elections
14   officials in the state say.
15        Q    I've asked you some questions already this
16   morning about Senate Bill 90, right?
17        A    Yes.
18        Q    And is the office -- did the Office of
19   Attorney General generally follow the introduction
20   of Senate Bill 90 in the Florida legislature?
21             MR. FARUQUI:  Object to form.
22        A    No.
23   BY MR. FOX:
24        Q    Are you aware of a bill called House Bill
25   7041?
```

Elizabeth Guzzo
October 22, 2021

Page 31

1        A    No.

2             Q       Did the Office of Attorney General have

3    any role in shaping Senate Bill 90 as it was

4    considered by the Florida legislature?

5             A    No.

6             Q       Did any legislator consult with the Office

7    of Attorney General regarding Senate Bill 90 before

8    that legislation was enacted?

9             A    No.

10            Q       Did the Office of Attorney General take

11   any position on Senate Bill 90 before that

12   legislation was enacted?

13            A    No.

14            Q       Did the Office of Attorney General hear

15   from supervisors of elections about Senate Bill 90

16   before Senate Bill 90 was enacted?

17            A    Not that I'm aware of.

18            Q       Did the Office of Attorney General hear

19   from members of the public about Senate Bill 90

20   before Senate Bill 90 was enacted?

21            A    Not that I'm aware of.

22            Q       Did the Office of Attorney General

23   communicate with anyone about Senate Bill 90 while

24   it was being considered by the legislature?

25            A    Not that I'm aware of.

Elizabeth Guzzo
October 22, 2021

1        Q    Is it possible in Florida for legislators

2   to request opinions from the Office of Attorney

3   General about draft or proposed legislation?

4        A    No.

5        Q    And I, therefore, assume that no

6   legislator asked for an opinion from the Office of

7   Attorney General about Senate Bill 90 while it was

8   being considered?

9        A    Not that I'm aware of.

10        Q    Has anyone asked for an opinion from the

11   Office of Attorney General about Senate Bill 90

12   since it's been enacted?

13             MR. FARUQUI:  I'm going to object to any

14        joint common interest privileged conversations

15        between the defendants.

16             MR. FOX:  That's fair.  Let me rephrase my

17        question.

18   BY MR. FOX:

19        Q    Earlier you mentioned a formal opinion

20   issuing process within the Office of Attorney

21   General, right?

22        A    Yes.

23        Q    Specifically with respect to that formal

24   process of issuing formal opinions, has anyone

25   requested a formal opinion from the Office of

Elizabeth Guzzo
October 22, 2021

Page 33

1    Attorney General about Senate Bill 90 since Senate

2    Bill 90 was enacted?

3         A    No.

4         Q    Has the Office of Attorney General done

5    any analysis on the effects of Senate Bill 90 on

6    voting in Florida?

7         A    No.

8         Q    Any analysis on the effects of Senate

9    Bill 90 on black or Latino voters specifically?

10        A    No, not that I'm aware of.

11        Q    Has the Office of Attorney General done

12   any analysis on the costs of Senate Bill 90?

13        A    No, not that I'm aware of.

14        Q    Has the Office of Attorney General

15   reviewed any information on the effects of Senate

16   Bill 90 on voting in Florida?

17             MR. FARUQUI:  I'm going to object to the

18        extent any work product after the litigation

19        would fall under this question and instruct the

20        witness not to answer about that.

21             MR. FOX:  I'll rephrase the question.

22   BY MR. FOX:

23        Q    Has the Office of Attorney General,

24   outside of any work product in this litigation,

25   reviewed any information on the effects of voting --

Page 34

1    on the effects of Senate Bill 90 on voting in

2    Florida?

3         A    Can you say it one more time?

4         Q    Yes.

5              Aside from any work product in this

6    litigation, has the Office of Attorney General

7    reviewed any information about the effects of Senate

8    Bill 90 on voting in Florida?

9         A    No, not that I'm aware.

10        Q    And aside from any work product in this

11   litigation, has the Office of Attorney General

12   reviewed any information on the effects of Senate

13   Bill 90 on black or Latino voters specifically?

14        A    No, not that I'm aware of.

15        Q    And aside from any work product in this

16   litigation, has the Office of Attorney General

17   reviewed any information on the costs resulting from

18   Senate Bill 90?

19        A    I believe the Florida Elections Commission

20   had sent us some -- a request for more money if this

21   went through, but that was prior.

22        Q    What is the Florida Elections Commission?

23        A    It is -- it's -- it's housed within the

24   office in the -- in the budget sense.  And during

25   the legislative process, they had requested some

Elizabeth Guzzo
October 22, 2021

1    more funds if it were to go through.  So I'm not

2    sure if that would be applicable to what you're

3    asking.

4         Q    So the Florida Elections Commission is

5    within the Office of Attorney General?

6              MR. FARUQUI:  Object to form.

7         A    I don't -- no, not within -- I don't

8    believe the structure is.

9    BY MR. FOX:

10        Q    So I think -- I'm just trying to

11   understand your prior answer.  I think you said that

12   the office, the Florida Elections Commission

13   requested additional funding from the Office of

14   Attorney General if Senate Bill 90 were to be

15   passed.  And I am trying to understand why that

16   would happen.

17        A    Not from us.  In the budget sense, they

18   are -- I'm -- I'm not sure as to how they're

19   attached, but it would have had to go through the

20   budgetary process.  So not funds directly from us.

21   It would be from general revenue.

22        Q    Does the Attorney General have any

23   authority over the Florida Elections Commission?

24        A    Not that I'm aware of.

25        Q    The Florida Elections Commission does not

Page 36

```
1    report to the Attorney General?

2         A    Correct.

3         Q    Aside from this request for additional

4    funds from the Florida Elections Commission, did the

5    Florida attorney general's office review any

6    information on the costs of Senate Bill 90?

7         A    No, not that I'm aware of.

8         Q    Do you know why the Florida Elections

9    Commission thought that -- or what the basis was for

10   the Florida Elections Commission's request for

11   additional money if Senate Bill 90 was passed?

12        A    No.  I'm just generally aware that there

13   was an e-mail in the production.  I would have to

14   see it for specifics.

15        Q    Okay.  Are you familiar generally with

16   vote by mail in Florida?

17        A    Generally.

18        Q    Vote by mail has become more common in

19   Florida in the last several election cycles, right?

20        A    Right, I'm not one to say.

21        Q    Does the Office of Attorney General have

22   an opinion on vote by mail in Florida?

23             MR. FARUQUI:  Object to form.

24   BY MR. FOX:

25        Q    Yeah.  Let me clarify that question.
```

Elizabeth Guzzo
October 22, 2021

Page 37

1          Does the Office of Attorney General have a

2  view on whether vote by mail in Florida is secure?

3      A    No.  We do not administer elections or

4  that, so we have not issued one that I'm aware of.

5      Q    And aside from any formal opinion, does

6  the Office of Attorney General just have a view in

7  the everyday sense on whether vote by mail in

8  Florida is secure?

9          MR. FARUQUI:  Object to form.

10     A    No, not that I'm aware of.

11  BY MR. FOX:

12     Q    Does the Office of Attorney General have a

13  view on whether vote by mail was secure specifically

14  in the 2020 election in Florida?

15     A    No.  We don't administer that, so we rely

16  on what other election officials have told us, that

17  it was secure.

18     Q    Do you know what a drop box is in the

19  context of elections in Florida?

20     A    Yes.

21     Q    Does the Office of Attorney General have a

22  view on whether drop boxes for the return of

23  vote-by-mail ballots are secure?

24     A    No.  We don't administer those either, so

25  we, once again, rely on election officials and what

Elizabeth Guzzo
October 22, 2021

1    they have said, that they are secure.

2        Q    **Has the Office of Attorney General done**

3    **any prosecutions related to drop boxes in 2020?**

4        A    Not that I'm aware of.

5        Q    **Any before 2020 that you're aware of?**

6        A    No, not that I can -- am aware of.

7        Q    **Do you know how Senate Bill 90 affects**

8    **drop boxes?**

9        A    I mean, from what it says in the bill,

10   that's the extent that our office has interpreted it

11   or reviewed it.

12       Q    **You're aware that Senate Bill 90 changed**

13   **the rules around the monitoring of drop boxes?**

14       A    Yes.

15       Q    **Changed the rules around the time when**

16   **certain drop boxes may be open for the delivery of**

17   **ballots?**

18       A    Yes.

19       Q    **And changed the rules around penalties if**

20   **the rules for drop boxes are violated?**

21       A    Yes.

22       Q    **Does the Office of Attorney General have**

23   **an understanding as to why those changes were made?**

24            MR. FARUQUI:  Let me object to the extent

25            this would be covering work product after the

Elizabeth Guzzo
October 22, 2021

1          litigation.  But the witness may answer to any

2          knowledge before litigation.

3          A     So can you repeat that?

4    BY MR. FOX:

5          Q     **Does the Office of Attorney General have**

6    **an understanding of why the changes that Senate**

7    **Bill 90 made to drop boxes were made?**

8          A     No, not that I am aware of.  We would --

9    we don't administer them or file -- or, you know,

10   legislation, so we would rely on the intent of the

11   legislature.

12         Q     **Does the Office of Attorney General have a**

13   **view on what State interests those changes to drop**

14   **boxes would serve?**

15               MR. FARUQUI:  Same objection.

16         A     No.  We would rely on the legislature or

17   other involved parties for the intent or the State

18   interest that they felt to pass the bill.

19   BY MR. FOX:

20         Q     **The Office of Attorney General did not**

21   **request that any of those changes to drop boxes be**

22   **made, right?**

23         A     No, not that I am aware of.

24         Q     **Are you familiar with how Senate Bill 90**

25   **affected the period for which vote-by-mail requests**

Elizabeth Guzzo
October 22, 2021

Page 40

 1   are valid and enforced?

 2        A    Yes.

 3        Q    Does the Office of Attorney General have a

 4   view on the wisdom of that change?

 5             MR. FARUQUI:  Same objection.

 6             MR. FOX:  About -- just to be clear, about

 7        the work product?

 8             MR. FARUQUI:  Yes.  If you -- if you'd

 9        like we can just make a standing objection as

10        to having her answer anything, you know, after

11        the litigation started.  Is that fine?

12             MR. FOX:  No.  I'd actually prefer that

13        you object specifically to questions so I know

14        where I finish it.

15             MR. FARUQUI:  That's fine.

16        A    So can you repeat that?

17   BY MR. FOX:

18        Q    Yes.

19             Does the Office of Attorney General have a

20   view on the wisdom of the changes that Senate

21   Bill 90 made to the period for which vote-by-mail

22   ballots are valid?

23             MR. FARUQUI:  Object to the extent work

24        product is implicated.

25        A    No, not that I'm aware of.

Elizabeth Guzzo
October 22, 2021

Page 41

1   BY MR. FOX:

2       Q    Are you aware of any complaints that the

3   Office of Attorney General received about the

4   duration of vote-by-mail ballot requests before

5   Senate Bill 90?

6       A    No.

7       Q    Are you aware of any prosecutions by the

8   Office of Attorney General relating to the validity

9   period for vote-by-mail ballot requests before

10  Senate Bill 90?

11      A    No, not that I'm aware of.

12      Q    Is the Office of Attorney General aware of

13  any problems caused by the prior period for which

14  vote-by-mail ballot requests were valid?

15      A    No, not that I'm aware of.  We don't

16  administer that.

17      Q    Does the Office of Attorney General have a

18  view on what State interests, if any, are served by

19  Senate Bill 90's changes to the vote-by-mail ballot

20  validity period?

21           MR. FARUQUI:  Object to the extent work

22      product is implicated.

23      A    No, we don't.  We rely on the

24  legislator -- the legislature and any other election

25  officials for what State interests would be.

Elizabeth Guzzo
October 22, 2021

Page 42

1    BY MR. FOX:

2        Q    Do you know what a third-party voter

3    registration organization is?

4        A    Yes.

5        Q    What is a third-party voter registration

6    organization?

7        A    A group who is -- who gets other people to

8    register.  I don't -- I guess solicitation of

9    voters.

10       Q    Does the Office of Attorney General have a

11   role in regulating third-party voter registration

12   organizations?

13       A    No, not that I'm aware of.

14       Q    Does the Office of Attorney General

15   receive complaints about third-party voter

16   registration organizations?

17       A    There may have been some in discovery

18   produced.  I can't remember details.

19       Q    If the Office of Attorney General does not

20   have a role in regulating third-party voter

21   registration organizations, what does it do if it

22   receives complaints about third-party voter

23   registration organizations?

24       A    I'm sorry.  Can you say it one more time?

25       Q    Yeah.  Let me -- let me ask a simpler

Elizabeth Guzzo
October 22, 2021

Page 43

1    question.

2          If the Office of Attorney General receives

3    complaints about third-party voter registration

4    organizations, does it forward them to the Secretary

5    of State?

6       A    I would say either the Secretary of State

7    or supervisor of elections if it comes through our

8    hotline.

9       Q    The Office of Attorney General wouldn't

10   investigate those complaints?

11      A    Not that I'm aware of.

12      Q    Are you familiar with the rules that apply

13   to third-party voter registration organizations

14   before Senate Bill 90?

15      A    No.

16      Q    Are you aware of the options that were

17   available to enforce deadlines applicable to

18   third-party voter registration organizations before

19   Senate Bill 90 was enacted?

20      A    Sorry.  Can you repeat that?

21      Q    Yes.

22          Are you aware of the options that were

23   available to enforce deadlines on voter registration

24   forms before Senate Bill 90 was enacted?

25      A    No.

Elizabeth Guzzo
October 22, 2021

1        Q        Does the Office of Attorney General have a
2   view on whether the enforcement mechanisms
3   applicable to third-party voter registration
4   organizations were adequate before the enactment of
5   Senate Bill 90?
6                MR. FARUQUI:  Object to the extent work
7           product is implicated.
8        A     No, not that I'm aware.
9   BY MR. FOX:
10        Q        The Office of Attorney General did not
11   request any changes to the regulation of third-party
12   voter registration organizations; is that right?
13        A     No, we did not.
14        Q        Does the Office of Attorney General have a
15   view on what state interests, if any, are served by
16   Senate Bill 90's changes to the rules governing
17   third-party voter registration organizations?
18                MR. FARUQUI:  Object to the extent work
19           product is implicated.
20        A     No.  We don't pass the legislation, so we
21   rely on the legislators and other election officials
22   to tell us what the interest would be or the
23   legislative intent.
24   BY MR. FOX:
25        Q        Has the Office of Attorney General done

Elizabeth Guzzo
October 22, 2021

Page 45

1     any analysis of other ways of serving the goals of

2     Senate Bill 90's changes to the rules applicable to

3     third-party voter registration organizations?

4               MR. FARUQUI:  Object to form.

5          A    No, not that I'm aware of.

6     BY MR. FOX:

7          Q    You're aware that one of the changes

8     Senate Bill 90 makes to third-party voter

9     registration organizations is to require that they

10    recite a warning to potential voters who may

11    register with them?

12              MR. FARUQUI:  Object to form.

13         A    Yes.

14    BY MR. FOX:

15         Q    Does the Office of Attorney General have a

16    view on whether that required warning does anything

17    to prevent fraud specifically?

18              MR. FARUQUI:  Object to the extent work

19         product is implicated.

20         A    No.  That would -- not that I'm aware of.

21    BY MR. FOX:

22         Q    Before the enactment of Senate Bill 90, do

23    you agree that individuals were generally permitted

24    to collect vote-by-mail ballots as long as they were

25    not being paid to do so?

Elizabeth Guzzo
October 22, 2021

 1      A      I'm sorry.  Can you say that...

 2      Q      Yes.

 3             Before Senate Bill 90, were individuals

 4      generally permitted to collect vote-by-mail ballots

 5      as long as they were not being paid to do so?

 6      A      I'm not sure.

 7      Q      Are you familiar with the rules that

 8      govern possession of vote-by-mail ballots in Florida

 9      before the enactment of Senate Bill 90?

10      A      Generally aware.

11      Q      And do you know whether those rules

12      allowed a volunteer to possess multiple vote-by-mail

13      ballots?

14      A      No.

15      Q      Let me try it this way.  How did Senate

16      Bill 90, in your understanding, change the rules

17      applicable to the possession of vote-by-mail

18      ballots?

19      A      That it changed that they could not have

20      more than one?  Is that what you're asking?

21      Q      I'm asking how Senate Bill 90 changed the

22      rules applicable to the possession of vote-by-mail

23      ballots?

24      A      I'm not sure.

25      Q      Do you have an understanding that Senate

Page 47

1      Bill 90 did change the rules applicable to the
2      possession of vote-by-mail ballots?
3           A    Yes.
4           Q    After Senate Bill 90, is a volunteer
5      allowed to possess three vote-by-mail ballots that
6      do not belong to immediate family members?
7           A    I don't know.
8           Q    Before Senate Bill 90, was a volunteer
9      allowed to possess three vote-by-mail ballots that
10     do not belong to immediate family members?
11          A    I'm not sure.
12          Q    Does the Office of Attorney General have
13     any view on whether the changes that Senate Bill 90
14     made to the rules governing the possession of
15     vote-by-mail ballots were necessary?
16               MR. FARUQUI:  Object to the extent work
17          product is implicated.
18          A    No, not that I'm aware of.
19     BY MR. FOX:
20          Q    Is the Office of Attorney General aware of
21     any problems caused by a volunteer's possession of
22     multiple vote-by-mail ballots in Florida in 2020?
23               MR. FARUQUI:  Object to the extent work
24          product is implicated.
25          A    Not that I'm aware of.

Elizabeth Guzzo
October 22, 2021

Page 48

1    BY MR. FOX:

2        Q    And outside of any work product produced

3    in this litigation, is the Office of Attorney

4    General aware of any problems caused by a

5    volunteer's possession of multiple vote-by-mail

6    ballots in 2018?

7        A    I'm not sure.

8        Q    Same question as for 2016?

9        A    Same answer, I'm not sure.

10       Q    Does the Office of Attorney General have a

11   view on what State interests, if any, are served by

12   Senate Bill 90's changes to the rules governing the

13   possession of vote-by-mail ballots?

14           MR. FARUQUI:  Object to the extent work

15       product is implicated.

16       A    No.  We don't administer that, so we rely

17   on the legislature and other elected -- or election

18   officials to tell the intent and state interests.

19   BY MR. FOX:

20       Q    Are you familiar with the changes that

21   Senate Bill 90 made to the rules governing the area

22   immediately around polling places?

23       A    Generally.

24       Q    How did Senate Bill 90 change the rules

25   governing the area immediately around polling

Elizabeth Guzzo
October 22, 2021

Page 49

1    places?

2         A    I'm not sure what the exact language said.

3              MR. FOX:  Well, can you pull up Exhibit 3.

4              (League Exhibit 3 was marked for

5         identification.)

6              MR. FARUQUI:  Is it the bill?  I think I

7         have it up.

8              MR. FOX:  It is the bill.

9              MR. FARUQUI:  Okay.

10             MR. FOX:  I'll put this in the chat, and

11        mark it as Exhibit 3.

12   BY MR. FOX:

13        **Q    And just to make sure we're looking at the**

14   **same document.  At the top of the screen, does it**

15   **say "Chapter 2021-11"?**

16        A    Yes.

17        **Q    Have you seen this before?**

18        A    Not -- I'm not sure if it was this exact

19   document, but I've seen Senate Bill 90.

20        **Q    And did you review Senate Bill 90 in**

21   **preparation for this deposition?**

22        A    Yes, I reviewed it.

23             MR. FOX:  Could you turn to pages 24 and

24        25 of this document, which -- so start out

25        towards the bottom of page 24.  What I want on

```
 1          the screen, Bilal, is Subsection B, which runs
 2          from page 24 to 25.
 3                 MR. FARUQUI:  On page 24 --
 4                 MR. FOX:  At the very bottom.
 5                 MR. FARUQUI:  I got -- I got it.  Thank
 6          you.  Yeah, I looked at the wrong B.
 7     BY MR. FOX:
 8          Q    Do you see here under Subsection B a
 9     paragraph that begins "For the purpose of this
10     subsection" and then continues on to the next page?
11          A    Yes.
12          Q    And on -- well, let me start here.
13               Looking at this document, do you see that
14     some words are crossed out and some words are
15     underlined?
16          A    Yes.
17          Q    And is it your understanding that the
18     words that are crossed out are words that Senate
19     Bill 90 removed from this statute?
20          A    Correct.
21          Q    And the words that are underlined are
22     words that Senate Bill 90 added to this statute?
23          A    Yes.
24          Q    So do you see that Senate Bill 90 added to
25     the statute the words "and engaging in any activity
```

Page 51

```
 1   with the intent to influence or effect of

 2   influencing a voter"?

 3        A    Yes.

 4        Q    And that is in addition to the definition

 5   of solicit or solicitation, right?

 6        A    Yes.

 7        Q    Does the Office of Attorney General have

 8   an understanding of how that change to this

 9   subsection affected the definition of the term

10   "solicit" or "solicitation"?

11             MR. FARUQUI:  Object to the extent work

12        product is implicated.

13        A    No.  Only to the extent of what the bill

14   says that it does.

15   BY MR. FOX:

16        Q    Has anyone asked the Office of Attorney

17   General for an opinion, a formal opinion, on the

18   effect of this language on the definition of solicit

19   or solicitation?

20        A    No.

21        Q    Could anyone in Florida state government

22   ask the Office of Attorney General for a formal

23   opinion on the effect of this change on the

24   definition of solicit or solicitation?

25        A    I'm not sure.
```

Elizabeth Guzzo
October 22, 2021

Page 52

```
 1        Q    If such an opinion could be requested,
 2   would it be binding on the official who requested
 3   it?
 4        A    I'm not sure.
 5        Q    Do you have -- "you," the Office of
 6   Attorney General, have any understanding of how
 7   specifically the addition of this phrase that I read
 8   before changes the scope of the prohibition on
 9   solicitation?
10             MR. FARUQUI:  Object to the extent work
11        product is implicated.
12        A    Can you say that again?
13   BY MR. FOX:
14        Q    Yeah.
15             Does the Office of Attorney General have
16   any understanding, outside of work product in this
17   litigation, as to how the addition of this phrase to
18   this definition changes the scope of what
19   solicitation is prohibited?
20        A    Outside of what this language says or what
21   the legislative intent was from the legislature, not
22   that I am aware of.
23        Q    Does the Office of Attorney General have
24   an understanding, aside from any work product in
25   this litigation, as to whether this addition of a
```

Elizabeth Guzzo
October 22, 2021

Page 53

1  phrase in this definition did change the scope of

2  solicitation that is prohibited?

3        A     Not that I'm aware of.

4        Q     And to your knowledge and the knowledge of

5  the Office of Attorney General, no one has requested

6  an interpretation from the Office of Attorney

7  General outside of this litigation on the meaning of

8  this new definition?

9        A     You said to my knowledge?

10       Q     And the knowledge of the OAG.

11       A     Yes, I don't believe so.

12       Q     Does the Office of Attorney General have

13  an opinion on what State interests, if any, are

14  served by this amendment to the definition of

15  solicit or solicitation?

16             MR. FARUQUI:  Object to the extent work

17        product is implicated.

18       A     No.  We would rely on the legislature and

19  other election officials to let us know the State

20  interests.

21  BY MR. FOX:

22       Q     The Office of Attorney General did not

23  request this change to this definition?

24       A     No.

25             MR. FOX:  We've been going for about an

Page 54

```
 1       hour.  I think now would be a good time to take

 2       a short break.  I have a slightly different

 3       line of questions.

 4            MR. FARUQUI:  Okay.

 5            (A recess took place from  10:36 a.m. to

 6       10:45 a.m.)

 7  BY MR. FOX:

 8       Q    Just a few more questions about the

 9  third-party voter registration organizations

10  provisions in Senate Bill 90.

11            Do you recall we were talking about those

12  earlier?

13       A    Yes.

14       Q    Does the Office of Attorney General have

15  the authority to enforce the requirement that

16  third-party voter registration organizations issue a

17  warning to potential voters?

18       A    I'm not sure of the specifics.  I'd have

19  to look at the language.

20       Q    Are you familiar with the term "voter

21  fraud"?

22       A    Yes.

23       Q    What does the term "voter fraud" mean to

24  you?

25       A    It's kind of a broad definition of any
```

Elizabeth Guzzo
October 22, 2021

Page 55

1   fraudulent activity relating to voting in an
2   election.
3        **Q      And does the phrase "unlawful voting**
4   **conduct" have a meaning to you?**
5        A      Generally.
6        **Q      And what generally does it mean to you?**
7        A      Any unlawful activity, so illegal activity
8   relating to it.
9        **Q      And "it" being voting?**
10       A      Yes.
11       **Q      Does the Office of Attorney General ever**
12  **receive voter fraud complaints?**
13       A      I believe -- I mean, I'll have to look
14  back through specifics but, yes, we have, I'm sure.
15       **Q      And when you receive those complaints,**
16  **what does the Office of Attorney General do with**
17  **them?**
18       A      Same as mentioned before, we would refer
19  the complaints out to the supervisor of elections
20  office or local law enforcement.  If -- if it was a
21  multi-jurisdictional criminal activity that was
22  referred to our statewide prosecution, they could
23  handle it; but if it's a constituent complaint,
24  that's when it would be referred to the other
25  divisions.

Page 56

```
 1       Q    And for those complaints that are referred
 2   to the other divisions, does the Office of Attorney
 3   General do any investigation of its own?
 4       A    If a case was referred to us, we would
 5   investigate, from either, I guess, the Secretary of
 6   State or if it's a multi-jurisdictional criminal
 7   activity, then we would.
 8       Q    Under what circumstances would a case be
 9   referred to the Office of Attorney General by the
10   Secretary of State?
11            MR. FARUQUI:  Objection.  Calls for
12       speculation.
13   BY MR. FOX:
14       Q    Let me clarify my question.  I'm not
15   asking for like discretionary determinations.  I
16   just want to understand sort of the requirements --
17   well, let me -- let me start over.
18            Has the Secretary of State ever referred
19   voter fraud complaints to the Office of Attorney
20   General?
21       A    I'm not sure if that was in the discovery
22   or not.
23       Q    Aside from what was or wasn't in the
24   discovery, has the Secretary of State ever referred
25   voter fraud complaints to the Attorney General's
```

Elizabeth Guzzo
October 22, 2021

Page 57

1   office?

2       A    I can't speak to -- or I'm not sure of

3   specifics.

4       Q    I understand that voter fraud complaints

5   that involve multi-jurisdictional conduct might get

6   referred to the Attorney General's office of

7   Statewide Prosecution, right?

8       A    Yes.

9       Q    Could voter fraud complaints that do not

10  involve multi-jurisdictional conduct ever get

11  referred to the Office of Attorney General?

12      A    Can you say that again?

13      Q    Could election fraud complaints that do

14  not involve multi-jurisdictional criminal conduct

15  ever get referred to the Office of Attorney General?

16      A    Third-party voter registration, our civil

17  department has an enforcement role.

18      Q    And what is the nature of the civil

19  department's enforcement role concerning third-party

20  voter registration organizations?

21      A    I'd have to refer to the statute for the

22  specifics.

23      Q    Do you have a general understanding of

24  that role?

25      A    Yes.

Elizabeth Guzzo
October 22, 2021

Page 58

```
 1        Q     What is that general understanding?
 2        A     I know that we can -- we have an
 3    enforcement aspect and -- if there is a violation of
 4    the third-party voter registration, if it's referred
 5    to our office from the Secretary of State.
 6        Q     And if a violation of the third-party
 7    voter registration requirement is referred to your
 8    office from the Secretary of State, what can your
 9    office do?
10        A     I'd have to read the language
11    specifically.  It's a civil enforcement.
12        Q     Are you familiar with civil enforcement
13    actions that your office has brought against
14    third-party voter registration organizations?
15              MR. FARUQUI:  Object to form.
16        A     I'm not sure.
17    BY MR. FOX:
18        Q     Do you have, does the Office of Attorney
19    General have a view on whether the civil enforcement
20    authority it has against third-party voter
21    registration organizations was sufficient before the
22    adoption of Senate Bill 90?
23              MR. FARUQUI:  Objection to the extent work
24        product is implicated.
25        A     Can you, please, say it again?
```

Elizabeth Guzzo
October 22, 2021

Page 59

 1   BY MR. FOX:

 2        Q    Yes.

 3             Does the Office of Attorney General have a

 4   view on whether its civil enforcement authority with

 5   respect to third-party voter registration

 6   organizations was sufficient before the adoption of

 7   Senate Bill 90?

 8             MR. FARUQUI:  Same objection.

 9        A    No, I'm not sure if we have.

10   BY MR. FOX:

11        Q    Are you aware of complaints about

12   third-party voter registration organizations before

13   the adoption of Senate Bill 90?

14        A    Anything that was produced in the

15   discovery would be what we have prior to this

16   litigation.

17        Q    And sitting here, you don't have an

18   understanding of whether that included complaints

19   about third-party voter registration organizations?

20        A    I can't recall the details of everything

21   that was in there.

22        Q    Do you have an understanding of whether

23   the Office of Attorney General is aware of any

24   incident in which a voter was prevented from voting

25   because of a delay in a third-party voter

Elizabeth Guzzo
October 22, 2021

Page 60

1    registration organization's submission of voter

2    registration forms?

3              MR. FARUQUI:   Objection to the extent work

4        product is implicated.

5        A    Sorry.   Can you say it one more time about

6    the delay?

7    BY MR. FOX:

8        Q    Does -- is the Office of Attorney General

9    aware of any incident in which a voter was prevented

10   from voting because of a third-party voter

11   registration organization's delay in submitting

12   completed voter registration forms?

13             MR. FARUQUI:   Same objection.

14       A    Generally.   I don't know the specifics.

15   BY MR. FOX:

16       Q    Based on your preparation, you are not

17   aware of any such incident; is that right?

18       A    I was made aware of an incident in

19   discovery, but I don't know the specifics of it.

20       Q    What incident were you made aware of?

21       A    From a supervisor of election saying that

22   they had had an instance of it.

23       Q    Which county did that occur?

24       A    I can't recall the specifics.

25       Q    Do you recall when, what year, or what

Elizabeth Guzzo
October 22, 2021

Page 61

1    election?

2        A    I don't.

3        Q    Do you recall how many voters were

4    affected?

5        A    No.  I was not made aware of specifics.

6        Q    Are you aware whether the Office of

7    Attorney General took enforcement action as a result

8    of that incident?

9        A    No.

10       Q    Is the Office of Attorney General aware of

11   any unlawful voting conduct in 2020 relating to drop

12   boxes?

13       A    No, not that I'm aware of.

14       Q    How about in 2018?

15       A    No, not that I'm aware of.

16       Q    Is the Office of Attorney General aware of

17   any unlawful voting conduct in 2020 relating to the

18   possession of multiple vote-by-mail ballots?

19       A    Not that I'm aware of.

20       Q    How about in 2018?

21       A    Not that I'm aware of.

22       Q    Is the Office of Attorney General aware of

23   any unlawful voting conduct in 2020 relating to the

24   four-year duration of requests for vote-by-mail

25   ballots?

Elizabeth Guzzo
October 22, 2021

Page 62

```
 1        A     Not that I'm aware of.
 2        Q     How about in 2018?
 3        A     Not that I'm aware of.
 4        Q     Is the Office of Attorney General aware of
 5    any unlawful voting conduct relating to assistance
 6    provided to persons with disabilities in 2020?
 7              MR. FARUQUI:  Object to form.
 8        A     No, not that I'm aware of.
 9    BY MR. FOX:
10        Q     How about in 2018?
11        A     No, not that I am aware of.
12              MR. FARUQUI:  Same objection.
13              MR. FOX:  Ms. Guzzo, thank you very much
14        for your time.  Those are all the questions I
15        have for you.  I know that another plaintiff's
16        group also has questions.
17              Before we shift to that, I do just want to
18        say, Bilal, that I have serious concerns about
19        the witness's preparation in particular on the
20        topic of enforcement authority.
21              I think Topic 2 clearly covered a lot of
22        questions for which the witness was not
23        prepared to answer, including specifically the
24        enforcement authority for third-party voter
25        registration organizations.  That's not my only
```

Elizabeth Guzzo
October 22, 2021

Page 63

```
 1        concern, but it's one of the biggest concerns
 2        since the office does have enforcement
 3        authority and conceded as much.  So I have to
 4        reserve my rights on that.  I am concerned
 5        about that.  But I don't have more questions
 6        for the witness at this time.
 7            MR. FARUQUI:  Understood.  We can talk
 8        about it later.
 9            MS. TARPLEY:  So I do have some additional
10        questions, but I think some of them have been
11        covered, so it might be helpful to take a break
12        so I can review.  Does 20 minutes sound okay?
13            MR. FARUQUI:  Sure.  Whatever you need.
14            (A recess took place from  10:57 a.m. to
15        11:20 a.m.)
16                    CROSS EXAMINATION
17    BY MS. TARPLEY:
18        Q    Well, my name is Carlton Tarpley with
19    Baker McKenzie.  I'm appearing on behalf of
20    plaintiffs in the Harriet Tubman Freedom Fighters
21    case.  I'm just going to ask a couple of questions.
22            Similar to Mr. Fox, when I refer to SB 90
23    as enacted or Section 7 of SB 90, I'm referring to
24    Section 7 of SB 90, which is Florida Chapter
25    2021-11.  Is that okay?
```

Elizabeth Guzzo
October 22, 2021

Page 64

1        A     Yes.

2        Q     Great.  And when I say "3PVRO," I'm

3    referring to third-party voter registration

4    organizations.  Understood?

5        A     Yes.

6        Q     Florida Statute, Section 97.0575,

7    Subsection (4) states that:  "If the Secretary of

8    State reasonably believes that a person has

9    committed a violation of this section, the Secretary

10   may refer the matter to the Attorney General for

11   enforcement."

12              "The Attorney General may institute a

13   civil action for violation of this section in order

14   to prevent a violation of this section.  An action

15   for relief may include a permanent or temporary

16   injunction, a restraining order, or any other

17   appropriate order."

18              I am going refer to this as

19   Subsection (4).  Is that okay?

20       A     Yes.

21       Q     With respect to Subsection (4), do you

22   know or are you aware of how the Florida Attorney

23   General handles referrals from the Secretary of

24   State?

25              MR. FARUQUI:  Object to form.

Elizabeth Guzzo
October 22, 2021

Page 65

1        A    I'm sorry.  Can you say that again?

2   BY MS. TARPLEY:

3        Q    With respect to Subsection (4), do you

4   know how the Florida Attorney General handles

5   referrals from the Secretary of State?

6        A    The cases referred to us, it depends on

7   the facts and circumstances of the case for the

8   investigation.

9        Q    What type of facts and circumstances does

10  your office consider?

11       A    I'm not aware of the specifics that the

12  civil division investigates.

13       Q    Do you know if the office has any

14  documents setting forth procedures or protocols for

15  handling referrals?

16       A    I'm not aware.

17       Q    Is there an understanding within the

18  office regarding how referrals are handled?

19            MR. FARUQUI:  Object to form.

20  BY MS. TARPLEY:

21       Q    You may answer the question.

22       A    I'm not sure.

23       Q    Okay.

24       A    I'm not aware of any document or

25  understanding.

Elizabeth Guzzo
October 22, 2021

Page 66

1         Q      Okay.  And did you produce all documents

2    reflecting all actions taken by the AG under

3    Subsection (4) from 2012 to present?

4              MR. FARUQUI:  Object to form.

5         A      Can you say it one more time, did we

6    produce what?

7    BY MS. TARPLEY:

8         Q      All documents reflecting all actions taken

9    by the AG under section -- Subsection (4) from 2012

10    to present?

11              MR. FARUQUI:  Object to form.

12         A      I cannot recall every single document, but

13    to the best of my knowledge, everything was

14    produced.

15    BY MS. TARPLEY:

16         Q      I'm not talking about all documents.  I'm

17    just talking about from 2012 to present.

18              MS. TARPLEY:  I guess can we pull up what

19         has been marked as HTFF Exhibit 1.

20              MR. FARUQUI:  We've got it up.

21              MS. TARPLEY:  Great.  Can we turn to

22         page 3?

23              THE STENOGRAPHER:  Is anyone going to put

24         it in the chat box for the reporter?

25              MS. TARPLEY:  Yes.  I can -- I can e-mail

Elizabeth Guzzo
October 22, 2021

Page 67

```
 1       it.

 2               THE STENOGRAPHER:  Okay.  That will be

 3       fine.  At the end?  Yeah, that's fine.

 4               MS. TARPLEY:  Perfect.  Great.

 5               MR. FARUQUI:  We're on page 3.

 6               (HTFF Exhibit 1 was marked for

 7       identification.)

 8   BY MS. TARPLEY:

 9       Q    Okay.  Excuse me.  I'm going to back up a

10   little bit.

11               What is this document?

12       A    Can I scroll up?  It is the responses to

13   plaintiffs' first set of request for production to

14   defendant Ashley Moody.

15       Q    Okay.  And can you turn to Page No. 6,

16   Request for Production No. 12.

17       A    Okay.

18       Q    And this -- and this reads -- or this

19   request states that -- excuse me.

20               This request is for "All documents and

21   communications regarding evidence or incidence of

22   fraud or registration fraud in connection with

23   third-party voter registration organizations,

24   including documents and communications regarding

25   reporting, investigating, identifying, or
```

Elizabeth Guzzo
October 22, 2021

1   prosecuting incidences of said fraud."

2          Your response is "Responsive documents

3   have been produced.  See Bates numbers stated in the

4   response there."

5          Do you stand by that answer?

6      A    Yes.

7      Q    So did you -- did you produce all

8   documents reflecting actions taken by the AG under

9   Subsection (4) with respect to third-party voter

10  registration organizations from 2012 to present?

11          MR. FARUQUI:  Object to form.

12      A    Yes, what we produced there is the

13  responsive documents.

14  BY MS. TARPLEY:

15      Q    Has the AG initiated enforcement actions

16  under Subsection (4) against third-party voter

17  registration organizations without a referral from

18  the Secretary?

19      A    Not that I'm aware of.

20      Q    Okay.  What type of civil actions has the

21  AG pursued with respect to Subsection (4)?

22          MR. FARUQUI:  Object to form.

23      A    Sorry.  Can you say that again?  What type

24  of civil actions?

25

Elizabeth Guzzo
October 22, 2021

Page 69

1    BY MS. TARPLEY:

2        Q    -- has the AG pursued with respect to

3    Subsection (4)?

4              MR. FARUQUI:  Same objection.

5        A    I can't recall specifics.  Anything that

6    was responsive to anything we would have received,

7    we produced.

8    BY MS. TARPLEY:

9        Q    Okay.  And are you aware of any instances

10   in which the AG has pursued injunctive relief?

11       A    No, not that I'm aware of.

12       Q    Are you aware of any instances in which

13   the AG has pursued any restraining orders against

14   third-party voter registration organizations?

15       A    No, not that I'm aware of.

16       Q    Did you produce all civil actions pursued

17   by the AG under Subsection (4) with respect to

18   third-party voter registration organizations that

19   occurred from 2012 to present?

20             MR. FARUQUI:  Object to form.

21       A    We produced all responsive documents to

22   the -- when requested, so I can't recall specifics

23   of everything.

24   BY MS. TARPLEY:

25       Q    Can you confirm whether your office

Elizabeth Guzzo
October 22, 2021

Page 70

1    produced all enforcement actions against third-party

2    voter registration organizations for returning voter

3    registration forms late?

4         A    I'm sorry, can you repeat that?

5         Q    Can you confirm today that your office

6    produced all enforcement actions against a

7    third-party voter registration organization for

8    failing to return -- for -- excuse me.  For

9    returning voter registration forms late?

10        A    Yes, we produced all documents that

11   pertained to the request for production.

12        Q    And can you confirm that your office

13   produced all enforcement actions against third-party

14   voter registration organizations for failing to

15   return voter registration forms during the 2012 to

16   present time frame?

17        A    Yes, we produced all the documents that

18   were requested in the production.

19        Q    With respect to Subsection (4), did the AG

20   pursue any criminal actions from 2012 to present?

21             MR. FARUQUI:  Object to form.

22        A    No, not that I am aware of.

23   BY MS. TARPLEY:

24        Q    Are you aware of any enforcement actions

25   which the AG took with respect to third-party

Elizabeth Guzzo
October 22, 2021

Page 71

1    registration, voter registration organizations from

2    2012 to present?

3         A    No, not that I'm aware of.

4              MS. TARPLEY:  Can we pull up what has been

5         marked as HTFF Exhibit 3.

6              (HTFF Exhibit 3 was marked for

7         identification.)

8              MR. FARUQUI:  All right.

9              MS. TARPLEY:  And we'll refer to this as

10        Exhibit 5.  Excuse me.  My apologies.  Not HTFF

11        Exhibit 3.  Can we turn to Exhibit-- no, that's

12        correct.  I apologize.  HTFF Exhibit 3.

13   BY MS. TARPLEY:

14        Q    What is this document?

15        A    It says "Responses to plaintiffs' first

16   set of interrogatories to defendant Ashley Moody."

17        Q    Okay.

18             MS. TARPLEY:  And we'll refer to this as

19        Exhibit 5.  If you can scroll to page 3 of 7.

20             MR. FARUQUI:  Is there a particular

21        number?

22             MS. TARPLEY:  Number 5.

23             MR. FARUQUI:  We're there.

24   BY MS. TARPLEY:

25        Q    This asks you to "Identify all instances

Elizabeth Guzzo
October 22, 2021

1    where office suspected, investigated, or took any

2    enforcement action whatsoever against any

3    third-party voter registration organization from

4    2011 to present for any of the following activities:

5    A, returning voter registration forms outside the

6    statutory time period before an election; b,

7    returning voter registration forms after the voter

8    registration deadline before an election; C altering

9    a voter registration form; and D, any other

10   accusations of fraud related to a third-party voter

11   organization's handling of voter registration

12   forms."

13           Your answer was:  "An answer may be

14   determined by examining the responses and documents

15   produced for Requests 12 through 17 of plaintiffs'

16   first set of request for production to defendant

17   Ashley Moody."

18           Do you stand by this answer?

19       A    Yes.

20       Q    Okay.  I would like to shift back to

21   Section 97.0575 and talk a little bit about the

22   disclaimer and disclosure provisions of SB -- SB 90.

23           And when I say "disclaimer and disclosure

24   provisions," I'm referring to Subsection (3)a, "To

25   provide certain information to voter registration

Elizabeth Guzzo
October 22, 2021

Page 73

1    applicants."  And this is the section that's being

2    challenged in this litigation.

3                    Is that understood?

4        A    Yes.

5        Q    Okay.  So once the Secretary makes a

6    referral for a violation of a disclaimer and

7    disclosure provision, what is the AG's process for

8    determining enforcement?

9        A    I can't speak to specifics without

10   knowing, you know, facts or circumstances of an

11   individual case.

12       Q    At a high level, is there a general

13   process in place?

14       A    I can't speak to the specifics of it, but

15   I would assume the civil division would have that.

16       Q    Okay.  Are you aware --

17       A    I'd have to see the statutory language.

18       Q    Okay.  Are you aware of any enforcement

19   guidelines with respect to violations of the

20   disclaimer and disclosure requirement?

21       A    Can you repeat that?

22       Q    Are you aware of whether or not the

23   Florida AG has any enforcement guidelines with

24   respect to violations of the disclaimer and

25   disclosure requirement?

Elizabeth Guzzo
October 22, 2021

1      A      Not that I'm aware of.

2      Q      Do you know of someone who would be aware?

3      A      I'm not sure.  That would be the attorneys

4   in this case, maybe.

5      Q      Are you aware of whether or not the AG can

6   enforce a violation of the disclaimer and disclosure

7   provision without a referral from the Secretary?

8      A      I would need to read the -- or reference

9   the specifics of the statutory language.

10      Q      Do you know what type of civil actions the

11   AG can pursue with respect to disclaimer and

12   disclosure provision violations?

13      A      Once again, I'd have to reference the

14   specific statutory language.

15      Q      Are you aware if the AG can pursue any

16   type of criminal actions for someone who violates

17   the disclaimer and disclosure provision?

18          MR. FARUQUI:  Object to the extent work

19       product is implicated.

20      A      No, I'm not aware.

21   BY MS. TARPLEY:

22      Q      Do you know of someone who would be aware?

23      A      The attorneys in this case, if they've

24   considered that.

25      Q      So Subsection (4) allows the Attorney

Elizabeth Guzzo
October 22, 2021

Page 75

1    General to pursue an action for relief, such as an

2    injunction, restraining order, or any other order.

3            Do you know what could fall under any

4    other order for violations of the disclaimer and

5    disclosure requirement?

6        A    I would say what a judge deems are in

7    order based on the individual facts and

8    circumstances of the case.

9        Q    And what is this based off of?

10       A    Can you clarify that?

11       Q    Yeah.

12           Why would you say what a -- what a judge

13   deems applicable for the circumstances?

14       A    Because it would depend on the facts and

15   circumstances of an individual case that is brought

16   before the judge.

17       Q    Well, what about what the AG can pursue;

18   is there any type of relief besides an injunction or

19   restraining order that would be appropriate for the

20   disclaimer and disclosure requirement violation?

21       A    I'm not an attorney, I can't speak to the

22   specifics of that.

23       Q    Are you aware if the AG can revoke the

24   status of a third-party voter registration

25   organization for violating the disclaimer and

Elizabeth Guzzo
October 22, 2021

 1    disclosure requirement?

 2         A    No, I'm not aware.

 3         Q    Do you know who could be the subject of an

 4    enforcement action for violation of the disclaimer

 5    and disclosure provision?

 6         A    Can you repeat that?

 7         Q    Do you know who could be the subject of an

 8    enforcement action for violation of the disclosure

 9    and disclaimer provision?

10         A    No.

11         Q    Could enforcement be against a third-party

12    voter registration organization as an entity?

13         A    I can't speak to the specifics of that.

14    I'm not the attorney, so I'm not sure.

15         Q    Do you know whether or not enforcement

16    could be against individual members of a third-party

17    voter registration organization for violation of a

18    disclaimer and disclosure provision?

19         A    I'd have to refer to the specifics of the

20    language.  I'm not sure.

21         Q    Are you aware if enforcement could be

22    against individual members of a third-party voter

23    registration organization?

24         A    Again, I'm not sure of the specifics.  I'd

25    have to see the language.

Elizabeth Guzzo
October 22, 2021

Page 77

1          Q      And you're aware that one of the topics of

2     this deposition, as highlighted in Exhibit 1, is

3     "The office's authority to interpret and enforce

4     Florida election and voting laws and any actions

5     that have been, will be, or could be taken by the

6     office to interpret or enforce the challenged

7     provisions"?

8          A      Yes.

9          Q      You're aware, correct?

10              Okay.  And so you can't speak to who would

11    be the subject of an enforcement action for

12    disclaimer and disclosure violations?

13              MR. FARUQUI:  Object to form.

14         A      No.

15              MS. TARPLEY:  Similar to Mr. Fox, we have

16         concerns with the lack of knowledge that this

17         witness has with respect to the 30(b)(6)

18         topics, specifically, you know, the enforcement

19         and third-party voter registration organization

20         enforcement, so we leave open -- we leave this

21         deposition open and want to reserve that right.

22              MR. FARUQUI:  All right.  Well, I guess

23         since you're both addressing this, I think that

24         the witness repeatedly said that she'd like to

25         see the language of the statute, which I think

Elizabeth Guzzo
October 22, 2021

Page 78

1   is an entirely appropriate response to a

2   question asking somebody to interpret a

3   statute.  So I disagree with the assessment.

4        MR. FOX:  Bilal, there's a difference

5   between asking to see the language of the

6   statute about some specific question and

7   repeatedly not having preparation on the

8   general nature of the office's enforcement

9   authority.

10        The questions we asked were not limited to

11   sort of specific technical statutory questions.

12   Among other things, I asked a lot of questions

13   about in general the office's authority to

14   issue opinions and make -- take actions against

15   folks who -- against folks who -- like state

16   attorneys -- with respect to their enforcement.

17   There are a lot of things like that that are

18   not specific statutory questions and just

19   related to the office's enforcement authority

20   and determinative authority that are clearly

21   covered by Topic 2.

22        MR. FARUQUI:  I understand --

23        MR. FOX:  I don't think the issue is

24   limited to specifics and details of the

25   statute.

Elizabeth Guzzo
October 22, 2021

1        MR. FARUQUI:  I understand your concern,

2    and I think that the response to the questions

3    regarding the opinions was that she was aware

4    that -- of the process for opinions, and

5    she's -- she's told you that only certain

6    government entities can request opinions.  She

7    did not know verbatim the list of entities that

8    could request opinions, which is entirely

9    understandable.

10       And she -- those -- that -- that entire

11   procedure and process is publicly available on

12   the Attorney General's website, including the

13   list of people who can request opinions and

14   whether they're binding or not.

15       So to the extent that the witness was

16   required to be prepared about things that are

17   publicly available, I think that would be

18   unduly burdensome and unreasonable to the needs

19   of the case for her to spend her time preparing

20   for things that are basically available

21   publicly and delineated by statute.

22       MR. FOX:  It wasn't -- my question wasn't

23   limited to -- I wasn't asking for a specific

24   list of all officials who can interpret this

25   provision.  What I asked is, among other

Elizabeth Guzzo
October 22, 2021

1    things, if there was anyone who could request

2    an opinion on the meaning of the challenged

3    provisions, which is squarely and directly

4    within the topics and is not just a question

5    about what the statute means but also a

6    question about how the Office of Attorney

7    General applies and understands the statute.

8         MR. FARUQUI:  I mean, I would direct you

9    to the statute.  If you have additional

10   questions, you can -- excuse me.  I would

11   direct you to our website which has an entire

12   page explaining the opinion process and who can

13   ask and whether it's binding or not.

14        I mean, I -- I can't believe you expected

15   me to prepare the witness to answer something

16   that was publicly available on the office's

17   website.

18        MR. FOX:  So I think our opinions -- we're

19   going to have to disagree for right now.  I'm

20   not going to try to respond repeatedly.

21        The other area of concern, I mean, the

22   witness had no knowledge of enforcement actions

23   taken against third-party voter registration

24   organizations at all.  And that's not just

25   statutory information, it's also a question of

1    what has been done and what can be done against

2    third-party voter registration organizations

3    and what the office thinks about the

4    sufficiency of its authority against

5    third-party voter registration organizations.

6         And that is a whole area that is directly

7    relevant, clearly within the topics, there was

8    just no preparation on it.

9         It's not the witness's fault, I want to be

10   clear about that.  But we are -- I am very

11   concerned about that preparation issue.

12        MR. FARUQUI:  And again, I disagree.  The

13   witness told you that every enforcement --

14   well, I think if you review the records, you

15   can see that no enforcement action has been

16   taken ever.  And the witness told you that

17   any -- any such cases, the documents have been

18   produced.

19        If you want to know the specifics of every

20   case, you can ask about a specific case and

21   show her the document.  That's entirely up to

22   you.

23        But, I mean, the answer was everything

24   that this office ever done with respect to

25   third-party voter registrations that could be

Elizabeth Guzzo
October 22, 2021

Page 82

1    found based on the search terms, and et cetera,

2    et cetera, was produced.  If -- if the

3    documents show that we've never taken an

4    enforcement action, I think you have your

5    answer.

6         MR. FOX:  We're entitled -- I mean,

7    there's a reason why we take depositions after

8    we receive documents; we're entitled to ask an

9    informed representative of the office questions

10   about the issues.  And we couldn't do it

11   because she wasn't prepared.  Again, not her

12   fault, but a serious concern for us.  So I

13   don't think we're going to resolve this just

14   here talking now.

15        MR. FARUQUI:  No, I -- I understand

16   that -- that you're entitled to ask questions.

17   That's why we didn't oppose the deposition.

18   But to expect the witness to have every

19   document memorized and every statute memorized

20   is -- I don't think is within the realm of

21   reasonable preparation.

22        MR. FOX:  Yeah.  I just completely

23   disagree with that characterization of what we

24   were asking.

25        MR. FARUQUI:  That's fine.

Elizabeth Guzzo
October 22, 2021

1      MR. DEVANEY:  I think the -- I'll just
2  chime in.  I think the transcript will speak
3  for itself.  We were asking questions regarding
4  just the basic enforcement responsibilities and
5  powers of the Attorney General under the
6  relevant statutes, which the witness was not
7  able to answer.  Time and time again, it was "I
8  don't know, I'd have to refer to the attorneys
9  who worked on this case, the statute will speak
10  for itself."
11      I think the transcript, in fact, will
12  speak for itself, and we are going to leave
13  this deposition open.  And if we choose to seek
14  to continue with another 30(b)(6) witness, or
15  with Ms. Guzzo, you can make any objections at
16  that point in time.
17      MR. FARUQUI:  That's fine.
18      Was there anything else?
19      MR. FOX:  Not from me.
20      MS. TARPLEY:  No more questions from me.
21      MR. FARUQUI:  Okay.  Can we go off the
22  record now?
23      THE STENOGRAPHER:  Okay.  Off the record.
24      MR. FARUQUI:  I'm sorry.  I forgot -- can
25  we go back on?  I'm sorry.

Page 84

1          The witness will read.

2          That's all I had.

3          We'll order a copy if anybody else orders.

4          MR. FOX:  Yeah, we'll want a copy.

5          MR. DEVANEY:  Yeah, we'll -- we'll order a

6     copy.

7          (Proceedings concluded at 11:55 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Elizabeth Guzzo
October 22, 2021

Page 85

 1                    CERTIFICATE OF OATH

 2

 3    STATE OF FLORIDA          )

 4    COUNTY OF LEON            )

 5

 6

 7

 8            I, the undersigned authority, certify that

 9    30(b)(6) OFFICE OF THE ATTORNEY GENERAL (Elizabeth

10    Guzzo) remotely appeared before me on October 22,

11    2021 and was duly sworn.

12

13            SIGNED AND SEALED this 25th day of

14    October, 2021.

15

16

17

18

19

20            SANDRA L. NARGIZ, RPR, RMR, CRR, CCR
              snargiz@comcast.net
21            Commission #GG172788
              EXPIRES: APRIL 18TH, 2022
22

23

24

25

Elizabeth Guzzo
October 22, 2021

Page 86

1                    CERTIFICATE OF REPORTER

2    STATE OF FLORIDA       )

3    COUNTY OF LEON         )

4              I, SANDRA L. NARGIZ, Registered

5    Professional Reporter, certify that I was authorized

6    to and did stenographically report the deposition of

7    30(b)(6) of OFFICE OF THE ATTORNEY GENERAL

8    (Elizabeth Guzzo); that a review of the transcript

9    was requested, and that the foregoing transcript,

10   pages 1 through 84, is a true record of my

11   stenographic notes.

12             I further certify that I am not a

13   relative, employee, attorney or counsel of any of

14   the parties, nor am I a relative or employee of any

15   of the parties' attorney or counsel connected with

16   the action, nor am I financially interested in the

17   action.

18             DATED this 25th day of October, 2021.

19

20

21

22             SANDRA L. NARGIZ, RPR, RMR, CRR, CRC
               Notary Public
23             snargiz@comcast.net

24

25

Elizabeth Guzzo
October 22, 2021

                                                        Page 87

 1
     October 25, 2021
 2
     OFFICE OF THE ATTORNEY GENERAL (Elizabeth Guzzo)
 3   c/o  BILAL AHMED FARUQUI, ESQUIRE
           bilal.faruqui@myfloridalegal.com
 4

 5   RE:  League of Women Voters, et al., vs.
           Secretary Lee, et al.
 6         Case No.  4:21 cv 186-MW/MAF

 7   Dear Ms. Guzzo:

 8   Please take notice that on October 22, 2021, you
     gave your deposition in the above cause.  At that
 9   time you did not waive your signature.

10   The above-addressed attorney has ordered a copy of
     the transcript and will make arrangements with you
11   to read their copy.  Please execute the Errata
     Sheet, which can be found at the back of the
12   transcript, and have it returned to us at
     production@phippsreporting.com for distribution to
13   all parties.

14   If you do not read and sign the transcript within
     thirty (30) days, the original, which has already
15   been forwarded to the ordering attorney, may be
     filed with the Clerk of the Court.
16
     If you wish to waive your signature now, please sign
17   your name to the blank at the bottom of this letter
     and return to the address listed below.
18
     Very truly yours,
19

20   Sandra L. Nargiz, RPR, CMR, CRR
     Phipps Reporting, Inc.
21   1551 Forum Place, Suite 200-E
     West Palm Beach, Florida  33401
22
     I do hereby waive my signature.
23
     _____
24   30(b)(6) OFFICE OF THE ATTORNEY GENERAL
     (Elizabeth Guzzo)
25   Job No.  212964

Elizabeth Guzzo
October 22, 2021

1                              ERRATA SHEET

2              DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE

3    In Re:  League of Women Voters, et al., vs. Secretary
                           Lee, et al.
4                   Case No.: 4:21 cv 186-MW/MAF
                  30(b)(6) OFFICE OF THE ATTORNEY GENERAL
5                         (Elizabeth Guzzo)

6                          October 22, 2021

7    PAGE    LINE          CHANGE                    REASON
         _____
8        _____

9        _____

10       _____

11       _____

12       _____

13       _____

14       _____

15       _____

16       _____

17       _____

18   Under penalties of perjury, I declare that I have
     read the foregoing transcript of my deposition and I
19   hereby swear that my testimony therein was true at
     the time it was given and is now true and correct,
20   including any corrections and/or amendments listed
     above.

21

22   _____        _____

23   Date         30(b)(6) OFFICE OF THE ATTORNEY GENERAL
                  (Elizabeth Guzzo)
24   Job No.  212964

25

Elizabeth Guzzo
October 22, 2021

1

---

**Exhibits**

**Exhibit 001 Guzzo**
 5:18 9:22
 10:7,14 11:1,
 2 24:6

**Exhibit 002 Guzzo**
 14:15,17,19
 24:15

**Exhibit 003 Guzzo**
 11:8 49:3,4,
 11

**Exhibit 001 HTFF Guzzo**
 5:21 10:14
 66:19 67:6

**Exhibit 003 HTFF Guzzo**
 71:5,6,10,11,
 12

---

**(**

**(3)a**
 72:24
**(4)**
 64:7,19,21
 65:3 66:3,9
 68:9,16,21
 69:3,17 70:19
 74:25

---

**1**

**1**
 9:22 10:7,14
 11:1,2 24:6

66:19 67:6
77:2
**10:36**
 54:5
**10:45**
 54:6
**10:57**
 63:14
**11:20**
 63:15
**12**
 67:16 72:15
**17**
 72:15

---

**2**

**2**
 14:15,17,19
 24:15 62:21
 78:21
**20**
 63:12
**2011**
 72:4
**2012**
 66:3,9,17
 68:10 69:19
 70:15,20 71:2
**2016**
 48:8
**2018**
 48:6 61:14,20
 62:2,10
**2020**
 7:15 29:2,5,
 19 30:10
 37:14 38:3,5
 47:22 61:11,

17,23 62:6
**2021-11**
 49:15 63:25
**24**
 49:23,25
 50:2,3
**25**
 49:24 50:2

---

**3**

**3**
 11:8 49:3,4,
 11 66:22 67:5
 71:5,6,11,12,
 19
**30(b)(6)**
 6:10 77:17
**32399**
 7:7
**3PVRO**
 64:2

---

**4**

**4**
 24:11
**400**
 7:6

---

**5**

**5**
 71:10,19,22

---

**6**

**6**
 11:8 67:15

---

**7**

**7**
 10:14 24:10
 63:23,24
 71:19
**7041**
 30:25

---

**9**

**90**
 19:10,14,20
 20:1,4 30:16,
 20 31:3,7,11,
 15,16,19,20,
 23 32:7,11
 33:1,2,5,9,
 12,16 34:1,8,
 13,18 35:14
 36:6,11 38:7,
 12 39:7,24
 40:21 41:5,10
 43:14,19,24
 44:5 45:8,22
 46:3,9,16,21
 47:1,4,8,13
 48:21,24
 49:19,20
 50:19,22,24
 54:10 58:22
 59:7,13
 63:22,23,24
 72:22
**90's**
 41:19 44:16
 45:2 48:12
**97.0575**
 64:6 72:21
**9:32**

6:1

---

**A**

---

**a.m.**
  6:1 54:5,6
  63:14,15

**accusations**
  72:10

**action**
  10:22 25:13
  61:7 64:13,14
  72:2 75:1
  76:4,8 77:11
  81:15 82:4

**actions**
  6:24 24:17
  58:13 66:2,8
  68:8,15,20,24
  69:16 70:1,6,
  13,20,24
  74:10,16 77:4
  78:14 80:22

**activities**
  20:4 72:4

**activity**
  50:25 55:1,7,
  21 56:7

**addition**
  51:4 52:7,17,
  25

**additional**
  35:13 36:3,11
  63:9 80:9

**address**
  7:5

**addressing**
  77:23

**adequate**
  44:4

**administer**
  20:11 29:17,
  22 37:3,15,24
  39:9 41:16
  48:16

**adoption**
  58:22 59:6,13

**advance**
  8:6

**affairs**
  14:1 15:5

**affirm**
  6:3

**affirmed**
  6:12

**AG**
  66:2,9 68:8,
  15,21 69:2,
  10,13,17
  70:19,25
  73:23 74:5,
  11,15 75:17,
  23

**AG's**
  73:7

**aide**
  13:21,23 14:7

**allegations**
  27:1,4

**alleged**
  27:9 28:7,12

**allowed**
  46:12 47:5,9

**allows**
  74:25

**altering**
  72:8

**amendment**

53:14

**analysis**
  33:5,8,12
  45:1

**answering**
  8:19

**apologies**
  6:21 71:10

**apologize**
  8:6 71:12

**appeals**
  16:20,23

**appearing**
  63:19

**appears**
  19:4

**applicable**
  35:2 43:17
  44:3 45:2
  46:17,22 47:1
  75:13

**applicants**
  73:1

**applies**
  80:7

**appropriate**
  64:17 75:19
  78:1

**approximately**
  12:4

**Ashley**
  10:5 15:8
  67:14 71:16
  72:17

**aside**
  12:9 34:5,10,
  15 36:3 37:5
  52:24 56:23

**aspect**
  58:3

**assess**
  29:14

**assessment**
  78:3

**assistance**
  62:5

**assistant**
  13:15,18

**attorney**
  6:10,22 7:18
  8:16,20,25
  9:10 11:23
  13:5,7,8,14
  14:12 15:2,7,
  11,21 16:17
  17:7,13
  18:14,15
  20:9,24 21:1,
  6,14,21,22,
  24,25 22:16,
  17,19,21,22,
  24 23:3,5,8,
  13,16,19,20,
  22 24:1,2,4,
  22 25:5,6,12,
  14,19 26:1,
  14,25 27:3,
  10,12 28:24
  29:9,14,18
  30:12,19
  31:2,7,10,14,
  18,22 32:2,7,
  11,20 33:1,4,
  11,14,23
  34:6,11,16
  35:5,14,22
  36:1,5,21
  37:1,6,12,21
  38:2,22 39:5,

12,20 40:3,19
41:3,8,12,17
42:10,14,19
43:2,9 44:1,
10,14,25
45:15 47:12,
20 48:3,10
51:7,16,22
52:6,15,23
53:5,6,12,22
54:14 55:11,
16 56:2,9,19,
25 57:6,11,15
58:18 59:3,23
60:8 61:7,10,
16,22 62:4
64:10,12,22
65:4 74:25
75:21 76:14
79:12 80:6

**attorney's**
23:7

**attorneys**
12:2,5,9
16:3,25 17:3,
7,14 22:10,13
23:1,16,24
25:1 74:3,23
78:16

**authorities**
16:4

**authority**
16:10 20:13,
18 23:15
24:16 25:5,
13,20 26:2
35:23 54:15
58:20 59:4
62:20,24 63:3
77:3 78:9,13,
19,20 81:4

**available**
43:17,23
79:11,17,20
80:16

**aware**
29:4 30:24
31:17,21,25
32:9 33:10,13
34:9,14 35:24
36:7,12 37:4,
10 38:4,5,6,
12 39:8,23
40:25 41:2,7,
11,12,15
42:13 43:11,
16,22 44:8
45:5,7,20
46:10 47:18,
20,25 48:4
52:22 53:3
59:11,23
60:9,17,18,20
61:5,6,10,13,
15,16,19,21,
22 62:1,3,4,
8,11 64:22
65:11,16,24
68:19 69:9,
11,12,15
70:22,24 71:3
73:16,18,22
74:1,2,5,15,
20,22 75:23
76:2,21 77:1,
9 79:3

---

**B**

---

**bachelor's**
14:10

**background**

14:9

**Baker**
63:19

**ballot**
41:4,9,14,19

**ballots**
19:18 20:22
21:24 37:23
38:17 40:22
45:24 46:4,8,
13,18,23
47:2,5,9,15,
22 48:6,13
61:18,25

**ban**
21:23

**basis**
36:9

**Bates**
68:3

**believes**
24:1 25:6,14
64:8

**belong**
47:6,10

**biggest**
63:1

**Bilal**
12:23 14:16
19:1 24:7
50:1 62:18
78:4

**bill**
19:10,14,20
20:1,4 30:16,
20,24 31:3,7,
11,15,16,19,
20,23 32:7,11
33:1,2,5,9,

12,16 34:1,8,
13,18 35:14
36:6,11 38:7,
9,12 39:7,18,
24 40:21
41:5,10,19
43:14,19,24
44:5,16 45:2,
8,22 46:3,9,
16,21 47:1,4,
8,13 48:12,
21,24 49:6,8,
19,20 50:19,
22,24 51:13
54:10 58:22
59:7,13

**binding**
18:19 22:6
26:19 52:2
79:14 80:13

**black**
33:9 34:13

**bold**
11:10

**bottom**
11:9 49:25
50:4

**box**
19:9 37:18
66:24

**boxes**
37:22 38:3,8,
13,16,20
39:7,14,21
61:12

**break**
9:16,18 54:2
63:11

**briefly**
29:2

**bring**
 24:6
**broad**
 54:25
**budget**
 34:24 35:17
**budgetary**
 35:20
**buffer**
 21:12
**burdensome**
 79:18
**business**
 7:5

--------------------------------
                C

**Calls**
 56:11
**capital**
 16:20
**caps**
 11:10
**Carlton**
 63:18
**certified**
 6:13
**cetera**
 82:1,2
**challenge**
 24:19
**challenged**
 19:5 20:10,19
 21:3,8 22:18,
 23 23:6,15
 24:3 25:8,16,
 21 26:3,8,16
 73:2 77:6
 80:2

**changes**
 19:13 38:23
 39:6,13,21
 40:20 41:19
 44:11,16
 45:2,7 47:13
 48:12,20
 52:8,18
**Chapter**
 49:15 63:24
**characterizatio
n**
 82:23
**chart**
 15:3,17 17:9
**chat**
 9:23 14:17
 49:10 66:24
**circuits**
 17:4
**circumstance**
 28:5
**circumstances**
 25:19 26:1,14
 56:8 65:7,9
 73:10 75:8,
 13,15
**citizen**
 27:8,14 28:11
**citizens**
 27:8
**civil**
 10:22 57:16,
 18 58:11,12,
 19 59:4 64:13
 65:12 68:20,
 24 69:16
 73:15 74:10
**clarify**

 9:2,3,6 36:25
 56:14 75:10
**collect**
 45:24 46:4
**collection**
 20:21
**columns**
 16:19
**Commission**
 34:19,22
 35:4,12,23,25
 36:4,9
**Commission's**
 36:10
**committed**
 64:9
**common**
 32:14 36:18
**communicate**
 31:23
**communications**
 67:21,24
**complaint**
 55:23
**complaints**
 27:22,23,25
 41:2 42:15,22
 43:3,10
 55:12,15,19
 56:1,19,25
 57:4,9,13
 59:11,18
**completed**
 60:12
**completely**
 82:22
**conceded**
 63:3

**concern**
 63:1 79:1
 80:21 82:12
**concerned**
 63:4 81:11
**concerning**
 57:19
**concerns**
 62:18 63:1
 77:16
**concluded**
 30:10
**concretely**
 28:10
**conduct**
 55:4 57:5,10,
 14 61:11,17,
 23 62:5
**conducting**
 30:3
**confirm**
 69:25 70:5,12
**confusing**
 9:1
**connection**
 67:22
**consider**
 65:10
**considered**
 31:4,24 32:8
 74:24
**consolidated**
 6:24
**constituent**
 55:23
**consult**
 31:6

context
  37:19

continues
  50:10

conversations
  32:14

convey
  19:23

costs
  33:12 34:17
  36:6

county
  27:17 60:23

covered
  62:21 63:11
  78:21

covering
  38:25

crime
  24:3

criminal
  16:20,22
  20:16 23:6,
  14,23 27:7
  28:3 55:21
  56:6 57:14
  70:20 74:16

CROSS
  63:16

crossed
  50:14,18

cycles
  36:19

─────────
        D
─────────

David
  6:22 10:12

deadline
  72:8

deadlines
  43:17,23

deems
  75:6,13

defendant
  10:5 67:14
  71:16 72:16

defendants
  32:15

define
  16:5

definition
  51:4,9,18,24
  52:18 53:1,8,
  14,23 54:25

delay
  59:25 60:6,11

delineated
  79:21

delivery
  38:16

department
  57:17

department's
  57:19

depend
  75:14

depends
  65:6

deposed
  7:8,22 8:15

deposition
  6:25 7:17
  10:22 11:1
  49:21 77:2,21
  82:17

depositions
  82:7

described
  20:10

details
  42:18 59:20
  78:24

determinations
  56:15

determinative
  78:20

determined
  72:14

determining
  73:8

difference
  78:4

direct
  6:14 22:12
  80:8,11

directly
  35:20 80:3
  81:6

Director
  14:1

disabilities
  62:6

disagree
  30:12 78:3
  80:19 81:12
  82:23

disagreed
  18:22 22:16,
  21

disclaimer
  72:22,23
  73:6,20,24
  74:6,11,17

75:4,20,25
  76:4,9,18
  77:12

disclosure
  72:22,23
  73:7,20,25
  74:6,12,17
  75:5,20 76:1,
  5,8,18 77:12

discovers
  23:5,13

discovery
  12:3,12 13:2
  42:17 56:21,
  24 59:15
  60:19

discretionary
  56:15

discuss
  11:22

discussion
  10:18

disregard
  18:23

division
  16:20 17:23
  18:19 65:12
  73:15

divisions
  17:17 55:25
  56:2

documents
  12:14,25
  65:14 66:1,8,
  16 67:20,24
  68:2,8,13
  69:21 70:10,
  17 72:14
  81:17 82:3,8

Elizabeth Guzzo
October 22, 2021

6

draft
  32:3
drop
  9:23 19:9
  37:18,22
  38:3,8,13,16,
  20 39:7,13,21
  61:11
duly
  6:12
duration
  41:4 61:24
duties
  18:12 21:17
  26:6,9

**E**

e-mail
  36:13 66:25
educational
  14:9
effect
  51:1,18,23
effects
  33:5,8,15,25
  34:1,7,12
eight
  13:9
elected
  17:24 18:4,
  11,12 48:17
election
  24:17 36:19
  37:14,16,25
  41:24 44:21
  48:17 53:19
  55:2 57:13
  60:21 61:1
  72:6,8 77:4

elections
  20:11 27:16
  28:17,24
  29:3,4,10,15,
  17,19,22,23,
  24 30:3,10,13
  31:15 34:19,
  22 35:4,12,
  23,25 36:4,8,
  10 37:3,19
  43:7 55:19
Elias
  6:23
elizabeth
  6:11 7:4
employer
  13:4
enacted
  31:8,12,16,20
  32:12 33:2
  43:19,24
  63:23
enactment
  44:4 45:22
  46:9
enforce
  24:16,19
  43:17,23
  54:15 74:6
  77:3,6
enforced
  40:1
enforcement
  27:17 28:17,
  24 44:2 55:20
  57:17,19
  58:3,11,12,19
  59:4 61:7
  62:20,24 63:2
  64:11 68:15

70:1,6,13,24
  72:2 73:8,18,
  23 76:4,8,11,
  15,21 77:11,
  18,20 78:8,
  16,19 80:22
  81:13,15 82:4
enforcing
  20:9
engaging
  50:25
entire
  79:10 80:11
entirely
  78:1 79:8
  81:21
entities
  79:6,7
entitled
  10:21 82:6,8,
  16
entity
  27:22 28:16
  76:12
enumerated
  16:9
et
  82:1,2
everyday
  37:7
evidence
  67:21
exact
  17:5 49:2,18
EXAMINATION
  6:14 63:16
examining
  72:14

example
  21:10,21
excuse
  27:19 28:21
  67:9,19 70:8
  71:10 80:10
exhibit
  9:22 10:7,14
  11:1,2 14:14,
  15,17,19 24:6
  49:3,4,11
  66:19 67:6
  71:5,6,10,11,
  12,19 77:2
Exhibit--
  71:11
exhibits
  10:13
expect
  82:18
expected
  80:14
explaining
  80:12
extent
  33:18 38:10,
  24 40:23
  41:21 44:6,18
  45:18 47:16,
  23 48:14
  51:11,13
  52:10 53:16
  58:23 60:3
  74:18 79:15

**F**

fact
  7:19 29:15

**facts**
65:7,9 73:10
75:7,14

**failing**
70:8,14

**fall**
17:17 21:16
33:19 75:3

**familiar**
7:21 36:15
39:24 43:12
46:7 48:20
54:20 58:12

**family**
47:6,10

**far**
8:2 15:17

**far-left**
15:4 17:9

**FARUQUI**
10:12,17
12:16,19
14:21 15:12
19:2 21:15
23:9 24:8,13
25:22 29:6,
11,21 30:5,21
32:13 33:17
35:6 36:23
37:9 38:24
39:15 40:5,8,
15,23 41:21
44:6,18 45:4,
12,18 47:16,
23 48:14
49:6,9 50:3,5
51:11 52:10
53:16 54:4
56:11 58:15,
23 59:8 60:3,

13 62:7,12
63:7,13 64:25
65:19 66:4,
11,20 67:5
68:11,22
69:4,20 70:21
71:8,20,23
74:18 77:13,
22 78:22 79:1
80:8 81:12
82:15,25

**fault**
81:9 82:12

**feel**
9:2

**felt**
39:18

**Fighters**
63:20

**file**
10:13 11:8
14:16 39:9

**finish**
8:3,5,8 40:14

**first**
6:12 7:23
10:4 11:19
13:13 67:13
71:15 72:16

**five**
13:19

**Florida**
7:7 8:16
14:11 15:1
16:23,25 17:5
18:6 24:16
29:3,5,19
30:3,20 31:4
32:1 33:6,16
34:2,8,19,22

35:4,12,23,25
36:4,5,8,10,
16,19,22
37:2,8,14,19
46:8 47:22
51:21 63:24
64:6,22 65:4
73:23 77:4

**folks**
78:15

**follow**
29:9 30:19

**following**
6:1 72:4

**follows**
6:13

**formal**
17:15,21,22
18:2 32:19,
23,24,25 37:5
51:17,22

**forms**
43:24 60:2,12
70:3,9,15
72:5,7,12

**forth**
65:14

**found**
82:1

**four-year**
61:24

**Fox**
6:15,22
10:15,19,25
11:4 12:18,
23,24 14:14,
22 15:14
18:25 19:3
21:19 23:10

24:6,10,14
25:24 26:22,
24 29:8,13
30:1,6,23
32:16,18
33:21,22 35:9
36:24 37:11
39:4,19 40:6,
12,17 41:1
42:1 44:9,24
45:6,14,21
47:19 48:1,19
49:3,8,10,12,
23 50:4,7
51:15 52:13
53:21,25 54:7
56:13 58:17
59:1,10 60:7,
15 62:9,13
63:22 77:15
78:4,23 79:22
80:18 82:6,22

**frame**
70:16

**fraud**
20:17 27:1,4,
9 28:7,12
45:17 54:21,
23 55:12
56:19,25
57:4,9,13
67:22 68:1
72:10

**fraudulent**
55:1

**free**
9:2 18:23

**Freedom**
63:20

**front**

10:20

**funding**
35:13

**funds**
35:1,20  36:4

**FYI**
10:12

---

**G**

**general's**
13:8,14  20:9
26:14  36:5
56:25  57:6
79:12

**generally**
30:19  36:12,
15,17  45:23
46:4,10  48:23
55:5,6  60:14

**goals**
45:1

**govern**
46:8

**governing**
44:16  47:14
48:12,21,25

**government**
51:21  79:6

**ground**
7:20  8:24

**group**
6:23  42:7
62:16

**Gu-**
6:20

**guidelines**
73:19,23

**Guzzo**
6:11,16,20
7:4  62:13

---

**H**

**hand**
6:3

**handle**
16:22  55:23

**handled**
65:18

**handles**
17:15  64:23
65:4

**handling**
65:15  72:11

**harder**
8:1

**Harriet**
63:20

**heading**
11:9

**hear**
31:14,18

**helpful**
63:11

**hereinafter**
6:13

**high**
73:12

**highlighted**
77:2

**hotline**
27:15  43:8

**hour**
54:1

**hours**

12:6

**House**
30:24

**housed**
34:23

**HTFF**
10:14  66:19
67:6  71:5,6,
10,12

---

**I**

**identification**
11:3  14:20
49:5  67:7
71:7

**Identify**
71:25

**identifying**
67:25

**illegal**
55:7

**immediate**
47:6,10

**immediately**
48:22,25

**implicated**
40:24  41:22
44:7,19  45:19
47:17,24
48:15  51:12
52:11  53:17
58:24  60:4
74:19

**important**
7:25

**incidence**
67:21

**incidences**

68:1

**incident**
59:24  60:9,
17,18,20  61:8

**include**
64:15

**including**
62:23  67:24
79:12

**individual**
73:11  75:7,15
76:16,22

**individuals**
45:23  46:3

**influence**
51:1

**influencing**
51:2

**informed**
82:9

**initiated**
68:15

**injunction**
64:16  75:2,18

**injunctive**
69:10

**instance**
60:22

**instances**
69:9,12  71:25

**institute**
64:12

**instruct**
33:19

**instructs**
9:12

**intend**
8:7

intent
 39:10,17
 44:23 48:18
 51:1 52:21
interest
 32:14 39:18
 44:22
interests
 39:13 41:18,
 25 44:15
 48:11,18
 53:13,20
interpret
 21:11 24:16,
 19 77:3,6
 78:2 79:24
interpretation
 21:3,8,25
 25:20 26:2
 53:6
interpreted
 38:10
interrogatories
 71:16
interrupt
 8:6 12:17
 16:14
introduction
 30:19
investigate
 43:10 56:5
investigated
 72:1
investigates
 65:12
investigating
 67:25
investigation
 27:24 28:8,14

29:1 56:3
65:8
involve
 57:5,10,14
involved
 39:17
involving
 28:5
issue
 18:1,2 20:16
 21:2,7,18
 22:3 25:20
 26:2,4,15
 54:16 78:14,
 23 81:11
issued
 18:18 22:5
 26:19 37:4
issues
 17:15 82:10
issuing
 32:20,24
items
 16:9

---
J
---

joint
 32:14
judge
 75:6,12,16
July
 7:15
jurisdiction
 22:14 23:8

---
K
---

knowing

73:10

---
L
---

lack
 77:16
language
 49:2 51:18
 52:20 54:19
 58:10 73:17
 74:9,14
 76:20,25
 77:25 78:5
late
 70:3,9
Latino
 33:9 34:13
law
 6:23 18:6
 24:17 27:17
 28:17,24
 55:20
laws
 77:4
league
 6:25 11:2
 14:19 49:4
learns
 23:23
leave
 77:20
left
 16:19
legal
 18:2 21:13
legislation
 31:8,12 32:3
 39:10 44:20
legislative

7:13 13:15,
17,21,22
14:1,7 15:5
34:25 44:23
52:21
legislator
 31:6 32:6
 41:24
legislators
 32:1 44:21
legislature
 30:20 31:4,24
 39:11,16
 41:24 48:17
 52:21 53:18
level
 30:7 73:12
limitations
 21:12
limited
 78:10,24
 79:23
limits
 19:17
line
 28:11 54:3
list
 11:14 79:7,
 13,24
listed
 16:4 18:16
 26:10
litigation
 33:18,24
 34:6,11,16
 39:1,2 40:11
 48:3 52:17,25
 53:7 59:16
 73:2

**local**
27:17 28:17
55:20

**long**
7:14 12:4
13:6,17,22
45:24 46:5

**looked**
50:6

**lot**
62:21 78:12,
17

### M

**mail**
36:16,18,22
37:2,7,13

**mark**
10:25 14:15
49:11

**marked**
11:2 14:19
49:4 66:19
67:6 71:5,6

**Martin**
14:3

**Mckenzie**
63:19

**meaning**
21:23 22:13,
17 26:15 53:7
55:4 80:2

**mechanisms**
44:2

**meeting**
12:7

**members**
31:19 47:6,10

**memorized**
82:19

**mentioned**
17:21 32:19
55:18

**minutes**
63:12

**money**
34:20 36:11

**monitor**
29:12

**monitoring**
38:13

**Monroe**
7:6

**months**
13:24

**Moody**
10:6 15:8
67:14 71:16
72:17

**morning**
6:16,17 30:16

**multi-jurisdictional**
15:25 20:15
27:7 28:3,25
55:21 56:6
57:5,10,14

**multiple**
12:20 19:18
20:21 21:23
46:12 47:22
48:5 61:18

### N

**nature**

76:16,22

**new**
53:8

**nine**
11:14

**nonpartisan**
20:3

**number**
71:21,22

**numbers**
24:12 68:3

### O

**OAG**
53:10

**oath**
8:11

**object**
9:10 15:12
21:15 23:9
25:22 29:6,
11,21 30:5,21
32:13 33:17
35:6 36:23
37:9 38:24
40:13,23
41:21 44:6,18
45:4,12,18
47:16,23
48:14 51:11
52:10 53:16
58:15 62:7
64:25 65:19
66:4,11
68:11,22
69:20 70:21
74:18 77:13

**objection**
39:15 40:5,9

57:18 78:8

**new**
53:8

**nine**
11:14

56:11 58:23
59:8 60:3,13
62:12 69:4

**occur**
60:23

**occurred**
69:19

**offenses**
22:13 23:23

**office's**
24:16 77:3
78:8,13,19
80:16

**official**
18:4,5,8,13,
21,23 26:20
52:2

**officials**
17:25 18:11,
19 26:7 29:23
30:14 37:16,
25 41:25
44:21 48:18
53:19 79:24

**once**
7:11 37:25
73:5 74:13

**open**
38:16 77:20,
21

**opinion**
17:16,22
18:2,5,9,14,
21,22,23
21:14,18,22
22:6 26:15,18
32:6,10,19,25
36:22 37:5
51:17,23 52:1
53:13 80:2,12

Elizabeth Guzzo
October 22, 2021

opinions
  17:21,23
  18:18 21:2,7
  22:4 26:4
  32:2,24 78:14
  79:3,4,6,8,13
  80:18
oppose
  82:17
options
  43:16,22
orders
  69:13
organization
  42:3,6 70:7
  72:3 75:25
  76:12,17,23
  77:19
organization's
  60:1,11 72:11
organizational
  15:2
organizations
  19:23 42:12,
  16,21,23
  43:4,13,18
  44:4,12,17
  45:3,9 54:9,
  16 57:20
  58:14,21
  59:6,12,19
  62:25 64:4
  67:23 68:10,
  17 69:14,18
  70:2,14 71:1
  80:24 81:2,5
outside
  8:23 33:24
  48:2 52:16,20
  53:7 72:5

oversee
  17:8 22:25
oversees
  17:14

_____

P

page
  11:7,8,10,13
  19:9 24:9,10,
  11,12 49:25
  50:2,3,10
  66:22 67:5,15
  71:19 80:12
pages
  11:14 49:23
paid
  45:25 46:5
paragraph
  50:9
particular
  9:1 20:20
  22:13 24:3,9
  62:19 71:20
parties
  39:17
party
  27:16
pass
  39:18 44:20
passed
  35:15 36:11
PDF
  11:8 24:10
penalties
  38:19
pending
  9:17

Perfect
  67:4
period
  19:13 39:25
  40:21 41:9,
  13,20 72:6
permanent
  64:15
permitted
  45:23 46:4
person
  22:6 64:8
personally
  8:25 29:12
persons
  62:6
pertained
  70:11
pertains
  18:3
phrase
  52:7,17 53:1
  55:3
place
  14:17 54:5
  63:14 73:13
places
  20:4 21:13
  48:22 49:1
plaintiff's
  62:15
plaintiffs
  6:24 12:15
  63:20
plaintiffs'
  10:4 67:13
  71:15 72:15
please

  6:3 8:7 9:6
  10:10 24:7,10
  27:20 58:25
polling
  20:4 21:12
  48:22,25
position
  13:10,13
  31:11
positions
  21:3
possess
  46:12 47:5,9
possessing
  21:23
possession
  19:17 46:8,
  17,22 47:2,
  14,21 48:5,13
  61:18
possible
  27:11 32:1
potential
  19:24 45:10
  54:17
prefer
  40:12
preliminary
  8:24
preparation
  13:1 25:4,11,
  25 49:21
  60:16 62:19
  78:7 81:8,11
  82:21
prepare
  12:1 24:21,25
  80:15

Elizabeth Guzzo
October 22, 2021

12

**prepared**
11:22 62:23
79:16 82:11

**preparing**
79:19

**present**
12:10 66:3,
10,17 68:10
69:19 70:16,
20 71:2 72:4

**prevent**
45:17 64:14

**prevented**
59:24 60:9

**principally**
30:2

**prior**
34:21 35:11
41:13 59:15

**privileged**
32:14

**probably**
7:21 11:21
13:16,19

**problems**
41:13 47:21
48:4

**procedure**
79:11

**procedures**
65:14

**proceedings**
6:1

**process**
17:24 18:1
32:20,24
34:25 35:20
73:7,13 79:4,
11 80:12

**produce**
66:1,6 68:7
69:16

**produced**
13:1 42:18
48:2 59:14
66:14 68:3,12
69:7,21 70:1,
6,10,13,17
72:15 81:18
82:2

**product**
33:18,24
34:5,10,15
38:25 40:7,24
41:22 44:7,19
45:19 47:17,
24 48:2,15
51:12 52:11,
16,24 53:17
58:24 60:4
74:19

**production**
10:5 12:15
36:13 67:13,
16 70:11,18
72:16

**progress**
29:10

**prohibited**
52:19 53:2

**prohibition**
52:8

**pronounce**
6:18

**proper**
21:7

**proposed**
32:3

**prosecute**
16:10 20:14
24:2 25:7,15

**Prosecutes**
15:25

**prosecuting**
68:1

**prosecution**
15:18,20,24
16:5 20:12,23
23:20 27:6
28:6 55:22
57:7

**prosecutions**
38:3 41:7

**prosecutor**
28:2

**protocols**
65:14

**provide**
72:25

**provided**
12:14 62:6

**provision**
73:7 74:7,12,
17 76:5,9,18
79:25

**provisions**
19:5 20:10,
14,19 21:8
22:18,23
23:7,15 24:3,
19 25:8,16,21
26:3,8,16
54:10 72:22,
24 77:7 80:3

**public**
31:19

**publicly**
79:11,17,21
80:16

**pull**
9:21 49:3
66:18 71:4

**purpose**
50:9

**pursue**
70:20 74:11,
15 75:1,17

**pursued**
68:21 69:2,
10,13,16

**put**
14:14 49:10
66:23

———————

**R**

**raise**
6:2

**reads**
67:18

**realm**
82:20

**reask**
23:11

**reasonable**
82:21

**reasonably**
64:8

**receive**
42:15 55:12,
15 82:8

**received**
10:13 41:3
69:6

Elizabeth Guzzo
October 22, 2021

13

receives
  27:23 28:7
  42:22 43:2

receiving
  27:1,4

recess
  54:5 63:14

recite
  45:10

record
  7:3 10:16,18

records
  81:14

refer
  16:2 20:18
  23:19 55:18
  57:21 63:22
  64:10,18
  71:9,18 76:19

reference
  74:8,13

referral
  68:17 73:6
  74:7

referrals
  64:23 65:5,
  15,18

referred
  16:1 27:5,15,
  19 28:1,22
  55:22,24
  56:1,4,9,18,
  24 57:6,11,15
  58:4,7 65:6

referring
  28:14 63:23
  64:3 72:24

refers
  23:23 28:13

reflecting
  66:2,8 68:8

refusing
  24:2 25:7,15

regarding
  18:9 21:2
  31:7 65:18
  67:21,24 79:3

register
  42:8 45:11

registration
  19:23 42:3,5,
  11,16,21,23
  43:3,13,18,23
  44:3,12,17
  45:3,9 54:9,
  16 57:16,20
  58:4,7,14,21
  59:5,12,19
  60:1,2,11,12
  62:25 64:3
  67:22,23
  68:10,17
  69:14,18
  70:2,3,7,9,
  14,15 71:1
  72:3,5,7,8,9,
  11,25 75:24
  76:12,17,23
  77:19 80:23
  81:2,5

registrations
  81:25

regulating
  42:11,20

regulation
  44:11

related
  38:3 72:10
  78:19

relating
  20:16 41:8
  55:1,8 61:11,
  17,23 62:5

relationship
  17:6

relevant
  81:7

relief
  64:15 69:10
  75:1,18

rely
  29:23 37:15,
  25 39:10,16
  41:23 44:21
  48:16 53:18

remotely
  6:12

removed
  50:19

repeat
  21:4 25:9,23
  27:2 39:3
  40:16 43:20
  70:4 73:21
  76:6

repeatedly
  77:24 78:7
  80:20

rephrase
  32:16 33:21

report
  14:2,4 36:1

reporting
  67:25

reports
  15:10,21
  20:24

represent
  6:23

representative
  8:16 82:9

request
  12:15 18:1,9,
  14 21:13,24
  32:2 34:20
  36:3,10 39:21
  44:11 53:23
  67:13,16,19,
  20 70:11
  72:16 79:6,8,
  13 80:1

requested
  18:21 22:5,6
  26:20 32:25
  34:25 35:13
  52:1,2 53:5
  69:22 70:18

requests
  10:5 17:16,22
  19:14 39:25
  41:4,9,14
  61:24 72:15

require
  45:9

required
  19:23 45:16
  79:16

requirement
  54:15 58:7
  73:20,25
  75:5,20 76:1

requirements
  56:16

reserve
  63:4 77:21

resolve

Elizabeth Guzzo
October 22, 2021

14

82:13

**respect**
32:23 59:5
64:21 65:3
68:9,21 69:2,
17 70:19,25
73:19,24
74:11 77:17
78:16 81:24

**respond**
80:20

**response**
10:4 68:2,4
78:1 79:2

**responses**
67:12 71:15
72:14

**responsible**
30:3

**responsive**
68:2,13 69:6,
21

**restraining**
64:16 69:13
75:2,19

**restrictions**
19:9 20:3

**result**
61:7

**resulting**
34:17

**results**
29:24

**return**
37:22 70:8,15

**returning**
70:2,9 72:5,7

**revenue**

35:21

**review**
12:25 28:2,4
36:5 49:20
63:12 81:14

**reviewed**
12:2,12
33:15,25
34:7,12,17
38:11 49:22

**revoke**
75:23

**Richard**
14:3

**rights**
63:4

**role**
18:4,12 20:9
27:1,4 31:3
42:11,20
57:17,19,24

**row**
17:10

**rule**
8:24

**rules**
7:21 38:13,
15,19,20
43:12 44:16
45:2 46:7,11,
16,22 47:1,14
48:12,21,24

**runs**
50:1

—————————
S
—————————

**safe**
30:11

**Sandi**
7:23 10:16

**SB**
63:22,23,24
72:22

**science**
14:10

**scope**
16:11 21:17
26:6,8 52:8,
18 53:1

**screen**
49:14 50:1

**screens**
12:20

**scroll**
67:12 71:19

**search**
82:1

**second**
10:10,16
17:10 19:2

**Secretary**
21:10,13
30:2,9 43:4,6
56:5,10,18,24
58:5,8 64:7,
9,23 65:5
68:18 73:5
74:7

**section**
63:23,24
64:6,9,13,14
66:9 72:21
73:1

**secure**
29:24 30:11
37:2,8,13,17,
23 38:1

**Senate**
19:9,14,19,25
20:4 30:16,20
31:3,7,11,15,
16,19,20,23
32:7,11 33:1,
5,8,12,15
34:1,7,12,18
35:14 36:6,11
38:7,12 39:6,
24 40:20
41:5,10,19
43:14,19,24
44:5,16 45:2,
8,22 46:3,9,
15,21,25
47:4,8,13
48:12,21,24
49:19,20
50:18,22,24
54:10 58:22
59:7,13

**senior**
13:21,22

**sense**
34:24 35:17
37:7

**September**
13:24

**serious**
62:18 82:12

**serve**
39:14

**served**
41:18 44:15
48:11 53:14

**services**
27:15

**serving**
45:1

Elizabeth Guzzo
October 22, 2021

15

setting
  65:14
seven
  10:13
shaping
  31:3
she'd
  77:24
shift
  62:17 72:20
short
  54:2
side
  15:4
Similar
  63:22 77:15
simpler
  42:25
single
  66:12
sitting
  59:17
slightly
  54:2
solicit
  51:5,10,18,24
  53:15
solicitation
  42:8 51:5,10,
  19,24 52:9,19
  53:2,15
somebody
  78:2
sort
  7:12 56:16
  78:11
sound
  8:9 9:3,8,13,

19 63:12
South
  7:6
speak
  7:25 18:10
  57:2 73:9,14
  75:21 76:13
  77:10
specific
  74:14 78:6,
  11,18 79:23
  81:20
specifically
  32:23 33:9
  34:13 37:13
  40:13 45:17
  52:7 58:11
  62:23 77:18
specifics
  36:14 54:18
  55:14 57:3,22
  60:14,19,24
  61:5 65:11
  69:5,22 73:9,
  14 74:9 75:22
  76:13,19,24
  78:24 81:19
speculation
  56:12
spend
  79:19
spoke
  12:2,5
squarely
  80:3
stand
  68:5 72:18
standing
  40:9

start
  8:3 20:8
  49:24 50:12
  56:17
started
  40:11
starting
  11:13
state
  7:2 14:11
  15:1 16:1,3,
  23,25 17:3,7
  18:14,19,21,
  22 21:11,13,
  20,22,24
  22:10,12,17,
  22,25 23:7,
  16,20,24 24:2
  25:6,14 28:24
  30:2,7,14
  39:13,17
  41:18,25
  43:5,6 44:15
  48:11,18
  51:21 53:13,
  19 56:6,10,
  18,24 58:5,8
  64:8,24 65:5
  78:15
State's
  30:9
stated
  68:3
states
  64:7 67:19
statewide
  15:18,20,23
  16:5 20:12,23
  27:6 28:2,6
  55:22 57:7

status
  75:24
statute
  50:19,22,25
  57:21 64:6
  77:25 78:3,6,
  25 79:21
  80:5,7,9
  82:19
statutes
  16:4
statutory
  72:6 73:17
  74:9,14
  78:11,18
  80:25
Street
  7:6
structure
  15:2 23:21
  35:8
subject
  76:3,7 77:11
submission
  60:1
submit
  27:9
submits
  28:11
submitted
  27:13
submitting
  60:11
subpoena
  10:21 19:5
subsection
  50:1,8,10
  51:9 64:7,19,
  21 65:3 66:3,

9 68:9,16,21
69:3,17 70:19
72:24 74:25

**successful**
29:16,20
30:10

**sufficiency**
81:4

**sufficient**
58:21 59:6

**supervisor**
27:16 28:17,
23 43:7 55:19
60:21

**supervisors**
31:15

**suspected**
72:1

**swear**
6:3

**switch**
12:22

**sworn**
6:12 8:11

---

**T**

**Tallahassee**
7:6

**Tarpley**
63:9,17,18
65:2,20 66:7,
15,18,21,25
67:4,8 68:14
69:1,8,24
70:23 71:4,9,
13,18,22,24
74:21 77:15

**technical**

78:11

**temporary**
64:15

**term**
19:4 51:9
54:20,23

**terms**
82:1

**testified**
6:13

**testify**
10:21 24:21

**testifying**
7:17

**testimony**
6:4

**Thanks**
9:4

**thing**
9:16

**thinks**
81:3

**third-party**
19:22 42:2,5,
11,15,20,22
43:3,13,18
44:3,11,17
45:3,8 54:9,
16 57:16,19
58:4,6,14,20
59:5,12,19,25
60:10 62:24
64:3 67:23
68:9,16
69:14,18
70:1,7,13,25
72:3,10 75:24
76:11,16,22
77:19 80:23

81:2,5,25

**three**
16:19 29:4
47:5,9

**times**
7:10

**tip**
28:11

**title**
13:20,25 14:7

**titled**
13:15

**top**
15:7 49:14

**topic**
24:23 25:11
62:20,21
78:21

**topics**
11:10,15,17,
23 77:1,18
80:4 81:7

**total**
12:5

**transcribe**
7:24

**truth**
6:5,6 8:12

**Tubman**
63:20

**turn**
49:23 66:21
67:15 71:11

**two**
13:24 17:16

**type**
65:9 68:20,23
74:10,16

75:18

**types**
18:8

---

**U**

**ultimately**
15:11,13

**underlined**
50:15,21

**understandable**
79:9

**understands**
80:7

**unduly**
79:18

**unlawful**
55:3,7 61:11,
17,23 62:5

**unreasonable**
79:18

---

**V**

**valid**
40:1,22 41:14

**validity**
19:13 22:22
41:8,20

**verbatim**
18:10 79:7

**video**
12:22

**view**
29:19 37:2,6,
13,22 39:13
40:4,20 41:18
44:2,15 45:16
47:13 48:11

58:19 59:4

**violated**
38:20

**violates**
74:16

**violating**
75:25

**violation**
23:6,14 25:7,
15 58:3,6
64:9,13,14
73:6 74:6
75:20 76:4,8,
17

**violations**
20:14 73:19,
24 74:12 75:4
77:12

**volunteer**
46:12 47:4,8

**volunteer's**
47:21 48:5

**volunteers**
19:18

**vote**
36:16,18,22
37:2,7,13

**vote-by-mail**
19:14,18
21:24 37:23
39:25 40:21
41:4,9,14,19
45:24 46:4,8,
12,17,22
47:2,5,9,15,
22 48:5,13
61:18,24

**voter**
19:22 20:16

27:1,4,9
28:7,12 42:2,
5,11,15,20,22
43:3,13,18,23
44:3,12,17
45:3,8 51:2
54:9,16,20,23
55:12 56:19,
25 57:4,9,16,
20 58:4,7,14,
20 59:5,12,
19,24,25
60:1,9,10,12
62:24 64:3
67:23 68:9,16
69:14,18
70:2,7,9,14,
15 71:1 72:3,
5,7,9,10,11,
25 75:24
76:12,17,22
77:19 80:23
81:2,5,25

**voters**
19:24 33:9
34:13 42:9
45:10 54:17
61:3

**Voters'**
7:1

**voting**
24:17 33:6,
16,25 34:1,8
55:1,3,9
59:24 60:10
61:11,17,23
62:5 77:4

---

**W**

**wait**

8:3,4

**warning**
45:10,16
54:17

**warnings**
19:22

**ways**
45:1

**website**
79:12 80:11,
17

**weeks**
11:21

**whatsoever**
72:2

**wisdom**
40:4,20

**witness**
6:7 7:19
33:20 39:1
62:22 63:6
77:17,24
79:15 80:15,
22 81:13,16
82:18

**witness's**
62:19 81:9

**Women**
7:1

**word**
8:23

**words**
50:14,18,21,
22,25

**worked**
13:6

**wrong**
10:9 50:6

**wrongly**
24:2 25:7,15

---

**Z**

**zone**
21:12

**Zoom**
6:1 8:1

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

30(b)(6) Office of AG
(Guzzo)

**League 1**

S. Nargiz 10/22/21

| League of Women Voters of Florida, Inc. et al. | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) |
| Laurel M. Lee, et al. | ) |
| *Defendant* | ) |

Civil Action No. 4:21-cv-186-MW-MAF

**Exhibit**

**167**

4:21-cv-186-MW/MAF

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:     Office of the Attorney General, 107 W. Gaines Street, The Collin Building, Tallahassee, FL 32399

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:     See attached.

| Place: By remote videographic means or as agreed. | Date and Time: 10/22/2021 9:30 am |
|---|---|

**Exhibit**

**167**

4:21-cv-186-MW/MAF

The deposition will be recorded by this method: _____

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     10/11/2021

*CLERK OF COURT*

OR

/s/ Fritz Wermuth

_____          _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs League of Women Voters of Florida Inc, et al. _____, who issues or requests this subpoena, are:

Fritz Wermuth, King, Blackwell, Zehnder & Wermuth P.A., 25 East Pine St., Orlando FL 3280, FWermuth@kbzwlaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 4:21-cv-186-MW-MAF

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al., | |
| Plaintiffs, | Case Nos.: 4:21-cv-186-MW/MAF<br>4:21-cv-242-MW/MAF |
| v. | |
| LAUREL M. LEE, in her official capacity as Florida Secretary of State, et al., | |
| Defendants, | |
| and | |
| REPUBLICAN NATIONAL COMMITTEE, and NATIONAL REPUBLICAN SENATORIAL COMMITTEE, | |
| Intervenor-Defendants. | |

## ATTACHMENT TO SUBPOENA TO
## FLORIDA OFFICE OF ATTORNEY GENERAL

Pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs in Case No. 4:21-cv-186 (the "League Plaintiffs") and Case No. 4:21-cv-242 (the "HTFF Plaintiffs") provide the following description of the matters for examination at the deposition of the Florida Office of Attorney General.

# DEFINITIONS

A.     "Challenged Provisions" means any and all provisions of Senate Bill 90 at issue and challenged by Plaintiffs in these actions.

B.     "Office" means the Office of Attorney General.

C.     "Drop box" means a secured box provided by Supervisors of Elections offices where voters can physically return a vote-by-mail ballot in a sealed envelope.

D.     "Senate Bill 90" refers to Senate Bill 90 (2021), Florida's omnibus election legislation, signed into law by Governor DeSantis on May 6, 2021, and any prior versions of that bill, including but not limited to HB 7041 and any prior versions of that bill.

E.     "Third-Party Voter Registration Organization" means any person, entity, or organization that collects any voter registration application, but does not include: (1) a person who seeks only to register to vote or collect a voter registration application from that person's spouse, child, or parent, or (2) a person engaged in registering to vote or collecting voter registration applications as an employee or agent of the Division of Elections, supervisor of elections, Department of Highway Safety and Motor Vehicles, or an official voter registration agency.

F.     "Unlawful voting conduct" includes fraud in connection with casting a vote (Fla. Stat. § 104.041); vote selling (Fla. Stat. §104.045); fraud in connection with vote-by-mail ballots and voting (Fla. Stat. § 104.047); corruptly influencing

2

voting (Fla. Stat. § 104.061); aiding, abetting, advising, or conspiring in voter fraud activity (Fla. Stat. § 104.091); unqualified electors willfully voting (Fla. Stat. § 104.15); voting a fraudulent ballot (Fla. Stat. § 104.16); voting in person after casting a vote-by-mail ballot (Fla. Stat. § 104.17); casting more than one ballot at any election (Fla. Stat. § 104.18); unlawful possession or tampering with a voting system (Fla. Stat. § 104.30); or any other type of voter or election fraud or voting-;related misconduct that is prohibited by Florida or federal law.

G.     "Vote-by-mail ballot" means a ballot that a voter requests and either picks up or has delivered to them so that the voter does not have to vote in-person during early voting or on election day.

H.     "Volunteer assistance" refers to when a third-party organization or individual "physically possesses" a voter's vote-by-mail ballot. Volunteer assistance includes, for example, the ballot delivery of a volunteer assistor and, more broadly, may include the ballot delivery of a third-party organization or individual that a Supervisor of Elections treats as volunteering to deliver a voter's vote-by-mail ballot, aside from a common carrier.

## TOPICS

1.     Each State interest, if any, that the Office believes or contends each of the Challenged Provisions serves, promotes, or advances, and all facts and evidence supporting a connection between the Challenged Provisions and the State interest(s).

2.      The Office's authority to interpret and enforce Florida election and voting law, and actions that have been, will be, or could be taken by the Office to interpret or enforce the Challenged Provisions.

3.      All incidents before the enactment of Senate Bill 90 of which the Office is aware of unlawful voting conduct or attempted unlawful voting conduct relating to (1) drop boxes, (2) volunteer assistance, (3) the four-year duration of vote-by-mail ballot requests, (4) non-partisan activities within 150 feet of a polling place, (5) assistance provided with voting by mail for persons with disabilities; any investigation of such incidents; and the results of such investigations.

4.      All complaints the Office has received from voters relating to alleged delays by Third Party Voter Registration Organizations in submitting voter registration forms, any investigations conducted of such complaints, and the results of such investigations.

5.      The Office's understanding of how, if at all, Senate Bill 90's amendment to Fla. Stat. § 102.031(4)(b), changed the meaning of that provision, the basis for that understanding, and any guidance the Office has provided to anyone on that subject.

6.      The success or failure of the 2020 general election in Florida in terms of election integrity and any other factors that the Office considers relevant in

evaluating success or failure, and the Office's understanding of what contributed to that success or failure.

7.     All communications regarding Senate Bill 90 between the Office and the following individuals and entities: members of the Florida Legislature; the Florida Department of State; the Florida Governor's Office; any Florida Supervisor of Elections; Defendant-Intervenors; the National Republican Congressional Committee; the Election Integrity Committee; the Republican State Leadership Committee "Commission on Election Integrity"; Kathleen King; Senator Joseph Gruters; Senator Kathleen Passidomo; Representative Paul Renner; any Republican State or local officials; the Heritage Foundation; Heritage Action for America; and any of their employees, staff, contractors, consultants, advisors, agents, representatives, or anyone acting on their behalf.

8.     Any analysis that the Office has conducted, information the Office has reviewed, and communications the Office has engaged in, concerning (1) the anticipated or actual effects of any of the Challenged Provisions on voting in Florida, (2) the anticipated or actual effects of any of the Challenged Provisions on Black or Latino voters, or (3) the anticipated or actual costs of implementing any of the Challenged Provisions and which entities would incur them.

9.     The Attorney General's collection and production of documents in response to Plaintiffs' Requests for the Production of Documents, including but not

limited to the sources of documents that were collected, the means by which such documents were searched and reviewed, and any sources of potentially responsive documents that were not collected, searched, and reviewed.