UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al., | Cases Consolidated for Trial: |
| Plaintiffs, | Case Nos.: 4:21-cv-186-MW/MAF |
| v. | 4:21-cv-187-MW/MAF |
| | 4:21-cv-201-MW/MAF |
| CORD BYRD, in his official capacity as Florida Secretary of State, et al., | 4:21-cv-242-MW/MAF |
| Defendants, | |
| and | |
| REPUBLICAN NATIONAL COMMITTEE, and NATIONAL REPUBLICAN SENATORIAL COMMITTEE, | |
| Intervenor-Defendants. | |

## LEAGUE PLAINTIFFS' RENEWED MOTION TO DETERMINE ENTITLEMENT TO ATTORNEYS' FEES, EXPERT FEES, AND LITIGATION EXPENSES AND INCORPORATED MEMORANDUM OF LAW[1]

---

[1] The League Plaintiffs previously filed a Motion for Entitlement to Attorneys' Fees in April 2022, *see* ECF No. 673, which this Court deferred until the then-pending appeal was resolved, *see* ECF No. 675. The League Plaintiffs submit this renewed motion to address events subsequent to their original motion in a single comprehensive filing.

Pursuant to 42 U.S.C. §§ 1983 and 1988, Fed. R. Civ. P. 54(d), and Local Rule 54.1, Plaintiffs League of Women Voters of Florida, Inc., League of Women Voters of Florida Education Fund, Inc., Black Voters Matter Fund, Inc., Florida Alliance For Retired Americans, Inc., Cecile Scoon, Susan Rogers, Dr. Robert Brigham, and Alan Madison (collectively, the "League Plaintiffs") respectfully request that this Court find that the League Plaintiffs are prevailing parties entitled to an award of attorneys' fees, expert fees, and litigation expenses against Defendant Cord Byrd, in his official capacity as the Florida Secretary of State, and Defendant Ashley Moody, in her official capacity as the Florida Attorney General.[2]

## I.    INTRODUCTION

The League Plaintiffs are prevailing parties under 42 U.S.C. § 1988 because the Court awarded the League Plaintiffs permanent injunctive relief on the merits of two of their constitutional claims, brought pursuant to 42 U.S.C. § 1983. The Eleventh Circuit affirmed the League Plaintiffs' victory on one of those claims, and

---

[2] The League Plaintiffs make this motion pursuant to Local Rule 54.1(A)'s bifurcated procedure, which requires "[a] party who seeks an award of attorney's fees" to "first move for a determination of the party's *entitlement* to a fee award." The party may "move for a determination of the *amount* of an award only after the Court determines the party's entitlement to an award." *Id*. If the Court determines that the League Plaintiffs are entitled to an award of their attorneys' fees, expert fees, and litigation expenses incurred in pursuit of the permanent injunction and judgment successfully obtained in this action, the League Plaintiffs will file a motion for determination of the amount of the award, supported by detailed time entries and declarations supporting the recoverable amount of such fees pursuant to Local Rule 54.1(E).

its vacatur of the second after the Legislature repealed the challenged statute does not vitiate the League Plaintiffs' status as prevailing parties. To the contrary: "[W]hen plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation." *Thomas v. Bryant*, 614 F.3d 1288, 1294 (11th Cir. 2010) (quoting *Diffenderfer v. Gomez–Colon*, 587 F.3d 445, 454 (1st Cir. 2009)). As such, the League Plaintiffs are entitled to their reasonable attorneys' fees, expert fees, and litigation expenses incurred in this litigation.

Obtaining relief took great effort, including wading through 6 million pages of discovery from Defendants, preparing and responding to several expert reports, taking and defending more than twenty depositions, defending against a motion for summary judgment on all claims, and participating in a fourteen-day trial, in which the League Plaintiffs' counsel took the lead in examining many of the key witnesses.

As a result of the League Plaintiffs' efforts, third-party voter registration organizations ("3PVROs") in Florida, including the League, no longer need to tell aspiring voters that they may not turn in their voter registration forms on time, a requirement that was both severely misleading and hampered organizations' voter registration efforts. And as a result of the League Plaintiffs' efforts, the League may also now engage in nonpartisan assistance at the polls without fear of prosecution

simply because a voter perceives that the League's assistance is intended to improperly influence them.

Given this effort and these results, an award of the costs and fees reasonably incurred by the League Plaintiffs in obtaining this relief is appropriate.

## II.    BACKGROUND

### A.    Trial Court Proceedings and this Court's Final Order

On May 6, 2021, mere minutes after Governor DeSantis signed Senate Bill 90, the League Plaintiffs filed a complaint challenging five provisions of Senate Bill 90 as unconstitutional under the First and Fourteenth Amendments, including the Registration Disclaimer Provision, the Solicitation Definition, the VBM Request Provision, the Drop Box Provisions, and the Volunteer Assistance Ban. Compl., ECF No. 1. The League Plaintiffs named as Defendants the Secretary, the Attorney General, and all 67 of Florida's Supervisors of Elections. *See id.* Shortly thereafter, the Court permitted the Republican National Committee (RNC) and National Republican Senatorial Committee (NRSC) to intervene to defend the laws alongside the Secretary, Attorney General, and the Supervisors. *See* Mot. to Intervene, ECF No. 25; Mem. in Supp. Of Mot. to Intervene, ECF Nos. 26; Pls.' Resp. in Opp'n to Mot. to Intervene, ECF No. 65; Order Granting Mot. to Intervene, ECF No. 72.

The parties began engaging in discovery. The League Plaintiffs sought information on the state interests purportedly supporting Senate Bill 90 and its

anticipated effects from every Defendant. The League Plaintiffs received more than 6 million pages of documents in response to their discovery requests. In turn, the League Plaintiffs were required to respond to a total of 129 interrogatories and 82 requests for production promulgated by the Defendants and Defendant-Intervenors.

The League Plaintiffs developed, and submitted for the Court's consideration, expert reports from Drs. Michael Herron and Kenneth Mayer. Dr. Herron's expert report covered the calculus of voting framework, Florida's general election administration, an overview of Senate Bill 90, the evidence (or lack-thereof) of voter fraud in American and Florida elections, information on voter registration and 3PVROs, voting lines, and voter assistance. Dr. Mayer's report, narrower in scope, responded specifically to the Secretary and Attorney General's expert, Dr. Quentin Kidd, and the shortcomings in his report and analysis.[3]

The Defendants collectively noticed and took the deposition of every League Plaintiff and expert, with counsel to the Secretary and Attorney General sharing responsibility for those depositions with counsel for the RNC and NRSC. Among the various plaintiff groups consolidated for trial, the League Plaintiffs took the lead

---

[3] Prior to consolidation of this case for trial with the other cases challenging Senate Bill 90, the League Plaintiffs also developed and served an expert report from historian Dr. Vernon Burton, on the history of voter suppression in Florida. The Court did not hear from Dr. Burton at trial, as Dr. Burton's testimony would have overlapped with other co-plaintiff experts', including particularly Dr. Morgan Kousser's.

on conducting the depositions of the Director of the Division of Elections Maria Matthews; Supervisors Earley, White, Scott, Hays, Corley, Latimer, Bennett, Marcus, and Lenhart; the Attorney General's representative Guzzo; and representatives of the RNC and NRSC. The League Plaintiffs further participated in the depositions of the Secretary and Attorney General's expert Dr. Kidd and the RNC and NRSC's expert Dr. Lockerbie, of Supervisor Doyle, and of a representative of the Palm Beach County Supervisor of Elections.

On October 8, 2021, the Court issued its Order on Defendants' Motion to Dismiss, ECF No. 274, narrowing the claims and Defendants for respective claims. Specifically, the Court dismissed the League Plaintiffs' challenge to the Volunteer Assistance Ban for lack of standing, but denied the Defendants' motion as to the other four claims. ECF No. 274 at 40–41. The Court also dismissed certain Defendants for certain claims, including the Secretary, whom the League Plaintiffs had originally named as a Defendant for each claim. *See id.* at 20–26. After the Court's order on the motions to dismiss, the League Plaintiffs' remaining claims and remaining Defendants for each were as follows:

| Provision | Defendants |
|---|---|
| Registration Disclaimer Provision | Secretary, Attorney General, RNC, NRSC |
| Solicitation Definition | Supervisors, RNC, NRSC |
| Drop Box Provisions | Secretary, Supervisors, RNC, NRSC |
| VBM Request Provisions | Supervisors, RNC, NRSC |

The Secretary, however, was not willing to leave defense of the Solicitation Definition and VBM Request Provisions to the Supervisors, the RNC, and the NRSC—no doubt because, as trial would make clear, the Supervisors were no fans of Senate Bill 90. In November 2021, the Secretary moved to intervene to defend those two provisions. Mem. in Supp. of Mot. to Intervene, ECF No. 337-1. The League Plaintiffs opposed the Secretary's intervention, arguing that "allowing the Secretary to defend these laws will increase the remaining briefing and time required for trial, necessarily inflating litigation costs to Plaintiffs." League Pls.' Opp'n to Mot. to Intervene at 8, ECF No. 341. The Court ultimately granted intervention to the Secretary, "recognizing Plaintiffs may suffer some prejudice" as a result. Order Granting Mot. to Intervene at 3, ECF No. 359. After the Court's order, the League Plaintiffs' claims and remaining Defendants were the following:

| Provision | Defendants |
|---|---|
| Registration Disclaimer Provision | Secretary, Attorney General, RNC, NRSC |
| Solicitation Definition | Secretary, Supervisors, RNC, NRSC |
| Drop Box Provisions | Secretary, Supervisors, RNC, NRSC |
| VBM Request Provisions | Secretary, Supervisors, RNC, NRSC |

The League Plaintiffs then defended against Defendants' Motion for Summary Judgment on all claims. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., ECF No. 321-1 After the Court denied that motion, the League Plaintiffs turned to preparing for trial. Among the plaintiff groups, the League Plaintiffs took the lead

role in coordinating the pretrial stipulation and gathering and coordinating the parties' exhibits, all of which took substantial effort.

Over the course of fourteen trial days, the League Plaintiffs presented testimony from each of the League Plaintiffs and experts Dr. Herron and Dr. Mayer. Among plaintiff groups, the League Plaintiffs also took the lead on the direct (and cross) examinations of other essential witnesses in the case, including Director Matthews, Supervisor Earley, Supervisor White, Supervisor Scott, Supervisor Corley, and David Ramba. The League Plaintiffs' post-trial brief totaled nearly 200 pages. League Pls.' Post-Trial Br., ECF No. 649.

On March 31, this Court entered an order granting a permanent injunction on two of the League Plaintiffs' claims. *See* Final Order at 284, ECF No. 665.

*First*, the Court found for the League Plaintiffs and entered a permanent injunction prohibiting the Secretary and Attorney General from enforcing the Registration Disclaimer Provision. The League Plaintiffs challenged this requirement as unconstitutional compelled speech under the First Amendment. The Court found that Cecile Scoon and Alan Madison (individual League Plaintiffs) and both of the League organizational entities had standing to sue, *id.* at 191, 194, 196 & n.61, and that the Secretary and Attorney General were proper Defendants for this claim, *id.* at 193. The Court relied on the League Plaintiffs' evidence to find that the speech at issue was not commercial, *id.* at 203, that the chance that a 3PVRO would

return a voter's registration late was "vanishingly small," *id.* at 210, and that the Supervisors agreed that there was not a significant issue with 3PVROs delivering forms late, *id.* at 212. The Court found that the disclaimer would fail under both strict scrutiny and exacting scrutiny, *id.* at 215–16, and permanently enjoined the Secretary and Attorney General from enforcing it, *id.* at 218.

*Second*, the Court found for the League Plaintiffs and entered a permanent injunction prohibiting Bay County Supervisor Mark Andersen from enforcing the Solicitation Definition. The Court found that the League Plaintiffs—specifically Cecile Scoon and the League entities—had standing to challenge the Solicitation Definition against Defendant Andersen. *Id.* at 138–143. The Court relied on the League Plaintiffs' evidence to find that the Plaintiffs' line warming activities were expressive. *See id.* at 163 ("Indeed, Ms. Scoon testified that voters who receive assistance have expressed an understanding of and gratitude for the emotional support that the League volunteers offer to voters waiting in lines outside of the polls."). The Court then found the Solicitation Definition to be both impermissibly vague and overbroad, *id.* at 181, 184, relying in large part on the testimony the League Plaintiffs developed at trial from Director Matthews and the Defendant Supervisors, *id.* at 178–180.

At the time of its final order in March 2022, the Court did not reach the League Plaintiffs' challenges to the Drop Box Provisions because the Court enjoined the

Defendants from enforcing the Drop Box Restrictions on intentional discrimination grounds based on the claims of plaintiffs in consolidated cases. *Id.* at 244–45. And the Court rejected the League Plaintiffs' challenge to the VBM Request Provision. *Id.* at 255.

## B.    Post-Trial Proceedings and Appeal

Since this Court's Final Order, the Legislature repealed the Registration Disclaimer, mooting the Court's original permanent injunction against Defendants Secretary and the Attorney General, and the Eleventh Circuit partially affirmed the League Plaintiffs' challenge to the Solicitation Definition on vagueness grounds.

### 1.    The Registration Disclaimer

On February 26, 2022, the League Plaintiffs submitted their post-trial briefing. *See* ECF No. 649. In it, they explained why the Registration Disclaimer was not the least-restrictive means of delivering the warning, rendering it unconstitutional. As the League Plaintiffs explained, "[i]f Florida wanted to warn voters that Third-Party Voter Registration Organization may not turn in their forms on time and inform them of other ways to register, such as online . . . Florida could have added that information to the form itself . . . ." ECF No. 649 at 75.

Four days later, Senator Hutson, the sponsor of SB 524, filed a narrow amendment to  repeal the Registration Disclaimer by modifying the warning in the

precise way that the League Plaintiffs had suggested.[4] As Florida politics reporter Gary Fineout observed, the Hutson Amendment seemed to be in direct response to this litigation; as he noted, "[t]hose who watched the trial have zeroed in on the disclaimer provision as the one part of last year's law (SB 90) . . . that seemed most in danger of getting struck down."[5]

The amendment was adopted, and the Legislature passed SB524, including the repeal, on March 9. The Legislature then sat on the bill and did not send it to the Governor for signature for nearly seven weeks. The Legislature finally presented the repeal to the Governor for signing nearly a month after the District Court's March 31 Final Order holding the Registration Disclaimer Provision unconstitutional, and permanently enjoining its enforcement.[6] At the signing, Governor DeSantis

---

[4] The Amendment repealing the Registration Disclaimer was Amendment 203418, which was introduced March 2, 2022 and adopted the following day. *See CS/CS/SB 524: Election Administration: Amendments*, Fla. Senate, https://www.flsenate.gov/Session/Bill/2022/524/?Tab=Amendments (last accessed Feb. 20, 2024).

[5] Gary Fineout, *Another Skirmish Over Florida's Election Laws*, Politico (Mar. 24, 2022), https://www.politico.com/newsletters/florida-playbook/2022/03/24/another-skirmish-over-floridas-election-laws-00019944.

[6] See *CS/CS/SB 524: Election Administration*: *Bill History*, Fla. Senate, https://www.flsenate.gov/Session/Bill/2022/524/?Tab=BillHistory (last accessed Feb 20, 2024).

specifically invoked the Senate Bill 90 litigation and this Court's ruling, recognizing that "we got dinged on this one provision."[7]

Later, on appeal, the Secretary and Attorney General asked the Eleventh Circuit to vacate this Court's judgment concerning the Registration Disclaimer Provision under the *Munsingwear* doctrine, and the Eleventh Court did so. *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 951 (11th Cir. 2023) ("*LOWV*"). In pressing for this outcome, all of the Defendants and Defendant-Intervenors (including the Secretary and the Attorney General) argued that refusing to vacate the judgment would be inequitable to them because none of the Defendants were responsible for the mooting the issue, instead pointing to the Legislature and the Governor as the responsible parties. *See League of Women Voters of Fla., Inc.v. Fla. Sec'y of State* No. 22-1143, 2022 WL 4078870, at *2 (11th Cir. Aug. 31, 2022) (Reply Brief of Appellants RNC and NRSC arguing the Registration Disclaimer issue "became moot because a bill was approved by the legislature and governor—neither of whom is a party" and that this was not a case of voluntary forfeiture); *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, No. 22-1143, 2022 WL 4078872, at *VII (11th Cir. Aug. 31, 2022) (Secretary

---

[7] WCTV.tv, *DeSantis Signs Elections Reform Bill (SB 524) 4/25/22* at 7:09-8:00, Facebook (April 25, 2022), https://www.facebook.com/watch/live/?ref=watch_permalink&v=1135135940364975.

and Attorney General joining the Reply Brief of the RNC and NRSC fully "on the *Munsingwear* vacatur issue"). In agreeing to vacate this Court's judgment on the Registration Disclaimer Provision, the Eleventh Circuit adopted these arguments, explicitly finding that the "repeal of the registration-disclaimer provision is 'unattributable to any of the parties' to this case,'" and finding it instead attributable to the Legislature and Governor. *LOWV*, 66 F.4th at 951 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994)). In vacating the judgment, the Court did not express any view on the merits of the League Plaintiffs' compelled speech claim.

### 2. The Solicitation Definition

Also on appeal, the Secretary sought to overturn this Court's order enjoining the Solicitation Definition. The League Plaintiffs challenged the Secretary's standing to appeal that portion of the Court's order, because the Court's injunction against the Solicitation Definition in this case was issued against only a single Supervisor of Elections, who did not appeal. But the Secretary insisted that he nevertheless had standing to appeal the decision, and the Eleventh Circuit agreed. *LOWV*, 66 F.4th at 945.

On the merits, the Eleventh Circuit affirmed this Court's determination that the Solicitation Definition was unconstitutionally vague. *Id.* at 948. Specifically, the Eleventh Circuit held that the Solicitation Definition's clause prohibiting individuals

from "engaging in any activity with the . . . effect of influencing a voter" was impermissibly vague in all applications. *Id.* at 947–48 (alteration in original) (emphasis omitted) (quoting Fla. Stat. § 102.031(4)(b)). In support, the Court cited the League Plaintiffs' evidence of the Supervisors' conflicting views on the application of the law, which it recognized would "lead to arbitrary enforcement." *Id.* at 947. The Court severed that provision from the statute, *id.* at 948, and this Court entered a permanent injunction consistent with the Court's order, *see* ECF No. 758.

### III. ARGUMENT

#### A. The League Plaintiffs are prevailing parties under § 1988.

The League Plaintiffs' success on two of their claims renders them "prevailing parties" within the meaning of Section 1983, entitled to an award of attorneys' fees, expert fees, and costs pursuant to Section 1988. Section 1988 entitles plaintiffs in Section 1983 actions to such an award, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). The fee award formulation is "generous," *id.*, and designed to effectuate Congress' purpose "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id.* at 429 (quoting H.R. Rep. No. 94–1558, at 1 (1976)). Prevailing party status does not require that a plaintiff succeed on all issues in the litigation, or

even the "central issue." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989). As the Supreme Court has explained, although "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit" may be relevant to "the size of a reasonable fee," it is not relevant "to eligibility for a fee award." *Id.*

To establish entitlement, one need only "point to a resolution of the dispute which change[d] the legal relationship" between the parties. *Id.* at 792. "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012).

Under these standards, the League Plaintiffs qualify as "prevailing parties" as a result of their success on their claims against the Registration Disclaimer and Solicitation Definition. The League Plaintiffs requested that the Court permanently enjoin such provisions, *see* Pls.' First Am. Compl., ECF No. 160, which is what the Court did in its order granting permanent injunctive relief, *see*, ECF No. 665; ECF No. 758. As a result of this Court's Order, there was a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (quoting *Sole v. Wyner*, 551 U.S. 74, 74 (2007)). In particular, the Court's Final Order meant that the Secretary and Attorney General could not enforce penalties against 3PVROs, such as the League, who do not deliver the disclaimer found in Senate Bill 90, and that Defendant Anderson may not take action when the League

provides nonpartisan assistance to voters at the polls simply because a voter subjectively believes that the League is intending to influence them by providing such assistance.

The Legislature's subsequent repeal of the Registration Disclaimer Provision and the Eleventh Circuit's consequent vacatur of the judgment pertaining to that provision, *see supra* at 12, does not affect the League Plaintiffs' status as a prevailing party on that claim (nor, obviously, on their separate challenge to the Solicitation Definition). "[W]hen plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation." *Thomas*, 614 F.3d, at 1294.[8]

That is precisely what happened here: The League Plaintiffs succeeded in obtaining a permanent injunction in the district court and the case was mooted on appeal only because, as the Eleventh Circuit already found, third parties (the Legislature and the Governor), acted to repeal the Disclaimer, mooting the appeal. *LOWV*, 66 F.4th at 951. The Eleventh Circuit's finding that the repeal was *not*

---

[8] As the *Thomas* Court noted, 614 F.3d at 1294 n.2, multiple circuit courts of appeal have held the same. *See, e.g.*, *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014); *Diffenderfer*, 587 F.3d, at 453; *UFO Chuting of Haw., Inc. v. Smith,* 508 F.3d 1189, 1197 & n.8 (9th Cir. 2007); *Dahlem v. Bd. of Educ. of Denver Pub. Sch.,* 901 F.2d 1508, 1512–13 (10th Cir. 1990); *Palmer v. City of Chicago,* 806 F.2d 1316, 1321 (7th Cir. 1986); *Grano v. Barry,* 783 F.2d 1104, 1109 (D.C. Cir. 1986).

attributable to the Secretary or Attorney General, and instead to the Legislature and Governor, forecloses any argument that the Secretary and Attorney General are responsible for mooting the claim. *See supra* at 12-13. Moreover, on appeal, the Secretary and Attorney General argued they were *not* responsible for mooting the Disclaimer Provision, an argument they prevailed upon, paving the way for the Court to vacate the judgment below. *See id.*

This case is also much like *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), where the Eleventh Circuit held that the plaintiffs (there, the NAACP and multiple voters) were "prevailing parties" and entitled to fees because they obtained a preliminary injunction that prevented Georgia from enforcing its photo ID requirement, even though Georgia later repealed the law. *Id.* at 1356. Here, too, the League Plaintiffs obtained not merely a preliminary injunction, but a final order and permanent injunction on their claim. The League Plaintiffs thus remain prevailing parties despite the legislative repeal and resulting vacatur of the Court's judgment based on mootness. *See Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1560 (11th Cir. 1987) (confirming that a determination of "'mootness' does not retroactively divest plaintiffs of prevailing party status" (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980))); *see also Diffenderfer,* 587 F.3d at 454 (affirming fee award to plaintiffs who obtained permanent injunction of an election law in district court, even though the judgment was vacated after intervening

legislation mooted the appeal); *Hargett*, 767 F.3d, at 541, 553–54 (affirming fee award to plaintiffs who obtained injunction of an election law in district court, even though the dispute was mooted while pending appeal by legislature's change to statute). As the Sixth Circuit explained in *Hargett*, "[t]he plaintiffs have *not* been stripped of their prevailing party status by the legislature's decision to amend the relevant statutes two months after the district court issued its order but before the defendants' appeal was heard." 767 F.3d at 553. Nor have the League Plaintiffs.

The analysis also does not change because the Eleventh Circuit vacated the underlying judgment. In *Thomas*, a Section 1983 case, the Eleventh Circuit "vacate[d] the district court's judgment and permanent injunction" on mootness grounds but nonetheless remanded the matter to "allow the district court to resolve Thomas's motion for attorney's fees." 614 F.3d at 1294. As the Court explained, fees were permitted so long as the district court determined, "in its discretion," that "Thomas 'succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit.'" *Id.* (quoting *Tex. State Tchrs.*, 489 U.S. at 791-92); *see also Jacksonville Prop. Rts. Ass'n, Inc. v. City of Jacksonville*, 635 F.3d 1266, 1275 n.20 (11th Cir. 2011) (noting "that our decision to dismiss each parties' appeal, vacate the judgment, and instruct the district court to dismiss the case will not deprive the Plaintiffs of the opportunity to seek those § 1988 attorneys' fees"); *Gaylor v. N. Springs Assocs., LLLP*, 648 F. App'x 807, 811 (11th Cir. 2016)

(vacating judgment below in light of mootness but recognizing such action "does not affect [the plaintiff's] status as a prevailing party for purposes of attorney's fees"); *Diffenderfer*, 587 F.3d at 453 (holding vacatur of underlying judgment on grounds of mootness did not change prevailing parties' entitlement to fees). This outcome makes good sense: As one court explained, allowing moot or vacated judgments to deprive parties of prevailing party status would encourage gamesmanship among government defendants and discourage the suits these fees are intended to incentivize. *See Migliori v. Lehigh Cnty. Bd. of Elections*, 668 F. Supp. 3d 337, 348 (E.D. Pa. 2023) ("To hold otherwise could deter attorneys from accepting complex civil rights cases whose adjudication would be an overall benefit to society and could likewise encourage defendants to seek mootness outcomes to avoid the payment of attorney's fees.").

The Supreme Court's decision in *Sole v. Wyner*, 551 U.S. 74 (2007), does not counsel a different result. In *Sole*, the Court held that a plaintiff who obtains a "preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case" does not obtain prevailing party status. *Id.* at 83; *see also id.* at 86 (holding fees are not available "if the merits of the case are ultimately decided against" the plaintiff). *Sole* is not applicable here: The League Plaintiffs received permanent injunctions on a final order, not a preliminary injunction on an interim judgment, and the League Plaintiffs' claim on the merits was not reversed,

only vacated on mootness grounds. As courts have explained, vacatur on mootness grounds "does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019); *Kansas Jud. Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011) (explaining the "critical distinction" between "injunctions vacated on mootness grounds and [] injunctions vacated as a result of an adverse decision on the merits" for prevailing party status). In any event, were there any doubt about the meaning of *Sole*—and there should be none—the Eleventh Circuit has indicated fees under Section 1988 are still appropriate after vacating an injunction at least three times in the years after *Sole*. *See Thomas*, 614 F.3d at 1294; *Jacksonville Prop. Rts*, 635 F.3d at 1275; *Gaylor*, 648 F. App'x at 811.

As for the League Plaintiffs' challenge to the Solicitation Definition, the Eleventh Circuit's affirmance of the Court's judgment that a portion of the Definition was unconstitutionally vague confirms that the League Plaintiffs are prevailing parties. It makes no difference that the Eleventh Circuit upheld a different portion of the Definition. Plaintiffs in Section 1983 actions are entitled to fees under Section 1988 "if they succeed on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (emphasis added) (citation omitted); *Tex. State Tchrs.*, 489 U.S. at 791-92. That is true here. As a result of the Court's judgment, and the Eleventh Circuit's affirmance,

the League Plaintiffs are no longer subject to liability for the part of the statute that exposed them to the subjective and "arbitrary enforcement" of conduct that had the "effect" of influencing voters, 66 F.4th at 947-48, no matter how innocuous or nonpartisan their conduct was.

Thus, the League Plaintiffs' success on their challenges to the Registration Disclaimer Provision and the Solicitation Definition undeniably qualifies them as prevailing parties in this litigation. The League Plaintiffs respectfully request this Court determine they are entitled to fees, at which point the League Plaintiffs will submit additional documentation supporting the amount of fees to which they are entitled. *See* Local Rule 54.1.

## B. The Court should award fees against the Secretary and Attorney General.

The Court should award fees against both the Secretary and the Attorney General for fees arising from the Registration Disclaimer Provision, both of whom were enjoined from enforcing it. *See supra* at 8-9. And, although the Secretary himself was not enjoined from enforcing the Solicitation Definition, the Secretary should nonetheless be liable for the fees associated with the League Plaintiffs' challenge to that Definition, because the Secretary insisted on inserting himself into the dispute over that Definition and proceeded to aggressively defend it both at trial

and on appeal.[9] The League Plaintiffs do not seek a fee award against Supervisor

Andersen or any other Supervisor of Elections.

      **1.**      **The Secretary and Attorney General are liable for fees as the enforcers of the unconstitutional Registration Disclaimer Provision.**

As this Court previously recognized, "[t]hroughout this litigation, both

Defendants Lee and Moody have acknowledged that they directly enforce the

registration disclaimer." ECF No. 665 at 192. Consequently, the Secretary and the

Attorney General are liable for fees.

"The governmental entity charged with administering an offending statute

exposes itself to liability for attorney's fees and costs under § 1988." *Mallory v.

Harkness*, 923 F. Supp. 1546, 1552 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir.

1997). "Fee awards against enforcement officials are run-of-the-mill occurrences,"

even where it is the legislature that enacted an unconstitutional law. *Sup. Ct. of Va.

v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 739 (1980). "[A] government

official responsible for enforcing an unconstitutional statute is liable for attorney's

fees, even where the official took no active steps to enforce the statute." *Council for

Periodical Distribs. Assocs. v. Evans*, 827 F.2d 1483, 1486 (11th Cir. 1987).

Officials' "conduct and motive, whether in good or bad faith, are irrelevant for

_____

[9] The League Plaintiffs will allocate the fees sought between their claims in their subsequent motion to determine the amount of their fees.

purposes of recovery of attorneys' fees" against them. *Id.* (quoting *Robinson v. Kimbrough*, 652 F.2d 458, 461 n.2 (5th Cir. 1981)). These Defendants, like the defendants in *Council for Periodical Distributors Association*, "were represented at trial by their own counsel, and did oppose the plaintiffs' effort," rather than, "as they could have, . . . concede at the outset of the litigation that the [statute] was unconstitutional." *Id.* at 1487. They are consequently responsible for fees here.

### 2. The Secretary is liable for fees due to his intervention to defend the Solicitation Definition

The Court should also hold the Secretary liable for fees based on his voluntarily intervention to reinsert himself and defend the Solicitation Definition after this Court had already dismissed the Secretary as a proper defendant on that claim, ECF Nos. 274, 337-1, 359, as well as the Secretary's pursuit of an appeal on this claim even though Secretary Anderson himself did not appeal the judgment. *See supra* at 13.

An award of fees against an intervenor is subject to a higher standard, requiring a showing of wrongdoing or fault. *Mallory*, 923 F. Supp. at 1553; *see also Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989). But that requirement is easily met against the Secretary here.

Much like the Florida Attorney General in *Mallory*, by intervening to defend the Solicitation Definition, the Secretary "defended the unconstitutional statute voluntarily and in doing so attempted to aid in the offending statute's enforcement."

923 F. Supp. at 1553. Having successfully extricated himself from the challenge to the Solicitation Definition, the Secretary then affirmatively sought to reestablish himself as a defendant "so that [he] may defend all statutory provisions being challenged before this Court." Mem. in Supp. of Mot. to Intervene, ECF No. 337-1 at 2. The Secretary's counsel at Holtzman Vogel took the lead at trial in defending the Solicitation Definition alongside the other provisions. In contrast, the Supervisors—the only non-intervenor Defendants with respect to the Solicitation Definition—took a far less active role, with only Supervisor White's counsel asking any questions at trial, and then only a handful. Supervisor Andersen did not appear at trial at all. And when Supervisor Anderson declined to appeal the judgment against him, the Secretary insisted on doing so anyway, and on defending the Solicitation Definition on appeal—thereby prolonging the dispute and increasing the League Plaintiffs' costs.

As the Court observed in *Mallory*, a state official, "acting as a representative of the state, cannot be 'innocent' in terms of violating the Plaintiff's civil rights" when "[t]he state enacted, enforced, and defended the unconstitutional statute." 923 F. Supp. at 1553. Just as in *Mallory*, "[t]he state should not be allowed to require [officials] to enforce an unconstitutional statute, defend that statute on the merits as an intervenor in federal court, and then attempt to use its intervenor status to escape liability for attorney's fees. Allowing such a loophole violates the policy behind 42

U.S.C. § 1988." *Id.* Thus, the Court should award attorneys' fees against the Secretary based on his intervention and appeal to defend the Solicitation Definition.[10]

### C. As prevailing parties, the League Plaintiffs are entitled to attorneys' fees, costs, and expenses, including expert fees.

As prevailing parties under Section 1988, the League Plaintiffs may recover "a reasonable attorney's fee" and "expert fees" as part of their costs. 28 U.S.C. § 1988(b), (c). Moreover, the League Plaintiffs are not limited to usual kinds of costs permissible in every case under 28 U.S.C. § 1920. Rather, "[a]n award of attorney's fees under section 1988 also includes various costs and expenses, over and above those outlined in [28 U.S.C. § 1920], the general statute for taxation of costs." *Johnson v. Mortham*, 950 F. Supp. 1117, 1126 (N.D. Fla. 1996), *on reconsideration in part*, 173 F.R.D. 313 (N.D. Fla. 1997). That includes expert fees, *see* 28 U.S.C. § 1988(c), along with other reasonable litigation expenses. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989) (noting that the "fee must take into account the

_____

[10] While the Intervenor-Defendants in *Independent Federation of Flight Attendants* were not liable for fees, that case is distinguishable. There, the intervenor was a private organization that "intervened to assert the collectively bargained contract rights of its incumbent employees, rights that neither respondents nor [the employer] had any interest in protecting in their settlement agreement." 491 U.S. at 765. The Supreme Court explained that this was "certainly not conduct that the [fee-shifting] statute aimed to deter." *Id.* Here, in contrast, the Secretary is a state official who intervened in the case to defend Florida's ability to continue to enforce an unconstitutional statute—*precisely* what § 1988 was intended to deter.

work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit"); *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) (collecting cases detailing types of reasonable litigation expenses); *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987) ("'[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988' and 'the standard of reasonableness is to be given a liberal interpretation.'" (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983))). Accordingly, the League Plaintiffs also respectfully request that the Court determine that they are entitled to their reasonable costs incurred, which the League Plaintiffs will quantify in their subsequent motion, in accordance with Local Rule 54.1(A)'s bifurcated procedure.

## IV.    CONCLUSION

For the reasons discussed above, the Court should find that the League Plaintiffs are prevailing parties entitled to an award of their reasonable attorneys' fees and costs, including expert fees and other reasonable and related litigation expenses, and that those fees and costs should be awarded against the Secretary and Attorney General as discussed above. In accordance with the local rules, should the

Court grant this Motion, the League Plaintiffs will then file a subsequent motion to determine the fee amount with all appropriate supporting material.

## LOCAL RULES CERTIFICATION

Undersigned counsel conferred with opposing counsel pursuant to Local Rule 7.1(B) and confirms that the Secretary and Attorney General oppose the requested relief. Undersigned counsel certifies that this motion contains 6,143 words, excluding the case style, conferral certification and certificate of service.

Respectfully submitted this 22nd day of February, 2024.

| | |
|---|---|
| Frederick S. Wermuth | /s/ David R. Fox |
| Florida Bar No. 0184111 | David R. Fox* |
| Thomas A. Zehnder | Christina A. Ford |
| Florida Bar No. 0063274 | ELIAS LAW GROUP LLP |
| King, Blackwell, Zehnder | 250 Massachusetts Ave NW, Suite 400 |
|   & Wermuth, P.A. | Washington, DC 20001 |
| P.O. Box 1631 | Telephone: (202) 968-4490 |
| Orlando, FL 32802-1631 | Facsimile: (202) 968-4498 |
| Telephone: (407) 422-2472 | dfox@elias.law |
| Facsimile: (407) 648-0161 | cford@elias.law |
| fwermuth@kbzwlaw.com | *Admitted *Pro Hac Vice* |
| tzehnder@kbzwlaw.com | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered to receive notifications.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111
*Counsel for Plaintiffs*