UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CORD BYRD, in his official capacity as Florida Secretary of State, et al., <br><br> Defendants, <br><br> and <br><br> REPUBLICAN NATIONAL COMMITTEE, and NATIONAL REPUBLICAN SENATORIAL COMMITTEE, <br><br> Intervenor-Defendants. | Case No.:   4:21-cv-186-MW/MAF |

## LEAGUE PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DETERMINE ENTITLEMENT TO FEES

Under controlling law in this Circuit, the League Plaintiffs are entitled to fees as prevailing parties for their success on both their Registration Disclaimer claim and Solicitation Definition claim. Although the Secretary repeatedly attempts to distance himself from binding Eleventh Circuit caselaw in his opposition to fees, ECF No. 774, this Court is bound by the decisions of the Circuit, all of which reach common sense outcomes to ensure that plaintiffs who succeed on the merits of their

claims do not lose prevailing party status for reasons inconsistent with the policy behind Section 1988's fee shifting regime: to encourage suits against unconstitutional laws.

## ARGUMENT

### A. The League Plaintiffs are prevailing parties under § 1988.

The League Plaintiffs are prevailing parties for their success in obtaining permanent injunctive relief on both their Registration Disclaimer claim, *see* ECF No. 665, and their Solicitation Definition claim, *see* ECF No. 758. The Secretary's efforts to unravel the League Plaintiffs' prevailing party status on both claims fall flat: *Munsingwear* vacatur does not undo prevailing party status, and plaintiffs regularly obtain prevailing party status and corresponding fees when they succeed on pre-enforcement challenges, as the League Plaintiffs did here.

As the League Plaintiffs explained in their motion, the Legislature's subsequent repeal of the Registration Disclaimer Provision and the Eleventh Circuit's consequent vacatur of the judgment pertaining to that provision do not affect the League Plaintiffs' status as a prevailing party on that claim (nor, obviously, on their separate challenge to the Solicitation Definition). *See* League Pls.' Mot. to Determine Entitlement to Fees at 16–20, ECF No. 770. Although the Secretary contends that "*Munsingwear* vacatur prevents Plaintiffs from 'prevailing' on their challenge to the provision," he cites no binding authority from any court (let alone

2

the Eleventh Circuit) for that proposition. *See* Sec'y's Opp'n to Pls.' Mot. at 2–5, ECF No. 774. Instead, the Secretary relies on a concurring opinion from a single Fifth Circuit judge, sitting on an *en banc* court of fifteen judges, who mustered a single vote (his own) for that proposition. *See* Opp. at 3–5 (citing *Thomas v. Reeves*, 961 F.3d 800, 828–29 (5th Cir. 2020) (Oldham, J., concurring)).

Judge Oldham's concurrence is not the law even of the Fifth Circuit, let alone the law of the Eleventh Circuit. To the contrary, the Eleventh Circuit has held that a plaintiff who obtains an injunction below, but whose victory is mooted on appeal by an intervening event, is still a prevailing party entitled to fees, *even if* the Court vacates the underlying judgment on mootness grounds. *See Thomas v. Bryant*, 614 F.3d 1288, 1294 (11th Cir. 2010). That is exactly what happened in *Thomas v. Bryant*. Thomas successfully obtained injunctive relief on an Eighth Amendment claim at the district court. *Id.* at 1293–94. Before the Eleventh Circuit could resolve the appeal, however, Thomas died, which mooted the claim at issue. *Id.* at 1294. As the Eleventh Circuit explained, Thomas remained a "'prevailing party' entitled to attorneys' fees for the costs of the district court litigation notwithstanding his untimely death and the subsequent mootness of his lawsuit pending appeal." *Id.* That was true even though the Eleventh Circuit "vacate[d] the district court's judgment and permanent injunction as to Thomas," and immediately remanded the case to the district court "to allow the district court to resolve Thomas's motion for attorney's

3

fees." *Id.* The district court could award fees to Thomas, the Court explained, if it determined that Thomas "succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit," *id.* (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–92 (1989)), the traditional test to determine entitlement to fees, *see* Mot. at 14.

Although the Secretary does not acknowledge it, *Thomas* is not an outlier: the Eleventh Circuit has now at least twice since *Thomas* instructed that plaintiffs are entitled to attorneys' fees even after vacating the judgment below. *See Jacksonville Prop. Rts. Ass'n, Inc. v. City of Jacksonville*, 635 F.3d 1266, 1275 n.20 (11th Cir. 2011) (noting "that our decision to dismiss each parties' appeal, vacate the judgment, and instruct the district court to dismiss the case will not deprive the Plaintiffs of the opportunity to seek those § 1988 attorneys' fees"); *Gaylor v. N. Springs Assocs., LLLP*, 648 F. App'x 807, 811 (11th Cir. 2016) (vacating judgment below in light of mootness but recognizing such action "does not affect [the plaintiff's] status as a prevailing party for purposes of attorney's fees").

*Thomas* plainly controls here, and the Secretary's attempts to distinguish it lack facial plausibility. First, the Secertary asks the Court to disregard *Thomas* because the Court reached its determination in "only two paragraphs." Opp. at 5. But that has no bearing on whether this Court must follow this precedent. *Second*, the Secretary takes issue with *Thomas*'s outcome itself, arguing that the Eleventh Circuit

4

didn't "adequately address" *Sole*. Opp. at 5. But whether the Secretary agrees with *Thomas* is beside the point.

In any event, the Eleventh Circuit has good reason not to address *Sole v. Wyner*, 551 U.S. 74 (2007), in its decision. *Sole* asked and answered the following question: "Does a plaintiff who gains a preliminary injunction after an abbreviated hearing, but is denied a permanent injunction after a *dispositive adjudication on the merits*, qualify as a 'prevailing party' within the compass of § 1988(b)?" *Id.* at 77 (emphasis added). To that question, the Supreme Court answered no: the final decision "on the merits" determines prevailing party status, and parties who leave the courthouse "emptyhanded" after a reversal on the merits are not prevailing parties. *Id.* at 78. But the final decision on the merits in this case was a victory for the League Plaintiffs on the Registration Disclaimer, and they did not walk out emptyhanded; rather, they left with a final, permanent injunction, *see* ECF No. 665, which was mooted only when the Legislature repealed the offending statute after final judgment, *see* Mot. at 10–13.

Given *Sole*'s focus on the merits-outcome as determinative of prevailing party status, many courts have held that vacatur on mootness grounds "does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011) (explaining the

5

"critical distinction" between "injunctions vacated on mootness grounds and []  injunctions vacated as a result of an adverse decision on the merits" for prevailing party status). True, a single Fifth Circuit judge disagrees with that conclusion. *See* Opp. at 3–5. But the Eleventh Circuit has repeatedly instructed that fees are available to a plaintiff who obtains success in the district court even after their injunction is vacated on mootness grounds, *see supra* at 3–4, and this Court cannot second-guess that conclusion.

The Secretary's challenge to the League Plaintiffs' status as prevailing parties for the Solicitation Definition fares no better. Although the Secretary characterizes the League Plaintiffs' victory as "technical" or "de minimis" because the Solicitation Definition had not yet been enforced against Plaintiffs, Opp. at 9, plaintiffs in pre-enforcement challenges are regularly deemed prevailing parties entitled to fees. In *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009), for example, the Eleventh Circuit affirmed an award of fees to plaintiffs who obtained a preliminary injunction against an election statute which was passed in July 2005, and enjoined in October 2005, in advance of that state's upcoming municipal elections. Similarly, in *League of Women Voters of Fla. v. Browning*, the district court held that the League were prevailing parties in a pre-enforcement challenge to an unconstitutional voter registration law and entitled to fees, even though, as the State Defendants pointed out there, the League was "exempt[] from the challenged

6

law during the pendency" of the litigation such that it was never enforced against them before they obtained the injunction. No. 06-21265-CIV, 2008 WL 5733166, at *6–7 (S.D. Fla. Dec. 4, 2008), *report and recommendation adopted as modified*, No. 06-21265, 2009 WL 701107 (S.D. Fla. Mar. 16, 2009). The court properly rejected that argument and focused instead on whether the plaintiff succeeded on the merits and secured benefit to themselves in doing so. *See id.* at *7.

Just as in *Browning*, the League Plaintiffs surely succeeded on the merits and secured benefit for themselves here. In short, the League Plaintiffs no longer need to tell aspiring voters that they may not turn in their voter registration forms on time, a requirement that was both severely misleading and hampered their voter registration efforts. The League Plaintiffs may also now engage in nonpartisan assistance at the polls without fear of prosecution simply because a voter perceives that the League Plaintiffs' assistance is intended to improperly influence them. Thus, because they "succeed[ed] on a[] significant issue in litigation which achieves some of the benefit the [League Plaintiffs] sought in bringing suit," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted), the League Plaintiffs are prevailing parties entitled to fees.

### B. The League Plaintiffs May Seek Fees from the Secretary and Attorney General.

Neither the Secretary nor the Attorney General disputes that, if this Court determines the League Plaintiffs are prevailing parties on at least their Registration

7

Disclaimer claim, that the Secretary and Attorney General are liable for those fees as enforcers of that provision. *See* Mot. at 22–23; Opp. at 2–6 (contesting prevailing party status but not fee liability otherwise).

Although the standard is different for the Solicitation Definition given the Secretary's status as an intervenor rather than a defendant on that claim, *see* Mot. at 23, the League Plaintiffs meet that standard, too. In arguing otherwise, the Secretary grossly overreads *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

Both the facts and reasoning of *Zipes* are relevant to understanding its applicability here. In *Zipes*, female flight attendants sued their employer, TransWorld Airlines (TWA), for sex discrimination; much later in the litigation, once a settlement fund was established, a third-party intervenor representing other flight attendants "intervened to assert the collectively bargained contract rights of its incumbent employees, rights that neither respondents nor [the employer] had any interest in protecting in their settlement agreement." 491 U.S. at 765. In determining that the intervenor was not liable for fees but TWA *was* (to the tune of $1.25 million), the Supreme Court explained that "[a]ssessing fees against blameless intervenors" "is not essential" to the purpose to the fee-shifting statute: to encourage such suits. *Id.* at 761. To the contrary, assessing fees against an intervenor that "sought to

8

protect the bargained-for seniority rights of its employees" was "certainly not conduct that the [fee-shifting] statute aimed to deter." *Id.* at 762, 765.

As many courts have held, *Zipes* focused on the scenario of "blameless" third-party intervenors and did not consider the scenario here of a state official who intervenes to defend an unconstitutional law. Here, just as in *Mallory v. Harkness*, 923 F. Supp. 1546, 1553 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997), the named defendants "declined to defend the challenged statute," and where the intervening state official "defended the unconstitutional statute voluntarily and in doing so attempted to aid in the offending statute's enforcement," that state official was liable for fees. *Id.* at 1550, 1553; *see also* Mot. at 23–24 (discussing *Mallory*).

Although the Secretary contends that *Mallory* does not control, *see* Opp. at 8, the Eleventh Circuit summarily affirmed *Mallory*, *see* 109 F.3d 771, the precedential effect of which extends to "the precise issues presented and necessarily decided by those actions." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182 (1979). *Mallory* necessarily held that a state actor who intervenes to defend an unconstitutional statute after the named defendant declines to enforce it is not a "blameless" intervenor under *Zipes*, and the plaintiffs may properly collect fees from them consistent with the fee-shifting purpose of Section 1988. *See* 923 F. Supp. at 1552–53. That holding is therefore controlling and directly applicable here.

*Mallory* is not alone in holding that state defendants who intervene to defend unconstitutional statutes are not "innocent" intervenors under *Zipes*. In *Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253 (3d Cir. 2002), for example, the Third Circuit held that the Legislature, which had intervened to defend an unconstitutional statute the Executive Branch had declined to defend, became the "functional equivalent of a defendant in the case" and could not be considered a "blameless" intervenor under *Zipes*. *Id.* at 264–65. The Third Circuit accordingly determined that the plaintiffs in that case were entitled to fees, explaining that a contrary holding "would be an over-extension of *Zipes* and would thwart the purpose of the fee-shifting statutes." *Id.* at 265; *see also Daggett v. Kimmelman*, No. CIV. 82-297, 1989 WL 120742, at *7 n.6 (D.N.J. July 18, 1989) (reaching the same conclusion about *Zipes* in the face of state intervenor-defendant). Notably, even the Fourth Circuit in *Brat v. Personhuballah*, which as the Secretary cites in his defense, Opp. at 7, indicated it believed *Planned Parenthood* and *Mallory* were distinguishable from the case before it (in which it declined to require that intervening Congressmen pay fees) "because the intervening defendants in [*Planned Parenthood* and *Mallory*] were, as state actors, defending the challenged statute on behalf of the State." *Brat v. Personhuballah*, 883 F.3d 475, 483 (4th Cir. 2018). That is precisely what the Secretary did here, telling the Eleventh Circuit that he "represents the State's interests" in defending the Solicitation Definition and "stands

10

in for the State—even when the challenged election law is administered by county supervisors." Reply Br. of Sec'y of State, *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, No. 22-1143, 2022 WL 4078872, at *7–8 (11th Cir. Aug. 31, 2022); *see also* Mem. in Supp. of Mot. to Intervene, ECF No. 337-1 at 4 (Secretary explaining that his intervention was necessary "to assert the State's interests in the State-election provisions being challenged"); *id.* at 7 (asserting the Secretary speaks for the "State of Florida," which has an interest in "the continued enforceability of its own statutes") (citation omitted); *id.* at 9 (noting the Supervisors were not defending state law and "[o]nly the Secretary is offering a full-throated defense of the entirety of Florida election law"). In contrast, in *Brat*, the intervenors were members of Congress, not state officials at all, so they were in no sense responsible for the State's enactment or enforcement of the unconstitutional law. *See Brat*, 883 F.3d at 483.

As the Court observed in *Mallory*, a state official, "acting as a representative of the state, cannot be 'innocent' in terms of violating the Plaintiff's civil rights" when "[t]he state enacted, enforced, and defended the unconstitutional statute." 923 F. Supp. at 1553. Just as in *Mallory*, "[t]he state should not be allowed to require [officials] to enforce an unconstitutional statute, defend that statute on the merits as an intervenor in federal court, and then attempt to use its intervenor status to escape

11

liability for attorney's fees. Allowing such a loophole violates the policy behind 42 U.S.C. § 1988." *Id.*

For all the reasons above and for the reasons in Plaintiffs' Motion, ECF No. 770, the Court should award attorneys' fees against both the Attorney General and Secretary for their enforcement of the Registration Disclaimer and against Secretary based on his intervention to defend the Solicitation Definition where the named defendants had declined to do so.

## CONCLUSION

The Court should find that the League Plaintiffs are prevailing parties entitled to an award of their reasonable attorneys' fees and costs, including expert fees and other reasonable and related litigation expenses, and that those fees and costs should be awarded against the Secretary and Attorney General as discussed above.

Respectfully submitted this 15th day of March, 2024.

| | |
|---|---|
| Frederick S. Wermuth | /s/ David R. Fox |
| Florida Bar No. 0184111 | David R. Fox* |
| Thomas A. Zehnder | Christina A. Ford |
| Florida Bar No. 0063274 | ELIAS LAW GROUP LLP |
| King, Blackwell, Zehnder | 250 Massachusetts Ave NW, Suite 400 |
| & Wermuth, P.A. | Washington, DC 20001 |
| P.O. Box 1631 | Telephone: (202) 968-4490 |
| Orlando, FL 32802-1631 | Facsimile: (202) 968-4498 |
| Telephone: (407) 422-2472 | dfox@elias.law |
| Facsimile: (407) 648-0161 | cford@elias.law |
| fwermuth@kbzwlaw.com | *Admitted *Pro Hac Vice* |
| tzehnder@kbzwlaw.com | *Counsel for Plaintiffs* |

## **LOCAL RULE 7.1(F) CERTIFICATION**

Undersigned counsel, Frederick Wermuth, certifies that this motion contains 2,670 words, excluding the case style and certifications.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 15, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered to receive notifications.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*