UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., et al.,

Plaintiffs,

v.

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

Defendants,

and

REPUBLICAN NATIONAL
COMMITTEE, and NATIONAL
REPUBLICAN SENATORIAL
COMMITTEE,

Intervenor-Defendants.

Case No.:   4:21-cv-186-MW/MAF

## LEAGUE PLAINTIFFS' MOTION TO DETERMINE AMOUNT OF ATTORNEYS' FEES, EXPERT FEES, AND LITIGATION EXPENSES AND INCORPORATED MEMORANDUM OF LAW

Pursuant to 42 U.S.C. §§ 1983 and 1988, Fed. R. Civ. P. 54(d), and Local Rule 54.1(E), Plaintiffs League of Women Voters of Florida, Inc., League of Women Voters of Florida Education Fund, Inc., Black Voters Matter Fund, Inc., Florida Alliance For Retired Americans, Inc., Cecile Scoon, and Alan Madison (collectively, the "League Plaintiffs") respectfully move this Court to determine the amount of

attorneys' fees and litigation expenses to which they are entitled as prevailing parties in this matter.

## I.      INTRODUCTION

As this Court has already determined, the League Plaintiffs are prevailing parties under 42 U.S.C. § 1988 for their success on two of their constitutional claims, brought pursuant to 42 U.S.C. § 1983. *See* ECF No. 784. The League Plaintiffs are therefore entitled to their reasonable attorneys' fees, expert fees, and litigation expenses incurred in this litigation.

Obtaining this relief took great effort, including wading through 6 million pages of discovery from Defendants, preparing and responding to several expert reports, taking and defending more than twenty depositions, defending against a motion for summary judgment on all claims, and participating in a fourteen-day trial, in which the League Plaintiffs' counsel took the lead in examining many of the key witnesses.

Although the League Plaintiffs' success in this case was significant, the League Plaintiffs also acknowledge that a reduction in fees is warranted given their partial success in their case as a whole. As the League Plaintiffs demonstrate below, in seeking this fee award, the League Plaintiffs have made many voluntary reductions, including (1) eliminating, using an overbroad methodology, time spent on wholly unsuccessful claims, for plaintiffs who brought wholly unsuccessful

claims, and on wholly unsuccessful post-trial arguments; (2) limiting their fee motion to the core case and trial team, eliminating a significant amount of work by other attorneys and professional staff who took a less substantial overall role in the case; and (3) reducing the resulting lodestar even further to adjust for partial success. After making these adjustments, the League Plaintiffs seek a fee award of $2,966,925.28. As the League Plaintiffs' independent expert attests, this fee is reasonable in light of the complexity of this case and time required to prosecute these claims. The League Plaintiffs also seek an expense award of $217,223.72.

## II.    LITIGATION BACKGROUND

### A.    Pre-Trial Proceedings

On May 6, 2021, minutes after Governor DeSantis signed Senate Bill 90, the League Plaintiffs filed a complaint challenging five provisions of Senate Bill 90 as unconstitutional under the First and Fourteenth Amendments, including the Registration Disclaimer Provision, the Solicitation Definition, the VBM Request Provision, the Drop Box Provisions, and the Volunteer Assistance Ban. *See* Compl., ECF No. 1. The League Plaintiffs named as Defendants the Secretary, the Attorney General, and all 67 of Florida's Supervisors of Elections. *See id.* As Plaintiffs recognized at the time of filing the complaint, the inclusion of all Supervisors as Defendants was necessary in light of the Eleventh Circuit's holding in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020), which this Court similarly

3

recognized as the case progressed, *see, e.g.*, ECF No. 273 at 2 (this Court recognizing that the Defendant Supervisors were the only proper Defendants for Plaintiffs' challenge to the Solicitation Definition).[1]

The parties then began engaging in discovery. The League Plaintiffs sought information on the state interests purportedly supporting Senate Bill 90 and its anticipated effects from every Defendant. Frost Decl. ¶ 7. The League Plaintiffs received more than 6 million pages of documents in response to their discovery requests. Frost Decl. ¶ 7. In turn, the League Plaintiffs were required to respond to a total of 129 interrogatories and 82 requests for production promulgated by the Defendants and Defendant-Intervenors. Frost Decl. ¶ 7.

Before trial, the League Plaintiffs developed, and submitted for the Court's consideration, expert reports from Drs. Michael Herron and Kenneth Mayer. Frost Decl. ¶ 8. Dr. Herron's expert report covered the calculus of voting framework, Florida's general election administration, an overview of Senate Bill 90, the evidence (or lack thereof) of voter fraud in American and Florida elections, information on voter registration and Third-Party Voter Registration Organizations ("3PVROs"), voting lines, and voter assistance. Frost Decl. ¶ 8. Dr. Mayer's report,

---

[1] Shortly after filing, the Court also permitted the Republican National Committee (RNC) and National Republican Senatorial Committee (NRSC) to intervene to defend the laws alongside the Secretary, Attorney General, and the Supervisors. *See* ECF No. 72.

narrower in scope, responded specifically to the Secretary and Attorney General's expert, Dr. Quentin Kidd, and the shortcomings in his report and analysis. Frost Decl. ¶ 8.[2]

The Defendants collectively noticed and took the deposition of every League Plaintiff and expert. Frost Decl. ¶ 9. Among the various plaintiff groups consolidated for trial, the League Plaintiffs took the lead on conducting the depositions of the Director of the Division of Elections Maria Matthews; Supervisors Earley, White, Scott, Hays, Corley, Latimer, Bennett, Marcus, and Lenhart; the Attorney General's representative Guzzo; and representatives of the RNC and NRSC. Frost Decl. ¶ 9. The League Plaintiffs further participated in the depositions of the Secretary and Attorney General's expert Dr. Kidd and the RNC and NRSC's expert Dr. Lockerbie, of Supervisor Doyle, and of a representative of the Palm Beach County Supervisor of Elections. Frost Decl. ¶ 9.

Before trial, the League Plaintiffs sought summary judgment specifically on their Registration Disclaimer and Solicitation Definition claims, which Defendants opposed. *See* ECF No. 320 (League's summary judgment motion); ECF No. 355 (Defendants' opposition); ECF No. 366 (League's reply). Relatedly, the Defendants

---

[2] Prior to consolidation of this case for trial with the other cases challenging Senate Bill 90, the League Plaintiffs also developed and served an expert report from historian Dr. Vernon Burton on the history of voter suppression in Florida. The Court did not hear from Dr. Burton at trial and the League Plaintiffs do not seek any expenses or fees attributable to Dr. Burton's report. Frost Decl. ¶ 28.

sought summary judgment on all claims, including the Registration Disclaimer and Solicitation Definition, which the League Plaintiffs successfully defended against. *See* ECF No. 321 (Defendants' summary judgment motion); ECF No. 352 (League's opposition). After the Court largely denied those motions, *see* ECF No. 380, the League Plaintiffs turned to preparing for trial. Among the plaintiff groups, the League Plaintiffs took the lead role in coordinating the pretrial stipulation and gathering and coordinating the parties' exhibits, all of which took substantial effort. Frost Decl. ¶ 11; Wermuth Decl. ¶ 7.

**B.    Trial Proceedings and this Court's Final Order**

Over the course of fourteen trial days, the League Plaintiffs presented testimony from each of the League Plaintiffs and experts Dr. Herron and Dr. Mayer. Frost Decl. ¶ 12. Among plaintiff groups, the League Plaintiffs also took the lead on the direct and cross examinations of other essential witnesses in the case, including Director Matthews, Supervisor Earley, Supervisor White, Supervisor Scott, Supervisor Corley, and David Ramba. Frost Decl. ¶ 12. The League Plaintiffs' post-trial brief totaled nearly 200 pages. *See* ECF No. 649.

On March 31, this Court entered an order granting a permanent injunction on two of the League Plaintiffs' claims. *See* ECF No. 665. *First*, the Court found for the League Plaintiffs and entered a permanent injunction prohibiting the Secretary and Attorney General from enforcing the Registration Disclaimer Provision. The

League Plaintiffs challenged this requirement as unconstitutional compelled speech under the First Amendment. The Court found that the League had standing to sue, *id.* at 191, 194, 196 & n.61, and that the Secretary and Attorney General were proper Defendants for this claim, *id.* at 193. The Court relied on the League Plaintiffs' evidence to find that the speech at issue was not commercial, *id.* at 203, that the chance that a 3PVRO would return a voter's registration late was "vanishingly small," *id.* at 210, and that the Supervisors agreed that there was not a significant issue with 3PVROs delivering forms late, *id.* at 212. The Court found that the disclaimer would fail under both strict scrutiny and exacting scrutiny, *id.* at 215–16, 218, and permanently enjoined the Secretary and Attorney General from enforcing it, *id.* at 218.

*Second*, the Court found for the League Plaintiffs and entered a permanent injunction prohibiting Bay County Supervisor Mark Andersen from enforcing the Solicitation Definition. The Court found that the League Plaintiffs had standing to challenge the Solicitation Definition against Defendant Andersen. *Id.* at 138–143. The Court relied on the League Plaintiffs' evidence to find that the Plaintiffs' line warming activities were expressive. *See id.* at 163. The Court then found the Solicitation Definition to be both impermissibly vague and overbroad, *id.* at 181, 184, relying in large part on the testimony the League Plaintiffs developed at trial from Director Matthews and the Defendant Supervisors, *id.* at 178–180.

At the time of its Final Order in March 2022, the Court did not reach the League Plaintiffs' *Anderson-Burdick* challenge to the Drop Box Provisions because the Court enjoined the Defendants from enforcing the Drop Box Restrictions on intentional discrimination grounds based on the claims of plaintiffs in consolidated cases. *Id.* at 244–45. And the Court rejected the League Plaintiffs' *Anderson-Burdick* challenge to the VBM Request Provision. *Id.* at 255.

### C.   Post-Trial Proceedings

Since this Court's Final Order, the Legislature repealed the Registration Disclaimer, mooting the Court's original permanent injunction against Defendants Secretary and the Attorney General, and the Eleventh Circuit partially affirmed the League Plaintiffs' challenge to the Solicitation Definition on vagueness grounds. *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905 (11th Cir. 2023) ("*LOWV*").

Specifically, on appeal, the Secretary sought to overturn this Court's order enjoining the Solicitation Definition. The League Plaintiffs challenged the Secretary's standing to appeal that portion of the Court's order, because the Court's injunction against the Solicitation Definition in this case was issued against only the Supervisors, who did not appeal. But the Secretary insisted that he nevertheless had standing to appeal the decision, and the Eleventh Circuit agreed. *LOWV*, 66 F.4th at 945.

On the merits, the Eleventh Circuit affirmed this Court's determination that the Solicitation Definition was unconstitutionally vague. *Id.* at 948. Specifically, the Eleventh Circuit held that the Solicitation Definition's clause prohibiting individuals from "engaging in any activity with the . . . effect of influencing a voter" was impermissibly vague in all applications. *Id.* at 947–48 (alteration in original) (emphasis omitted) (quoting Fla. Stat. § 102.031(4)(b)). In support, the Court cited the League Plaintiffs' evidence of the Supervisors' conflicting views on the application of the law, which it recognized would "lead to arbitrary enforcement." *Id.* at 947. The Court severed that provision from the statute, *id.* at 948, and this Court entered a permanent injunction consistent with the Court's order, *see* ECF No. 758.

On remand, this Court considered and rejected the League Plaintiffs' remaining challenge to the Drop Box Provision on *Anderson-Burdick* grounds in light of the Eleventh Circuit's findings in *LOWV*. *See* ECF No. 767.

Finally, in May 2024, this Court determined that the League Plaintiffs were prevailing parties entitled to reasonable attorneys' fees and litigation expenses for their success on their two constitutional claims against two provisions of SB 90: the Registration Disclaimer and the Solicitation Definition. *See* ECF No. 784. The League Plaintiffs now move this Court to determine the amount to which they are entitled under Local Rule 54.1(E).

### III.   ARGUMENT

The League Plaintiffs' requested fee amount is reasonable in light of their success in permanently enjoining two provisions of SB 90, which achieved significant public benefit. Both the complexity of this case and the voluntary reductions the League Plaintiffs have already incorporated into the requested fee award also bear on its reasonableness. Below, the League Plaintiffs calculate a reasonable lodestar and then adjust that lodestar to account for the partial success in this case.

### A.   The League Plaintiffs' initial lodestar is reasonable.

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The Court may then adjust this initial amount, known as the "lodestar," to account for the specifics of a particular case. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

### 1.   The League Plaintiffs seek a reasonable hourly rate.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299). As this Court has recognized, a simple examination of an average prevailing rate in the Northern District of Florida is not

the appropriate inquiry; what matters instead is the complexity of the case and the lawyer's relevant experience and skill. *See Regions Bank v. Greater Deliverance Church, Inc.*, No. 5:22CV246-MW/MJF, 2024 WL 757114, at *1 (N.D. Fla. Feb. 23, 2024).

Here, the League Plaintiffs were represented primarily by experienced attorneys in voting rights matters from Elias Law Group LLP (ELG) and, before that, Perkins Coie LLP. ELG, which was founded in 2021, is a mission-driven law firm with litigators who specialize in voting rights and constitutional law. In its first full year of eligibility ELG received a Band 1 ranking for Political Law from *Chambers USA* and has maintained that ranking since. ELG and its lawyers are well known for their voting rights work, including specifically their success in the area of litigation to support voting rights.[3] ELG was founded by experienced voting rights and political law lawyers who previously practiced in the Political Law Group at Perkins Coie, and each of the ELG lawyers who worked on this case previously practiced in this same area at Perkins Coie. Frost Decl. ¶¶ 16-23. The attorneys who worked on this matter are highly credentialed litigators, having graduated from the nation's top law schools and clerked for U.S. District Courts, U.S. Courts of Appeals, and the

---

[3] *See* Elias Law Group, https://elias.law/newsroom/press-releases (last accessed July 24, 2024).

U.S. Supreme Court, and collectively have decades of experience litigating voting rights matters in particular. Frost Decl. ¶¶ 16-23.

As the Eleventh Circuit has noted, complex civil rights cases like this one are akin to complex antitrust and securities cases, and attorneys in such cases can correspondingly command a higher-than-average hourly rate. *See Norman*, 836 F.2d at 1300; *see also Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, provid[ed] his ability corresponds with his experience."). Civil rights litigants are not required to "select[] the nearest and cheapest attorney." *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1983). Here, given their significant expertise in voting rights litigation, the attorneys whose work is included in the fee request from these law firms command a market rate above the average rate that might typically be paid in the Northern District of Florida. Frost Decl. ¶¶ 16-23; Johnson Decl. ¶¶ 29-42.

The League Plaintiffs were also represented by experienced attorneys in Florida civil litigation from King, Blackwell, Zehnder, and Wermuth, P.A. ("KBZW"), who served as the League Plaintiffs' local counsel. Wermuth Decl. ¶¶ 2, 3, 7, 8-10; Johnson Decl. ¶¶ 15, 43.

ELG, Perkins Coie, and KBZW each billed at a discount from their ordinary rates in this matter. The League Plaintiffs seek to recover their fees based on the

following hourly rates, which reflect the current, discounted hourly rates actually paid for the League Plaintiffs' counsel's work on this case. As permitted by the Eleventh Circuit, these are current, rather than historic rates—specifically, the most recent discounted rate that each timekeeper billed on this matter.[4] *Norman*, 836 F.2d at 1302.

| Name | Firm | Years of Legal Experience | Most Recent Discounted Hourly Rate |
|------|------|---------------------------|-------------------------------------|
| Elisabeth Frost | ELG/Perkins Coie | 17 | $975 |
| David Fox | ELG/Perkins Coie | 12 | $817.50 |
| Aria Branch | ELG/Perkins Coie | 12 | $900 |
| Lalitha Madduri | ELG/Perkins Coie | 10 | $693.75 |
| Christina Ford | ELG/Perkins Coie | 6 | $705 |
| Francesca Gibson | ELG/Perkins Coie | 6 | $543.75 |
| Danielle Sivalingam | Perkins Coie | 12 | $704 |
| Fritz Wermuth | KBZW | 24 | $480 |
| Kimberly Healy | KZBW | 21 | $365 |

---

[4] The League Plaintiffs' counsel were paid on a monthly basis for their work. That does not, however, undermine *Norman*'s reasoning that the "time value of money and the effects of inflation" warrant recovery "at current rates rather than historic rates." *Norman*, 836 F.2d at 1302. Those costs—inflation and the time value of money—affect the League Plaintiffs' paying clients just as much as they affect an attorney paid on contingency.

| Michelle DePass | ELG/Perkins Coie | 24 | $195[5] |
| Melissa Hill | KZBW | 19 | $195 |
| Angela Price | KZBW | 24 | $195 |

*See* Frost Decl. ¶¶ 17-23, 25 (attesting to experience and hourly rates for ELG and Perkins Coie attorneys and paralegals); Wermuth Decl. ¶¶ 9-11 (attesting to experience and hourly rates for KBZW attorneys and paralegals). The League Plaintiffs also seek recovery for work done by contract document review attorneys at the League Plaintiffs' actual cost of $72 per hour. Frost Decl. ¶ 25.

League Plaintiffs' requested rates are supported by the declaration of Richard Johnson, an attorney based in Tallahassee who has significant experience litigating on behalf of plaintiffs in federal courts. *See* Johnson Decl. ¶¶ 3–10 Mr. Johnson has previously served as a fee expert in a number of cases and is familiar with the fee rates charged in the Northern District of Florida. *See id.* ¶ 11. In his opinion, the rates requested by the League Plaintiffs are reasonable in light of the League Plaintiff attorneys' experience and skill. *See* Johnson Decl. ¶¶ 40–44.

Finally, the hourly rates requested are reasonable considering fees awarded in similar civil rights cases from ten or more years ago, in which courts found that

---

[5] Ms. DePass in fact billed at a discounted rate of $307.50, but the League Plaintiffs have reduced the rate they seek in recognition of the prevailing rates in the Florida market.

experienced attorneys were entitled to an hourly rate of $425 or $450. *See, e.g.*, *Beta Upsilon Chi v. Machen*, No. 1:07cv135-MW/GRJ, 2014 WL 4928902, *1 (N.D. Fla. Oct. 1, 2014) (this Court approving rate of $425 per hour for experienced attorneys in First Amendment case challenging University of Florida policy); *Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty.*, No. 1:07-cv-00018-MP-GRJ, 2012 WL 384925, at *2 (N.D. Fla. Feb. 6, 2012), *report and recommendation adopted as modified*, 2012 WL 1004372 (N.D. Fla. Mar. 23, 2012) (approving $450 per hour rate for experienced attorneys); *Plaintiff B. v. Francis*, No. 5:08cv79–RS/AK, 2009 WL 2913476, at *2–3 (N.D. Fla. Sept. 9, 2009) (approving rate of $450 for experienced attorneys). As this Court has previously recognized, rates from ten or more years ago no longer reflect prevailing rates, and when adjusted for inflation, the League Plaintiffs' attorneys here should recover substantially more than attorneys did in comparable cases from ten years ago. *See Austin v. Univ. of Fla. Bd. of Trustees*, No. 1:21cv184-MW/HTC, 2023 WL 7932477, at *5 (N.D. Fla. Nov. 9, 2023).[6]

The rates sought for paralegals ($195) are also reasonable, particularly because the paralegals who worked on this case each have decades of experience.

---

[6] In *Austin*, although the Court awarded plaintiffs' counsel a rate of $450 for its most senior attorneys, the plaintiffs themselves sought that rate. *See* 2023 WL 7932477, at *3. This Court therefore did not consider whether a higher rate might be merited, and in fact recognized that rates from ten years ago are no longer prevailing rates. *Id.* at *5.

*See* Frost Decl. ¶ 26 (attesting to experience); Wermuth Decl. ¶ 11 (attesting to experience); Johnson Decl. ¶ 44 (attesting to reasonableness); *Freeman v. Olin Corp.*, No. 5:12-cv-6-RS-GRJ, 2012 WL 4511028, at *1 (N.D. Fla. Oct. 2, 2012) (in 2012, finding that "the rate of $140.00 per hour for a paralegal is within the range of a reasonable hourly rate in the North Florida legal community").

### 2.   The League Plaintiffs seek compensation for a reasonable number of hours.

Given the complexity of this case—involving more than 70 Defendants, significant motions practice, expert practice, dozens of depositions, summary judgment motions, a 14-day trial, and an appeal to the Eleventh Circuit—the League Plaintiffs incurred a significant amount of time on this matter. Specifically, before taking any voluntary reductions, the League Plaintiffs' attorneys and legal staff incurred and billed a total of 14,465.8 hours on this matter, from the initial drafting of the complaint to today. *See* Frost Decl. ¶ 27; Wermuth Decl. ¶ 12. The declarations of Ms. Frost and Mr. Wermuth that these hours were in fact incurred and charged is in itself evidence that the hours claimed are reasonable, particularly in light of the voluntary reductions described below. *See Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988) (noting that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required").

After the voluntary reductions described below, the League Plaintiffs seek recovery for 9,004.3 hours, before accounting for any adjustment to the lodestar for partial success, described *infra* Section III.B. Although this still represents a significant number of hours, "[a party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (citation and quotation omitted). And as the Eleventh Circuit has explained, "reasonableness" is not determined by "the least time in which it might theoretically have been done." *Norman*, 836 F. 3d at 1306. Instead, reasonableness is determined by considering the "work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Perkins*, 847 F.2d at 738.

Throughout this case, and as demonstrated by the time entries attached to this motion, the League Plaintiffs' attorneys kept contemporaneous time records and did not engage in block billing. *See* Frost Decl., Ex. A (time records for ELG and Perkins Coie);[7] Wermuth Decl., Ex. A (time records for KBZW). The League Plaintiffs' fee expert, Mr. Johnson, reviewed the time records described above and has attested that

---

[7] The League Plaintiffs are providing this information in the form of a spreadsheet containing the verbatim time descriptions and contemporaneous time records for which the League Plaintiffs seek a recovery. The League Plaintiffs will provide the underlying bills themselves, with certain redactions for privilege, if the Court would like them.

the number of hours that the League Plaintiffs seek an award for is reasonable. Johnson Decl. ¶ 16.

Below, the League Plaintiffs describe with particularity the voluntary time reductions taken in calculating the initial lodestar.

### a. Counsel does not seek fees wholly attributable to unsuccessful claims or plaintiffs.

As required by Local Rules, the declarations of Ms. Frost and Mr. Wermuth describe in detail the efforts taken "to allow the maximum feasible separation of time devoted to matters that are and are not compensable and matters on which the party did and did not prevail." L.R. 54.1 (E)(1). Ms. Frost and Mr. Wermuth did so by identifying and eliminating from the calculation of the initial lodestar (1) work directly attributable to plaintiffs who brought wholly unsuccessful claims, and (2) work directly attributable only to wholly unsuccessful claims.

In the first category, the League Plaintiffs eliminated time attributable to the following plaintiffs, who brought only unsuccessful *Anderson-Burdick* claims or were voluntarily dismissed during the litigation: the League of United Latin American Citizens, Susan Rogers, and Dr. Robert Brigham. *See* Frost Decl. ¶ 28; Wermuth Decl. ¶ 13. Eliminating time for these plaintiffs is consistent with the approach this Court recently took in *Austin*, in which the plaintiffs voluntarily proposed, and this Court accepted, a voluntary reduction of time for plaintiffs who brought wholly unsuccessful claims. *See Austin*, 2023 WL 7932477, at *6 (accepting

plaintiffs' proposal to eliminate time spent on Professors Nunn and Reid, who exclusively brought an unsuccessful challenge to the University of Florida's amicus brief policy).

In the second category, the League Plaintiffs eliminated time attributable to work wholly attributable to their unsuccessful *Anderson-Burdick* claims. *See* Frost Decl. ¶ 29; Wermuth Decl. ¶ 13-14. This work included, but was not limited to, (1) time spent working with Dr. Burton, whose work was not utilized at trial, (2) time spent working on Plaintiffs' first or second amended complaint or related motions, which pertained to wholly unsuccessful claims, (3) time spent on witnesses whose testimony was wholly attributable to wholly unsuccessful claims, such as League witness Catherine Teti, (4) time spent on specific *Anderson-Burdick* research or drafting, such as this Court's requested joint briefing on Plaintiffs' *Anderson-Burdick* claims and the post-remand briefing on those claims, and (5) time spent on unsuccessful motions practice in the Eleventh Circuit, including opposing Defendants' motions to stay and to vacate the judgment concerning the registration disclaimer claim. *See* Frost Decl. 29; Wermuth Decl. ¶ 13-14.

Moreover, for purposes of work done by attorneys and professional staff at ELG and Perkins Coie, which makes up the bulk of the fee petition, the League Plaintiffs applied this limitation on a day-by-day rather than task-by-task level. *See* Frost Decl. ¶ 30. Thus, if an ELG or Perkins Coie timekeeper's billing entry for a

particular day indicated that *any* work was done that fell within the exclusions laid out above, the League Plaintiffs eliminated that timekeeper's entire day of work from their fee request. *See* Frost Decl. ¶ 30. This day-by-day approach substantially increased the amount of work excluded from the League Plaintiffs' fee request. *See* Frost Decl. ¶ 30.

Collectively, the work eliminated from the fee request due to wholly unsuccessful plaintiffs and claims amounts to a significant reduction in the fee award sought. *See* Frost Decl. ¶ 31.

### b.   Counsel exercised billing judgment in seeking this award.

Beyond eliminating the time described above, the League Plaintiffs' counsel also strove to eliminate time from this fee request that could be considered duplicative or unnecessary, consistent with Eleventh Circuit practice. *See Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011).

At the outset, the League Plaintiffs' counsel limited its fee request to the core case and trial team and seeks no recovery for hundreds of hours of work done on the matter by other attorneys and professional staff. *See* Frost Decl. ¶ 33. This in itself accounts for hundreds of hours. *See* Frost Decl. ¶ 33. In addition, to the extent counsel identified any duplicative or excessive work among the remaining attorneys on the case, or identified other work that did not contribute towards the ultimate presentation of the case, that time was eliminated as well. *See* Frost Decl. ¶¶ 31-32;

20

Wermuth Decl. ¶ 18. Counsel also eliminated a substantial amount of time spent by e-discovery personnel on necessary project management related to the enormous amount of document discovery in this case, seeking recovery only for the actual document review time and not for other aspects of the review process. Frost Decl. ¶ 33. And the League Plaintiffs do not seek a recovery of fees for the preparation of this to determine the amount of the fee award to which they are entitled.

Although the League Plaintiffs still seek recovery for multiple attorneys, the use "of a team of attorneys who divide up the work is common" practice, and not otherwise grounds to reduce the fee award any further. *Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). "A reduction is warranted only if the attorneys are *unreasonably* doing the *same* work." *Id.* The time entries remaining and for which fees are sought represent the distinct contribution of each member of the legal team.

**B.    The League Plaintiffs' fee award incorporates an adjustment to the lodestar for partial success.**

As the Supreme Court has instructed, a plaintiff's degree of success must be considered when determining a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As the Court noted, in many civil rights cases, the claims "will involve a common core of facts or will be based on related legal theories," and in those cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at

435. "Such a lawsuit cannot be viewed as a series of discrete claims," and in such a case "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" in determining an appropriate fee award. *Id.*

Here, Plaintiffs' claims were based on a common core of facts, all having arisen from Senate Bill 90 and all involving the state interests asserted in the passage of that bill. Much of Plaintiffs' evidence in support of their claims was intertwined among the claims. Testimony from League Plaintiffs, Defendant Supervisors, and experts, for example, consistently spanned multiple claims. Although under *Hensley*, the League Plaintiffs were not required to separately eliminate time spent on unsuccessful claims at the outset, the League Plaintiffs strove their best to do so, consistent with this Court's Local Rule requiring them to "include sufficient detail to allow the maximum feasible separation of time devoted to matters . . . on which the party did and did not prevail" (L.R. 54.1(E)(1)) (*see supra* Section III.A.). And the League Plaintiffs adopted the substantially overbroad, day-by-day rather than task-by-task approach described above for eliminating such work from their request precisely because the League Plaintiffs recognize that it is not possible to specifically identify all work that related to the unsuccessful claims, rather than the successful ones, even based on the League Plaintiffs' quite detailed contemporaneous billing entries.

The League Plaintiffs still recognize, however, that some further reduction in the lodestar may still be appropriate in light of the partial success on their claims. In a mixed result case such as this, as the Eleventh Circuit has described, "[i]f the plaintiff obtained 'excellent results,' his attorney should be fully compensated for all time reasonably expended on the litigation." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987) (quoting *Hensley*, 461 U.S. at 435). "However, if the plaintiff obtained only 'partial or limited success,' the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief. That decision rests in the discretion of the district court." *Id.* at 1578-79 (quoting *Hensley*, 461 U.S. at 436-37); *see also Norman*, 836 F.2d at 1302 (explaining "a reduction [in the lodestar] is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole").

Here, although the League Plaintiffs' success was significant, Plaintiffs nonetheless recognize that their success was still limited "in comparison to the scope of the litigation as a whole." *Id*. In such a case, the Eleventh Circuit has instructed that "the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." *Id.* Here, as noted above, the League Plaintiffs have already identified and voluntarily eliminated, to the best of their ability, time wholly attributable to unsuccessful claims, using a substantially overbroad day-by-day approach. *See supra* Section III.A(2)(a).

This Court has significant discretion in determining whether an adjustment to the lodestar is appropriate, and if so, how significant the adjustment should be. *Hensley*, 461 U.S. at 437 (noting that the abuse of discretion standard in reviewing a fee award "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters"). The only method this Court may not take, and the Supreme Court has rejected, is "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 435 n. 11; *see also Foster v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.,* 810 F.2d 1021, 1023 (11th Cir. 1987) (similarly rejecting this kind of approach).

The most important factor this Court must consider is the degree of success obtained, *see Hensley*, 461 U.S. at 435, which again was significant in the League Plaintiffs' case. Specifically, although the League Plaintiffs' *Anderson-Burdick* claims were unsuccessful, the League Plaintiffs succeeded in obtaining permanent injunctions on two of their claims and two provisions of Senate Bill 90. As a result of their success, third-party voter registration organizations in Florida, including the League, no longer need to tell aspiring voters that they may not turn in their voter registration forms on time, a requirement that was both severely misleading and

hampered organizations' voter registration efforts. And as a result of the League Plaintiffs' efforts, the League may also now engage in nonpartisan assistance at the polls without fear of prosecution simply because a voter perceives that the League's assistance is intended to improperly influence them.

These successes, which are significant, also have positive spillover effects to the public, which the Court must take into account in determining an appropriate lodestar. As the Eleventh Circuit has instructed, courts should "account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308–09 (11th Cir. 2001); *see also Popham*, 820 F.2d at 1580 (noting that in cases where "plaintiff's relief may engender specific spillover benefits for non-parties," "the public benefit may assume a principal significance in the court's calculus"). Here, those public spillover benefits include not only the organizations that may now participate in voter registration efforts or voter assistance efforts without inhibition, but the voters themselves who will be assisted by those efforts.

In light of the success obtained and the public benefit from suit, the League Plaintiffs propose that they recover 70% of the lodestar, which again has already

been adjusted for billing judgment and to eliminate, using an overboard methodology, time attributable to wholly unsuccessful claims, *see supra* Section III.A. League Plaintiffs propose this same reduction for expert fees. Although there are no hard-and-fast rules in determining these kinds of haircuts, this proposed reduction is well in line with other cases involving mixed results. *See, e.g.*, *Foster*, 810 F.2d at 1022-23 (affirming a district court's reduction of only 12% of total fees where less than 1/3rd of the total class members obtained a favorable judgment after considering "that most of the attorney hours were spent on general research and investigation applicable to all the claims and that evidence adduced at hearings on unsuccessful claims contributed to the cases presented by victorious claimants"); *M.H. v. Comm'r of the Georgia Dep't of Cmty. Health*, 656 F. App'x 458, 463 (11th Cir. 2016) (affirming a district court's reduction of only 10% of total fees where plaintiffs succeeded on only 2 of 11 claims after considering the plaintiffs voluntarily cut "time expended on claims regarding transportation and notice, which were claims unrelated to the substantive relief that Plaintiffs eventually obtained" and "time expended on claims regarding a party that was ultimately dismissed").

Awarding 70% of the lodestar, as the League Plaintiffs suggest, would result in a total fee award of $2,966,925.28. Although the total fees that the League Plaintiffs seek still represents a significant fee award, it is in line with the fees awarded in comparable cases, which here included significant pre-trial practice and

discovery, a 14-day trial, and an appeal. *See, e.g., Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1218 (N.D. Fla. 2019) (this Court awarding fee of $1.15 million in Section 1988 case involving 4-day bench trial); *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028, at *16 (S.D. Tex. June 8, 2018) (approving fee award of $4.5 million in Section 1988 case involving class certification, preliminary injunction motions, and a settlement); *Wyatt ex rel. Rawlins v. Sawyer*, 67 F. Supp. 2d 1331, 1358 (M.D. Ala. 1999) (in 1999, approving $3 million fee award in Section 1988 case to plaintiffs who obtained injunctions and consent decree).

### C.   As prevailing parties, the League Plaintiffs are separately entitled to reasonable costs and expenses, including expert fees.

As prevailing parties under Section 1988, the League Plaintiffs are also entitled to recover reasonable fees incurred. 42 U.S.C. § 1988(b), (c). Moreover, the League Plaintiffs are not limited to usual kinds of costs permissible in every case under 28 U.S.C. § 1920. Rather, "[a]n award of attorney's fees under section 1988 also includes various costs and expenses, over and above those outlined in [28 U.S.C. § 1920], the general statute for taxation of costs." *Johnson v. Mortham*, 950 F. Supp. 1117, 1126 (N.D. Fla. 1996), *on reconsideration in part*, 173 F.R.D. 313 (N.D. Fla. 1997). That includes expert fees, *see* 42 U.S.C. § 1988(c), along with other reasonable litigation expenses. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989) (noting that the "fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose

27

labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit"); *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) (collecting cases detailing types of reasonable litigation expenses).

Consistent with this Court's rules, the League Plaintiffs have already documented their taxable costs incurred in bringing this action, *see* ECF No. 771. Additionally, in connection with this present motion, the League Plaintiffs seek compensation for related expenses incurred as a result of the litigation, including expert fees, for which they have voluntarily taken a reduction consistent with the approach the League Plaintiffs took in reducing their attorneys' fees. *See* Frost Decl. ¶ 36.

## IV.   CONCLUSION

The League Plaintiffs respectfully request this Court award them $2,966,925.28 in attorneys' fees and $217,223.72 in reasonable expenses and costs, for a total award of $3,184,149.

## <u>LOCAL RULES CERTIFICATION</u>

Undersigned counsel conferred with opposing counsel pursuant to Local Rule 7.1(B) and confirms that the Secretary and Attorney General oppose the requested relief. Undersigned counsel certifies that this motion contains 6,408 words, excluding the case style, conferral certification and certificate of service.

Respectfully submitted this 7th day of August, 2024.

/s/ Frederick S. Wermuth

| | |
|---|---|
| Frederick S. Wermuth | David R. Fox* |
| Florida Bar No. 0184111 | Christina Ford |
| Thomas A. Zehnder | ELIAS LAW GROUP LLP |
| Florida Bar No. 0063274 | 250 Massachusetts Ave NW, Suite 400 |
| King, Blackwell, Zehnder | Washington, DC 20001 |
|   & Wermuth, P.A. | Telephone: (202) 968-4490 |
| P.O. Box 1631 | Facsimile: (202) 968-4498 |
| Orlando, FL 32802-1631 | dfox@elias.law |
| Telephone: (407) 422-2472 | cford@elias.law |
| Facsimile: (407) 648-0161 | *Admitted *Pro Hac Vice* |
| fwermuth@kbzwlaw.com | *Counsel for Plaintiffs* |
| tzehnder@kbzwlaw.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered to receive notifications.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No. 0184111

*Counsel for Plaintiffs*