**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

LEAGUE OF WOMEN VOTERS
OF FLORIDA, INC., et. al.,

      VS                     USDC NO. 4:21cv186-MW/MAF
                                      USCA NO. _____

CORD BYRD, in his official
capacity as Florida Secretary of
State, et al.,

**TRANSMITTAL OF NOTICE OF APPEAL**

      The following documents are hereby transmitted to the Clerk, U. S. Court of Appeals. The Certified copy of the appeal notice, docket entries, judgment/opinion/order appealed from are enclosed.

First Appeal Notice. 2/24/2025
There was no hearing from which a transcript could be made.
Other: N/A

Please acknowledge receipt on the enclosed copy of this transmittal to: TALLAHASSEE DIVISION

                               JESSICA J. LYUBLANOVITS,
                               CLERK OF COURT

                               By: Ronnie Barker
                               Deputy Clerk
                               111 North Adams Street
February 26, 2025                     Tallahassee, Florida 32301

.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., et al.,

*Plaintiffs*,

v.                                                    No. 4:21-cv-186-MW-MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

*Defendants*,

REPUBLICAN NATIONAL
COMMITTEE and NATIONAL
REPUBLICAN SENATORIAL
COMMITTEE,

*Intervenor-Defendants.*

## NOTICE OF APPEAL

Secretary of State Cord Byrd appeals to the U.S. Court of Appeals for the Eleventh Circuit from the order granting Plaintiffs' motion to determine entitlement to fees, Doc. 784, entered on May 23, 2024, order granting in part and denying in part Plaintiffs' motion to determine fee amount, Doc. 807, and fee judgment, Doc. 808, entered on February 24, 2025.

1

.

Dated: February 25, 2025

Respectfully submitted,

Bradley R. McVay (FBN 79034)
 Deputy Secretary of State
Brad.McVay@dos.myflorida.com
Ashley E. Davis (FBN 48032)
 Chief Deputy General Counsel
Ashley.Davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399
Phone: (850) 245-6536
Fax: (850) 245-6127

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
Phone: (850) 270-5938
Fax: (850) 741-1023
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the Secretary*

2

.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

<u>/s/ Mohammad O. Jazil</u>
Mohammad O. Jazil

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**LEAGUE OF WOMEN VOTERS
OF FLORIDA, INC., et al.,**

      *Plaintiffs,*

v.                              **Case No.: 4:21cv186-MW/MAF**

**CORD BYRD, et al.,**

      *Defendants.*

_____/

## ORDER GRANTING PLAINTIFFS' MOTION TO DETERMINE ENTITLEMENT TO FEES

This Court has considered, without hearing, the League Plaintiffs' (hereinafter "Plaintiffs' ") motion to determine entitlement to fees. ECF No. 770. The Secretary of State filed a response in opposition, ECF No. 774, which the Attorney General joined, ECF No. 775. Plaintiffs then filed a reply. ECF No. 781. For the reasons that follow, Plaintiffs' motion is due to be granted.

I

Before addressing the substance of Plaintiffs' motion for fees, a brief procedural history is necessary. Plaintiffs, along with several other groups and individuals in related cases, sued to enjoin various state actors from enforcing new election laws as amended by Florida Senate Bill 90 ("SB 90"). Specifically, Plaintiffs sought a permanent injunction (1) prohibiting the Secretary and the Attorney General

from enforcing the Registration Disclaimer provision against them; and (2) prohibiting the Secretary and Defendant Supervisors of Elections from enforcing SB 90's Solicitation Definition. As to Plaintiffs' challenge to the Solicitation Definition, this Court dismissed Plaintiffs' claim against the Secretary for lack of standing because the Secretary did not enforce the provision—the Defendant Supervisors did. *See* ECF No. 274 at 25. Nevertheless, the Secretary then moved to intervene to defend this portion of the law because he was concerned about the Defendant Supervisors' willingness to do so, *see* ECF No. 337-1 at 8, and this Court granted the Secretary's motion. Following a bench trial before this Court, Plaintiffs won a permanent injunction on both their challenge to the Registration Disclaimer provision and the Solicitation Definition. *See* ECF No. 665.

On appeal, the Eleventh Circuit vacated the injunction directed at the Secretary and Attorney General's enforcement of the Registration Disclaimer provision as moot because the Florida Legislature repealed the challenged provision during the pendency of the appeal. *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 951 (11th Cir. 2023). The Eleventh Circuit upheld the permanent injunction prohibiting the Defendant Supervisors of Elections from enforcing SB 90's Solicitation Definition. *Id.* at 948.

With the relevant procedural history established, this Court turns to the substance of the motion. Plaintiffs' motion for fees and costs boils down to two

questions: (1) whether the Florida Legislature's repeal of the challenged Registration Disclaimer provision while this case was on appeal deprives Plaintiffs of prevailing party status under section 1988; and (2) whether the Secretary of State's status as an intervenor immunizes him from liability for section 1988 fees on Plaintiffs' Solicitation Provision challenge. The answer to both questions is "no."

II

First, Plaintiffs' prevailing party status on their Registration Disclaimer provision challenge. Absent the Florida Legislature's repeal of the Registration Disclaimer provision that mooted this case on appeal, Plaintiffs' prevailing party status would be obvious—they won a permanent injunction on this claim at the district court level. But the Secretary and the Attorney General claim that because this legislative repeal prompted the Eleventh Circuit to vacate the permanent injunction on this provision under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), Plaintiffs are not prevailing parties under section 1988. ECF No. 781 at 2.

Under section 1988, district courts have the discretion to award fees to litigants if it determines that they "succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *Thomas v. Bryant*, 614 F.3d 1288, 1294–95 (11th Cir. 2010) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989)). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of

3

the parties . . . ." *Tex. State Teachers Ass'n*, 489 U.S. at 792–93.

While the Eleventh Circuit has not squarely addressed whether *Munsingwear* vacatur deprives a party of prevailing party status under section 1988, it has addressed a similar issue. In *Thomas v. Bryant*, an inmate who succeeded in winning a permanent injunction at the district court level died while the case was on appeal, rendering the case moot. 614 F.3d at 1294. The Eleventh Circuit held that even though the permanent injunction was due to be dissolved because the case was now moot, the inmate still was a prevailing party under section 1988. *Id.* The Eleventh Circuit set out the common-sense principle that "[w]hen plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation." *Id.* (quoting *Diffenderfer v. Gomez–Colon*, 587 F.3d 445, 454 (1st Cir. 2009)). The Eleventh Circuit adhered to a similar principle in *Common Cause/Georgia v. Billups*, where it held that plaintiffs qualified as prevailing parties under section 1988 after they won a preliminary injunction that "remained effective until Georgia repealed the law at issue." 554 F.3d 1340, 1356 (11th Cir. 2009).

Under this framework, Plaintiffs are prevailing parties for their challenge to the Registration Disclaimer provision. Just like the plaintiff in *Thomas*, Plaintiffs won a permanent injunction at the district court level that was mooted on appeal.

And while the Eleventh Circuit in *Common Cause/Georgia* didn't address the effect of *Munsingwear* vacatur on prevailing party status directly, there is one straightforward takeaway from the case that's applicable here—an injunction won at the district court level but later mooted by legislative repeal still entitles the plaintiffs to prevailing party status under section 1988. This Court sees no reason to depart from this principle here. Plaintiffs won a permanent injunction that was mooted on appeal only because the Florida Legislature repealed an unconstitutional law. Defendants can no longer enforce the Registration Disclaimer provision against Plaintiffs. On these facts, that's a material alteration of the legal relationship of the parties. *See Tex. State Teachers Ass'n*, 489 U.S. at 792–93.

The Secretary and Attorney General cite several cases to argue that Plaintiffs won only a transient victory, but those cases don't help them. One case, *Sole v. Wyner*, involved a plaintiff who won a preliminary injunction only to be denied a permanent injunction later in the case. 551 U.S. 74, 83 (2007). The Supreme Court in *Sole* held only that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Id.* That's not what happened here. Plaintiffs won a *permanent* injunction which prevented Defendants from enforcing the Registration Disclaimer provision, a victory made equally permanent when the Florida Legislature repealed the law. The fact that Plaintiffs no longer have an active

injunction (because the challenged provision no longer exists) doesn't take away from the fact that they achieved a material, enduring legal change—Defendants cannot enforce the Registration Disclaimer provision against them.

The Secretary and Attorney General also rely on Judge Oldham's lone concurrence in the Fifth Circuit's en banc decision in *Thomas v. Reeves*, 961 F.3d 800, 827 (5th Cir. 2020), but that opinion is not persuasive.[1] The concurrence focuses on the technical effect of an injunction to determine prevailing party status, but that's not the standard to determine prevailing party status. *See Sole*, 551 U.S. at 86 (looking to whether the litigant achieved an "enduring 'chang[e][in] the legal relationship' between herself and the state officials she sued" to determine prevailing party status). Accepting Defendants' understanding of a prevailing party would eviscerate section 1988's remedial effect by permitting states to litigate unconstitutional statutes at the district court level and erase fee liability on appeal by repealing the statute. That dog won't hunt.

The greater weight of authority tips in favor of Plaintiffs being prevailing parties under section 1988 on their Registration Disclaimer provision challenge. Accordingly, this Court finds that Plaintiffs are prevailing parties entitled to reasonable fees and costs under section 1988 for their challenge to the Registration

---

[1] As Plaintiffs aptly note, "Judge Oldham's concurrence is not the law even of the Fifth Circuit, let alone the law of the Eleventh Circuit." ECF No. 781 at 3.

Disclaimer provision.

III

Next, Plaintiffs' request to collect attorneys' fees and costs from the Secretary in his role as an intervenor on the Solicitation Definition challenge.[2] Start with the relevant text of 42 U.S.C. 1988(b). It reads, "In any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C.A. § 1988(b). The statute gives this Court discretion to award fees and costs. The statute does not limit attorney fee liability to named parties nor does it expressly exclude intervenors. The Supreme Court has explained that, generally, "the logical place to look for recovery of fees is to the losing party—the party legally responsible for relief on the merits." *Kentucky v. Graham*, 473 U.S. 159, 164 (1985).

The necessary connection between merits liability and fee liability, however, can extend to intervenors. In *Mallory v. Harkness*, the district court held that Florida's Attorney General was liable for fees under section 1988 where he had voluntarily intervened in a challenge to a state law because the Attorney General acted as the representative of the state. 923 F. Supp. 1546, 1553 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997). There, the named defendants and actual

---

[2] The Secretary does not dispute that Plaintiffs are prevailing parties entitled to some fees and costs for their challenge to the Solicitation Definition—instead, he disputes whether his office should be the one to pay for them.

enforcers of the challenged law declined to defend it in court, so the Attorney
General stepped in and "took all steps ordinarily taken by a defendant and, in fact,
acted as the defendant . . . ." *Mallory*, 923 F. Supp. at 1553. The district court in
*Mallory* explained that the Attorney General, as the state's representative, was
culpable for the plaintiff's civil rights violation because the "state enacted, enforced,
and defended the unconstitutional statute." *Id.* "The state should not be allowed to
require the [named defendant] to enforce an unconstitutional statute, defend that
statute on the merits as an intervenor in federal court, and then attempt to use its
intervenor status to escape liability for attorney's fees." *Id.* "Allowing such a
loophole violates the policy behind 42 U.S.C. § 1988." *Id.*

While *Mallory* is not binding on this Court,[3] it is persuasive. And, given its
affirmance by the Eleventh Circuit, it's also the best indication of what the law is in
this Circuit. Further, several other circuits have acknowledged that state intervenors
stepping in for other state actors may bear fee liability under section 1988. *See
Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J.*, 297 F.3d 253, 264
(3d Cir. 2002) (holding that state legislature is liable for fees under section 1988
where, notwithstanding its legislative immunity, it intervened to defend a suit that

---

[3] While Plaintiffs insist that a summary affirmance like *Mallory* can still be binding
precedent, they miss a crucial point. The Eleventh Circuit designated its *Mallory* decision as
"unpublished" under U.S. Ct. of App. 11th Cir. Rule 36-2, which means that it is not binding
precedent.

state executive officials refused to defend); *Brat v. Personhuballah*, 883 F.3d 475, 484 (4th Cir. 2018) (noting that where "the intervening party was a representative of the State responsible for enacting or enforcing the challenged statute, not an independent third party who could not be charged with liability," section 1988 fee liability may attach). In plain terms, a state actor that intervenes in place of another state actor is sufficiently connected to the underlying constitutional violation for section 1988 fee liability to attach because, at the end of the day, the state itself is the culpable party.

That's the case here. As the Secretary made clear before this Court in its motion to intervene, *see* ECF No. 337-1—as well as before the Eleventh Circuit, *see* Secretary's Reply Brief, 2022 WL 4078872, at *8—he has an interest in the continued enforceability of election law, even when those laws are enforced by county-level supervisors. The Secretary has this interest because he represents the State of Florida in election-related matters. ECF No. 337-1 at 7. And as the district court in *Mallory* explained, a state intervenor like the Secretary "should not be allowed to require [a different state actor] to enforce an unconstitutional statute, defend that statute on the merits as an intervenor in federal court, and then attempt to use its intervenor status to escape liability for attorney's fees." 923 F. Supp. at 1553. Permitting this type of end-run-around defeats section 1988's policy of compensating prevailing plaintiffs for the costs of bringing a suit to vindicate their

constitutional rights.

The Secretary attempts to invoke the Supreme Court's decision in *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989) as a shield from fee liability here, but he fails. In *Zipes*, the Supreme Court held that a blameless intervenor could be held liable for fees "only where the intervenors' action was frivolous, unreasonable, or without foundation." 491 U.S. at 761.[4] But unlike the intervenor in *Zipes*, the Secretary is not "blameless." The intervenor in *Zipes* bore no connection to the underlying civil rights violation in the lawsuit. Here, the Secretary is the representative of the State of Florida, which is the culpable party in this case because it "enacted, enforced, and defended the unconstitutional statute," leading to the violation of Plaintiffs' civil rights. *See Mallory*, 923 F. Supp. at 1553.

While the Secretary cites the Fourth Circuit's decision in *Brat v. Personhuballah* for the proposition that *Zipes* applies to state intervenors like himself, ECF No. 774 at 7, *Brat* didn't say that. *Brat* did not involve a state actor intervening to defend state law. Instead, the Fourth Circuit in *Brat* applied *Zipes* to a *federal* legislator that intervened to defend a *state* law. 883 F.3d at 483. Further, the Fourth Circuit acknowledged that where an unconstitutional statute is involved, the 'blameworthy' party under *Zipes* is the state that enacted the statute." *Id.* at 484.

---

[4] While *Zipes* dealt with fee awards against intervenors under Title VII, the Supreme Court noted that section 1988 should be interpreted in the same way. 491 U.S. at 758 n.2.

Several of the other cases the Secretary cites are unpersuasive for this same reason—they do not concern a state actor intervening to defend a state law. *See Doe v. Sch. Bd. for Santa Rosa Cnty.*, No. 3:08CV361/MCR/EMT, 2010 WL 11519438, at *1 (N.D. Fla. Mar. 24, 2010) (applying *Zipes* to a non-state intervenor); *Miller v. Moore*, 169 F.3d 1119, 1126 (8th Cir. 1999) (same); *Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1133 (9th Cir. 2008) (same). And while the district court in *Stout v. Jefferson County Board of Education* did apply *Zipes* to a state intervenor, it did so on agreement by the parties. No. 2:65-CV-00396-MHH, 2019 WL 7811389, at *19 (N.D. Ala. Dec. 23, 2019).

In short, the Secretary cannot duck section 1988 by insisting that he's not the proper party for this suit only to rejoin later as an intervenor. Accepting the Secretary's argument would eviscerate the purpose of section 1988—to compensate parties that prevail in stopping state actors from violating their constitutional rights. If the Secretary doesn't want to risk being on the hook for fees under section 1988, he could have accepted his dismissal for lack of standing—one that he specifically asked for—and deferred to the Supervisors' decision to refuse to defend this unconstitutional provision.[5] Instead, the Secretary came back into this case to defend

---

[5] Of course, this Court is left in the strange position of discussing fee liability for a properly admitted intervenor that somehow lacks Article III standing because of the standing framework created by the Eleventh Circuit in *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). Under this framework, Plaintiffs must sue nominal defendants in the Supervisors who, largely, did not ask for SB 90 and did not defend the Solicitation Definition. But these "independent" constitutional officers' decisions to abandon this unconstitutional provision is also

11

another unconstitutional law from the State of Florida. On these facts, the Secretary is liable for fees and costs for Plaintiffs' Solicitation Definition challenge under section 1988.

IV

As set out above, Plaintiffs are prevailing parties under section 1988 for their challenges to SB 90's Registration Disclaimer provision and its Solicitation Definition. The Secretary and Attorney General are liable for Plaintiffs' attorneys' fees, expert fees, and litigation expenses for their challenge to the Registration Disclaimer provision. The Secretary is also liable for Plaintiffs' attorneys' fees, expert fees, and litigation expenses for their challenge to the Solicitation Definition. Accordingly, Plaintiffs' motion to determine entitlement to fees, ECF No. 770, is **GRANTED**. The parties shall now follow the procedure set out in Local Rule

---

sufficient to trigger the Secretary's interest to intervene to defend Florida's election laws. After all, the Secretary is Florida's chief election officer, tasked with maintaining uniformity in the enforcement of election laws. It's enough of a connection to the challenged statute for the Secretary to be properly named as a defendant under *Ex parte Young*. But binding Eleventh Circuit precedent dictates that it just isn't enough for a "case or controversy" under Article III. Perhaps this framework also permits the Secretary to have his cake and eat it too by hiding behind the Supervisors while still defending laws he claims not to enforce all the while avoiding fee liability under section 1988. It's not like this money all comes from the same place—the Supervisors maintain a budget derived from county-level funds separate from the Secretary's budget that would be used to pay for a prevailing party's fees. If that's the case, the Eleventh Circuit can make that clear. But that's not how this Court understands the law.

54.1(E)–(G) to determine the amount of fees and costs due here.

**SO ORDERED on May 23, 2024.**

**s/Mark E. Walker**
**Chief United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS
OF FLORIDA, INC., et. al.,

        *Plaintiffs*,

v.                        **Case No.:  4:21cv186-MW/MAF**

CORD BYRD, in his official
capacity as Florida Secretary of
State, et al.,

        *Defendants*,

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO DETERMINE FEE AMOUNT

This Court has considered, without hearing, Plaintiffs' motion to determine the amount of attorneys' fees, ECF No. 791, Defendant Byrd's response, ECF No. 797, Plaintiffs' reply, ECF No. 803, and all attachments. For the reasons set out below, Plaintiffs' motion is **GRANTED in part and DENIED in part**.

The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). To determine a lodestar amount, a court must ascertain a reasonable hourly rate and multiply it by the number of hours an attorney reasonably expended on the litigation. *Id.* Where the time or fees claimed seem excessive, or there is a lack of support for the fees claimed, "the court may make the award on its own experience." *Id.* at 1303. The burden of establishing

that the fee request is reasonable rests with the fee applicant, who must "submit evidence regarding the number of hours expended and the hourly rate claimed." *U.S. ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-CV-93, 2007 WL 1601747, at *3 (M.D. Fla. June 1, 2007).  Evidence in support of the fee applicant's request requires "sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

This Court begins with an analysis of the hourly rates Plaintiffs' attorneys seek. This Court then considers whether Plaintiffs' submissions demonstrate that the number of hours claimed are reasonable. Finally, this Court considers whether the results in the case warrant adjustment of the lodestar figure.

## A. <u>Reasonable Hourly Rates</u>

A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (quoting *Norman*, 836 F.2d at 1299). "The party seeking attorney's fees bears the burden of establishing that the requested hourly rate is in line with prevailing market rates." *Id.* In establishing a reasonable hourly rate, the court may "rely on its

own expertise and where appropriate" and may also consider certain case-specific factors.[1] *Id.*

Here, Tallahassee[2] represents the relevant legal market for purposes of this analysis. Plaintiffs seek hourly rates ranging from $195 an hour for paralegals to $975 an hour for senior counsel with over seventeen years of experience. *See* ECF Nos. 791-1 and 791-2. Plaintiffs also submitted a declaration from their attorneys' fee expert, Richard E. Johnson. ECF No. 791-3. Mr. Johnson's declaration opines that, based on his expertise, his review of the case, and his knowledge of comparable fee awards in and around Tallahassee and elsewhere in Florida, the hourly rates that Plaintiff seeks are reasonable. *Id.* at 15.

In turn, Defendant asserts the hourly rates are too high. ECF No. 797 at 4–5. Defendant contends that experienced attorneys in civil rights cases typically charge rates of $400–450 an hour and less experienced attorneys charge closer to $250–350

---

[1] "These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Maner*, 602 F. App'x at 492 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).

[2] This Court rejects Plaintiffs' fee expert's implication that this Court should look to the state of Florida, as a whole, to determine the reasonableness of Plaintiffs' requested hourly rates. *See* ECF No. 791-3 at 8–10. Although Tallahassee is no Orlando or Miami, the state's capital is also not so isolated or lacking in qualified professionals to warrant looking to other markets to determine if the rates and hours claimed for the lawyers' work on the prevailing claims are reasonable.

3

an hour, but here, attorneys with six years' experience are seeking over $700 an hour and senior counsel is seeking $975 an hour. *Id*. Defendant also points to his expert's report, which opines that prevailing rates in Tallahassee generally range from $250 and $450 an hour, and that he respectfully disagrees with Mr. Johnson's methodology, including Mr. Johnson's decision to look elsewhere in Florida to determine the prevailing market rates and his focus on what courts are actually awarding as opposed to rates actually billed and paid in similar lawsuits. *See* ECF No. 797-1 at 7–8.

To start, and as this Court noted at the top, this Court agrees with Defendant that Tallahassee is the relevant legal market for purposes of this analysis. This Court gives no weight to Mr. Johnson's opinion to the extent it looks to and incorporates rates charged or awarded outside of the Tallahassee market.[3] For the same reason, this Court is unpersuaded by Defendant's primary argument that rates should be limited to a maximum of about $450 an hour in a case like this, as Defendant cites to only two *Gainesville* cases—one of which is over ten years old—to support this argument. ECF No. 797 at 5 (citing *Austin v. Univ. of Fla. Bd. Of Trustees*, Case No.: 1:21cv184-MW/HTC, 2023 WL 7932477, *1 (N.D. Fla. Nov. 9, 2023) and *Beta Upsilon Chi v. Machen*, Case No.: 1:07cv135-MW/GRJ, 2014 WL 4928902, *1

---

[3] As noted below, this Court does give weight to Mr. Johnson's opinion to the extent he relies upon relevant evidence to support his opinion regarding the reasonableness of Plaintiffs' rates—such as local market fee awards and the rates he charges for his own cases in Tallahassee.

4

(N.D. Fla. Oct. 1, 2014)).  If Tallahassee is the relevant legal market for determining the reasonableness of the requested rates, two cases awarding reasonable rates for the Gainesville market provide little, if any, guidance for this Court's analysis. Moreover, if Defendant had reviewed the very case he cited, he would have known that this Court has already rejected the implication that rates should effectively be capped by amounts awarded in 2014 regardless of the fact that those rates are over ten years old now. *See Austin*, 2023 WL 7932477, at *5 (discussing defendants' misplaced reliance upon rates awarded in *Beta Upsilon Chi*). Likewise, this Court is not persuaded by Defendant's suggestion that because lawyers request reasonable rates that are lower than what they could arguably reasonably charge, as was the case in *Austin*, then that limits all lawyers going forward from requesting higher—but still reasonable—hourly rates. *See also* ECF No. 344 at 5–6, in Case No.: 4:21cv242-MW/MAF ("The fact that a prevailing party may stipulate to lower hourly rates—possibly to avoid litigation over the reasonableness of such rates—does not dictate the outcome in other cases where attorneys may seek higher, bust still reasonable, hourly rates for the same sort of case in the same market.").

In addition, to the extent Defendant's fee expert suggests Mr. Johnson's methodology is not sound because he relied on comparable fee awards as opposed to rates that were billed and paid, *see* ECF No. 797-1 at 8, this is incorrect, misleading, and contradicts Defendant's own approach to analyzing the

reasonableness of requested rates. First, although Defendant's fee expert asserts Mr. Johnson's methodology "focused on 'what the courts are actually awarding' to attorneys to establish the market," *id.*, Mr. Johnson's review included a plethora of evidence to support his opinion, including fee awards, rates he has billed, himself, and his deep knowledge of and familiarity with plaintiffs' lawyers handling civil rights cases in Florida and the fees they typically charge. *See, e.g.*, ECF No. 791-3 at 1–4, 8, 10–18. Defendant's expert's suggestion that it is wrong to look to comparable fee awards in the relevant market to determine the reasonableness of a requested hourly rate is also misleading—charitably, this is simply an overly narrow reading of *Norman*'s direction that "satisfactory evidence [to demonstrate a reasonable hourly rate] necessarily must speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. As the Eleventh Circuit held, "[e]vidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence," and that "[t]he weight to be given to opinion evidence . . . will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id*. Fee awards arguably take into consideration rates charged and paid in the relevant market and represent another data point concerning the range of reasonable rates to support a party's fee request. *See, e.g.*, *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355

6

(11th Cir. 2000) (noting that, while courts "should hesitate to give controlling weight to prior awards, even though they may be relevant," "[o]f course there is some inferential evidentiary value to the prior award, because in theory the prior court based the award on the market rate"); *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1350 (S.D. Fla. 2006) (determining reasonable fee award under ADA and noting that "[s]atisfactory evidence may also include 'citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases' " (citations omitted)). In short, it is not improper to consider comparable fee awards from other cases, as long as this Court does not assign controlling weight to such fee awards. Finally, Defendant's expert's critique of Mr. Johnson's methodology for looking to comparable fee awards in the relevant market could also be applied to Defendant's argument in response to Plaintiffs' motion, wherein Defendant relies upon two prior cases as controlling authority for demonstrating a reasonable hourly rate in this case. As noted above, this argument is unavailing, and this Court rejects the suggestion that the two Gainesville cases that Defendant cites demand a particular fee award in this case.

Having determined the relevant market for purposes of this Court's analysis, this Court turns to other evidence Plaintiffs have submitted to support their requested hourly rates. Here, although Mr. Johnson's review of rates beyond the Tallahassee market is unhelpful to this analysis, he does identify other relevant evidence to

7

support his opinion regarding the reasonableness of Plaintiffs' requested rates. For example, he identifies several fairly recent fee awards for $750 an hour in the Tallahassee market for other plaintiff-side cases, and quotes one Tallahassee judge as noting that defense-side litigators charge as high as $1,000 an hour for trial work in Tallahassee and that the Attorney General has paid outside counsel a rate of $825 an hour. ECF No. 791-3 at 13–14. This evidence is consistent with this Court's own knowledge and experience concerning local rates charged by lawyers in Tallahassee in recent years. *See also Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1208 n.5 (N.D. Fla. 2019) (Walker, C.J.) (noting that this Court is aware of numerous attorneys in Tallahassee charging comparable rates to the rates requested (ranging from $250 an hour to $900 an hour)). In addition, Mr. Johnson also attests that his own hourly rate runs from $700 to $800 an hour, depending on the billing arrangement. ECF No. 791-3 at 11, 18.

Ultimately, Mr. Johnson opines that given the "significance" of this case, the millions of pages of documents produced in discovery, over 20 depositions taken, and two weeks of trial, "there is not a law firm anywhere in the Northern District of Florida with the expertise and resources to do what the Elias Group did in this case," *id*. at 12–13, and thus, these attorneys' requested rates are comparable to rates awarded for comparable work performed in the *Prison Legal News* case. He also

8

opines that the Wermuth firm's more modest requested hourly rates are certainly reasonable in the context of this specific case. *Id*. at 17–18.

Plaintiffs' evidence presents a mixed bag in terms of whether they have met their burden to demonstrate the reasonableness of their attorneys' requested rates. Here, Plaintiffs brought six counts challenging numerous provisions of Florida's election code under myriad theories under the First and Fourteenth Amendments. *See* ECF No. 160 (amended complaint). Ultimately, Plaintiffs prevailed on only two claims—first, that the registration disclaimer provision unconstitutionally compelled speech in violation of the First Amendment and, second, that the solicitation definition was unconstitutionally vague in violation of the Fourteenth Amendment. *See* ECF Nos. 758, 767, and 784. Both successful claims present relatively straightforward legal theories that required little factual development. Mr. Johnson's opinion regarding the "significance" of the case and the work the lawyers were able to pull off would carry more weight had Plaintiffs pressed and ultimately prevailed upon riskier or more complicated claims, such as their *Anderson-Burdick* claim or the *Arlington Heights* claim brought in a parallel action that was consolidated with this case. But here, Plaintiffs prevailed upon relatively straightforward compelled speech and vagueness claims that were neither particularly risky nor complex. Accordingly, this Court affords little weight to Mr. Johnson's opinion concerning

9

the time and labor required, the complexity of the case, and the skill needed to pull this off.

On the flip side, this Court is not moved by the defense expert's opinion that would essentially cap attorneys' fees for the most senior and well-respected attorneys at $450 an hour, regardless of the issues involved and the attorney's reputation, experience, and skill. ECF No. 797-1 at 6–7 (noting that "[w]hile there may be outliers . . . the prevailing rates for attorneys in this market generally range between $250.00 and $450.00 per hour, based upon experience."). Indeed, the defense expert's analysis of the reasonableness of the requested rates focuses entirely on a purported generalized range of the prevailing rates that attorneys in Tallahassee charge. In so doing, Defendant focuses on one consideration to the exclusion of all others, the suggested analysis is wholly disconnected from the multiple factors this Court must consider to determine whether the requested rates are reasonable for this specific case. Moreover, notwithstanding the defense expert's generalizations, based on this Court's own expertise, the purported range largely understates the prevailing rates that attorneys charge in the Tallahassee market.

Accordingly, this Court rejects Defendant's argument that Plaintiffs' requested rates are unreasonable insofar as their rates exceed the purported range of prevailing rates in the Tallahassee market. Defendant's implication that rates generally should not exceed $450 an hour irrespective of the experience, reputation,

and ability of the attorneys involved, among other factors, flies in the face of the analysis this Court must perform pursuant to binding Eleventh Circuit precedent. Likewise, Defendant's expert simply fails to give appropriate consideration to the fact-intensive nature of determining a reasonable rate given all the pertinent factors. *See Norman*, 836 F. 2d at 1299 ("The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.").

Of course, this Court can rely upon its own knowledge of the prevailing market rates in Tallahassee in determining whether Plaintiffs have met their burden to demonstrate the reasonableness of their requested rates. Based on the evidence presented and this Court's own experience and knowledge concerning reasonable hourly rates customarily charged in the Tallahassee market, this Court has no hesitation in finding the Florida attorneys' requested rates to be reasonable. Specifically, Plaintiffs request a discounted rate of $465 an hour for Fritz Wermuth—an excellent election law litigator with 24 years of experience and who served as Plaintiffs' "mothership" throughout this case and during the two-week bench trial. This rate is modest in comparison to those cited by Plaintiffs' fee expert. Moreover, based on this Court's own knowledge and experience regarding reasonable rates charged in Tallahassee, Mr. Wermuth's discounted rate represents

11

a downward departure for comparable rates charged in Tallahassee by attorneys of similar skill and experience. In short, Mr. Wermuth's requested rate of $465 an hour is not only utterly reasonable—it's a steal given Mr. Wermuth's caliber as a highly skilled, experienced, and successful civil rights lawyer.

The same is true with respect to Mr. Wermuth's co-counsel, Kimberly Healy. Ms. Healy has over 21 years of experience in complex litigation in federal and Florida state courts and assisted Mr. Wermuth in pressing Plaintiffs' straightforward vagueness and compelled speech claims for the discounted rate of $335 an hour. Based on this Court's knowledge and experience with respect to attorneys' fees in the Tallahassee market, and the evidence demonstrating that Tallahassee supports much higher rates for skilled litigators with over twenty years of experience, this Court also finds that Ms. Healy's discounted rate of $335 is utterly reasonable to compensate her for her skilled work in this case.

This Court's agreement with the requested rates starts and ends with the Wermuth firm. Although this Court credits Mr. Johnson's opinion concerning reasonable rates customarily charged and awarded in Tallahassee as consistent with this Court's own knowledge and experience concerning reasonable rates in the Tallahassee market, this Court is not persuaded by his opinion that the out-of-state attorneys' top-tier requested rates present a reasonable request for this case. These rates, ranging from over $540 an hour for the least experienced, mid-level associate

12

attorney with only six years of experience to almost $1,000 an hour for someone with seven years' less experience than Mr. Wermuth, fail to account for the straightforward nature of the prevailing claims and realistic rates that a lawyer of comparable skill and experience in Tallahassee could charge to press such claims. This Court certainly recognizes the skill, experience, and reputations preceding the Elias Group's attorneys—but these attributes cannot bolster otherwise inflated rates given the character of the case and the claims upon which Plaintiffs ultimately prevailed. Even if this Court could consider *Prison Legal News* to be a comparable, or even controlling, case concerning reasonable rates for heavily litigated First Amendment claims in Tallahassee, that case involved a successful claim that required a more fact-intensive inquiry compared to the relatively straightforward prevailing claims in this case. Moreover, the rates awarded in *Prison Legal News* were deemed to be reasonable with respect to the *Miami* market, not the Tallahassee market. Accordingly, the highest rates awarded in *Prison Legal News* bear little resemblance to reasonable rates that can be awarded in this case when taking the attorneys' qualifications and experience into consideration.[4]

---

[4] This Court reiterates that based on this Court's own knowledge of prevailing market rates in the Tallahassee division, Plaintiffs' requested rates could be deemed reasonable in the Tallahassee market so long as they were sought for work involving highly skilled attorneys who successfully litigated highly complex, novel, or risky claims. But that is not this case.

This Court is not saying that the requested rates are never reasonable—indeed, as noted above, had Plaintiffs ultimately prevailed on more complicated claims, like the *Anderson-Burdick* claims or *Arlington Heights* claims, the novelty and complexity attendant to those successful claims would certainly support a higher rate. But this is not that case—Plaintiffs prevailed on relatively straightforward claims, and thus, Plaintiffs have not demonstrated that the balance of their requested rates are reasonable when taking into consideration all relevant factors, including the nature of the case and prevailing claims at issue.

It is Plaintiffs' burden to demonstrate the reasonableness of the requested rates, but this Court finds Plaintiffs' evidence—particularly Plaintiffs' expert's opinion—unpersuasive given Plaintiffs' expert's unhelpful focus on the labor-intensive nature of this case as a whole and limited evidence to justify an award of top-tier rates for attorneys, some of whom have relatively few years of experience. As a result, Plaintiffs have not demonstrated the reasonableness of the out-of-state lawyers' requested rates for their work on the fairly straightforward prevailing claims. Accordingly, this Court finds that the balance of Plaintiffs' requested rates require further adjustment based on this Court's knowledge and experience concerning reasonable attorneys' fees in the Tallahassee market and taking into consideration Plaintiffs' evidence to support their fee request, including Ms. Frost's declaration, in addition to Mr. Johnson's affidavit setting out his expert opinion.

14

Starting with Plaintiffs' out-of-state attorneys' highest billers, Elisabeth Frost served as the most experienced counsel on behalf of Elias Law Group, with seventeen years of experience and responsibilities including partner and chair of the firm's Litigation Practice Group. Ms. Frost is especially skilled and experienced in the realm of litigating voting rights cases and she has an excellent professional reputation in this field. Given her years of experience, her reputation and skill, and the claims she successfully litigated on Plaintiffs' behalf, this Court finds a rate of $500 an hour to reasonably and fairly compensate her for her work performed in this case.

Next, Ms. Aria Branch is another partner at Elias Law Group with twelve years of experience. Almost all of her experience as an attorney is in the field of litigating complex voting rights cases. Given her skill and experience and considering the circumstances of this case, this Court finds a rate of $450 an hour to reasonably and fairly compensate Ms. Branch for her work performed in this case.

The same is true with respect to David Fox, another partner at Elias Law Group with twelve years of experience, stellar credentials, and excellent litigation skills, which he displayed during the two-week bench trial in these consolidated cases. Given his skill and experience and the circumstances of this case, this Court

15

also finds a rate of $450 an hour to reasonably and fairly compensate Mr. Fox for his work performed in this case.[5]

Likewise, Ms. Danielle Sivalingam is a Perkins Coie attorney with twelve years of experience and excellent credentials. Given her experience and considering the circumstances of this case, this Court finds a rate of $450 an hour to reasonably and fairly compensate Ms. Sivalingam for her work performed in this case.

Ms. Lalitha Madduri is an Elias Law Group attorney with ten years of experience, particularly in complex voting rights litigation. Given her experience and contributions to this case and the claims she successfully litigated on Plaintiffs' behalf, this Court finds a rate of $400 an hour to reasonably and fairly compensate her for her work performed in this case.

Ms. Christina Ford and Ms. Francesca Gibson are both Elias Law Group attorneys with six years of experience, most of which centers on voting rights litigation. Notwithstanding their specialization in voting rights litigation, both attorneys have much less experience than the others who performed work in this case. This Court finds that, given these attorneys' few years of experience and the

---

[5] Given his admirable performance at trial, this Court is reluctant to reduce Mr. Fox's requested rate. Mr. Fox demonstrated astonishing skill as a young trial lawyer. Indeed, this Court was so impressed by Mr. Fox's presentation, his demonstrated knowledge of the record, and his candor with the Court, that I encouraged my law clerks to observe the trial and hopefully learn a thing or two from Mr. Fox. However, notwithstanding Mr. Fox's excellent performance, the claims Plaintiffs prevailed upon do not justify an award of such a high rate. Had Plaintiffs succeeded on their more novel, complex, or risky claims, this Court would not hesitate to award Mr. Fox his requested rate.

circumstances of the relatively straightforward prevailing claims, a rate of $350 an hour reasonably and fairly compensates both Ms. Ford and Ms. Gibson for their work performed in this case.

This Court pauses to note that, consistent with this Court's own knowledge and expertise with respect to prevailing market rates in Tallahassee, Plaintiffs' counsel, without a doubt, have the skill, experience, reputations, and knowledge to command the rates they have requested in this market by successfully litigating complex voting rights claims. But here, as this Court has repeatedly noted, the claims upon which Plaintiffs ultimately prevailed were not novel, complex, risky, or even very fact intensive. They simply do not justify most of the requested rates in this case. But in reducing most of Plaintiffs' requested rates, this Court is in no way suggesting that the reduced rates are the "norm" for *all* election cases regardless of the nature of the successful claims. Nor should this Order be considered evidence of some maximum allowable rate for future civil rights cases.

As for the paralegals' rates, this Court also finds the requested rate of $195 an hour to be unreasonably high for the Tallahassee market. Given this Court's knowledge and expertise regarding prevailing rates in the Tallahassee market, I find that a rate of $175 fairly compensates each of the three highly experienced paralegals who contributed to this case. Finally, this Court concludes the document review attorneys' hourly rate of $72 an hour is reasonable. *See* ECF No. 797-1 at 9 (defense

fee expert's opinion that, notwithstanding his misgivings about the use of document reviewers, the requested rate is below the market rate for paralegals and not unreasonable); *see also* ECF No. 791-1 at 6 (attesting that Plaintiffs seek fees for contract *attorneys* who performed document review at the rate of $72 an hour).

Next, this Court determines how many hours Plaintiffs' counsel reasonably expended during this litigation.

## B. Numbers of Hours Reasonably Expended

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation. A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary [hours]." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *Bivins v. Wrap It Up, Inc.*, 548 F.3d

18

1348, 1350–51 (11th Cir. 2008). The Eleventh Circuit has "recognized that in cases 'where fee documentation is voluminous,' it will not be feasible to require a court to 'engage in such a precise [hour-by-hour] review.' " *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)) (finding 569.3 hours to be sufficiently voluminous that no hour-by-hour analysis was required). Accordingly, given the voluminous records in support of Plaintiffs' fee request, this Court will do rough justice by performing across-the-board reductions where necessary.

Plaintiffs' attorneys expended well over 14,000 hours litigating this case. *See* ECF No. 791 at 16. However, Plaintiffs' fee request accounts for only 9,004.3 hours of attorney time, after "voluntary reductions" for time spent on work that was "wholly attributable to unsuccessful claims or plaintiffs" and the exercise of billing judgment in Plaintiffs' attempt to eliminate fees for time spent on duplicative or other unnecessary work. *Id*. at 18–21. Multiplied by the hourly rates that this Court has determined are reasonable yields an adjusted lodestar of $2,806,119.90 for over 9,000 hours of work.[6]

---

[6] This Court multiplied the total hours for each attorney listed in Ms. Frost's and Mr. Wermuth's charts on ECF No. 791-1 at 84 and ECF No. 791-2 at 8 by the respective hourly rates this Court has determined to be reasonable to reach this sum.

In response, Defendant argues that the requested time, even after the asserted exercise in billing judgment, is unreasonable.[7] Defendant points to its fee expert's declaration in support of the argument that "too many Plaintiffs' attorneys worked on this case for too many hours, and given the attorneys' specialization in voting-rights cases, their familiarity with voting-rights law should have greatly reduced the hours sought in this case." ECF No. 797 at 9–10. This Court agrees.

By any measure, employing over a dozen attorneys and paralegals for 9,000 hours to litigate the discrete issues concerning the compelled-speech claim and void-for-vagueness claim is unreasonable. Notwithstanding Plaintiffs' fee expert's opinion that the amount of time spent on this case is reasonable because the overlapping and unsuccessful claims arose from a common core of facts, *see* ECF No. 791-3 at 5, this Court is persuaded, both based on its own expertise in assessing reasonable fees and by Defendant's fee expert's recommendation, that an additional 70% reduction is warranted to account for the excessive number of hours Plaintiffs have requested. Accordingly, this Court imposes an across-the-board reduction of 70% to Plaintiffs' requested hours for a total number of hours reasonably expended

---

[7] This Court is unpersuaded by Defendant's alternative argument as to reasonableness of hours, which is just a repackaged argument challenging Plaintiffs' entitlement to fees as prevailing parties.

in this litigation of 2,701.3 hours.[8] Multiplied by the attorneys' reasonable hourly rates yields a lodestar of **$841,835.97**.[9]

## C. Adjustment of Lodestar Due to Results Obtained

"[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017) (internal quotation marks omitted). "If the lodestar is reasonable, a downward adjustment is merited only if the prevailing party was partially successful in its efforts." *Id.* (internal quotation marks omitted). "A district court must determine what counts as partial success on a case-by-case basis." *Id.*

"[I]n complex civil rights litigation involving numerous challenges to institutional practices or conditions," "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *See Hensley*, 461 U.S. at 436–40. But, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. *"Where all theories derive*

---

[8] Multiplying 9,004.3 hours by 0.30 to eliminate 70% of the hours yields 2,701.29 hours. This Court has rounded to the nearest tenth of an hour.

[9] This Court calculated the lodestar by multiplying each attorney's hourly rate—either the requested rates this Court accepted as noted above or the reduced rate this Court determined to be reasonable—by their respective total hours requested as reflected in the attorneys' charts provided at ECF Nos. 791-1 at 84 and 791-2 at 8. This Court then reduced the total by 70% to reflect the 70% reduction in hours to yield the lodestar amount.

from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Norman*, 836 F.2d at 1302.

Here, Plaintiffs originally pressed six counts challenging five different provisions of Florida law under a plethora of legal theories. *See* ECF No. 160. Plaintiffs' *Anderson-Burdick* and free speech claims predominated over the proceedings with respect to Plaintiffs' case, both pre-trial and during the consolidated two-week bench trial. Nonetheless, only a small fraction of Plaintiffs' overall success before this Court survived on appeal to the Eleventh Circuit, and this Court ultimately ruled against Plaintiffs with respect to their *Anderson-Burdick* claims both at trial and on remand from the Eleventh Circuit. As a result, Defendant asserts that the lodestar requires further reduction based on the limited success that Plaintiffs obtained in this case. Plaintiffs agree and suggest that a further 30% reduction to the lodestar is appropriate to take into consideration the results obtained in this case. ECF No. ECF No. 791 at 25–26 ("In light of the success obtained and the public benefit from suit, the League Plaintiffs propose that they recover 70% of the lodestar, which again has already been adjusted for billing judgment and to eliminate, using an overbroad methodology, time attributable to wholly unsuccessful claims."). But Defendant's expert asserts a further 75% reduction would more appropriately account for the limited results obtained, given that the two successful claims encompassed approximately three days of time out of the fourteen days in

22

trial, most of which was largely devoted to proving standing. ECF No. 797-1 at 19. This Court agrees that a 75% reduction more appropriately accounts for the limited results obtained.

Accordingly, as both sides agree, a further reduction is necessary to account for the limited success obtained in this case. This Court is persuaded by Defendant's expert's recommendation that a 75% reduction is appropriate to account for the limited success obtained on the two successful claims. Reducing the adjusted lodestar by 75% yields a total fee award of **$210,458.99**.[10]

## II

Next, this Court considers Plaintiffs' requested expenses. Plaintiffs' motion asserts the total request amounts to $217,223.72. ECF No. 791 at 27–28. These expenses include purportedly taxable costs under 28 U.S.C. § 1920 and "a portion of the expert fees incurred in this matter." ECF No. 791-1 at 14. However, Ms. Frost's affidavit in support of these costs demonstrates a total request of $282,692.73. *See id.* at 86–87 (accounting for requested expenses). Ms. Frost attests that the amounts reflected at ECF No. 791-1 at 86–87 "have already been reduced to exclude the work of Dr. Burton, whose work was not presented at trial, and

---

[10] This Court pauses to note that it is not insignificant to receive over $200,000.00 in fees, given the two narrow issues upon which Plaintiffs prevailed, particularly considering the fact that this was but one of four cases consolidated at trial where other plaintiffs pressed the same legal theories (and, one would hope, contributed to each other's success by sharing resources and, therefore, litigating more efficiently).

23

reduced to account for the work of Drs. Herron and Mayer, both of whom testified at trial but on multiple claims, including both successful and unsuccessful claims." *Id*. at 14. But the amount requested in the affidavit does not track with the amount requested in Plaintiffs' motion. Regardless, Defendant asserts these costs are excessive and unsupported. ECF No. 797 at 11–12. In large part, this Court agrees.

"[A]ll reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988," except for "routine office overhead normally absorbed by the practicing attorney." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). "The guideline on what is includable must be that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id*. And "[t]he guideline on what is excludable is that which is specified in the legislative history: section 1988 may not be subverted into a ruse for producing 'windfalls' for attorneys." *Id*.

Having reviewed Plaintiffs' submissions, this Court is not persuaded that Plaintiffs' requested expenses are reasonable. *See* N.D. Fla. Loc. R. 54.1(E)(1) ("The declaration must include sufficient detail to allow a determination of reasonableness."). For starters, although it is unclear based on Plaintiffs'

submissions, Plaintiffs seek *at least* $152,561.02[11] in expert fees with little explanation of whether or how these expenses are limited to the work performed for the narrow issues that Plaintiffs succeeded upon in this litigation. Plaintiffs rely, instead, upon the conclusory assertions that their experts' testimony supported Plaintiffs' successful and unsuccessful claims. *See* ECF No. 791-1 at 14 (Frost affidavit asserting that Drs. Herron and Mayer testified at trial regarding successful and unsuccessful claims) and ECF No. 803 at 7 (Plaintiffs' reply brief citing to expert reports). Plaintiffs fail to make any argument demonstrating *why* their request is reasonable given the narrow issues upon which Plaintiffs prevailed. In effect, Plaintiffs shift the burden to this Court to justify the reasonableness of their request. But, the burden is on the Plaintiffs and they have failed to meet that burden.

This Court is likewise unpersuaded by the conclusory assertion that Plaintiffs submitted sufficient documentation to support taxing over $61,000 for deposition transcripts *see* ECF No. 803 at 7, and for the service fees for several subpoenas served on Florida lawmakers, as opposed to service fees for several Defendants in this case, even though Plaintiffs have provided no other explanation for how such costs were necessarily incurred for the prosecution of Plaintiffs' successful claims.

---

[11] As noted above, there are discrepancies between Ms. Frost's affidavit and Exhibit B to that affidavit and the Plaintiffs' motion. However, taking the lower sum requested in the motion and subtracting $64,662.68, as requested in the Plaintiffs' previously filed Bill of Costs, ECF No. 771, yields a sum of $152,561.02 of additional expenses for expert fees.

In short, Plaintiffs fail to demonstrate that their extraordinary request for certain taxable and non-taxable expenses is reasonable. Given this lack of support, and in light of the reduction this Court has already imposed based on the limited results obtained in this case, this Court will limit Plaintiffs' expenses only to $1,650.00 for the combined "filing fees"[12] for the Elias Law Group attorneys, $306.50 for the combined service fees for service of initial process on five Defendants, none of which exceeds the Marshal's rate of $65.00 an hour, and $200.00 for combined witness fees, totaling **$2,156.50** in taxable costs.

Accordingly,

**IT IS ORDERED:**

1. Plaintiffs' motion to determine amount of fees, ECF No. 791, is **GRANTED in part and DENIED in part.**

2. Plaintiffs are entitled to **$210,458.99** in attorneys' fees and **$2,156.50** in taxable costs.

3. The Clerk shall enter a fee judgment stating, "Plaintiffs are entitled to judgment against Defendants in the amount of $210,458.99 in attorneys' fees

---

[12] What Plaintiffs identify as "filing fees" are actually the total expenses for entering *pro hac vice* appearances with this Court for their core members, in addition to the filing fee for this case. Although this Court certainly would not find it reasonably necessary to have a cadre of dozens of lawyers to litigate the two narrow issues that ultimately succeeded in this case, this Court concludes that the limited request for *pro hac vice* expenses is reasonable.

and $2,156.50 in taxable costs for a total judgment in the amount of $212,615.49, for which sum let execution rest."

4. The Clerk shall close the file.

**SO ORDERED on February 24, 2025.**

<u>**s/Mark E. Walker**</u>
**Chief United States District Judge**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

LEAGUE OF WOMEN VOTERS
OF FLORIDA, INC., et. al.,

      Plaintiffs,

v.                             Case No.: 4:21cv186-MW/MAF

CORD BYRD, in his official
capacity as Florida Secretary of
State, et al.,

      Defendants,

_____/

## JUDGMENT

    Plaintiffs are entitled to judgment against Defendants in the amount of

$210,458.99 in attorneys' fees and $2,156.50 in taxable costs for a total judgment

in the amount of $212,615.49, for which sum let execution rest.

                                  JESSICA J LYUBLANOVITS,
                                  CLERK OF COURT

February 24, 2025              s/ *Ronnie Barker*
DATE                            DEPUTY CLERK